FILED

MAY 16 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**JANVIER VILLARS, Sui Juris**
on behalf of himself and all others similarly situated,
Plaintiff,

**CV25    4239**

CASE No. _____

LJC

**v.**

**PAM BONDI,** former Florida Attorney General, in her individual and former official capacity;
**FLORIDA ATTORNEY GENERAL ASHLEY MOODY,** in her official capacity;
**STATE ATTORNEY KATHERINE FERNANDEZ RUNDLE,** in her official and individual capacity;
**FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION (DBPR);**
**LEIGH KATZMAN,** in his individual and professional capacity;
**STEVEN KATZ,** Florida BAR-licensed attorney, in his individual capacity;
**KATZMAN CHANDLER PA,** a professional legal entity;
**JUDGE CARLOS GUZMAN,** in his judicial and individual capacity;
**JUDGE VIVIANNE DEL RIO,** in her judicial and individual capacity;
**JUDGE ABBY CYNAMON,** in her judicial and individual capacity;
**SECURITIES AND EXCHANGE COMMISSION (SEC);**
**FEDERAL ELECTION COMMISSION (FEC);**
**META PLATFORMS, INC.,** a Delaware corporation;
**TIKTOK, INC.,** indispensable party of interest;
**UNITED STATES OF AMERICA,** sovereign entity;
**JOHN AND JANE DOES 1-100** (Unknown Operatives / Conspirators) per *Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).,* Respondents.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,**
**DAMAGES, AND CONSTITUTIONAL REVIEW**
**ARISING FROM SYSTEMIC FRAUD ON THE COURT,**
**CIVIL CONSPIRACY, AND JUDICIALLY SHIELDED RACKETEERING**
*(42 U.S.C. §§ 1983, 1985(3), 1986; 18 U.S.C. § 1962(c); 28 U.S.C. §§ 2201–2202)*

**Janvier Villars, Sui Juris**
**On his behalf and similarly harmed**
**1301 NE Miami, Gardens Drv. 322W**
**Miami, FL 33179**
www.4bt.io    janvier269@gmail.com
**(786) 609-1269**

# Index

| | |
|---|---|
| §1. Caption and Parties | Page 1 (¶1–6) |
| §2. Introduction | Page 2 (¶7–23) |
| §3. Jurisdiction and Venue | Page 3 (¶24–29) |
| §4. Parties . | Pages 4–8 (¶30–54) |
| §5. Factual Background | Pages 9–13 (¶55–73) |
| §6. Causes of Action . | Page 14 |
| Count I: Fraud on the Court | Pages 14–15 (¶74–84) |
| Count II: Deprivation of Due Process and Access to Court | Pages 15–17 (¶85–97) |
| Count III: Civil Conspiracy (42 U.S.C. § 1985(3)) | Pages 17–18 (¶98–106) |
| Count IV: RICO (18 U.S.C. § 1962(c)) | Pages 19–21 (¶107–117) |
| Count V: Declaratory and Injunctive Relief | Pages 21–22 (¶118–125) |
| §7. Global Prayer for Relief | Pages 23–24 (¶126–144) |
| §8. Jury Demand and Signature | Page 25 (¶145–148) |
| §9. Certificate of Service | Page 25 (¶149–151) |
| §10. Certification of Interested Entities or Persons | Page 25 (¶152–154) |

**Supplemental EMERGENCY PETITION Under Fed. Rule 15(d), 401, 402, and 403**

**SUPPLEMENTAL Evidence of State Officers' Mens Rea Under Fed. Rule 15(d)**

## §2. **INTRODUCTION**

43  This case arises from a deliberate and systemic abuse of **Judicial Discretion** and state authority,

44  carried out through a coordinated enterprise involving state courts, attorneys, and regulatory

45  agencies who acted in concert to deprive the Plaintiff, VILLARS, and similarly situated

46  individuals of their constitutional rights to due process, property, access to courts, and equal

47  protection under the law. What began as a state abuse in a condominium receivership dispute has

48  become a federal matter of exceptional public importance — a manifestation of the very

49  "Blueprint" by which our justice system has institutionalized fraud, exclusion, and weaponized

50  judicial civil procedures against the Working Class they know is ill represented in the states.

51  The Plaintiff alleges that this harm did not occur in a vacuum. It was made possible — and

52  predictable — by judicial doctrines and landmark Supreme Court precedents that have over time

53  erected insurmountable barriers to redress, while immunizing bad faith actors in robes and suits.

54  From *Stump v. Sparkman* (**Judicial Absolute Immunity**), to *Citizens United* (corporate

55  personhood and structural election conflicts), to *Dobbs v. Jackson* (standing manipulation and

56  omission of indispensable parties), and most recently *Murthy v. Missouri* (prior restraint and

57  suppression of indispensable speech, association, contract and illegal taking), these decisions

58  have enabled state actors to execute private conspiracies under the protection of public power —

59  and without the constraint of Strict Scrutiny constitutional review.

60  This Complaint seeks to expose and remedy that pattern, beginning with the unconstitutional

61  actions taken in Florida state courts by Judges Guzman, Del Rio, Cynamon, the 3rd DCA and the

62  Federal SDC. Which includes the racketeering and fraudulent inducement by Katzman Chandler

63  and associated attorneys; and the willful inaction and complicity of Florida's top law

64  enforcement officials, including former Attorney General Pam Bondi and current Attorney

65  General Ashley Moody. Their collective inaction — despite full notice — allowed the

66  deprivation of property, liberty, and public office without a hearing, standing, or jurisdiction.

67  This action also challenges the exclusion of indispensable parties in *Murthy v. Missouri*, and the

68  enforcement of its ruling against speech creators such as Villars and the rest of the TikTok

69  Creators similarly harmed, who were denied notice, participation, or redress. The omission of

70  these parties constitutes not only a jurisdictional failure, but **<u>fraud on the court</u>** — one that

71  mirrors the very omissions, procedural manipulations, and intentional misrepresentations used to

72  strip Villars and his Association constituents of rights in the state forums.

73  **THE CORE - This Court is not being asked to reverse the Supreme Court.** It is being asked

74  to declare whether those decisions, while deliberately omitting Sui Juris participation, yet

75  enforced without affording procedural due process, when applied to unrepresented and

76  suppressed classes, and when copied locally as instruments of political, economic, and racial

77  suppression — result in systemic fraud, unconstitutional deprivation, and actionable harm.

78  Plaintiff files this Complaint to restore not only his personal rights, but to expose the engine of

79  injustice now operating behind the mask of jurisdiction. The Constitution does not authorize the

80  laundering of private abuse through Judicial Discretion, nor the erasure of public rights through

81  procedural fraud. Substantial Federal Issues with Exceptional Constitutional Circumstances.

82                         ## §3. <u>JURISDICTION AND VENUE</u>
83  ─────────────────────────────────────────────────────

84  1.  This Court has original jurisdiction over this matter pursuant to **28 U.S.C. § 1331**, as this

85      action arises under the Constitution and laws of the United States, including **42 U.S.C. §§**

86      **1983, 1985(3), 1986,** and **18 U.S.C. § 1962** (RICO), as well as the Declaratory Judgment

87      Act, **28 U.S.C. §§ 2201–2202**.

88   2.  This Court has supplemental jurisdiction over state law claims pursuant to **28 U.S.C. § 1367,**

89       as those claims arise from a common nucleus of operative fact, forming part of the same case

90       or controversy as Plaintiff's federal claims.

91   3.  This Court has jurisdiction over the claims against the **United States of America and its**

92       **officers** pursuant to **5 U.S.C. §§ 702–706** (Administrative Procedure Act), and to the extent

93       sovereign immunity has been waived where officials act outside the bounds of constitutional

94       or statutory authority.

95   4.  Venue is proper in the **Northern District of California** pursuant to **28 U.S.C. § 1391(b)(2),**

96       because a substantial part of the events and omissions giving rise to the claims occurred in

97       this District, and because Defendants, including **Meta Platforms, Inc., TikTok, Inc.,** and

98       federal regulatory entities, conduct operations and maintain offices in this District, which is

99       materially connected to the injuries alleged herein.

100  5.  This Court has authority to issue **declaratory and injunctive relief** pursuant to **28 U.S.C. §§**

101      **2201–2202,** and **Federal Rules of Civil Procedure 57 and 65.**

102  6.  This Court has authority to hear claims of **fraud on the court** and allegations of systemic

103      deprivation of constitutional rights where such deprivations arise from concerted action by

104      state and non-state actors under color of law, and where doctrines such as judicial immunity

105      and standing are applied in a manner that contravenes due process.

106                               **§4. PARTIES**
107  ───────────────────────────────────────────────────────────────────────────

108  7.  **Plaintiff VILLARS** is a U.S. citizen residing in Miami-Dade County, Florida. He is a lawful

109      elected officer of his condominium '**Association**' and a TikTok video creator of public

110      speech subjected to unconstitutional deprivation through federal court action. He brings this

111    action on behalf of himself and similarly situated TikTok Creators deprived of due process,

112    access to courts, and their rightful legal standing through a judicial pattern of omission,

113    exclusion, and procedural abuse that replicates what is now a visible federal doctrine of

114    strategic discretion. He has standing under 42 U.S.C. §§ 1983, 1985(3), 1986, and 18 U.S.C.

115    § 1962(c), and seeks both individual and class wide declaratory, injunctive, and

116    compensatory relief.

117    8.  **Defendant PAM BONDI** served as Florida Attorney General from 2011 to 2019. During her

118    tenure, she received early, formal notice of criminal racketeering, Corporate Fraud by FL.

119    Bar Atty. Katzman, and unconstitutional judicial activity. She failed to investigate, intervene,

120    or exercise her statutory oversight obligations, despite possessing full legal authority and

121    jurisdiction. Her inaction represents the first institutional breach that permitted the civil

122    conspiracy to gain traction within the judicial system. Defrauding the People at refusing to

123    uphold the U.S. Constitution.  She is sued in her individual and former official capacities.

124    9.  **Defendant ASHLEY MOODY** is the current Florida Attorney General. Since taking office,

125    she has been notified in writing of constitutional violations, due process denials, and judicial

126    overreach involving state judges, Florida BAR Licensed attorneys, and regulatory officers.

127    Despite this, she has taken no action and has failed to respond to whistleblower reports,

128    thereby continuing the pattern of official silence and procedural concealment as State of

129    Florida Custom and Policy. She is sued in her official capacity for prospective relief.

130    10.  **Defendant KATHERINE FERNANDEZ RUNDLE**. Since 2017 she has been the Fla.

131    BAR Lic. State Attorney for the Eleventh Judicial Circuit of Florida. Her office was

132    constantly notified of the criminal activity by Florida BAR Licensed Lawyers and those

133    dressed in robes, the altered bank concealing illegal loans, criminal election tampering, and

134    judicial misconduct. Yet she declined to investigate, prosecute, or refer the matter to

135    appropriate state or federal authorities. She is sued in her individual and official capacities.

136    11. **Defendant FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL**

137    **REGULATION (DBPR)** is the state entity charged with enforcing statutory compliance for

138    condominium governance and licensed managers. Despite receiving direct evidence of

139    concealed illegal loans against the Association owners, fraudulent filings, forged board

140    elections, and unlawful suppression of member rights, the paid by the Association members

141    DBPR declined to act. This refusal allowed false directors to continue operating under state

142    recognition, providing a legal front for what was in fact a civil RICO enterprise.

143    12. **Defendant LEIGH KATZMAN** is a <u>Florida BAR attorney</u> and principal of Katzman

144    Chandler PA. He represented the Association from 2009 to 2019. Procured without authority

145    a $3.5M loan against the Association owners without their awareness as their Trustee. He

146    collaborated in the Receivership scheme with Judge Carlos Guzman. Falsified the

147    Association corporate Records in Sunbiz.org 7X to illegally remove Villas of his presidency.

148    Deprive Villars and the Association Membership of property interests, 1st Amendment Rights.

149    Since 2010 he sued Association owners under fraudulent collections claims, without legal

150    standing, but with the collaborated jurisdictional overreach. He is sued individually under

151    civil conspiracy, illegal taking under FS772.11, fraud, RICO, and 42 U.S.C. § 1983.

152    13. **Defendant STEVEN KATZ** is another <u>Fla. BAR Licensed attorney</u> affiliated with Katzman

153    Chandler PA. Who recorded in State Court materially false instruments to take property

154    interests. Securing judicial orders by blocking indispensable parties with misapplied civil

155    rules. He worked in direct collaboration with Judge Del Rio and her Assistant, enabling the

156    second judicial usurpation of this Association. He is sued in his individual capacity under

157    fraud, illegal taking under FS772.11, civil conspiracy, and aiding racketeering activity.

158    14. **Defendant KATZMAN CHANDLER PA** is a law firm organized under Florida law. It

159    served as the operational base for the fraudulent conversion of a homeowners' association. A

160    state condoned racketeering entity protected by state courts. Members of a State Preferred

161    Class above the Law of the Land. Permitted to record Fraudulent records, use jurisdictional

162    defects as tactical weapons, and conspire with judges and regulators to maintain a scheme of

163    perpetual legal exclusion. It is liable under RICO and state conspiracy doctrines.

164    15. **Defendant JUDGE CARLOS GUZMAN.** Retroactively afforded Katzman standing to

165    afford his court SMJ. Following SCOTUS landmark blueprint. He issued orders appointing a

166    receiver and granting control over Plaintiff's association while omitting indispensable parties,

167    disregarding known jurisdictional defects, and advocating from the bench on every hearing,

168    to avoid addressing the jurisdictional challenge (Lacking SMJ). His actions began the judicial

169    ratification mirror the pattern of procedural fraud and exclusion endorsed by SCOTUS. He is

170    sued in both individual and judicial capacities for acting outside constitutional bounds.

171    16. **Defendant JUDGE VIVIANNE DEL RIO** like Guzman following SCOTUS Blueprint, she

172    also Retroactively afforded a Right where there was none - to afford her court with SMJ. In

173    overt furtherance she signed four fraudulent orders while refusing to allow Plaintiff and

174    fellow sitting board Directors the Right to Intervene, as indispensable parties, directly

175    divested by her rulings. Issuing two sua sponte rulings based on Steven Katz false claims

176    against the Association and without affording a hearing to the Association. She continued the

177    procedural model of selective standing and exclusion, reinforcing the constitutional injury.

178    She is sued in both judicial and individual capacities.

179    17. **Defendant JUDGE ABBY CYNAMON** originated the obstruction pattern in 2017 by

180    blocking racketeering evidence and denying hearings, by advocating on behalf of her fellow

181    Fla. BAR Lawyers Katzman. Her actions institutionalized judicial protectionism for a known

182    fraudulent enterprise. She is sued in her judicial and individual capacities.

183    18. **Defendant META PLATFORMS, INC.** is a Delaware corporation and direct financial

184    beneficiary of federal rulings in *Murthy v. Missouri* (TikTok Ban case). Through lobbying, it

185    influence the political and regulatory structures. META stands to gain a Monopoly from the

186    suppression of its main competitor TikTok. Thus the named factual beneficiary of judicial

187    fraud in the TikTok case, and its economic conflict underpins the pattern of improper

188    jurisdictional rulings affecting indispensable parties.  Where during the ban the TikTok

189    Creators Intellectual Properties (videos) were transferred to META's servers without

190    compensation or proper due process in violation of the 5th and 14th Amendment.

191    19. **Defendant TIKTOK, INC.** is not named as a wrongdoer but as an **indispensable party**

192    improperly extorted under color of law into giving up its equity in the *Murthy v. Missouri*.

193    The judicial manipulation of the case mirrors the pattern in Plaintiff's state case — a strategic

194    omission of lack of Standing at DOJ lacking an **Explicit afforded** Right to Sue or Ban using

195    a Bill that only prohibits TikTok "On Government Devices". But by judicial overreached

196    lacking SMJ procured the intended deprivation of Speech, Association, Contractual/Property

197    Interest without affording the Indispensable parties (Creators and Users) Due Process.

198    20. **Defendant SECURITIES AND EXCHANGE COMMISSION (SEC).** Under Duty and

199    well aware of constitutional conflicts, insider trading risks, and judicially sanctioned

200    corporate benefit in connection with the TikTok ban. It declined to investigate or intervene

201    despite a clear statutory duty to protect the integrity of public markets and investor fairness.

202    21. **Defendant FEDERAL ELECTION COMMISSION (FEC).** Under Duty it failed to act on

203        public evidence of coordination between private corporate actors and judicial rulings that

204        affected the electoral speech market. It allowed the systemic suppression of class wide First

205        Amendment rights while ruling parties and benefactors profited from the enforcement of

206        unconstitutional decisions. Failed to uphold and protect the U.S. Constitution 1st Amendment.

207    22. **Defendant UNITED STATES OF AMERICA** is named as the sovereign whose officers

208        and judicial agents, acting under the color of law, designed and enforced procedural rulings

209        that resulted in widespread constitutional deprivations. While the judiciary is independent, its

210        abuse of discretion to exclude parties, deny access, and suppress rights under fraudulent

211        pretenses constitutes federal liability under both Bivens and constitutional tort frameworks.

212    23. **Defendants JOHN DOES 1–50** are persons known and unknown who acted in furtherance

213        of the conspiracy, including judicial clerks, administrative officers, BAR officials, and others

214        yet to be identified. They will be named as discovery permits.

215                            **§5. <u>FACTUAL BACKGROUND</u>**
216    

217    24. Plaintiff JANVIER VILLARS is a TikTok political commentator and constitutional reform

218        advocate, who became entangled in a web of coordinated judicial and regulatory fraud after

219        acquiring his condominium unit in Buckley Towers **"Association"** in North Miami Beach,

220        Florida. After he was personally harmed, he uncovered a **broader pattern of civil**

221        **conspiracy**, where state actors, attorneys, and regulatory agencies acted in concert - under

222        the shelter of **Judicial Discretion** — to **systematically deny constitutional rights**,

223        fraudulently induce jurisdiction and rulings, while affording **Judicial Sanctuary** to the

224        wrongdoers.  Legally condoned by the Attorney Generals as Florida's Custom and Policy.

225   25. In 2021, Villars was **lawfully elected President** of the Buckley Towers Condominium

226   **Association**. Within months, he discovered a previously concealed **$3.5 million loan** taken

227   out by prior board members, led by attorney **Leigh Katzman**, without member approval. In

228   direct violation of Florida Statutes and the Association's governing documents. This secret

229   loan payments diverted common funds away from life-safety repairs and exposed residents to

230   financial and physical risk. Harming not only the property but the investment return for the

231   following 10 years; while he, acting as the "Trustee" enjoyed unrestricted access to the funds.

232   Simultaneously failing to pay Association contractors inducing lawsuits against the

233   Association.  Which in 2022 were paid/Settled with the assistance of Judge Guzman, who has

234   kept those settlements concealed from the Association. To avoid exposing Katzman's fraud.

235   Then concealing this from the owners by collaborating with the DBPR.

236   26. In 2021 - When Villars sought to expose the fraudulent loan and seek redress, **Katzman**

237   **altered the Association's corporate records on Florida's Sunbiz.org registry**. Falsely

238   installing his client as Board president. Katzman then filed a lawsuit *as* the Association to sue

239   Villars and reclaim control — weaponizing procedural fraud to avoid personal liability.

240   27. An Evidentiary Hearing was scheduled to address the legitimacy of the altered records and

241   Villars' legal authority. Just **17 hours prior**, Katzman filed a petition for receivership. Instead

242   of adjudicating the fraud claims, **Judge Carlos Guzman** stayed the hearing and granted the

243   receivership (within 10 min). Guzman concealed the true intent of Katzman's last minute

244   appointment by misrepresenting it as a 30-day inquiry, signing the Order as a **permanent**

245   **seizure order**, stripping Villars and his duly elected board of office — **without a single**

246   **evidentiary finding**. Both Katzman and Guzman knew the court lacked SMJ ab initio.

247  28. Judge Guzman then issued orders through the receiver to **coerce another $3.5 million** from

248      residents. Under false pretenses to finance the 40 -50 yr. Recertification, when used to pay

249      for Katzman's caused lawsuits against the Association and to pay Katzman $250,000 for the

250      Receivership.  When Villars refused to stop informing, he was threatened with contempt and

251      arrest — **not for any crime, but for disobeying an unconstitutional Order against his 1st**

252      **Amendment Right, and for exposing their fraudulently induced Receivership.**

253  29. In 2024, after the Association regained local control, Katzman-affiliated attorney **Steven**

254      **Katz** filed a new suit against Villars, now serving as Board Secretary. Katz frivolously sued

255      challenging Villars' parking space assignments — a matter within the board's discretion. Katz

256      like Katzman proceeded knowing of wanting SMJ at not having standing or actual harm. But

257      filing expecting judicial collaboration of his respected colleagues in court.  **Judge Vivianne**

258      **Del Rio,** fully informed of the past fraud, adopted the **same blueprint as Guzman,** issuing

259      ex parte injunctions, cancelling lawful board elections produced by the sitting board. To vest

260      Katz with authority to run the Association election to his whims.  Then, like Guzman she also

261      denied intervention to indispensable parties Association members — to secure the usurpation.

262  30. **Judge Abby Cynamon**, who in 2017 had obstructed Villars' racketeering claims against

263      Katzman, re-emerged in 2024. To further deny Villars intervention in proceedings where she

264      had direct conflict, but refuse to recuse herself again. To further shield Katzman, Katz and

265      collaborators. Enforcing what had become a **judicially protected racketeering model**.

266  31. All state officials responsible for oversight — including **Attorney General Pam Bondi,**

267      **Ashley Moody, State Attorney Katherine Fernandez Rundle,** and the **DBPR** — were

268      formally notified, via certified mail and electronic filings, of these events. Not one

269    <u>intervened</u>. Their refusal to act after receiving detailed notice constitutes a **knowing breach**

270    **of duty under 42 U.S.C. § 1986**, and signals **a willful protection of fraud on the court**.

271    32. This systemic abuse mirrors the doctrines employed in landmark SCOTUS cases. In *Dobbs*,

272    indispensable parties were denied standing. In *Murthy*, TikTok was framed as a "National

273    Threat" without proof of Actual Harm, the TikTok Creators were excluded from litigation, to

274    pass a ruling depriving them without affording due process — resulting in economic transfers

275    to **Meta**, where SCOTUS-linked officials held investments. Villars himself was denied

276    intervention in *Murthy*, despite submitting a timely Motion to Intervene. The pattern is now

277    clear: **fraudulent inducement, judicial expansion of scope, omission of parties, and**

278    **discretionary denial of redress to pass a ruling that contradicts the U.S. Constitution**.

279    33. These rulings form the **Judicial Blueprint**: a repeatable model by which judges and

280    collaborating officers construct the **appearance of due process**, while bypassing actual

281    jurisdiction, suppressing facts, and achieving an Intended Objective — regardless of law,

282    rights, or remedy.  As <u>Judicial Blueprint to bypass Strict Scrutiny on unconstitutional laws.</u>

283    ## §6. CAUSES OF ACTION

284    ─────────────────────────────────────────────────────

285    ### COUNT I. FRAUD ON THE COURT
286    (*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238; *United States v.*
287    *Throckmorton*, 98 U.S. 61)

288    34. **Against: Judges Carlos Guzman, Vivianne Del Rio, Abby Cynamon; Katzman**

289    **Chandler PA; Leigh Katzman; Steven Katz**

290    35. **Defendants** named herein acted in concert when submitting materially false documents, alter

291    Corporate Private records in Sunbiz.org, barred indispensable parties participation, and

292    secure judicial rulings while concealing material facts. These acts were not the result of error

293    or negligence, but intentional misrepresentations calculated to induce jurisdiction where none

294    existed and to produce rulings favorable to **The Concealed Illicit Enterprise.**

295    36. **Judge Guzman**, (in 2021) fully aware that Plaintiff Villars was the duly elected president of

296    the Association, stayed an evidentiary hearing and issued a receivership order that

297    extinguished Villars' rights, by relying on altered records supplied by **Leigh Katzman**.

298    Guzman misrepresented and Extended the hearing's purpose and scope, concealing Katzman

299    lack of Standing and harm, the indispensable parties (Assoc. Membership 560+), and thus

300    Wanting of Subject Matter Jurisdiction (**SMJ**). Constituting to **extrinsic fraud by design**.

301    37. **Judge Del Rio** (in 2024) repeated the model by issuing ex parte injunctions, canceling

302    without Contractual or Statutory Authority Board Elections, and denying motions to

303    intervene. To divest Villars of Board Officer position without affording him due process.

304    38. **Del Rio coordinated with Steven Katz**. Who withheld material facts over the 2021

305    Receivership to claim, for his client, an unfounded **Clear Right**. Collaborating in Court with

306    the misapplication of Fla. Civ. Procedures. To bar indispensable parties from addressing the

307    court's **Lack of SMJ**. To place his client as Board president in violation of Assoc bylaws.

308    39. **Judge Cynamon**, despite having direct conflict, advocating for Katzman from the bench,

309    denied intervention and refused to recuse herself. To maintain control of the case. To further

310    conceal Katzman's illegal loan, racketeering practices, fraudulent inducement into courts,

311    misappropriation of Assoc funds… sponsoring the unconstitutional enterprise to continue.

312    40. These actions were deliberate, executed under color of **Judicial Discretion**, and insulated by

313    doctrines **originating in _Stump v. Sparkman_**. Where the Supreme Court introduced an

314    absolute **Judicial Immunity** model that has since been misapplied as a sword and shield for

315    systemic procedural abuse — contrary to Constitutional authority afforded to SCOTUS.

316    41. The concealment and judicial enforcement of knowingly false filings violate the core

317    integrity of the courts and void the resulting rulings. The injuries cannot be cured by appeal

318    alone, as the forum itself has been structurally compromised by fraud. Here proven with the

319    Florida 3rd DCA denying review on proven Constitutional violations and the Federal Court of

320    the Southern District of Florida denying access to the court without reasoning. [EXH. 1]

321    42. **PRAYER FOR RELIEF (Count I)**

322    Plaintiff seeks a declaration that the orders issued by Cynamon, Judges Guzman, Del Rio

323    were procured by Judicial fraud on the court, are void ab initio (2017), and must be set aside.

324    Plaintiff further seeks compensatory and punitive damages against the individual actors, and

325    injunctive relief barring future enforcement of any orders derived from or related to the

326    fraudulent record. Holding their enterprise accountable for all financial costs involved.

327    **COUNT II. DEPRIVATION OF DUE PROCESS,**
328    **EQUAL PROTECTION, AND ACCESS TO COURT**
329    *(42 U.S.C. § 1983)*

330    **Against: Pam Bondi, Ashley Moody, Katherine Fernandez Rundle, DBPR, Judges Guzman,**

331    **Del Rio, Cynamon, the Florida 3rd DCA judges and the Federal SDC Judge Ruiz**

332    **40.** Defendants, acting under color of state law, deprived Plaintiff of his rights secured under the

333    Fifth and Fourteenth Amendment to due process and equal protection of the laws, and his

334    First Amendment Right access the federal courts.

335    **41.** In 2021- Despite having full notice of altered records, falsified corporate governance, and

336    judicial obstruction, **Attorney General Pam Bondi** failed to investigate or act, allowing the

337    civil conspiracy to take root. Where if she had in 2017 none would have continued until 2025

338    **42.** In 2024- **Ashley Moody** and **Katherine Fernandez Rundle** continued the pattern of state

339    protectionism, refusing to enforce existing laws or address properly the reports of judicial

340    misconduct. <u>Affording Unconstitutional Sanctuary under Color of Law to this Class alone.</u>

341    **43.** From 2017 to 2025 - The **DBPR**, possessing direct oversight authority, refused to act on

342    clearly fraudulent Sunbiz records alteration by Katzman and his conspirators. It knowingly

343    maintained a legal fiction that denied Plaintiff and the lawful board their rights in their

344    private Association. <u>To favor a Class of entities: Judges and Florida BAR Licensed attorneys.</u>

345    **44. Judges Guzman, Del Rio, and Cynamon**, by denying hearings, excluding indispensable

346    parties, concealing material issues, and acting outside jurisdiction, to deprived Plaintiff of his

347    right to a fair forum are overt acts of intentional suppression of process under color of law.

348    **45. These systemic deprivations directly derive from a pattern condoned by the Supreme**

349    **Court** in *Dobbs*, where indispensable parties were denied standing while relief was granted

350    against their INALIENABLE Rights of Liberty over their Family Decisions, Property over

351    their financial ability to maintain a family or further education, and Body Autonomy over

352    their health and life risks of childbearing; thus in the absence of jurisdictional legitimacy. By

353    retroactively affording the State standing on a claim Right that the Constitution does not

354    afford but rather prohibits <u>as inalienable Right under the 9th and 10th Amendment.</u>

355    **46.** Yet affording state actors Rights over Sui Juris' bodies and Reproductive Rights. So the State

356    can criminalize their family decisions. **Affording a Politicians CLASS – Superior Rights**

357    **NOT afforded by the U.S. Constitution -<u>to Control /Limit any Race Class Reproduction</u>**

358    - by State law and without affording 14th Amendment due process.

359    As a covert **BILL OF ATTAINDER, that fails to pass Strict Scrutiny.**

360    **47. The doctrinal manipulation of standing and jurisdiction — when applied locally —**

361        becomes an instrument of structural oppression, disproportionately harming the Working

362        Class who cannot afford legal representation. It enables courts to judicially coerce

363        compliance with unlawful deprivation while denying redress through discretionary

364        gatekeeping. This pattern is fully manifested in *Villars v. Bondi* since

365    **48. In 2017 -**The pattern of denial described herein reflects not individual judicial error, but a

366        **designed legal architecture,** first enabled by *Stump,* then expanded by *Dobbs,* where

367        **Judicial Discretion is used not to resolve disputes, but to evade constitutional scrutiny.**

368    **49. This court is under duty to verify if such SCOTUS cases would pass <u>Strict Scrutiny</u>** to

369        be imposed as **<u>Public Policy</u>,** on Sui Juris NOT permitted to participate before these rulings.

370    **50. The Florida 3rd DCA refused to review Writ of Certiorari, Mandamus, Qua Warranto,**

371        **and Prohibition by <u>Judicial Discretion alone</u>.** Denying due process protections, under duty

372        of the Supremacy Clause, guaranteed by the U.S. Constitution to this Working Class of

373        Property Owners in home associations. To afford Judicial Sanctuary. While expecting

374        **<u>Absolute Immunity</u> which the U.S. Constitution does NOT affords to any person at all**.

375    **51. The Federal Southern District Court Judge Ruiz closed the case before allowing Villars**

376        **rightful initial first amendment. After instructing Villars to <u>Petition for Declaratory</u>**

377        **<u>Relief</u> as if pleading for Causes of Actions.** Contradicting the Federal Rules of Civil

378        Procedures. But then Judge Ruiz refused to reopen the case and give Villars his day in court.

379        To protect the Defendants from ever having to litigate the merits. Because Villars exposes the

380        circuit court judges and 3rd DCA judges' overt Constitutional protections violations.

381   **PRAYER FOR RELIEF (Count II)**

382   Plaintiff seeks declaratory and injunctive relief nullifying the challenged proceedings; damages

383   for constitutional deprivations under § 1983; and prospective relief to bar continued enforcement

384   of judicial orders issued without standing, jurisdiction, or due process.

385   **COUNT III. CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
386   *(42 U.S.C. § 1985(3))*

387   **Against: Leigh Katzman, Steven Katz, Judges Guzman, Del Rio, Cynamon, Attorney**
388   **Generals Pam Bondi, Ashley Moody, State Attorney Katherine Fernandez Rundle, the**
389   **Florida 3rd DCA judges and the Federal SDC Judge Ruiz**

390   46.   Defendants knowingly entered into a civil conspiracy to interfere with Plaintiff's exercise

391       of his constitutional rights — including the rights to property, due process, association,

392       contract, privacy, intellectual property, and access to courts — by agreeing to a scheme that

393       used state courts and regulatory silence to enforce a pattern of fraud and deprivation.

394   47.   The agreement was manifested by a **series of overt acts**: filing of falsified instruments to

395       fraudulently induce court cases; appointment of a receiver without having Subject Matter

396       Jurisdiction; issuance of ex parte orders canceling properly held elections to permit state

397       prohibited election procedures; Judicially placing conspirators in charge of the Association;

398       denying motions to intervene to the intended divested parties; and refusal to act on formal

399       complaints of racketeering, fraud and civil conspiracy by state agencies actors.

400   48.   Defendants acted with **specific intent and shared knowledge before, during and after**

401       **each of the fraudulent procurement**. The judicial actors knowingly disregarded procedural

402       and constitutional duties and requirements. The regulatory officials, upon receiving formal

403       notice, declined to investigate or intervene, despite their legal obligations. This reflects a

404    **meeting of the minds** in furtherance of the unlawful objective. Their pre-arranged denial of

405    due process, refusing to review or permit litigation is an undisputed planned extrinsic fraud.

406    49.    This conspiracy was enabled by the **selective invocation of doctrines** originally established

407    in *Stump* and reinforced by *Citizens United*, where the Court elevated Judicial Discretion to

408    overreach and afford Retroactive Rights not afforded in the U.S. Constitution to corporate and

409    institutions while eroding the structural protections once available to individual litigants.

410    **Obstructing justice with Judicial Discretion to procure Unconstitutional objectives.**

411    50.    *Citizens United* introduced a judicially protected framework for disproportionate influence

412    by well-connected entities — a condition mirrored in this case, where judicial power was

413    extended to shield private wrongdoers and suppress lawful participation by citizens like

414    Villars. **Simply by Judges retroactively affording Rights** <u>not founded in the Constitution,</u>

415    <u>State Law or Contractual terms</u>. Collaborating with the Defendants frivolous suits by

416    **Concealing the Court's <u>lack of SMJ</u>**, to procure rulings against a predicated class, who they

417    are actively and deliberately denying due process. To bar the merits from blocking their goal.

418    51.    As in *Murthy v. Missouri*, where TikTok creators were deliberately excluded from

419    participating in proceedings that directly impaired their freedom of Speech and Association

420    without government intrusion, their Contractual expectations, and transferring their

421    Intellectual Property (videos) without their consent into META's servers.

422    In the *Villars v. Bondi* cases, Villars was deliberately excluded from litigating his merits. From

423    the Circuit Court Judge Cynamon in 2017 to the Federal SDC Judge Ruiz in 2025, each

424    extinguished Villars and his Association constituents' rights without affording them a proper

425    opportunity to be heard. Judicially obstructing due process by **Judicial Discretion alone.**

426    **PRAYER FOR RELIEF (Count III)**

427    Plaintiff seeks judgment that Defendants engaged in a civil conspiracy under 42 U.S.C. §

428    1985(3); compensatory and punitive damages; and equitable relief restoring Plaintiff's rights and

429    enjoining further retaliatory or fraudulent enforcement actions.

430    **COUNT IV. CIVIL RACKETEER INFLUENCED**
431    **AND CORRUPT ORGANIZATIONS ACT (RICO)**
432    (*18 U.S.C. § 1962(c)*)

433    **Against: Leigh Katzman, Steven Katz, Katzman Chandler PA, Judges Guzman, Del Rio,**
434    **and Cynamon**

435    52. Plaintiff realleges the factual acts and omissions described in Paragraphs 24–33, to the extent

436    those factual allegations concern the racketeering activity involving the falsification of board

437    authority, alteration of records, misuse of judicial process, and enforcement of fraudulent

438    receivership and injunctions between 2021 and 2024.

439    53. Defendants **Leigh Katzman**, **Steven Katz**, and **Katzman Chandler PA** operated a

440    continuing legal enterprise for the purpose of maintaining unlawful control over Plaintiff's

441    condominium association, extracting monetary value, suppressing whistleblowers, and

442    avoiding civil liability through state court laundering of private fraud.

443    54. The enterprise used the courts as instrumentalities for racketeering, committing at least two

444    predicate acts within ten years — including but not limited to:

445    •    **Mail fraud** (18 U.S.C. § 1341): Filing altered board records and fraudulent representation of

446    Corporate Association bylaws with state agencies and courts via USPS and electronic filings;

447    •    **Wire fraud** (18 U.S.C. § 1343): Electronic transmission of knowingly false court

448    submissions and notices to deprive 560+ owners of property interests;

449    •   **Obstruction of justice** (18 U.S.C. § 1503): Judicial coordination to stay hearings, deny

450       intervention, and shield material fraud from adjudication;

451    •   **Extortion under color of law**: Use of judicial orders to compel payment and silence under

452       threat of contempt and arrest.

453   55. Judges **Carlos Guzman, Vivianne Del Rio**, and **Abby Cynamon**, while immune from

454       liability for legitimate judicial functions, are not immune for **knowingly acting in the**

455       **absence of jurisdiction**, facilitating fraud, or taking judicial action upon fabricated records

456       and concealed facts.

457   56. The **enterprise pattern** was repeated, intentional, and designed to maintain criminal control

458       over legal rights — first in 2021 (Guzman receivership), again in 2024 (Del Rio ex parte

459       injunctions), and protected throughout by Judge Cynamon, Florida BAR Licensed attorneys

460       acting as judges in the 3rd DCA and in the Federal SDC. This demonstrates continuity of

461       years of state exhaustion in courts and state agencies. Proving coordination of a shared illegal

462       objective: to deprive Plaintiff of lawful Rights and to suppress exposure of prior wrongdoing.

463   57. These acts mirror the **legal immunity structure originated in *Stump v. Sparkman***. At

464       concealing the fact Judge Stump never had SMJ to have the 15-year old girl body autonomy

465       violated by his Sterilized Court Order. For SCOTUS to afford him **Judicial Discretion and**

466       **Absolute Immunity**. This Judicial self-serving Absolute Immunity began what now is

467       weaponized to **launder criminal conspiracy under the cover of Judicial Discretion**. The

468       Judicial Authority to rule without consequence despite lacking jurisdictions, demonstrates

469       **institutionalized RICO activity shielded by court doctrine and <u>Favored Class protection</u>**

470    **PRAYER FOR RELIEF (Count IV)**

471    Plaintiff seeks treble damages pursuant to 18 U.S.C. § 1964(c); declaratory relief invalidating

472    all judicial orders procured through racketeering conduct; and permanent injunctive relief

473    barring further use of the courts to advance or shield the racketeering enterprise.

474    **COUNT V. DECLARATORY AND INJUNCTIVE RELIEF**
475    *(28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 57, 65)*

476    **Against: All Defendants named herein in their respective capacities**

477    58. An actual and justiciable controversy exists between Plaintiff and Defendants, arising from

478    ongoing and irreparable constitutional injuries, fraudulent judicial orders, and the unlawful

479    enforcement of proceedings carried out under color of law and in excess of jurisdiction.

480    59. Plaintiff seeks a declaration under **28 U.S.C. § 2201** that:

481    (a) The receivership orders issued by Judge Carlos Guzman in 2021 and subsequent judicial

482    actions in 2024 were procured by fraud on the court, are void ab initio, and unenforceable;

483    (b) Plaintiff's rights to participate in the association as Secretary and President-elect were

484    unconstitutionally denied without hearing, standing, thus wanting subject matter jurisdiction;

485    (c) All named Florida officials failed their affirmative legal duty to Uphold the U.S.

486    Constitutional Guaranteed Protective Rights, to intervene, prosecute, or investigate ongoing

487    illegal loans, racketeering and judicial fraudulent practices despite having formal notices;

488    **(d) The exclusion of Plaintiff and similarly situated content creators from participation**

489    **in *Murthy v. Missouri* constitutes systemic denial of due process and judicially**

490    **sanctioned fraud on the court at the federal level.**

491    60. Plaintiff further seeks injunctive relief under **28 U.S.C. § 2202** and **Fed. R. Civ. P. 65** to:

492    • Restrain further enforcement of judicial orders and contempt threats issued without

493    jurisdiction;

494    • Restore Plaintiff's elected status and rights within the Association;

495    • Compel state regulatory actors (DBPR, State Attorney, Inspector General and Florida

496      Attorney General) to correct the corporate record and initiate appropriate enforcement;

497    • Review under Strict Scrutiny for Public Policy the federal precedents *Citizens United*, *Dobbs*,

498      *Murthy*; where applied without affording indispensable parties, Sui Juris participation.

499    61. This case presents not merely a civil dispute, but a systemic deprivation that traces directly to

500      doctrinal frameworks constructed by the Supreme Court in **Stump, Citizens United, and**

501      **Dobbs** — each of which expanded discretion, elevated corporate power, and eliminated

502      procedural safeguards for the governed. When enforced without hearing or remedy, these

503      rulings **create the illusion of law** while suppressing the substance of constitutional rights.

504    62. The Court is empowered and obligated to declare such abuses void when they produce

505      actionable harm, originate from fraud, or violate the structural promises of due process and

506      equal protection. This Court need not — **and is not being asked to** — overturn the Supreme

507      Court. But it may declare that **when such doctrines are enforced through fraud, omission,**

508      **or conspiracy**, their application is unconstitutional and unenforceable as applied.

509    **PRAYER FOR RELIEF (Count V)**

510    Plaintiff seeks a declaratory judgment that the orders and omissions described above violate the

511    Constitution and laws of the United States; injunctive relief nullifying the enforcement of said

512    orders; and structural relief prohibiting further judicial or regulatory conduct based on

513    fraudulently procured jurisdiction, party exclusion, or procedural denial.

514              **§7: PRAYER FOR RELIEF (GLOBAL)**

515    _____

516    WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

**A. Declaratory Relief**

517

518    1.  Declare that the receivership orders and subsequent rulings issued by Judges Carlos

519        Guzman, Vivianne Del Rio, and Abby Cynamon were procured by fraud on the court and

520        are void ab initio.

521    2.  Declare that Plaintiff was denied due process, equal protection, and access to the courts in

522        violation of the United States Constitution.

523    3.  Declare that Defendants' actions constitute a civil conspiracy to interfere with civil rights

524        under 42 U.S.C. § 1985(3) and § 1986.

525    4.  Declare that Defendants' actions constitute a pattern of racketeering under 18 U.S.C. §

526        1962(c), involving predicate acts of mail fraud, wire fraud, obstruction of justice, and

527        extortion under color of law.

528    5.  Declare that the systemic denial of indispensable party participation in state and federal

529        proceedings, including *Murthy v. Missouri*, violates due process and constitutes fraud on the

530        court.

**B. Injunctive Relief**

531

532    6. Issue a preliminary and permanent injunction enjoining Defendants from enforcing judicial

533    orders procured by fraud or issued without subject matter jurisdiction.

534    7. Enjoin Florida state actors and agencies from recognizing any authority derived from

535    fraudulently altered corporate governance records or procured through fraud on the court.

536    8. Restore Plaintiff's status as the lawfully elected Secretary and President-elect of the Buckley

537    Towers Association, with full rights and legal standing.

538    9. Require Florida's Department of Business and Professional Regulation to correct the corporate

539    registry and reinstate Plaintiff's lawful officer status.

540    10. Enjoin the enforcement of SCOTUS precedents (*Murthy*, *Dobbs*) where applied to deny

541    participation, speech, or property rights of nonparty classes without jurisdiction, notice, or

542    hearing.

543    **C. Monetary Relief**

544    11. Award compensatory damages against Defendants in their individual capacities under 42

545    U.S.C. §§ 1983, 1985(3), and 1986, in an amount to be determined at trial.

546    12. Award treble damages under 18 U.S.C. § 1964(c) for civil RICO violations.

547    13. Award punitive damages for malicious, intentional, and unconstitutional conduct.

548    14. Award damages for deprivation of procedural due process and property interest per FS772.11

549    **D. Structural and Equitable Relief**

550    15. Declare that any judicial immunity doctrine that permits known fraud on the court is

551    unconstitutional as applied, and that such immunity cannot extend to acts performed in the

552    absence of jurisdiction or through concealment of fraud.

553    16. Order public correction of judicial records procured through fraud.

554    17. Establish an equitable mechanism for similarly situated individuals to seek reinstatement,

555    relief, or participation in proceedings from which they were unlawfully excluded.

556    **E. Costs and Fees Equivalent to Paid since 2017**

557    18. Award Plaintiff reasonable costs, filing fees, and litigation expenses pursuant to 42 U.S.C. §

558    1988.  Plaintiff did not ask to be harmed, he spent and was prevented from working during this

559    case to protect his Association constituents and his personal interests.

560    **F. Additional Relief**

561    19. Grant such other and further relief as the Court deems just, necessary, and proper in the

562    interest of justice and to preserve the integrity of the courts.

563
564
565
566
567

568
569 ## §8: JURY DEMAND AND SIGNATURE

570 ——————————————————————————————————————————

571 **JURY DEMAND**

572 Pursuant to **Federal Rule of Civil Procedure 38,** Plaintiff demands a trial by jury on all issues
573 so triable as of right.
574
575 I declare under penalty of perjury that the foregoing is true and correct to the best of my
576 knowledge and belief.

577

578                                                    **Respectfully submitted,**
579                                                     Dated: April 2, 2025
580
581

582                                                     /s/ **Janvier Villars**
583                                                     **JANVIER VILLARS**
584                                                     Sui Juris, and with all similarly harmed
585                                                     1301 NE Miami Gardens Drive, 322W
586                                                     Miami, Florida 33179
587                                                     (786) 609-1269  www.4bt.io
588                                                     Janvier269@gmail.com

589 ### §9. CERTIFICATE OF SERVICE
590 I hereby certify today April 2, 2025, after receiving the Case Number from the NDC, I will
591 served a true and correct copy of the foregoing Petition for Writ of Mandamus and all
592 accompanying materials on each Respondent or their legal representative via:
593 U.S. Mail to all named officials in their official capacity at their respective offices;
594 Certified Mail with return receipt where applicable;
595 Email and/or ECF service to agencies, departments, and institutional respondents.
596

597 ### §10. CERTIFICATION OF INTERESTED ENTITIES OR PERSONS
598 *Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named*
599 *parties, there is no such interest to report.*

600 ***Respectfully submitted,***

601                                                     /s/ Janvier Villars, Sui Juris,
602                                                     and We the People of the United States
603

## Exhibit List

---

## Exhibit A
Florida 3rd DCA and Federal SDC Obstruction of Due Process
**Purpose:**
Proof of Lack of Integrity for the Judicial System. Of those Under Oath to Uphold the U.S. Constitution.
By Denying the Working Class Access to Civil Remedy Through their Self-Afforded Judicial Discretion
As BAR Members of the Unconstitutionally Protected Class.

### Exhibit B
The First and Last - in a 30-day period - of SEVEN illegal Alterations of the Association Corporate Records in
Sunbiz.org by  Florida BAR Licensed Attorney Leigh Katzman. Recorded 30 days before the first Scheduled
Evidentiary Hearing AS IF counting this fraud would not be permitted to be addressed by Judge Guzman. But rather
stayed to afford him his last minute Petition for Receiverhip.
**Purpose:**
Demonstrates falsification of corporate authority by Defendants Katzman et al., central to the fraudulent inducement
scheme that Judge Guzman ratified without jurisdiction.

### Exhibit C
2021 Receivership Order by Judge Carlos Guzman
**Purpose:**
Core act of Fraud On the Court; issued without Subject Matter Jurisdiction, denying a proper hearing, knowing of
lacking standing, and denying joinder of indispensable parties—establishes procedural overreach shielded by Judicial
Discretion as Sword and Shield. **NOTE:** Katzman's Receivership Petition to Guzman Order date.

### Exhibit D
2024 Injunction Orders issued by Judge Vivianne Del Rio
**Purpose:**
It shows procedural replication of Guzman's fraud, which was used to cancel elections and deny lawful board
intervention, extending the conspiracy. Judicially and Deliberately denying 560+ Working Class Property Owners of
Privacy, Association, Contractual, and Due Process. By Judicial Discretion alone.

### Exhibit E
Formal notice letters to Bondi, Moody, Rundle, DBPR, …
**Purpose:**
Proves Defendants were officially notified and chose not to act—triggering liability under 42 U.S.C. § 1986 for
conspiracy by omission, affording Unconstitutional Sanctuary to fellow Florida BAR Licensed lawyers to further
deprive by Judicial coercion and fraudulent misrepresentation.

### Exhibit F
Plaintiff's intervention motion in Murthy v. Missouri. Filed before the ruling but denied intervention despite proving
Fraud On the Court.
**Purpose:**
Direct evidence of Plaintiff's exclusion from SCOTUS-level ruling affecting his speech, association, contract and
Intellectual Property —mirroring exclusion tactic at state level.

# Exhibit A

### Title:

Florida 3rd DCA and Federal SDC Obstruction of Due Process

### Purpose:

Proof of Lack of Integrity for the Judicial System.

Of those Under Oath to Uphold the U.S. Constitution.

By Denying the Working Class Access to Civil Remedy

Through their Self-Afforded Judicial Discretion

As BAR Members of the <u>Unconstitutionally Protected Class</u>.

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

May 10, 2024

Janvier Villars,                              **3D2024-0814**

       Petitioner(s),          Trial Court Case No. 23-26257-CA-01

v.

Francis J. Trullenque, et al.,

       Respondent(s).


      Upon consideration of the Petition for Writ of Prohibition, it is

ordered that said Petition is hereby denied.

      LOGUE, C.J., and EMAS and MILLER, JJ., concur.


A True Copy
ATTEST

3D2024-0814 05/10/24 Prieto

Mercedes M. Prieto, Clerk
District Court of Appeal
   Third District




CC:   Patricia Lynn Gladson
Matthew Zaheer Karim
Steven B. Katz
Carlos Alberto Londono

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

June 21, 2024

Marcos Noguera, et al.,                    **3D2024-0933**

        Petitioner(s),              Trial Court Case No. 23-26257-CA-01

v.

Francis J. Trullenque, et al.,

        Respondent(s).

       Petitioner Janvier Villars's pro se "Emergency Response to Respondents for Writ of Certiorari" is noted.

       Upon consideration of the Petition for Writ of Certiorari, and the Response and Reply thereto, it is ordered that said Petition is hereby dismissed.

       SCALES, MILLER and GORDO, JJ., concur.

A True Copy
ATTEST

Mercedes M. Prieto, Clerk
District Court of Appeal
        Third District



CC:    Matthew Zaheer Karim
Steven B. Katz
Carlos Alberto Londono
Daniel Wayne Matlow
Janvier Villars
Hon. Vivianne del Rio

NS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-25004-RAR

**JANVIER VILLARS,** *individually and as former 2021 President of the Buckley Towers Condominium Association, and on behalf of the Association and its members deprived of Constitutional Protective Rights by Judicial Misconduct,*

      Petitioners,

v.

**JUDGES OF THE THIRD DISTRICT COURT OF APPEAL OF FLORIDA,** *et al.,*

      Respondents.

_____/

## ORDER DENYING APPLICATION TO PROCEED
## *IN FORMA PAUPERIS* AND DISMISSING PETITION

**THIS CAUSE** comes before the Court upon *sua sponte* review of a *pro se* Emergency Petition for Writ of Mandamus ("Petition") filed on December 20, 2024. *See* [ECF No. 1]. Petitioner also filed a Motion for Leave to Proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 ("IFP Application"). *See* [ECF No. 3]. Upon screening the Petition and reviewing the applicable law, the Court finds that the Petition is an impermissible shotgun pleading and fails to state a claim upon which relief may be granted. The Court having carefully reviewed the IFP Application, as well as the Petition and all accompanying supplements, it is hereby

**ORDERED AND ADJUDGED** that the IFP Application is **DENIED** and the Petition is **DISMISSED** *without prejudice and with leave to amend.* If Petitioner(s) elect to pay the filing fee, the Petition must be amended as explained herein.

## IFP APPLICATION

Courts may authorize a party to proceed *in forma pauperis* in any suit so long as the party complies with the prescriptions of 28 U.S.C. § 1915(a). The Court "has wide discretion in denying an application to proceed [*in forma pauperis*] under 28 U.S.C. § 1915. This is especially true, the rubric goes, in civil cases for damages, wherein the courts should grant the privilege sparingly." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004) (per curiam) (alteration added) (quoting *Flowers v. Turbine Support Div.*, 507 F.2d 1242, 1244 (5th Cir. 1972)). The Court's determination is limited to "whether the statements in the affidavit satisfy the requirement of poverty." *Id.* at 1307 (internal quotation marks omitted) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (11th Cir. 1976)).

Here, Petitioner represents that he has a monthly income of either $2,300 or $2,650; $1,000 in a checking account; a home worth $150,000; and a motor vehicle worth $17,000. *See* IFP Application at 1–2. This is more than enough to establish that Petitioner is able to pay the filing fee. Indeed, it appears that Petitioner has previously paid the filing fee in at least four different related actions in the Southern District of Florida. *See Villars v. Michael*, 22-cv-21475 (S.D. Fla. filed May 12, 2022); *Villars v. Chakraborty*, 20-cv-20202 (S.D. Fla. filed Jan. 16, 2020); *Ramos v. Katzman Chandler, P.A.*, 19-cv-23932 (S.D. Fla. filed Sept. 20, 2019); *Villars v. Sec'y of the State of Fla.*, 19-cv-23794 (S.D. Fla. filed Sept. 11, 2019).

Accordingly, if Petitioner wishes to maintain this action in federal court, he must pay the mandatory $405.00 filing fee—which includes both the $350.00 filing fee set by Congress and an additional $55.00 administrative fee imposed by this District. *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such

court . . . to pay a filing fee of $350[.]"); *see also* Court Fees, UNITED STATES DIST. CT. S. DIST.

OF FLA., https://www.flsd.uscourts.gov/court-fees (last visited Dec. 22, 2024).

## LEGAL STANDARD

Because Petitioner is a *pro se* litigant who has not paid the required filing fee, the screening

provisions of 28 U.S.C. § 1915(e) apply.  Under the statute, the Court shall dismiss a suit "at any

time if [it] determines that . . . (B) the action or appeal . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief."  28 U.S.C. § 1915(e)(2); *see also Taliaferro v. United States*, 677

F. App'x 536, 537 (11th Cir. 2017) ("[D]istrict courts have the power to screen complaints filed

by all [*in forma pauperis*] litigants, prisoners and non-prisoners alike." (citation omitted)).

"A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney

and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017); *see also*

*Torres v. Miami-Dade Cnty.*, 734 F. App'x 688, 691 (11th Cir. 2018) ("Liberal construction, in

more concrete terms, means that federal courts must sometimes look beyond the labels used in a

*pro se* party's complaint and focus on the content and substance of the allegations.").  But despite

the liberal construction afforded to *pro se* filings, they must conform with procedural rules. *Albra*

*v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *Moon v. Newsome*, 863 F.2d 835, 837 (11th

Cir. 1989).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

statement of the claim showing that the pleader is entitled to relief."  In order to satisfy this rule,

the allegations in the complaint must "state a claim for relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." *Id.* at 678. A complaint is insufficient if it only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Liberal construction does not authorize *pro se* litigants to file such impermissible "shotgun" pleadings. The Eleventh Circuit has identified "four rough types" or categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See id.* at 1321–23 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Importantly, the Court does not act as a researcher or investigator on a plaintiff's behalf. *See Fils v. City of Aventura*, 647 F.3d 1272, 1285 (11th Cir. 2011) (explaining that courts may not act as a litigant's lawyer and construct the party's theory of liability from facts never alleged,

alluded to, or mentioned during the litigation). And failure to adhere to procedural rules or court orders, of course, provides grounds for dismissal. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) (explaining that dismissal of the action may be severe but warranted when the grounds for dismissal were previously notified).

## ANALYSIS

Petitioner Janvier Villars "individually and as former 2021 President of the Buckley Towers Condominium Association, and on behalf of the Association and its members deprived of Constitutional Protective Rights by Judicial Misconduct" brings this *pro se* Petition against the Judges of the Florida Third District Court of Appeals, three Judges of the Florida Eleventh Judicial Circuit (Judge Carlos Guzman, Judge Vivianne Del Rio, and Judge Pedro Echarte), the State of Florida, and Attorneys Leigh Katzman, Mary Ann Chandler, Justin Smith, and Steven Katz (collectively, "Respondents").

It appears that the Petition is related to Florida state court proceedings involving control over the Buckley Towers Condominium Association and the appointment of a receiver to administer the Buckley Towers Condominium. *See generally* Pet. The Petition alleges that these state court proceedings violated the supremacy clause, the contract clause, and the due process clause of the U.S. Constitution. *Id.* at 1. In terms of relief, Petitioner asks that the Court:

1. Issue Declaratory Relief affirming the constitutional violations and declaring the state court judgments as of 2021 lacking SMJ null and void.

2. Grant Injunctive Relief Preventing further unconstitutional actions and enforcing compliance with federal law.

3. Take all necessary actions to restore the integrity of the judicial process and protect the Petitioner's rights.

*Id.* at 16–17.

1. **The *Rooker–Feldman* Doctrine Appears to Bar Petitioner's Claims**

To the extent Petitioner seeks this Court's review of final state court judgments, such review is barred by the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker–Feldman* doctrine provides that "federal district courts cannot review final state court judgments because 'that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court.'" *Cormier v. Horkan*, 397 F. App'x 550, 552 (11th Cir. 2010) (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). The doctrine is narrowly "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Although it is unclear exactly which state court proceedings or decisions Petitioner seeks to challenge, the essence of the Petition is that the state courts rendered incorrect rulings and/or decisions, and this Court should correct them. *See* Pet. at 2 ("This petition demands immediate federal intervention to rectify fraud, systemic judicial misconduct, and constitutional violations undermining inalienable rights and the integrity of the judiciary"). This request that the Court redress these "state-court judgments rendered before the district court proceedings commenced" is exactly what is forbidden under the *Rooker–Feldman* doctrine. *Exxon*, 544 U.S. at 284. Thus, to the extent Petitioner seeks this Court's review of final state court judgments, the Court does not have jurisdiction to do so.

2. **The Identity of the Petitioner(s) is Unclear**

The Petition's case caption states that "Petitioners" are "Janvier Villars individually and as

former 2021 President of the Buckley Towers Condominium Association, and on behalf of the Association and its members deprived of Constitutional Protective Rights by Judicial Misconduct." Pet. at 1. From this, the Court understands that the Petition intends to bring claims on behalf of (1) Janvier Villars, (2) certain other individual members or former members of the Buckley Towers Condominium Association, and (3) the Buckley Towers Condominium Association. However, the Petition does not specify the identity of the other individual Petitioners. Further, the Petition itself is unclear as to whether it intends to bring claims on behalf of a single Petitioner or multiple Petitioners. *Compare* Pet. at 1 (stating that "Petitioners seek relief") *with id.* at 12 (referring to "[t]he Petitioner's case").

Federal Rule of Civil Procedure 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). But where the identity of the pleader itself is unclear, there is no basis on which the Court can grant relief as the Court has no way of determining to whom relief may be granted. Thus, in order to state a claim, the Petition must clearly state who the Petitioners are and what relief each Petitioner seeks. The Petition here fails to do so and therefore violates Rule 8.

Moreover, it is not clear that the Court has jurisdiction over this action as the Petition does not clearly establish each Petitioner's standing to sue. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, a plaintiff must satisfy three requirements: (1) the plaintiff must have suffered an injury in fact, (2) the injury must be "causally connected to the conduct complained of," and (3) the injury must be redressable by a favorable decision. *Lujan*, 504 U.S. at 561. The Petition states that "[p]laintiffs, as property owners and

fiduciaries, have standing to challenge violations." Pet. at 19. But it is unclear here what injury the unnamed petitioners or the Buckley Towers Condominium Association suffered, how that injury is connected to the allegations of the Petition, or how the Court could redress that injury.

The Court also notes that the Petition purports to bring claims on behalf of the Buckley Towers Condominium Association, which appears to be a legal entity. A legal entity may only appear in federal courts when represented by counsel and may not proceed *in forma pauperis*. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("[A] corporation may only appear in federal courts only through licensed counsel."); *id.* at 196 ("[O]nly a natural person may qualify for treatment *in forma pauperis* under" 28 U.S.C. § 1915). No counsel has appeared in this case. Thus, to the extent the Petition intends to bring claims on behalf of the Buckley Towers Condominium Association, the Association must be represented by counsel and must pay the required filing fee.

### 3. The Petition is a Shotgun Pleading

The Petition must be dismissed because it does not satisfy the requirements of Rule 8. Even under the relaxed pleading standard afforded to *pro se* litigants, the Petition does not state a claim upon which relief can be granted.

The Petition bears the hallmark traits of a shotgun pleading in that it advances "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. The examples are too numerous to recount fully here, but to take just a few examples, in a section titled "The 2021 Receivership: Fraudulent Procurement and Collusion," the Petition alleges that "Katzman and Guzman conspired to appoint a receiver without having Subject matter jurisdiction, endorsing the falsified Association's Sunbiz records [sic]." Pet. at 3. To substantiate this alleged "Judicial Collusion," the Petition states that "Judge Guzman approved the

receivership by judicially obstructing the verification of De Souza's taking of the President title. Thus violating Villars' due process and contractual protective rights. Biasedly penalizing Mr. Villars ab initio before affording him his due process to address his removal [sic]." Pet. at 4.

Later, in a section titled "Systematic Denial of Legal Challenges and Conflict of Interest," the Petition alleges that "Judges systematically refused to address the merits of the cases to avoid addressing the jurisdictional challenges that prove the courts' lacked subject matter jurisdiction (SMJ) ab initio. To afford the Plaintiffs reliefs every time [sic]." *Id.* at 9. The Petition suggests that this "systematic denial" was because of collusion between certain litigants and judges in state court proceedings: "Since 2021 eight retained association law firms dropped out . . . [l]eaving the Association without proper legal defense. None of them was willing to expose the fraud in the court, the overt collusion between attorney with judge's procurement of the receivership or the Katz / DelRio fraud election process [sic]." *Id.* at 10.

To be frank, the Court can't make heads or tails of these allegations beyond the general gist that Petitioner(s) are upset that certain state court rulings didn't go their way and the intimation that this was the result of fraud or collusion. Thus, the Petition's unsubstantiated and conclusory allegations fail to adequately put Respondents on notice of the claims against them and do not provide any basis for the Court to grant the requested relief.

## CONCLUSION

To be clear, this is not an exhaustive list of the deficiencies observed in the Petition. Petitioner(s) may have *one opportunity* to rectify the Petition. Petitioner(s) are instructed to follow the directives and applicable rules articulated in this Order if Petitioner(s) still wishes to pursue this action. Thus, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Petitioner(s) must pay the required filing fee of **$405.00 on or before January 21, 2025**. Should Petitioner(s) fail to remit the filing fee, this action will be dismissed without further notice.

2.      The Petition, [ECF No. 1], is **DISMISSED *without prejudice and with leave to amend***.

3.      **Petitioner(s) may file an amended petition on or before January 21, 2025**. If Petitioner(s) wish to amend the Petition, they must clarify the alleged basis for relief by clearly stating a cause of action for each count and by separating each individual claim into separate counts. The amended petition must clearly identify all Petitioner(s) by name and also explain why this action is not barred by the *Rooker–Feldman* Doctrine. To the extent that the amended petition seeks to bring claims on behalf of the Buckley Towers Condominium Association, it <u>must</u> be represented by counsel and <u>must</u> pay the required filing fee.

4.      The amended petition must be labeled "Amended Petition" and must show the case number referenced above so that it will be filed in this case.

5.      Petitioner is warned that failure to file the amended petition on time and in compliance with this Order—and/or failure to submit the filing fee as set forth above—shall result in dismissal of this case for failure to prosecute or failure to comply with court orders. *See* FED. R. CIV. P. 41(b); *Webb v. Miami-Dade Cnty. Gov't*, No. 24-10406, 2024 WL 3454690, at *3 (11th Cir. July 18, 2024) ("When a plaintiff fails to comply with a court order, a district court generally has discretion to dismiss the action under either the Federal Rules of Civil Procedure or its inherent authority to manage its docket") (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005)).

6.      The Clerk's Office is instructed to **administratively CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of December, 2024.

RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

---

### Case No. 1:24-CV-25004-RAR
### Honorable Judge Rodolfo A. Ruiz, II

---

**Janvier Villars,** individually and as the lawfully elected 2021 President of Buckley Towers "Association" and as a member of the working class negatively affected by the ongoing judicial misconduct and Deprivation of Equal Protection Under the Law, **PETITIONER,**

v.

**Judges of the Third District Court of Appeal of Floridas;**
**Judge Carlos Guzman,** in his official capacity as
Circuit Judge for the State of Florida, Eleventh Judicial Circuit;
**Judge Vivianne Del Rio,** in her official capacity as
Circuit Judge for the State of Florida, Eleventh Judicial Circuit;
**The State of Florida,** by and through Attorney General Ashley Moody,
**Attorneys: Leigh Katzman, Mary Ann Chandler, Justin Smith, Steven Katz**
et.al./ **RESPONDENTS.**

---

### <u>Amended Petition for Writ of Mandamus,</u>
### ⬢ FOR DECLARATORY JUDGMENTS on each Causation listed
### <u>with Admissions Deemed Conceded Under Rule 8(b)(6) on the Fraud on the Court</u>
### ⬢ INJUNCTIVE RELIEFS
### ⬢ CERTIFICATION OF CLASS ACTION
### ⬢ TRIAL BY JURY
### Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)

Prepared by: Janvier Villars, Pro Se
1301 NE Miami, Gardens Drive
Miami, FL 33179 (janvier269@gmail.com)
Addressing Miami-Dade Cases: 2021-017383-CA-01 and 2023-026257-CA-01
3RD DCA DENIAL REVIEWS OF WRITS: 3D2024-0933 LT

---

## Introduction

This Petition seeks extraordinary relief to address systemic judicial misconduct and constitutional violations that have deprived the Petitioner and over 500 property owners of their due process and contractual rights. The denials of writs of mandamus and prohibition by the 3rd District Court of Appeal ("3rd DCA")—without any findings on law or fact—exemplify a concerted effort to shield state actors from accountability. *"Collusion between judicial officers to deny constitutional rights must be met with the highest level of judicial scrutiny and correction."*— *Ex parte Sealy, LLC, 904 So. 2d 1230* (Ala. 2004).

<u>This Petition is based on independent Federal questions,</u> including lack of subject-matter jurisdiction, fraud on the court, and due process violations. It directly references under Federal Rule 10c, the original **Federal Writ of Mandamus** ("Writ") to foreclose any claims of omission or vagueness.

Additionally, under **Federal Rule of Civil Procedure 8(b)(6),** allegations not denied or contested by opposing parties must be deemed admitted. The Respondents' failure to address or refute the core claims—including fraud on the court, lack of subject-matter jurisdiction, and constitutional violations —constitutes an admission of these facts under Federal law. The uncontested nature of these claims obligates the Court to proceed as though the allegations are established. But to ensure that judicial integrity is preserved and the rule of law is upheld, per *Ex Parte Pate and United States v. Throckmorton* emphasized the courts are required to correct Fraud in the Court. Regardless of procedural mistakes they are required careful adjudication of the allegations before any adjudication.

Considering that the original Writ of Mandamus was formated for Declaratory Relief, the Petitioner did not break it down into specific causes of action, but now

is doing so according to this court's directives. Following Rule 10(c).

---

## COUNT I:
### Lack of Subject-Matter Jurisdiction in Receivership Case

**Claim:**

Judge Carlos Guzman lacked subject-matter jurisdiction to impose a receivership on Buckley Towers Condominium Association due to the absence of statutory prerequisites, including findings of fraud, waste, or imminent harm. Besides being filed by Ms. De Souza without lawful standing to represent the Association.

**Evidence from the Writ:**

- **Page 2** *"Katzman and Guzman conspired to appoint a receiver without having subject matter jurisdiction, endorsing the falsified Association's Sunbiz records."*
- **Page 3**: *"Judge Guzman approved the receivership by judicially obstructing the verification of De Souza's taking of the President title. Thus violating Villars' due process and contractual protective rights. Biasedly penalizing Mr. Villars ab initio before affording him his due process to address his removal."*
- **Page 4**: [**Judge Guzman**] *"**Confiscating the Association**, when the scheduled Evidentiary Hearing would have dissolved Katzman's illegal representation, thus leaving the court w/out SMJ."*

- **Exhibit G:** Katzman Motion for Receivership Date and the Order granting him Receivership within 17 hrs of filing. Proving their meeting of minds, Mens Rea, preempted ambush and judicial swindle.
- **Page 3**: *"De Suaza, her group, and Katzman improperly removed President Villars. By maliciously using Katzman's previously imposed debt against him.* [Which was previously] *Dismissed with Prejudice on 9/24/2019 (2016-7415-CA-15) - After Mr. Villars proved such debt was waived per Assoc. Bylaws and the U.S. Contract Clause.."*

**Respondents:**

1. **Judge Carlos Guzman**: Granted receivership lacking SMJ statutory findings.
2. **Attorney Leigh Katzman**: Filed a known fraudulent representation and petition untimely to bypass procedural safeguards.
3. **Mariluce De Souza**: Illegally represented Buckley as President in the suit.

**Legal Precedents:**

- **Steel Co. v. Citizens for a Better Environment**, 523 U.S. 83: Lack of subject-matter jurisdiction renders judgments void.
- **Metropolitan Dade County v. Chase Federal Housing Corp.**, 737 So. 2d 494: Receiverships require strict statutory compliance.

---

## COUNT II:
## Fraud on the Court

**Claim:**

The receivership was procured through fraud, including unauthorized alterations to corporate records, procedural manipulation, and fraudulent representation of the Plaintiff, Buckley Towers Association, to sue its lawful President, Mr. Villars.

**Evidence from the Writ:**

- **Page 3**: *"De Suaza, her group and Katzman improperly removed President Villars. By maliciously using Katzman's previously imposed debt against him.* [Which was previously] *Dismissed with Prejudice on 9/24/2019 (2016-7415-CA-15) - After Mr. Villars proved such debt was waived per Assoc. Bylaws and the U.S. Contract Clause.."*
- **Page 13**: *"Katzman, committed fraud by falsifying association records in Sunbiz.org (7 times in 30 days) to unlawfully remove the duly elected Board President, Mr. Villars. Disqualifying him by applying Florida Statutes §718 retroactively."*
- **Exhibit F**: Katzman's first 7/12 and last 8/19 of seven Sunbiz.org alterations.

3

- **Page 3**: *"[Judge Guzman] Immediately appointing Katzman's specifically plead for receiver, Mr. Hofman. By judicially sabotaging the scheduled Evidentiary hearing. Recognizing (out of dozens of attendees) the only person without any legitimacy attending it. Despite the lack of elements to justify this state Seizure, thru receivership. Signing a court order divesting Mr. Villars' of his Contractual Rights of duly elected President. Without having a single proof of wrongdoing or allowing him to dispute the debt claim made against him by Katzman and DeSouza."*
- **Page 4**: " **Judge Guzman** [covertly] *imposing the receiver as just "for 30-to-90 days" and "Only to inspect records".* Contravening **In re Murchison (1955)**, *for acting as investigator and adjudicator."*
- **Page 4**: "***Defrauding the Court:*** *By signing the order imposing a receiver permanently with all powers.* **Divesting the <u>duly elected President</u>** *without due process."*

## Respondents:

1. **Mariluce De Souza**: Fraudulently altered corporate records to usurp control.
2. **Attorney Leigh Katzman**: Assisted De Souza. Filed fraud claim on the court.
3. **Judge Carlos Guzman**: Failed to scrutinize fraudulent submissions and obstructed Mr. Villars opportunity to contest De Souza's presidential claim.

## Legal Precedents:

- **Hazel-Atlas Glass Co. v. Hartford-Empire Co.**, 322 U.S. 238: Fraud on the court invalidates judicial orders.
- **Ex Parte Pate**, 673 So. 2d 427: Courts are obligated to correct fraud regardless of procedural defects.

## COUNT III:
### <u>Supremacy and Contract Clause Violations</u>

**Claim:**

Judge Del Rio retroactively enforced FS §718 claims, violating the Contract Clause (Art. I, Sec. 10) and Supremacy Clause (Art. VI), stripping property owners of vested contractual rights.

### Evidence from the Writ:

- **Page 4**: "*<u>Katz</u> filed a lawsuit on behalf of the group of owners who collaborated in Receivership in 2021. Claiming his clients had a <u>CLEAR Right</u> in an amendment that does not and cannot legally-contravene the essence of the contract and law. .*"
- **Exhibit A**: Court transcripts show the judge denying Board Officers' right to speak and defend their rights even when having contractual rights taken.
- **Page 5**: "*<u>False Claims: Katz fabricated a false claim</u> against the Association. Which <u>Judge Del Rio accepted</u> by denying the Association's right to defend against Katz's case. By judicially obstructing the duly elected board from speaking in court.*"
- **Page 5**: "*<u>Del Rio</u> passed judgments by denying ruling over the Association's evidence and defenses against Katz's claims. To preclude exposing the court's lack of SMJ. Denying Defendants of a fair and impartial trial by denying her Recusal without the necessary explanation for her prejudicial treatment. (DIN 89 4/30/24)*"
- **Page 5**: "*On 3/18/24 [Judge Del Rio] Singing the First Sua Sponte Order: Unilaterally divesting the Association of its Contractual Right to operate the 2024 board elections.*"
- **Page 6**: "*Thereby denying the Association and the Board Officers of their Contractual Duty, without affording any proper due process. No prior notice, no hearing, no evidence of wrongdoing, no opportunity to dispute Katz's unfounded claim.*"
- **Page 6**: "*On 4/23/24 (the day before) the Association contested Judge Del Rio's Violation on Separation of Powers. For altering state-specified required notices. But, Del Rio did not care to respond or to afford the*

*Association a hearing. Allowing Katz's surprise elections to proceed. To fraudulently take over the Association."*

**Respondents:**

1. **Judge Vivianne Del Rio**: Enforced retroactive FS718 claims lacking evidence.

2. **Attorney Steven Katz**: Advocated for unlawful practices and false claims.

3. **Katz's Clients**: Conspired with the elections and benefited from the fraud.

**Legal Precedents:**

- **Allied Structural Steel Co. v. Spannaus**, 438 U.S. 234: Retroactive laws impairing contracts are unconstitutional.

- **Cooper v. Aaron**, 358 U.S. 1: State courts must uphold Federal constitutional protections.

---

## COUNT IV:
### Procedural Due Process Violations

**Claim:**

Judges Guzman and Del Rio denied due process by issuing orders without notice, hearings, or evidentiary findings.

**Evidence from the Writ:**

- **Page 3**: *"Judge Guzman approved the receivership by judicially obstructing the verification of De Souza's taking of the President title. Thus violating Villars' due process and contractual protective rights. Biasedly penalizing Mr. Villars ab initio before affording him his due process to address his removal."*

- **Page 3**:[ **Judge Guzman** ] *"Signing a court order divesting Mr. Villars' of his Contractual Rights of duly elected President. Without having a single proof*

_of wrongdoing or allowing him to dispute the debt claim made against him by Katzman and DeSouza."_

- **Page 4**: [ **Judge Guzman** ] _"**Confiscating the Association**, when the scheduled Evidentiary Hearing would have dissolved Katzman illegal representation, thus leaving the court w/out SMJ. **Coersing a $3.5 million as Special Assessments** under false pretenses. Deceiving the Association property owners. While concealing paid Katzman's settlements"_

- **Page 5**: [**Judge Del Rio**] _"The Association board was denied participation in both hearings. Then denied every plead hearing, until Mr. Katz place himself as the Association attorney. **Denying access to the court while punishing this Class of owners** by [her] sua spontes."_

- **Page 6**: _[**Judge Del Rio**]'_**On 4/24/24** _Signing the Second Sua Sponte Order: Two hours before Katz began his improperly noticed board elections ( **36-days** after the first sua sponte) Del Rio issued her **second surprise sua sponte** order. Permitting Katz and his monitor to execute their faulty board elections. Despite knowing of having ten fatal legal errors in their ballots. Where the FS718 and F.A.C. 61B declare it automatically Void. (Exhibit B)_ **61B-21.0021 (4)"**

**Respondents:**

1. **Judge Carlos Guzman**: Denied Villars' right to contest Ms. De Souza and Katzman illegal taking of his president title, which would have left the court wihtout SJM. At the Association being fraudulently represented suing the lawfully sitting president. Then staying hearings contesting the receivership.

2. **Judge Vivianne Del Rio**: From first to the last sua sponte, never allowing the Association board defend the claims and refusing to allow litigation on the recorded responses. Stripped directors of rights while denying intervention.

3. **Attorney Steven Katz**: Made false FS718 retroactive violations claims while never recording any in court. Defrauding the court to obtain control of the Association operations. Obstructed procedural safeguards to favor his clients.

**Legal Precedents:**

- **Mathews v. Eldridge**, 424 U.S. 319: Due process requires notice and an opportunity to be heard.
- **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868: Judicial bias undermines procedural fairness.

---

## COUNT V:
## Abuse of Judicial Discretion by the 3rd DCA

**Claim:**

The 3rd District Court of Appeal ("3rd DCA") abused its judicial discretion by summarily denying writs of mandamus and prohibition without providing findings of fact or law, despite uncontested evidence of fraud and constitutional violations. "Courts must address constitutional violations when essential to resolving the case." — *New York v. United States, 505 U.S. 144 (1992)*

**Evidence from the Writ:**

1. Summary Denial of Petitions:
   - **Page 9:** *"Coordinating with **Appeal Courts denial of Reviews from the 3rd DCA Writs 3D2024-0933 LT** to avoid addessing their Constitutional Protection Violations."*

8

- o  Exhibit J: Petitions filed with the 3rd DCA outlined uncontested allegations of fraudulent alterations to corporate records, retroactive application of FS §718, and denial of due process.
  - o  Exhibit K: 3rd DCA Denials (attached)
2. Inaction on Jurisdictional Defects:
- o  The lack of subject-matter jurisdiction in Judge Del Rio two Sua Sponte orders depriving of contractual rights by denying hearings was raised but ignored by the 3rd DCA in their denials.

**Respondents:**

1. Judges of the 3rd DCA: Summarily denied petitions without explanation or consideration of evidence. Thereby denying due process to the Defendants.

**Legal Precedents:**

- Ex Parte Pate, 673 So. 2d 427: Courts cannot ignore jurisdictional defects or fraud on the court, regardless of procedural posture.
- Caperton v. A.T. Massey Coal Co., 556 U.S. 868: Judicial bias or abuse of discretion undermines procedural fairness and public confidence.
- **28 U.S.C. § 1651:** Mandamus relief is appropriate when a court fails to perform its clear duty.

**Relief Sought:**

- A declaratory judgment that the 3rd DCA's summary denials violated procedural fairness and due process.
- Injunctive relief requires the 3rd DCA to issue findings of law and fact when reviewing petitions as a matter of Supremacy Duty on the Court.

---

# COUNT VI:
## Certification of Class Action

**Claim:**

Petitioner seeks certification of a class action under Federal Rule of Civil Procedure 23, representing over 500 property owners adversely affected by the fraudulent receivership, procedural violations, and constitutional breaches.

**Evidence from the Writ:**

1. **Numerosity:**

- **Page 7:** *"By Unlawfully altering this Private Association's governing documents. Over 450 property owners were disenfranchised [voting right], yet again by judicial swindles. Judicially denying Constitutional Contract Clause Protections to 500+ owners. State endorsed gerrymandered election, in violation of 1st Amendment protections and violation specifically stated in 42 USC §§ 1983 and 1985.*

- *But Permitted to JUDICIALLY ENFORCE F.S.718 RETROACTIVELY.*

- *Perpetuating the judicial swindle and enabling further financial exploitation."*

- **Page 7:** <u>**"Katz and his clients**</u> *intend to foreclose on hundreds of owners. By retroactively enforcing FS718* **new** *financial burdens.* **By imposing a $16 MM Special Assessment "as required Reserves"** *Using the Color of Law, to bypass the Association's bylaws specifically required majority vote.* <u>*Acquired Right.*</u>
  **Coercing Insolvency/homelessness** *-by imposing an additional $1000 p/month on victims of Katzman's* **illegally collected $3.5MM - <u>2021</u> receivership."**

- Exhibit F: Lists affected property owners who were financially burdened by the assessment.

2. **Commonality:**

The fraudulent alteration of corporate records by De Souza and the retroactive enforcement of FS §718 harmed all property owners equally by invalidating their voting rights and imposing unlawful assessments.

**Judge Del Rio and Mr. Katz** retroactive disqualification of board members under FS §718 denied the class the right to fair representation.

### 3. Typicality:

o Petitioner's claims are typical of the class as:

■ **Page 9: "Undue Influence**: *Judges used threats of contempt of court to deter challenges, further disenfranchising property owners and shielding judicial misconduct."*

■ *"Villars, as the directly harmed party, was unlawfully excluded from every court proceeding to avoid revisiting the illicitly procured 2021 receivership."*

■ *"The Association remains under the control of a board illegally installed through Katz's fraudulent elections. Contravening "**Ex Turpi Causa Non Oritur Actio.**".*

■ *"**Page 14: Public Interest and [Cry for] Constitutional Protection** The harm caused by these violations extends beyond Mr. Villars to over 560 property owners reliant on the integrity of the judicial system to secure their rights, liberties and homes."*

■ His legal challenges to the retroactive enforcement of FS §718 align with the interests of all affected property owners.


### 4. Adequacy:

o Petitioner as the lawfully elected President of the Buckley Towers Association, has demonstrated his commitment to pursuing remedies for the class without any conflict of interest.

- ○ *Burks v. Lakster, 441 U.s. 471 (1979)* Certifies directors retain the authority to act on behalf of the corporation in legal disputes.

**Legal Precedents:**

- *Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333:* Representational standing applies where the representative's interests align with the group's.
- *Amchem Prods., Inc. v. Windsor, 521 U.S. 591:* Class certification is appropriate where common issues of law or fact predominate.

**Relief Sought:**

- Certification of a class comprising all Buckley Towers property owners subjected to the fraudulent receivership, retroactive statutory enforcement, and related constitutional violations.
- Appointment of Petitioner as the class representative under Rule 23(a)(4).
- Declaratory and injunctive relief benefiting the entire class.

---

## COUNT VII:
## Declaratory Relief for Constitutional and Procedural Violations

**Claim:**

Petitioner seeks declaratory relief under **28 U.S.C. § 2201** to resolve the ongoing constitutional and procedural violations stemming from fraud, lack of jurisdiction, and retroactive statutory enforcement.

**Evidence from the Writ:**

**1. Actual Controversy:**

- o The fraudulent receivership, imposed without statutory findings of fraud, waste, or imminent harm, remains unresolved and continues to harm property owners.
- o The retroactive enforcement of FS §718 disqualified lawfully elected board members and invalidated property owners' vested rights.

## 2. Legal Rights in Question:

- o Supremacy Clause: Retroactive enforcement of FS §718 conflicts with Federal constitutional protections.
- o Due Process Clause: Judges Guzman and Del Rio deprived property owners of notice and hearings required by procedural due process

## 3. Practical Effect of the Declaration:

- o A declaratory judgment will nullify unlawful orders (e.g., the receivership and $3.5M assessment), restore property owners' rights, and prevent future abuses.

## Legal Precedents:

- *Wilton v. Seven Falls Co.*, 515 U.S. 277: Declaratory relief is appropriate where it resolves uncertainty and clarifies legal obligations.
- *Zivotofsky v. Clinton,* 566 U.S. 189: Courts must resolve actual legal disputes affecting the rights of parties.
- **FCC v. Pottsville Broadcasting Co. (1940):** The Courts have a judicial duty to resolve legal questions and clarify rights in cases where the facts are not challenged.

## Relief Sought:

- **<u>Declaratory judgment that:</u>**

1. The receivership was imposed without jurisdiction and void ab initio

2. Retroactive enforcement of FS §718 violates the Supremacy Clause and Contract Clause.

3. Judges Guzman and Del Rio violated due process protections by denying notice and hearings.

- Injunctive relief prohibiting enforcement of fraudulent or unconstitutionally procured orders.

- Immediate restitution of the rightfully voted for by legally held election board directors.

- **Enforcement of Restatement (2nd) of Contract Sec. 197:** "*A party who has been induced to enter into a contract by fraud, duress, or (court) undue influence may void the contract. The defrauding party forfeits their ability to enforce any of the contractual provisions.*"

---

## Rooker-Feldman Doctrine Exception

The claims are independent Federal questions (fraud, due process, constitutional breaches) and do not seek to overturn state judgments. But rather address their procurement legitimacy and adherence to the rule of law. ***Exxon Mobil Corp. v Saudi Basic Industries (2005), Behr v. Campbell No. 18-12842 (11th Cir. 2021)* governing rulings emphasized lack of Subject Matter Jurisdiction or Fraud on the Court are considered independent actions even if intertwined with state rulings. United Students Aid Funds, Inc. v. Espinosa (2010)** "*Even where procedural flaws exist, if fraud undermines jurisdiction, the decision cannot stand*"

**As Hazel-Atlas puts it, FRAUD VITIATES EVERYTHING.**

---

## In Conclusion, for Justice, Declaratory Judgments are Mandatory

Your honor, this court has a constitutional duty to address foundational issues of jurisdiction and fraud on the court, as established in Ex Parte Pate (Ala. 1995), Hazel-Glass Co. v. Hartford-Empire (1944). The Crux of this matter is whether Ms. De Souza lawfully assumed the Board Presidency of the Association. To petition for Receivership on its behalf. Where the records want evidence to prove a majority vote recalling the Lawfully Voted for President Mr. Villars, or a majority vote from the 500+ owners consenting their homes to be placed in receivership by her decision alone. Without the required board meeting, open forum consent, or without proving any of the required elements of fraud, waste, or imminent harm or the court affording at least proper due process, fraud is proven in prima facie.

Ms. De Souza fraudulent misrepresentation of the Association lacks a single law that supports her usurpation of the Presidency. Nullifying her petition for receivership and all subsequent rulings. Divesting the court of Subject Matter Jurisdiction. *Neal v. Neal* (Ala. 2002) and *Ziatni v. Reed* (Fla. 2d DCA 2008). Fraud in the Court is a substantive Jurisdictional violation. This court must address the issue regardless of the Victims' procedural petition defects.
Under Rule 8(b)(6), Ms. De Souza's failure to record evidence that disproves the fraud must be treated as admission. Or this court risks the appearance of complicity, violating constitutional mandate and ethical obligation under Canon 3. Prosecutable under 28 U.S.C. § 1503.

This Court is required to grant declaratory relief under **28 U.S.C. § 2201.** Because each claim satisfies the required elements of an actual controversy, practical impact, jurisdiction, judicial economy, and the necessity of resolving unresolved legal questions. Thus, denying declaratory relief would contravene the Court's

duty to uphold the integrity of the justice system and address uncontested claims implicating constitutional violations and fraud.

## 1. Actual Controversy Exists for Each Claim

### Fraud on the Court (Count II)

- **Uncontested Allegation:** Mariluce De Souza fraudulently altered corporate records and procured judicial orders without statutory compliance. The appointment of the receiver was based on her fraudulent representations, without legal authority or lawful consent, undermining judicial integrity.
- **Legal Controversy:** The validity of the orders arising from this fraud remains unresolved, creating ongoing harm to the petitioner and 500+ property owners. Hostage by De Souza's conspirators; the placed board directors. Through Judge Del Rio and attny. Katz illegal Board Elections.
- **Supporting Caselaw:**
- ○ *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944): Fraud destroys the legitimacy of judicial orders and requires immediate correction.

### Lack of Subject-Matter Jurisdiction (Count I)

- **Uncontested Allegation:** Judge Guzman imposed a receivership **without affording a <u>Finding of Fact on statutory Requirements of</u>:** Clear Legal Basis, Statutory Authority, Contractual Provisions, or Equittable concerns of fraud, waste, or imminent harm. Most importantly without affording the 500+ proper due notice and an opportunity to contest the Receivership.
- **Legal Controversy:** The validity of judicial actions taken without jurisdiction is a live and substantial issue. **As <u>SMJ was never proven</u> in 18 months** the receiver was used to collect $3.5M from this working class.

16

- **Supporting Caselaw**:
  - *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998): Jurisdictional defects render judicial orders void ab initio.

## Supremacy Clause and Contract Clause Violations (Count III)

- **Uncontested Allegation**: Retroactive enforcement of FS §718 impaired vested contractual rights and violated Federal constitutional protections. Which Mr. Katz is still using to alter the Association elections to his will.
- **Legal Controversy**: Whether the retroactive application of FS718 state law conflicts with Federal constitutional guarantees, remains an active dispute.
- **Supporting Caselaw**:
  - *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244–45 (1978): Retroactive laws impairing contractual obligations violate the Constitution.

## Procedural Due Process Violations (Count IV)

- **Uncontested Allegation**: Property owners were denied notice and an opportunity to challenge the receivership and $3.5M assessment.
- **Legal Controversy**: Whether the lack of due process renders the receivership and related actions unconstitutional is unresolved.
- **Supporting Caselaw**:
  - *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976): Due process requires notice and an opportunity to be heard.

---

## 2. Declaratory Relief Provides a Practical Resolution

- **Restoration of Property Rights**: Declaring the receivership void would remove the financial burden imposed on property owners by the fraudulent $3.5M assessment.
- **Clarification of Legal Relationships**: A declaratory judgment will affirm the limits of judicial authority, preventing future misuse of FS §718 or collusion.

**Supporting Caselaw:**

- *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995): Declaratory relief is appropriate where it resolves uncertainty and clarifies legal obligations.

---

## 3. This Court Has Jurisdiction

- **Federal Question Jurisdiction**: The claims raise significant constitutional issues under the Supremacy Clause, Contract Clause, and Due Process Clause.
- **Fraud on the Court**: Federal courts have inherent jurisdiction to address fraud that undermines judicial proceedings (*Hazel-Atlas Glass Co.*, 322 U.S. at 246).
- **No *Rooker-Feldman* Issue**: The claims are independent of state court judgments. Which focuses on the procurement by fraud on the court. (*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

---

## 4. Declaratory Relief Promotes Judicial Economy

- Granting declaratory relief avoids prolonged litigation, resolves all legal uncertainties, and prevents continued harm to property owners.

- It provides a definitive resolution to constitutional questions, eliminating the need for piecemeal litigation.
- Prevents involving more judges in this concealment of fraud on the court - to protect Judge Guzman and Judge Del Rio and attorneys Katzman and Katz.

**Supporting Caselaw:**

- *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943): Declaratory relief is appropriate to prevent multiplicity of lawsuits and clarify rights.

---

## 5. No Adequate Alternative Remedy Exists

- Declaratory relief is necessary to resolve questions of judicial integrity, jurisdiction, and constitutional violations.
- Monetary damages or injunctive relief alone cannot address the systemic harms caused by fraudulent receivership and unconstitutional actions.

**Supporting Caselaw:**

- *Cooper v. Aaron*, 358 U.S. 1, 17 (1958): Courts must enforce constitutional protections as a matter of judicial duty.

---

## Request for Declaratory Relief

This Court is compelled to grant declaratory relief under each count presented because:

1. The claims are uncontested, implicating constitutional violations and fraud on the court.

2. Restitution of the duly elected Board President is not only equittable but long overdue.

3. The resolution will restore public trust in the judiciary, clarify legal rights, and eliminate ongoing harm.

4. Denying declaratory relief would openly contradict the Court's duty under the Constitution and Federal law.

---

## MOTION FOR JURY TRIAL

Mr. Janvier Villars, individually and on behalf of all others similarly situated, and pursuant to **Federal Rule of Civil Procedure 38**, hereby demands a trial by jury on all issues so triable, and as grounds therefore states the following:

---

## INTRODUCTION

This action involves legal and equitable claims arising from fraudulent conduct, constitutional violations, and lack of jurisdiction in state court proceedings that adversely impacted over 500 Buckley Towers Condominium Association property owners. Petitioner seeks relief on behalf of the class for damages and other legal remedies, in addition to injunctive and declaratory relief.

---

## LEGAL BASIS FOR DEMAND

1. **Right to a Jury Trial**

o   The Seventh Amendment to the United States Constitution guarantees the right to a jury trial in actions at law. Petitioner claims for monetary damages constitute legal claims subject to this constitutional guarantee.

2. **Federal Rule of Civil Procedure 38**

o   Rule 38(b) provides that a party may demand a jury trial on any issue triable by a jury by serving a written demand within 14 days after the last pleading directed to the issue. Petitioner asserts this motion to preserve the right to a jury trial for all legal claims presented herein.

3. **Applicable Precedent**

o   In **Curtis v. Loether, 415 U.S. 189 (1974)**, the Supreme Court held that statutory claims for monetary relief are triable by jury.

o   In **Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)**, the Court emphasized the importance of preserving the right to a jury trial for legal issues, even in cases involving equitable claims.

o   Mixed claims for legal and equitable relief must be bifurcated, with a jury deciding legal claims and the court deciding equitable claims, as established in **Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962)**.

---

## ISSUES FOR JURY TRIAL

Petitioner seeks a jury trial on the following issues triable at law:

1.   Claims for monetary damages arising from fraud on the court, including fraudulent imposition of a receivership and a $3.5M special assessment imposed on property owners.

2. Claims for damages resulting from constitutional violations, including deprivation of due process under the Fourteenth Amendment.

3. Claims for restitution and financial harm caused by the retroactive application of FS §718 and other unlawful actions.

4. Claims of reckless disregard on the emotional, mental and financial distress caused by the attorneys and judges conspiracy against Mr. Villars and the board of directors improperly removed.

5. Punitive damages according to their actions in courts and in the Association

---

## PRAYER FOR RELIEF

WHEREFORE, Petitioner, individually and on behalf of all others similarly situated, respectfully demands a jury trial for all legal claims and issues so triable as a matter of right under the Seventh Amendment, Federal Rule of Civil Procedure 38, and applicable law.

Respectfully submitted,

**/s/ Janvier Villars**
Pro Se Advocate for Buckley Towers Property Owners

**CERTIFICATE OF COMPLIANCE**
Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this document complies with the type-volume limitation set forth in Rule 21(d)(1) because it contains [number] words, excluding the parts of the document exempted by Rule 32(f). This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared proportionally.
**Certificate of Service** I HEREBY CERTIFY this Writ was served to Judges Guzman, Del Rio, Echarte served in downtown Circuit Court. Also to the State of Florida via servicing Attorney General Ashley Moody at her Office of the Attorney General State of Florida PL-01 The Capitol Tallahassee, FL 32399-1050.

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-21475-CIV-MARTINEZ-BECERRA**

JANVIEW VILLARS,

      Plaintiff,

v.

SHAUL MICHAEL, *et al.*

      Defendants.

_____/

## ORDER OF REFERENCE TO MAGISTRATE JUDGE FOR ALL PRETRIAL PROCEEDINGS

PURSUANT to 28 U.S.C. § 636(b) and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned cause is referred to United States Magistrate Judge Jacqueline Becerra for a ruling on all pre-trial, non-dispositive matters, and for a Report and Recommendation on all dispositive matters.

**ORDERED AND ADJUDGED** that it is the responsibility of the parties in this case to indicate the name of the Magistrate Judge on all motions and related papers referred by this order in the case number caption: Case Number: 22-21475-CIV-MARTINEZ-BECERRA

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of May, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

APRIL 26, 2022

JANVIER VILLARS,
Appellant(s)/Petitioner(s),
vs.
BUCKLEY TOWERS CONDOMINIUM,
INC.,
Appellee(s)/Respondent(s),

CASE NO.: 3D22-0569

L.T. NO.:    21-17383

       Upon the Court's own motion, it is ordered that this appeal from the Circuit Court for Miami-Dade County, Florida, is dismissed for failure to comply with this Court's Order dated April 1, 2022, and with the Florida Rules of Appellate Procedure.

       FERNANDEZ, C.J., and LINDSEY and LOBREE, JJ., concur.

A True Copy
ATTEST

*Mercedes M. Prieto*

CLERK
DISTRICT COURT OF APPEAL
THIRD DISTRICT

cc:  Melanie E. Damian        Russell M. Landy        Janvier Villars
      Hon. Carlos Guzman      Miami-Dade Clerk

ns

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

NOVEMBER 28, 2022

JANVIER VILLARS,                                CASE NO.: 3D22-1959
Appellant(s)/Petitioner(s),
vs.                                             L.T. NO.:    21-17383
BUCKLEY TOWERS CONDOMINIUM,
INC.,
Appellee(s)/Respondent(s),

       Pro se Appellant's "Emergency Motion For Injunction" is treated

as a motion to stay, and said motion is hereby denied.

       FERNANDEZ, C.J., and LINDSEY and MILLER, JJ., concur.

A True Copy
ATTEST

*Mercedes M. Prieto*

CLERK
DISTRICT COURT OF APPEAL
THIRD DISTRICT

cc:     MELANIE E. DAMIAN    RUSSELL M. LANDY    JANVIER VILLARS

dm

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

DECEMBER 05, 2022

JANVIER VILLARS,
Appellant(s)/Petitioner(s),
vs.
BUCKLEY TOWERS CONDOMINIUM,
INC.,
Appellee(s)/Respondent(s),

CASE NO.: 3D**22-1959**

L.T. NO.:    21-17383

Upon the Court's own motion, it is ordered that this appeal from the Circuit Court for Miami-Dade County, Florida, is dismissed for failure to comply with this Court's Order dated November 15, 2022, and with the Florida Rules of Appellate Procedure.

LOGUE, LINDSEY and MILLER, JJ., concur.

A True Copy
ATTEST

*Mercedes M. Prieto*

CLERK
DISTRICT COURT OF APPEAL
THIRD DISTRICT

cc:   Melanie E. Damian          Russell M. Landy          Janvier Villars
      Hon. Carlos Guzman         Miami-Dade Clerk

ns

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

DECEMBER 07, 2022

JANVIER VILLARS,                           CASE NO.: 3D**22-1959**
Appellant(s)/Petitioner(s),
vs.                                        L.T. NO.:    21-17383
BUCKLEY TOWERS CONDOMINIUM,
INC.,
Appellee(s)/Respondent(s),

Upon consideration, pro se Appellant's "Motion for

Reconsideration on Injunction" is treated as a motion for rehearing.  Said

motion for rehearing is hereby denied.

LOGUE, LINDSEY and MILLER, JJ., concur.

A True Copy
ATTEST

*Mercedes M. Prieto*

CLERK
DISTRICT COURT OF APPEAL
THIRD DISTRICT

cc:      Melanie E. Damian        Russell M. Landy        Janvier Villars

la

# United States

## For the Southern District Court of Florida

MIAMI-DADE, FLORIDA

```
FILED BY_____ D.C.

MAY 1 2 2022

ANGELA E. NOBLE
CLERK U S DIST. CT.
S. D. OF FLA - MIAMI
```

Janvier Villars

On behalf of Property Owners Wanting Equal Rights

PETITIONERS/Appellants

vs.

EX-Directors: Mr. Shaul Michael, Mr. Walter Restrepo, Ms. Norma Torres, Mr. Yuri

Zamoshchik, Ms. Magda Pineda, Ms. Mariluce De Souza, Mr. Osvaldo Fructuoso, Mr.

Aleksejs Nikitins and Ms. Flor Garuz. Plus Attorneys conspiring with Katzman Chandler

P.A., Mr. Leigh Katzman, Mr. Justin Smith, Ms. Mary Ann Chandler, Mr. Ramon Abadin,

Mr. Russell Landy, Damian & Valori LLP., and their CONSPIRATORS. et. al.

**In Re:** Illegal Representation of Buckley Towers Condominium in Case: 2021-017383-CA-01

RESPONDENTS/Appellees

→ EMERGENCY ←

## PETITION FOR WRIT OF PROHIBITION

Pursuant to 42 USC §1983, 42 USC §1985, 28 USC § 2106,

Under FedR.CivPro 60(d)(1)&(3) and 60(b), FRAP 8, and 5 U.S. Code § 706,

28 USC §1331, §1335(b), §1343, U.S. Const. Art.I, Art.III, and the 14th Amendment.


**NOTICE IS GIVEN** that Mr. Janvier Villars, Petitioner/Appellant, and on behalf of

Property Owners Wanting Equal Rights over their privacy, association, and their private

property, plea the Southern District Federal Court for an emergency relief.

## I. THE ISSUE

CAUSE by the trial judge proceeding without Jurisdiction and after being disqualified. For abusing the court discretion and doctrines. Obstructing Due Process. By disregarding civil procedures. Denying discovery and hearings. Denying adjudication on any merit that contradicts his decisions. Thereby, impeding the petitioners from appealing them. As can it be observed by reviewing the docket. (Appx_X1)

The petitioners plead for an emergency disposition for this Writ of Prohibition. Because of an upcoming Court hearing of June 21, 2022.(Appx_X1b) Intended to further displace Mr. Villars and the 500+ Adverse Parties[1] in an unduly and perpetual irreparable harm. At ushering a permanent Constitutional deprivation through a court controlled Association board elections and thereby a puppet board of directors.

## II. INTRODUCTION

The petition of Writ of Prohibition originates from the nonfinal orders in a frivolous suit. Where the trial court Judge Carlos Guzman ('Judge') in collusion with Respondents' attorneys Katzman Chandler, P.A.('KC') collaborated in this swindle receivership. Knowingly the court lacked Jurisdiction, it lacked injury-in-fact, lawful right to represent Buckley Towers Association as plaintiff, and proof of imminent danger or

---

[1] "When dealing with a preliminary injunction [complaint], the **'adverse party'** means the party adversely affected by the injunction, not the opponent in the underlying action." *Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir.1992). **Fed.R.Civ.Pro. 1.620 "(a) Notice.** The provisions of rule 1.610 [Injunctions] as to notice shall apply to applications for the appointment of receivers." The Enterprise failed to 1.610 (1)(B) certify to have made efforts to notify all adverse parties or why it was not needed. Rather 1.610 (2) didn't afford Reasonable Notice to all Adverse Parties.

fraud. Nonetheless, rushing the immediate deprivation of privacy, property rights, immunities and interests of a private homestead association and its membership.

Through a lawsuit filed by board Ex-Directors and Katzman Chandler P.A, ('the Enterprise'). <u>Unlawfully</u> representing Buckley Towers ('Association'). Originally pleading for a preliminary injunction against Mr. Villars alone.  But, just 22 hours before the first hearing (Appx_X2), they Subsequently Plead for Receivership → against ALL of the 500+ private homeowners. Depriving all Adverse Parties/ 500+ owners of 30-days Notice, Service of Process, and right to contest the merits in court, before and after ordering this Receivership against their homesteads.

Directly conflicting with Fla.Rule Fed.R.Civ.Pro. 1.620 On Receivership "(a) Notice. The provisions of rule 1.610 [Injunctions] as to notice shall apply to applications for the appointment of receivers." Rule 1.610 (2)(C) Scope "shall be binding on the parties to the action, and on those persons <u>in active concert or participation</u> with them <u>who receive actual notice of the injunction</u>."

Yet procuring this Order for Involuntary Servitude, shy of 24 hours after filing the motion. By the Judge suppressing FS90.105, FS90.201, Rule 1.140(b) and litigation. To avoid addressing the detrimental facts. Here proven to leave the Court without Jurisdiction.

> "Whenever a delay in an administrative adjudication significantly or deliberately interferes with a party's capacity to prepare or to present his case, the right to due process is violated." *Gillette v. New York State Liquor Authority*, 149 A.D.2d 927 (N.Y. App. Div. 4th Dep't 1989).
> Yet, here repeatedly proven as a typical "[p]attern or practice and based on the same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Later, the Judge collaborated with his Court's Receiver, Mr. Abadin. In securing a

Stay Order. To further Moot Mr. Villars' pleas for litigation against the Enterprise's original

and receivership claims. As well as to deny his pleas for discovery, hearings and reliefs.

So, when Mr. Villars civilly challenged this illegal taking; by exercising his 1st

Amendment Rights, the Judge Judicially SLAPP[2] him with a Contempt Order -Sanctions.

Permanently prohibiting all owners from petitioning, assembling, or mitigating the harm.

---

"Furthermore, the federal court holds jurisdiction where immunities under [42 U.S.C.] sec. 1983
on the claims against circuit court judges is a question of law."
*Bennet v. Parker*, 898 F.2d 1530, 1532(11th Cir. 1990)."
Because "The judicial Power [of the United States] shall extend to all Cases, in Law and Equity,
arising under this Constitution [and] the Laws of the United States..." U.S. Const. Art.III §2.
"We review questions of constitutional law de novo."

## III. JURISDICTION Under 5 U.S. Code § 706

This court has jurisdiction to issue writ of Prohibition under Art. V Sec. 3(b)(4) of the
Florida Constitution, to "issue writs of prohibition to courts and commissions in causes
within the jurisdiction of the supreme court to review."
Pursuant to Fed.Rule Appellate Procedure 9.130(3)(D) To terminate Receivership.
   *Kentner v. City of Sanibel*, 750 F.3d 1274, 1278 (11th Cir. 2014), cert. denied, 135 S.Ct. 950
   (2015). **"Fraud that prevents the functioning of the judicial process does not have to be**

---

[2] See Appx_X3. Conflicting with Florida Art. V, §21 - Prohibiting Agency Deference: "The
new amendment [to the Florida Constitution] helps level the playing field between the
government and its citizens and similarly reaffirms Chief Justice John Marshall's later
proclamation in Marbury v. Madison that it is "emphatically the province and duty of the
judicial department to say what the law is."        Article titled: The Demise Of Agency
Deference. By the Florida Bar Journal Vol. 94, No. 1  January/February 2020.

brought within any specific period of time." _Hazel-atlas Glass Co._ v. _Hartford-Empire_ Co.,
322 U.S. 238, 64 S.C. 997, 88 L.Ed. 1250(1944); _DeClaire_ v. _Yohanan,_ 453 So.2d 375(Fla.
1984).

## IV.  LEGAL ARGUMENT
### On the Disqualification of a biased Judge (Appx_X4)
In addition to the sworn oaths, affidavits of fear of unfair trial.
"The test for determining the legal sufficiency of a motion for disqualification is whether
the facts alleged (which must be taken as true) would prompt a reasonably prudent person
to fear that he could not get a fair and impartial trial." _Brofman v. Florida Hearing Care
Center, Inc.,_ 703 So. 2d 1191, 1192 (Fla.4th DCA 1997); accord, _Michaud-Berger v. Hurley,_ 607
So. 2d 441, 446 (Fla. 4th DCA 1992) (a party seeking to disqualify a judge need only to show
a "well-founded fear of prejudice on the party of the trial judge")

**Rule 2.160 of the Florida rules of Judicial Administration** provides that "[t]the judge
against whom an initial motion to disqualify under subdivision (d)(1) is directed shall
determine only the legal sufficiency for the motion and shall not pass on the truth of the
facts alleged. IF the motion is legally sufficient, the judge shall immediately enter an order
granting disqualification and proceed no further in the action. IF any motion is legally
insufficient, an order denying the motion shall immediately be entered. No other reason
for denial shall be stated, and an order of denial shall take issue with the motion."

"[i]f a judge's comment could "reasonably be interpreted" to reflect a bias or prejudice
against a party, disqualification is mandatory." _Sholtz v. Houser,_ 657 So.2d 950, 951 (Fla. 5th
DCA 1995) (circumstantial evidence of prejudice or bias is sufficient to require
disqualification, even if there is an equally cogent contrary explanation).


## V.  The EXTRAORDINARY CIRCUMSTANCES AND FACTS

The Enterprise originally filed the suit to enjoin (Appx_X4b), <u>as an individual,</u> the
Six-month-in-elected President, Mr. Villars. Based on false debt claims, for not sharing his
president/ chief officer powers with the then vice-presidents, and for _administration fraud_ -

altho lacking of particularity pleading. So to strip him of his Director insurance defense, to harm his clean reputation, but covertly, to deter the membership participation in court.

But, for well over a month, BEFORE that first hearing, this Enterprise had been extorting Mr. Villars. Slandering him and threatening him. To have him surrender his Presidency to them. So, when that failed, they retaliated. Interrupting all Association operations. Illegally claiming authority over the Association. Then, replacing him from President in Miami Official Records. To have the bank freeze the Association's accounts.

The Wrongful-Conduct Rule "bars a claim if a plaintiff must rely on his or her own illegal conduct for recovery, [and] stems from the sound public policy that 'courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct.'" *Varela v Spanski*, 329 Mich App 58, 81 (2019), quoting *Orzel v Scott Drug Co*, 449 Mich 550, 559 (1995).

Thus, Intentionally causing irreparable harm. At sabotaging the Association operations and commercial relations. Intended to have the Association Owners and their renters (1500 residents) suffer, from the lack of upkeep and cleaning, without night security, pest control services, and elevator maintenance.  So the Enterprise can then use that harm, to justify their last-minute Subsequent Pleading for a Receivership.

"When determining whether an action is malicious, the Court need not look only to the complaint before it, but may also look to the [Respondents] prior litigious conduct." *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996)

Which they procured, within 24 hours of filing their Motion. By depriving ALL Property Owners Wanting Equal Rights (POWER), of a full and fair Due Process.  With the help of the Judge. First, by disregarding the Enterprise's Wrongful actions. Then accepting as true the Enterprise (previously proven false) claims; while denying Mr. Villars litigation

of those claims. Then by discarding the Insufficiency of Process and the Required Joinder of all Indispensable Parties. Reasonably foreseeable to cause, on the UNnotified Indispensable Parties, constitutional harms. Thus carelessly forcing this class to incur double and otherwise inconsistent financial obligations. Despite Rule 19 clearly states *"(A) in that person's absence, the court cannot accord complete relief among existing parties."* Thus intentionally impeding  Due Process on 500+ citizens. *See* Rule 60(d)(2)and 60(d)(3).

Therefore, the Judge took over these private entities' privacy and liberties SOLELY based on the 'court's broad discretion',  in 'equity powers', as 'Sound Decision,' in 'good faith' and of course, 'for the best interests of the association' Judicial Doctrines.

Even after, Mr. Villars' evidence, recorded four days before the first hearing, was proven undisputable. As a matter of fact and law. As it certified the Ex-Directors never had legal standing or injury-in-fact. Committed fraud on the Court, at unlawfully representing the Association as 'Plaintiff'. And extrinsic fraud, at misrepresenting the Kaufman Supra Equitable Estoppel (Appx_X6), because it voids all their claims. Including the EX-directors' "Authority Controversy" claim.  Leaving the Judge without jurisdiction over the Association and Mr. Villars → Ab initio. Pleaded as of 10/21 to Set Aside (Appx_X6b)

"The requirement that jurisdiction be established as a threshold matter... is 'inflexible and without exception'"*Mansfield, C.L.M.R. Co v. Swan,* 111 U.S. 379, 382 (1884)); for "[j]urisidiction is power to declare the law," and "[w]ithout jurisdiction the court cannot proceed at all in any case,'" 523 U.S., at 94 (quoting *Ex Parte McCardle,* 7 wall, 506, 514 (1869)). Personal jurisdiction, too, is "an essential element of the jurisdiction of a district---court," without which the court is "powerless to proceed in an adjudication." *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937) Fed.Rule Civ.Proc. 12(h)(3) "Whenever it appears... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

**Thus, the Order for Contempt against Mr. Villars → Enforced on Every Owner.**

For him upholding his dignity against this State's seizure. For civilly challenging the overbreadth Receivership order. (App_X7) By exercising his 'guaranteed' 1st Amendment Rights. As necessary to mitigate the prejudicial financial hardship imposed on POWER.

"In the context of the Fourth Amendment, a seizure of property occurs whenever there is "some meaningful interference with an individual's possessory interest in that property."
*Sodal v. Cook County*, 506 U.S. 56, 61 (1992)

"[Where] Even an indirect infringement on associational rights is impermissible and subject to the closest scrutiny." Id.; *Healy v. James*, 408 U.S. 169, 183, 92 S.Ct. 2338, 2347, 33 L.Ed.2d 266 (1972).

### VI. Judicial - DISCRETION for Tabling and Mooting Litigation: To Deprive Liberty and Property without Due Process - Judicially

This case began on July 16, 2021. - For Injunctive Relief - But the Judge immediately 'tabled' the litigation of Mr. Villars merits. To immediately afford the Enterprise last minute plea relief for Receivership. Using the Judge 'inherit broad discretion'.

"[when] evidence has been suppressed, concealed, or falsified" is a claim of intrinsic fraud"
*Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1546., *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634   "In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause." *Fair v. Tampa Electric Co.*, 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946) as stated in Black's Law Dictionary 595 (rev. 5th ed. 1979).

Where, instead of permitting, a preliminary evidentiary hearing, or mandate for an Arbitration; the Judge imposed a permanent confiscatory and oppressive order. On the whole community. Using his court 'discretion' to deny the pleaded Equitable Declaratory relief.  Judicially avoiding the Enterprise's claims of authority, privileges and rights (as

7

EX-directors[3]) from being addressed prudently, pursuant FS 86.011. Moreover, refusing to allow the Board Treasurer and the remaining five directors, still qualified and within their right, to hold the authority over the Association during the proceedings. Available adequate remedies that are congruent with laws and bylaws - unlike this Receivership.

Rather, the Judge decided to impose an UNconsented conveyance Receivership Order. Followed up with a second Order appointment. Taxing even more[4] the Adverse parties. While placing a Stay (gag) Order. (Appx_X8) Depriving them of their right of a court hearing. Barring litigation on the merits or on the intentions for this receivership.

"A violation of the due process guarantee of notice and opportunity to be heard renders a judgment void." *Curbelo v. Ulman* 571 So.2d 445 (Fla. 1990); *Ryan's Furniture Exch., Inc. v. McNair*, 120 Fla.109, So 483, 487 (1993); *Shields*, 528 So.2d at 968; *Niki Unlimited v. Servers of Greater Miam*i, 483 So.2d 46, 48 (Fla.3rd DCA 1986).

Mr. Villars has continuously exhausted pleadings for adjudication with his 29 filed motions: e.g. Show Cause (ECF86 ), For DJ on the Receivership Order (ECF 90) ...
→ Pleads that remain UNCONTESTED- avoiding adjudication. Despite Rule 55(a).

"Where [trial] court obstinately refuses to adjudicate a matter properly before it, a court of appeal may issue the writ to correct 'unauthorized action of the court obstructing the appeal'. *Will v Calvert Fire Ins. Co.* 437 U.S. 655, 666-67, 98 S.Ct. 2552, 57 L.Ed. 504 (1978)

---

[3] See Appx_8b.  The Association covenant- three absentees to board meetings in a year automatic disqualification clause.  A restrictive covenant on the 17 board directors. For intentional breach of fiduciary duties to the Association. Absentees recorded in Zoom board meeting video and minutes.
[4] On Oct. 8, 2021- The Judge also denied post-deprivation Due Process. At ordering, a second Receiver- Mr. Abadin. Without allowing Proper Notification or participation in Court. While imposing on POWER an additional $600 per hour Receiver fee. That is, an additional taxation of $900 + $650+$550 p/hr. legal fees. A significant unduly financial impact.

## VII.  FREE TO MANIPULATE LAW THRU THE DOCKET AND DOCTRINES

Judge Guzman, advocating through his court Receiver, chose to deprive the Association and POWER of proper due process. (A) By treating his Receivership Swindle as an immediate Issue Preclusion. (B) Then Refusing to comply with Rule FS 90.201 Judicial Notice, on statutory Laws and the Stare Decisis. (C) To deprive Mr. Villars of his absolute defenses. Afforded under the Association Equitable Estoppel, the Kaufman, Supra. (D) To afford the Enterprise their plead Receivership/ Sanctuary. To protect them from having to defend their false claims. While the Judge affords their pleaded removal of Mr. Villars.

(E)Then having the Enterprise and his Receiver chant over every hearing "the judge has made his decision." So to avoid being recorded denying Mr. Villars pleas in court.

(F) Furthermore, suppressing established state laws. At disregarding laches under FS 718.112(2)(d)(4)(c) "challenge to the election process must be commenced within 60 days." Because it voids the Enterprise's elections claim. To disqualify Mr. Villars as the elected President. A claim also not supported in the bylaws.

(G)Whereby granting the Stay. The Judge condoned his Receiver's concealment of material facts; which proves wrong their rushed Receivership. Including the illegal representation of the Association, lack of injury-in-fact and lack of cause of action.

(H) Deceitful strategies, collaborated with Katzman Chandler P.A.. (I) **Ulteriorly. To preclude the litigation of the Enterprise's false claims.** (J) So his Receiver, Mr. Abadin

can reassert those → exact false claims  as his legal facts of 'Good Cause.' To Justify their plea Order of Stay[5].

(K) An order justified with the 'tabled' merits. Which Mr. Villars was precluded from proving false, thus precluding him from challenging the 'neutral' Receiver's "Good Cause". (L) Thus barring him from proving the Receiver's claims to be in Bad Faith, absolutely false and in conspiracy. (M) So the Judge could agree with his Receiver at claiming, "the Receiver[ship] has mooted the underlying [authority] dispute"

(N) Rather in Overt furtherance of fraud. Hence neither of the parties had filed for an appeal on that Non-Final Order. Nor was there any other court case adjudicating the material issues, to preempt this gag order. - Ulteriorly - to moot their  misrepresentation of 'Authority Dispute.'    Which remains the usurpation of the Association from Mr. Villars. The duly elected Board President and Chief Officer of the Association.

(Ñ) All While this Court Receiver failed to provide the Court with Statutory Matter Jurisdiction. At Reporting the Association was never in any actual risk of irreparable harm, at risk of life or loss of property, diminution of value, embezzlement or being defrauded by Mr. Villars. (O) Thus, proving the Court lacked authority to intrude in the Association private matters and in POWER's privacy and personal property interests.

---

[5] Fed. R.Civ.Pro 62(c) Stay Of An Injunction, Receivership. Order. "Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction or receivership."

(P) Where after six months of this **Unwarranted Seizure**. Mr. Abadin **Searched and** couldn't find nor Report (Appx_X11) any clear or imminent debatable or speculative public disaster, that only with their Receivership or state intervention could be avoided. (Q) To Justify their illegal taking of privacy, of this nonprofit corporation. (R) Thus, unreasonably placing a Substantial Negative Economic Impact on the Association membership. (S) While the Judge provides the Enterprise with a judicial Sanctuary.

(T) Concluding with the Judicial SLAPP[6] -Sanction Contempt Order. (U)Prohibiting ALL owners from opposing this involuntary Servitude. (V) Ordering Mr. Villars' to close his international commercial website powerinunion.com. To impede him from assisting property owners, who reside in other states and countries, exercise their right to protect their investments in Florida or to plead for government grievances. (W) Depriving of their liberty, to be democratically represented in their Association, by their elected president.

(X) Yet, more significant is that, this Court Contempt Order serves to further oppress and intimidate this Class into a subclass. (Y) UNDESERVING of their vested privileges, immunities under the 1st Amendment Right. Prohibited from contesting this intrusion on their Privacy and Personal Property. (Z) Coercing POWER to surrender to this seizure. - Judicially Depriving of all remedies at law. See 42 U.S.C. §1983 and §1985.

---

[6] Strategic Lawsuits Against Public Participation FS 718.1224 "[p]rotected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." "[a]bstention is generally inappropriate when First Amendment rights are at stake"; *Citizens United v. FEC*, 558 U.S. 310, 340 (2010)

## VIII.  A TRUE MISCARRIAGE OF JUSTICE. See Rule 12(b)(4),(5),(6) & (7)
**With a Receivership - Made possible - only  through a conspired-court swindle.**

By the Judge '**tabling**' the litigation of the Merits.  Then, by judicially inducing a

Receivership 'for the best interest of the Association.' Dissuading, any challenge against it,

in the hearing. By contending, to be only *"temporary, for 45-60 days" "To get a Receiver*

*Report"* for the Court.  But, after that first hearing, with Katzman Chandler P.A. ('KC'), bait

and switch it to an  "Adjudicated Order" → for as long as the Judge arbitrarily decides.

Ruled, after *"considered the evidence submitted, and being otherwise fully advised on the*

*premises"* on the Merits that the Enterprise couldn't prevail against. So deliberately

accepting the Enterprise last minute switch. Disregarding their insufficient process, and

Service of Process, Want of causation, and to join indispensable parties. To afford the

relief that the Judge enjoys 'broad discretion' and was determined to afford - immediately.

**To Impose it as an Issue Preclusion of detrimental reliance.**  To deny all discovery

or hearings of material evidence that contradicts this Receivership. Afoul FS 90.501. "[n]o

person in a legal proceeding has a privilege to(2)Refuse to disclose any matter."

**SO, Knowing of wanting of Causation, Legal Standing, or Subject Matter**

**Jurisdiction Judge Guzman Divested** and penalized innocent Common persons. Proving

the Judge was determined, as an adversary of Mr. Villars, to immediately and permanently

deprive him of his privacy, property interests, privileges, immunities. *See* 28 USC §1343.

"Malice denotes that condition of mind manifested by intentionally doing a wrongful act

without just cause or excuse." *State v. Burlison*, 255 Neb. 190 (Neb. 1998) See e.g. 28 U.S.C.

12

§455 "(a) which his impartiality might reasonably be questioned and (b) (1)Where [the Judge] has a personal bias or prejudice concerning a party."

Aided by his Receiver's attorney Mr. Landy, the Judge constantly disgraced Mr. Villars from his presidency with court innuendos of untrustworthiness and ineptitude. Judicially declaring him unable to do what the Association bylaws and the State Law vested on him to do, as President of the Association[7]. Thus, harming his Reputation in his Community. Intended to outcast him, by harming the trust he had built. By his undisputable good deeds and devotion to his community.

Where, "harm to goodwill, like harm to reputation, is the type of harm not readily measurable or fully compensable in damages – and for that reason, more likely to be found 'irreparable.'" _Curves Int'l, Inc. v. Fox, C.A._. No. 12-12250-RGS at *3 (D. Mass. May 9, 2013), citing _K-Mart Corp. v. Oriental Plaza, Inc._, 875 F.2d 907, 915 (1st Cir. 1989).

### IX. TO COERCE ON POWER - A Covert Involuntary Servitude and Peonage

Disguised as an 'Emergency' Receivership. Due to the Association inherited calamity, the debt to service providers and the Association debt with the bank[8]. Along with the Enterprise Wrongful acts; which caused further deprivation of Association services.

**Association private issues that did not afford the Court with any Jurisdiction**[9]

---

[7] In Enterprise complaint. ECF 2 Page 110 and 111 Appx_X13 Powers and Duties of the President.

[8] Service providers debts were being paid by the Association, with Mr. Villars due diligence. The bank debt was properly paid upto July 2021; prior to this usurpation. Therefore, prior to their wrongful actions the bank did not have a reason or intention to file an interpleader case against the Association or to freeze the Association accounts. See Section 1990 and 5526, Rev. Stat on peonage for debt.

[9] "Thus, where a judicial tribunal has no jurisdiction of the subject matter on which it assumes to act, its proceedings are absolutely void in the fullest sense of the term." _Dillon v. Dillon_, 187 P 27

13

Where at reviewing the Enterprise' claims.  A) The Association Governing Docs and the State Laws does not support them as causation. Rather within vested powers on Mr. Villars as President and Chief Officer. B) Therefore lacking Cause of Action ab initio.

C) Where if any of their claims may have been valid; the FS 718.1255 affords only the DBPR with jurisdiction to redress them. D) However, because the Association has the Kaufman Supra (ex-post facto law) immunity. Pursuant to the 14th Amendment Privileges and Immunities Clause. Its vested Substantive Rights cannot be impaired by any New law.

E) Including the FS 714 a.k.a. the Receivership Act. Which clearly forbids its application on homestead owners[10]. Moreover, it also pre-requires a 30-days Proper Notice and opportunity to all adverse parties to contest the claims.  Which the Enterprise failed to afford the court. And "The court may not add to the statute ... to confirm to an assumed intent that is not apparent in its language" *Lesher, Supra* 52 Cal.3d at 543, 277 Cal.Rptr 1.

Proving the Enterprise[11] unlawfully represented the Association in court.  As the Association covenants, laws running with the land, does not vest on any one owner, including directors, a right to transfer other owners' property interests without prior proper due process and their signed consent.  Or to place them in a conveyance without complying with the Statute of Fraud requirements. Opposed to common law and statutory reasoning. As the Association was not in Foreclosure, nor in Bankruptcy, nor liquidating

---

[10] FS 714.04 "(e)Personal property of an individual which is used primarily for personal, family, or household purposes."

[11] FS 718.112 "being an owner of the association does not afford legal right to represent the association". FS 718.111(7) "718.114, no association may acquire, convey, lease, or mortgage association real property except in the manner provided in the declaration."

14

its assets. Not in any imminent danger of loss of life or property. Therefore, wanting or 'Properness' and 'Necessity'. Thus lacking Statutory Matter jurisdiction ab initio.

Nonetheless, the Judge Ordered POWER to pay whatever the Receiver chose to collect. First to pay for the Receiver's law firm's ~$100K monthly dues[12]. Then with the residual, to pay for the Association's upkeep, services, and pending debt. Thereby, the Judge has directly contradicted established state laws[13] and Contractual procedures[14].

Intentionally abusing authority, by wrongfully assuming unwavering tyrannical powers, by relying on the Receivership common law[15] . Which restricts the nullification of Receivership to that State Court's discretion alone.

HOWEVER, this court must consider the statutes of fraud exception. Rule 60. Where this Receivership was procured without jurisdiction and through conspired fraud on the court.

---

[12] On Oct. 8, 2021- The Judge also denied post-deprivation Due Process. At ordering, a second Receiver, Mr. Abadin. Taxing on POWER an additional $600 per hour Receiver fee. That is, an additional taxation of $900 + $650+$550 p/hr. legal fees. A significant undue impact.

[13] FS 718.116(g)(3) "Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment."  ALSO: (10) "The funds collected pursuant to a special assessment shall be used only for the specific purpose or purposes set forth in such notice."

[14] See Covenant Immunity on any New fiscal obligations. See 'Borrow' in Appx_X13.

[15] "Equitable Receiverships are a creation of common law, which the Supreme Court has stated should be reserved for cases involving (1) fraud, (2)self-dealing, or (3) waste." [In Expressio Unius Est Exclusio Alterius] - *Granada Lakes Villa Condominium Ass'n. Inc. v. Metro-Dade Investments Co.* 125 So. 3d 756, 759 (Fla. 2013).

To coerce innocent state citizens into servitude, threatened with court sanctions. Here proven with the Court Order for Contempt. For assembling, petitioning, and informing fellow owners on this Judicial Abuse. Thereby infringing "The Right of [this class of] people, to be secure in their persons, houses, papers and effects against unreasonable ... seizures" *See* U.S. Fourth Amendment.

### X.  Which begs from this Federal Court for a De Novo Review

"A judgment is void only if the court that rendered it lacked jurisdiction ... or acted in a manner inconsistent with Due Process of Law." *Williams v New Orleans Public Serv.*, Inc., 728 F.2d 730, 735 (5th Cir. 1984) (quoting Wright, Miller and Kane, Federal Practices and Procedures Section(s) 2862 (1973))

For deliberately disregarding the Status Quo Jurisprudence. Designed to prevent lawsuits from harming the Association's operations and obligations to the membership at large. Arbitrarily preferring to deprive POWER of essential operations. Thus, endangering the health and life of ALL Association residents. By failing to provide the Association with e.g. night security, pest control or elevator mechanical upkeep.

Condoning such deprivations, under the Receiver's excuse"lack of sufficient funds." While he increased 200% the Association dues, without allowing a vote. Proving as fraud, the commonly used doctrine and enforcement, 'for the best interest of the Association'.

At penalizing POWER with undue financial hardship. Which, Mr. Villars, while presiding as president, proved such extra taxation to be unnecessary. To recuperate the Association, to pay for all those services, and to pass the 40 yr. & 50 yr. certifications.

Where it's understandable why illicit Enterprises law firms like Katzman Chandler P.A. and Damian & Valori LLP. suppressed the Mathews Balancing Test and flung their deceitfully run Business Judgment Rule Doctrine.  Whereas an 'unbiased' Judge and his 'neutral' Receiver's → Overt Indifference departs from the principles of Police Policy.

Proving these Legal Doctrines ARE Judicially used:  NOT to serve Public Justice. → But *to serve the* Rule of *Man*.  To allow the organized-white-collar-crime to flourish.

## XI. A Plea For Equitable Justice.

Because this community was taken by fraudulent means; with false claims, illegal representation of the Association and without any type of justification. Florida property owners proven innocent of any type of crime. Yet permanently coerced into a servitude and conveyance. Being deprived of health and life preventive measures.  Thus, receiving NOTHING in exchange to justify the unduly legal costs, and devaluation of their property.

So it would not only be proper, but reasonable to expect for this Federal court to prohibit the trial judge and his receiver from continuing disgracing the integrity of the courts, violating established laws, and depriving 500+ property owners of the privacy and property rights guaranteed by the U.S. Constitution. By prohibiting the Judge and the court Receiver from presiding without having jurisdiction. Pursuant to 42 USC §1986.

> "Notwithstanding that a generalized injury that all citizens share is insufficient to confer standing, where a plaintiff alleges that the defendant's action injures him in "a concrete and personal way," "it does not matter how many [other] persons have [also] been injured. . . . [W]here a harm is concrete, though widely shared, the Court has found injury in fact."
> *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 517, 522 (2007).

## THREE QUESTIONS OF LAW

## Of significant JURISPRUDENCE ESTABLISHING POWER.

**Considering…**

**42 USC §1985(2)** "[i]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws…"

**Under frivolity review,** "[t]he complaint's factual allegations must be accepted as true." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017).

**Fed.R.Civ.Pro. 55** "(a)Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

**Fed.R.Civ.Pro. 56** "After the movant has met his burden, the burden of production shifts to the nonmoving party" "must do more than simply showing there is some metaphysical doubt as to the material facts." *Matsushita electronics Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

1)    How can two of three Federal Judges legitimize - in law or in iniquity - the aforementioned Deprivation of privacy and Constitutional Rights without due process?

2)    IF this court condones the aforementioned, to provide sanctuary, would it be logical, for the common men not see this as a violation of Equal protection under the law?

3)    At condoning this unwarranted seizure - by some special judicial powers - is this court in fact officially stating: "Any entity, from anywhere in the world, who can 'get' trial judges to table and moot litigation indefinitely, may take without due process privacy, Constitutional Rights and property in the United States."?

### WHEREFORE

POWER has suffered Irreparable injury "[that] cannot be undone through monetary remedies." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d at 338, *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981). Thereby, "[t]his case falls within the "established state procedure" exception described in *Parratt*. So that the *Parratt* analysis concerning the adequacy of post-deprivation remedies is simply inapplicable." *Rittenhouse v. DeKalb County* 764 F.2d 1451 (11th Cir. 1985).

**THEREFORE MR VILLARS AND ON BEHALF OF HIS COMMUNITY:**

Pleas this honorable court to Terminate the trial judge Receivership. Under Fed.R.App 9.130(3)(D) For lack of Jurisdiction. Effective ab initio. Hence their concealment over their Association activities may leave POWER with unforeseeable harm.  Costing the Association additional legal fees and irreparable damages. Thus inducing insolvency.

"On direct appeal, a court of appeals has Broad Authority to "modify, vacate, set aside or reverse" an order of a district court, and it may direct such further action on remand "as may be just under the circumstances." 28 USC § 2106

**AFFIDAVIT DECLARATION OF GOOD FAITH AND HONESTY**

I, Janvier Villars, as the duly elected Board President, and on behalf of Property Owners Wanting Equal Rights in their Association and with their personal property, hereby declare every averment, claim, statement to be 100% true. To be considered as fact or to be challenged with evidence of otherwise by the Respondents/Appellees. Any discrepancy found in this pleading is not intended with ulterior motives, nor to cause delay, cost, or frustration to any adverse party or the court. Everything written here has been per my personal knowledge, experience, and through my personal battles seeking equal justice.

**The Reasoning for this Emergency**

Is due to the further actions taken by the trial Judge. Who without having jurisdiction and refusing his disqualification intends to continue influencing the Association. Adversary to Mr. Villars' interests. At forcing, for the first time, an 'Election Committee'. *"The creation of the advisory board is within the Receiver's powers."* (Appx_X2¶8). Basically, to control who will be disqualified per his discretion, to place a puppet board. Where pursuant to this private Association covenants, the State has no authority to do so.

Unreasonably, after permitting the Enterprise supporters blame Mr. Villars for the Receivership, its undue financial hardship and the suffering endured for the lack of services. While, prohibiting Mr. Villars from defending against those false accusations.

19

Thus intending to also swindle an 'election committee' composed of those owners who covertly support the Receivership swindle. So the Judge, the Receiver and the Enterprise can make sure Mr. Villars is not only outcast but possibly sued again by their newly controlled board of directors. By keeping KC as the Association attorney. So he can continue harassing and suing Mr. Villars into silence. And foreclose on his property. Under any unjust claim. As proven to be condoned and collaborated with the trial judge.

But more importantly, this attempt to control the Association runs afoul to the harmed property owners' 152 petitions for governmental grievance. See Appx_X20.

"[p]rohibition is available only where there is a clear and legal right, and only a court- cases where judicial authority is challenged - acts or threatens to act either without jurisdiction or in excess of its authorized powers" *Matter of Holtzman v. Goldman* 71 NY2d 564, 569. See *Matter of Rush v. Mordue*, 68 NY2d 348, 252.

Where the trial court not finding any legal claim against Mr. Villars, the fair and just relief is the Status Quo Ante. As the Association covenants provide, the vacancies in the board "shall be filled by the remaining directors". A substantive vested right that Mr. Villars expects as his property interest and to be enforced by the court for being a restrictive covenant[16]. Especially where the Kaufman, Supra protects such substantive privileges from being impaired by any subsequent FS711 amendments.

/s/ Janvier Villars

Janvier Villars, pro se

1301 NE Miami Gardens Drv, 322

Miami, FL 33179

(786) 609-1269

---

[16] See Appx_X20b. "Property owners have a right in equity to enforce restrictive covenants." See, e.g. *Mains Farms Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 815, 854 P.2d 1072 (1993). *Ronberg v. Smith,* 132 Wn. 345, 249, 232 P.283 (1925).

FILED BY _____ D.C.

JUN 17 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# United States
## For the Southern District Court of Florida
### MIAMI-DADE, FLORIDA

### CASE NUMBER: 22-21475-CIV-MARTINEZ-BECERRA

Janvier Villars

On behalf of Property Owners Wanting Equal Rights

PETITIONERS/Appellants

vs.

EX-Directors: Mr. Shaul Michael, Mr. Walter Restrepo, Ms. Norma Torres, Mr. Yuri Zamoshchik, Ms. Magda Pineda, Ms. Mariluce De Souza, Mr. Osvaldo Fructuoso, Mr. Aleksejs Nikitins and Ms. Flor Garuz. Plus Attorneys conspiring with Katzman Chandler P.A., Mr. Leigh Katzman, Mr. Justin Smith, Ms. Mary Ann Chandler, Mr. Ramon Abadin, Mr. Russell Landy, Damian & Valori LLP., and their CONSPIRATORS. et. al.

**In Re:** Illegal Representation of Buckley Towers Condominium. **Case:**

**2021-017383-CA-01** RESPONDENTS/Appellees

## OBJECTIONS TO REPORT AND RECOMMENDATIONS
## ON THE INDEPENDENT APPEAL TO DISQUALIFY JUDGE GUZMAN

Pursuant to Fed.R.Civ.Pro 72, "the court makes a De Novo determination of the magistrate judge' order to which specific objections is made." *United States v. Raddatz*, 447 U.S. 667, 573-75 (1980).

Mr. Villars complied with all the required elements to appeal **for the Disqualification of Judge Guzman**; pursuant to Florida Rules of Judicial Admin 2.330 and F.S. §38.10. By filing his affidavit under oath and specifying with particularity the Judge prejudicial practices. Which causes the ~~fear~~ FACT of an unfair trial. Where The complaint must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. The factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, U.S, 127 S.Ct. 1955 (2007).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 1:22-cv-21475-JEM/Becerra

JANVIER VILLARS,

     Plaintiff,

v.

SHAUL MICHAEL, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon *pro se* Plaintiff Janvier Villars' ("Plaintiff") Emergency Petition for Writ of Prohibition (the "Petition"). ECF No. [1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge ECF No. [4]. For the reasons that follow, the undersigned **RECOMMENDS** that the Petition be **DENIED**, this matter be **DISMISSED** without prejudice and that all other pending motions be **DENIED AS MOOT**.

First, as a *pro se* litigant, Plaintiff is entitled to the Court's liberal construction of the Complaint. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (*per curiam*). However, "this leniency does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *Echeverry v. Wells Fargo Bank, N.A.*, No. 16-CV-61635, 2016 WL 9347152, at *1 (S.D. Fla. Nov. 29, 2016) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Even affording the Petition such liberal construction, it is not entirely clear what relief Plaintiff seeks. In the Petition, Plaintiff seemingly seeks to disqualify the state court judge, Judge Guzman, in the receivership action. ECF No. [1]

1

The Petition fails to state any grounds for relief.  Indeed, the Emergency Petition is replete with incomplete and incoherent allegations that cannot possibly amount to any relief that this Court would have jurisdiction to even consider.  Accordingly, the undersigned **RECOMMENDS** that the Petition, ECF No. [1], be **DENIED**, this matter be **DISMISSED** without prejudice and that all other pending motions be **DENIED AS MOOT**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3–1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers in Miami, Florida on June 8, 2022.

JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

3

# United States

## For the Southern District Court of Florida

MIAMI-DADE, FLORIDA

Janvier Villars

On behalf of Property Owners Wanting Equal Rights

PETITIONERS/Appellants

vs.

EX-Directors: Mr. Shaul Michael, Mr. Walter Restrepo, Ms. Norma Torres, Mr. Yuri Zamoshchik, Ms. Magda Pineda, Ms. Mariluce De Souza, Mr. Osvaldo Fructuoso, Mr. Aleksejs Nikitins and Ms. Flor Garuz. Plus Attorneys conspiring with Katzman Chandler P.A., Mr. Leigh Katzman, Mr. Justin Smith, Ms. Mary Ann Chandler, Mr. Ramon Abadin, Mr. Russell Landy, Damian & Valori LLP., and their CONSPIRATORS. et. al.

**In Re:** Illegal Representation of Buckley Towers Condominium in Case: 2021-017383-CA-01

RESPONDENTS/Appellees

→ EMERGENCY ←

## PETITION FOR WRIT OF PROHIBITION

Pursuant to 42 USC §1983, 42 USC §1985, 28 USC § 2106,

Under FedR.CivPro 60(d)(1)&(3) and 60(b), FRAP 8, and 5 U.S. Code § 706,

28 USC §1331, §1335(b), §1343, U.S. Const. Art.I, Art.III, and the 14th Amendment.

**NOTICE IS GIVEN** that Mr. Janvier Villars, Petitioner/Appellant, and on behalf of Property Owners Wanting Equal Rights over their privacy, association, and their private property, plea the Southern District Federal Court for an emergency relief.

FILED BY _____ D.C.

MAY 12 2022

ANGELA E. NOBLE
CLERK U S DIST. CT.
S. D. OF FLA - MIAMI

UNITED DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.  19-23932 CIV-GOODMAN/COOKE

**Janvier Villars, Pro Se**
**Lindaura Ramos, Pro Se.,**
        Plaintiffs, Property Owners

v.

CASE:  1:19 CV 23932 -001

**Katzman Chandler, P.A.** 2009 - 2019
A for profit association
**First Service Residential** 2016-2017
A for profit management/accounting corporation
**AKAM On-Site** 2017-2018
A for profit management/accounting corporation
**Mordechai Zarger** - VPres 2017-2019
**Liliana Calderon** - Board Secretary 09/2017-2019
**Iliana Muxo** - Board Treasurer 09/217 - 2019
<u>DEFENDANTS, the Ass'n Illicit Enterprise</u>



                                                                        /

# CIVIL LAWSUIT   <u>1st AMENDMENT</u>    FOR
## Deceptive Collection Practices and Fraudulent Inducement  .
### Civil Conspiracy, Tortious Interference, Breach of Fiduciary Duties and Wrongful Foreclosure
### Intentional Infliction of Emotional Distress with Demand for Relief for more than $75,001
### Breach of Third-Party Beneficiary Contract
### Conversion and Mail Fraud
### With <u>Demand for Jury Trial</u>

Pursuant to 28a U.S. Code Rule 60(B)(3), (4)
Pursuant to FS 90.104[1], FS 817.155 and Fla.R.Civ.Pro. 1.110(g), 1.210, 1.230, 1.240, 1.260 or 1.180
Request for strict compliance to **F.R.Civ.Pro. 26 Discovery**

## PLAINTIFFS PLEADS FROM THIS U.S. FEDERAL COURT FOR
### PROTECTION
### Under 42 U.S.C. 1981(a), (b) and (c)
Equal Rights Under the Law
### AND
### PROTECTION
### Under 42 U.S.C. 1986
To prevent the deprivation of Due Process  .
FRCP8(d)(1) "In General. Each allegation must be simple, concise, and direct. <u>No technical form is
required</u> and (2) "the pleading <u>is sufficient **if any** one of them is sufficient."</u>
FRCP12(A)"(A) A defendant must serve an answer: (i) within 21 days after being served with the
summons and complaint.

---

[1] FS 90.104   Rulings on evidence. (1)   A court may predicate error, set aside or reverse a judgment, or grant a new trial on
the basis of admitted or excluded evidence when a substantial right of the party is adversely affected

!

## FUNDAMENTAL GOVERNING FACTS

1) Buckley Towers Condominium (hereafter "the Association" or "Ass'n") is a Florida corporation, not-for-profit, and regularly conducting business in Miami-Dade, Florida. Regulated by the FS 607, FS617, FS718 or FS711.

2) The claim of Lien and foreclosure against Defendant, "Ms. Ramos" (hereafter **Ms. Ramos**) was filed on behalf of the Association, fraudulently according to the Association Covenants and FS718.

3) Defendant, Lindaura Ramos - LR - "Ms. Ramos"or "property owner", is sui juris and is a resident of Miami-Dade County, Florida.

4) Defendant, Janvier Villars, (hereafter: **JV**) "Mr. Villars", "property owner" is sui juris and is a resident of Miami-Dade County, Florida.

5) Ms. Ramos is a fee simple owner of the real property described as follows (which hereafter shall be referred to "Property"): UNIT NO. 1412 E, BUCKLEY TOWERS CONDOMINIUM, A CONDOMINIUM,

> ACCORDING TO THE DECLARATION OF CONDOMINIUM, INCLUDING ALL OF THE EXHIBITS, RECORDED IN OFFICIAL PUBLIC RECORDS BOOK 6210, PAGE 329, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

6) The aforementioned Property owned by Ms. Ramos is within the area defined by the Association Declaration as constituting the Association, and thereby governed within the restrictive covenants of the Association.

7) "as a man is said to have a right to his property, he may be equally said to have a property in his rights." So, Property Rights should equal, to the Rights of Property according to James Madison; which the U.S. Constitution 5th Amendment prohibits its seizing or Taking for any public officer use.

8) Plaintiffs may claim right, title or interest in and to the subject property by virtue of their asserted status. Any claimed Property Rights by Mr. Villars, SHOULD NOT BE by any lawful means inferior to the rights provided in the U.S. and Florida Constitution without Due Process or just compensation.

9) Pursuant to the U.S. Constitution, "Supremacy Clause", the Association Declaration of 1969 is by NO LEGAL MEANS SUPERIOR to the U.S. or Florida Constitution or Civil Rights. Therefore, these Plaintiffs, **Property Owners** here **Unite** to **Uphold** their **Equal Rights** to bar further intended infringements to Property Rights or Civil Rights, by the Association Declaration or the FS 718. The non-bargained Ass'n contract by which collaborates with Florida 718 Law to abridge Constitutionally Guaranteed Rights. **This specific matter must be adjudicated in particularity regarding its U.S. Constitutional validity.**

**10)** Pursuant to the Association Declaration, under title "Lien for Assessment" page 16 (Exhibit 1 ), the Association is empowered to assess and collect assessments for common expenses against all Association members' condominium units.

**11)** Pursuant to the Association Declaration, the Association is empowered to file a claim of lien against the owner's Property in the Association "for UNPAID assessment**S**".

**12)** In the Ass'n Declaration, paragraph VI, Section 3, expressly authorizes that any lien RECORD**ED**(*after*)  "shall also secure all costs of collecting the delinquency assessments and reasonable attorney's fees incurred in the collection of such assessments, charges and interests in the enforcement of the lien".

In "**black letter**" the covenants stipulate that once a (condition) lien is recorded,  **then**  additional fees may be collected, thus clearly precluding any right to collect any attorney fees PRIOR to filing the lien. In addition to being prohibited by the Ass'n Covenant pg.33 "Cost of Attorney Fees" clause (EX 17)

**13)** Pursuant to the Association covenants Compliance and Default pg. 32 (Exhibit 2) and the FS718.303 EVERY OWNER member of the Association, regardless of Board Director title, MUST comply with the restrictive covenants and state and federal governing laws.

**14)** The Association is meant to operate by Majority decision of the **17 board directors**, and to ultimately benefit the Association membership/shareholders of the corporation, which includes the member's property rights, privileges and interests.

**15)** The following Defendant Board Officers own property in the Association:

a) **Mordechai Zarger - VPres from 2017- Present** (hereafter: **MZ**)
Property owner of condo units 1301 NE Miami Gardens Drive, Unit: **821W** Folio 30-2205-037-1260, Unit: **PH5W** Folio 30-2205-037-2800, **then as Vice-President he purchased by Quit Claim Deeds under market value the** Unit: 1211W Folio 30-2205-037-1920, Unit: 1224W Folio 30-2205-037-2010, ALL located in Buckley Towers Condominium, Miami, FL 33179.

b) **Liliana Calderon - Board Secretary from 09/2017- Present** (hereafter: **LC**)
Property owner of condo unit **316W** Folio 30-2205-037-0350 in Buckley Towers Condominium 1301 NE Miami Gardens Drv. Miami FL 33179

c) **Iliana Muxo - Board Treasurer from 09/2017- Present** (hereafter: **IM**)
Property owner of condo unit **716E** Folio 30-2205-037-3900 in Buckley Towers Condominium 1351 NE Miami Gardens Drv. Miami FL 33179.

**16)** By Virtue of contract with this non-profit corporation Association, the Management company and legal representative are also bound to the same restrictive covenants which they are empowered to enforce on the membership. That includes the Ass'n Covenant X Restriction pgph 9. Lawful Use, "ALL valid laws...regulations, and ALL Government bodies having jurisdiction SHALL be observed."

**17)** By Virtue of the Law of Agency, under **FS468.4334** each contractor is also bound to the governing laws of the United States and Florida, when conducting or endeavoring any part of their duties for the Association or for or against any of the Association's property members, such as Proper Accounting Practices.

**18)** By Virtue of the Ass'n Declaration, page 6, Powers and Duties of Board Directors (Exhibit 3) and the FS718.111(a)(1) "The Officers and directors of the Association HAVE a fiduciary relationship to the unit owners." That includes protection against constitutional and contractual infringement on the owners.

**19)** By Virtue of extensive legal representation and collaboration with the Association Officers, both Katzman Chandler law firm/collection agency (hereafter: **KC**) and the management companies have a third party implied, contractual auxiliary duty of good faith, fair dealing, lawful and care to each member of the Association, in addition to mandatory compliance to all state and federal governing laws or public policies.

**20)** First Service Residential from 2016-2017 (hereafter: **1stS**), AKAM Onsite 2017-2019 (hereafter: **AKAM**) and were hired by the same Board Officers, for the Association, and expected to maintain **Proper Accounting Practices** as accounting professionals, which are bound to the Declaration Declaration, covenants and bylaws as stipulated in "IV. Powers and Duties of Manager" Pgph 9. Manager's Records. (Exhibit 4)

**21)** Defendant, Ms. Ramos , is a widow of 65 years of age, alone in this country, immigrant with minimum understanding of English as it is her second language, in the lower-working class and with non-legal background or guidance whatsoever - a socioeconomic disadvantaged elderly person. She is the owner of unit 1412E in Buckley Towers Condominium Association.

**22)** Ms. Ramos had no other alternative than to ask for financial help from Mr. Villars, because the foreclosure stipulation payments were overwhelming her. Mr. Janvier Villars, (hereafter: **JV**) Third-party Plaintiff, assisted her by giving her the money, in exchange of 1% of her property. Thereby, granting him legal standing on the future interests of the property in Buckley Towers Condominium, unit 1412E, duly recorded in the Miami-Dade county clerk property records. Attached (Exhibit 5) is the copy of the 1%

quit claim deed. This contractual agreement between Ms. Ramos and Mr. Villars, was <u>imposed on them, in order to help Ms. Ramos Protect her Property</u>, by preventing her defaulting on her undue Foreclosure Stipulation payments; which previously she was only able to meet by taking Cash Advances from her credit cards.

23) Pursuant to the Association, the Directors <u>have</u> absolute contractual or <u>legal right to arbitrarily enforce</u> the Ass'n Covenants, the Florida and U.S. Constitutional laws. HOWEVER, intending to deprive members from their right to "acquire, possess and **protect property**," or to enter into contracts, would directly infringe the Florida Constitution Art. I, § 2 and the "contract clause"; without Due Process. Thereby, also in violation of 42 U.S. Code § 3631(attached Memorandum of Law M5 pg.29).

24) When Ms. Ramos offered to provide proof of all her payments, made to the Association, she was continuously disregarded by the Board Officers (hereafter: the Officers), as well as by the Association management/Accounting companies (jointly hereafter: Ass'n Mgmt) and deliberately by the Association lawyer KC;    Jointly in general terms hereafter: "the **Enterprise**".

25) Because Ms. Ramos does not know how to  write in English a proper legal response to defend against a false debt claim; she kept trying to have the Officers or the Association and Mgmt firm clarify the discrepancy. They refused claiming that it was "out of their hands" because her account is in "Collections," so she had to address it with KC. She called and left voice messages for KC offices to call her back, to arrange a day for her to visit their office to show them her proof of payments,... her calls were never answered.

26) When she tried to present the <u>Best Evidence</u> of payments (her bank receipts, proving to have been cashed by the Ass'n or KC) to the Officers, they refused to address the issue. Ultimately, <u>she was ALSO NOT allowed to present them in court either.</u>    **But for** <u>not affording an attorney</u>  nor being able to force the Enterprise to give access to the Association accounting, so to clear out this discrepancy, she became their victim. Due to her intellectual disability of lack of knowledge of the legal defenses provided by her Association bylaws, or for being unaware of the FS 718.116, the Fla.R.Civ. Pro. 1.110(c), 42 U.S. Code § 3631 in the court proceedings, Evidence codes...or even where to plead for help -- Ms. Ramos was unable to defend against this organized white collar illicit practices; so, she became another suspected class victim of this type of illicit Enterprise.

27) SINCE the case against Ms. Ramos was ultimately **Voluntarily Dismissed with Prejudice** by the **Enterprise**, this case is to address the illegal practices and plead for restitution.

## LEGAL ARGUMENTS
**EACH claim, Averment, Allegation to be IMPLIED as Question of TRUE or be proved otherwise.**

**28) Pursuant to the ACCARDI Doctrine[2]** - under the **Association Lien for Assessment Covenant[3]** (hereafter: Ass'n Covenant); *"The Association shall have a lien on each apartment unit … for UNPAID assessmentS [4] …"* HOWEVER, considering Ms. Ramos paid her 1 month arrears on March **3**, 2017 **plus** an additional $376 to the Association, **three weeks** PRIOR to the Enterprise filing a Lien on March 27, 2017!

The LACK of "UNPAID AssessmentS" condition bars the Association from imposing on Ms. Ramos a Lien and thereby illegally foreclosing on her property. Such lien was UNLAWFUL, Discriminatory and Predatory, ab initio.

Legally prosecuting **without** LEGAL STANDING[5] → IS Legally INTENTIONAL FRAUD on the Court.

**29) Also as a Matter of LAW pursuant to FS 718.116 Lien for Assessments** - NO attorney fees should have been added to an already fraudulent lien.

> *"…If the unpaid assessments, including those coming due AFTER the claim of lien is recorded[6], ARE PAID BEFORE the entry of a final judgment of foreclosure, the association shall not recover attorney's fees or costs."*

**But for Unjust Enrichment reasons**, KC concealed material facts of: 1) cashing or receiving the funds while claiming[7] *"[Ms. Ramos] Refuse and failed to make payment, thereby authorizing the filing of the lien…"* AND 2) their REFUSAL to receive Ms. Ramos proof of payments. Thereby, knowingly and willfully misrepresenting material facts to defraud the court, in order to obtain this fraudulent foreclosure. Which pursuant to FS 673.3111, such ILLEGAL practice disqualifies the lien. Paragraph 33.

**30) According to the FDCPA[8]**, neither the Plaintiff nor KC Collection Agency Law Firm had any LEGAL right to collect that false debt, *a)* by deceiving on the status of the debt, *b)* by misleading and misrepresentation the character amount in Court to be a **five-month debt amount,** *c)* by using legal coercion or *d)* legal-intimidation to collect the false debt *e)* and thereby intentionally defrauding the court into foreclosing against Ms. Ramos' home. Intentionally inflicting, for the past two years, on Ms. Ramos tremendous emotional distress and undue physical anguish.

---

[2] Accardi Doctrine states: "When an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid."
[3] Buckley Towers Association Bylaw - Lien for Assessment - Pg.16 True copy attached. Exhibit -- EX 1
[4] AssessmentS allude, in Black Letter, to MORE than ONE late assessment worth $376.00, before imposing encumbrances.
[5] 34 U.S. Code § 10272 Falsification or concealment of facts shall be subject to prosecution under the provisions of section 1001 of title 18.
[6] Per Katzman Chandler's Notice of Intent to Record a Lien, Nov. 15, 2016, their claims were for: Costs for Certified Mail $10.22 + Attorney Fees $212.50 which equals to $232.50. Easily covered with Ms. Ramos DOUBLE payment of June 2016, on March 3, 2017, 24-Days BEFORE the Enterprise file their lien. Exhibit -- EX 6
[7] Katzman Billing Summary Report dated October 8th 2018 Exhibit -- EX14
[8] FDCPA § 807. False or misleading representations (2) The false representation of (A) the character, amount, or legal status of any debt (10) The use of any false representation or deceptive means to collect or attempt to collect any debt. M6 pg. 29

**31) Under Chapter FS 713.16 LIENS -- Statements of Account**

(2) "The furnishing of FALSE or FRAUDULENT STATEMENTS = **Deprives the person ...of his or her lien.**" " The negligent inclusion or omission OF ANY INFORMATION deprives the person of his lien to the extent the owner can demonstrate prejudice from such act or omission by the lienor."

**32) Pursuant to FS 617.0834,** which applies to non-profit corporation such as the Association,

"[Officer] is not personally liable for monetary damages to any person for any statement, vote, decision, or failure to take an action, ...**UNLESS** (1)(b)The officer's breach of, OR failure to perform, his or her duties constitutes:

*1.* A violation of the criminal law [18 U.S. Code § 1341[9], 895.05, 918.13, 812...], a judgment or other final adjudication against an officer or director ... for violation of the criminal law estops that officer or director from contesting the fact that his or her breach, or failure to perform, constitutes a violation of the criminal law.

*3.* Recklessness or an act or omission that was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

**33) FS 673.3111 provides for the protection against frivolous debt claims against property owners,**

(4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or **an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.**

**CONSIDER,** Ms. Ramos, like most owners in this Association, are NOT given a chance to dispute a debt PRIOR to the Officers sending their account to "Collections" and refuse to provide statements.

**34)** The victims of this organized white collar crime, are **deceitfully coerced** into legally defending **alone** his or her U.S. Constitutional bundle of rights all while the Enterprise CONCEALS from them Material Evidence,[10] by denying access to Association Records to their victims and to any other Association members who intends to help, thereby avoiding verification of their claimed debt against the Association Accounting Records. A right to access which is within the Ass'n Covenants and FS 718.111(12), but for the past 10 years has been continually denied, in order to deter legal redress; thus, willfully violating the Right to Protect Property - **Against Public Policy** - on each of the 560 unit owners, of this Association.

**Depriving Ms. Ramos of her right to Protect her Property by deterring adequate Due Process[11].**

---

[9] FS 18 U.S. Code § 1341 Unlawful filing of false documents or records against real or personal property. Att in Memorandum **M8** pg. 30
[10] FS 90.501 prohibits the concealment of any material evidence, yet state courts allow these enterprises to conceal without consequences.
[11] 15 U.S.C. 1962 False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Attached in Memorandum of Laws - **M12** pg.31

Judge, this case clearly proves the systematic fraudulent practices against defenseless, insular immigrants who for **socioeconomic disability reasons are <u>unable to defend their rights:</u>** <u>afford a lawyer</u>, or for the lack of CARE or protection from the state of the routine infringement of constitutional rights. Therefore, these persons are <u>Selected into a predatory Criteria[12] of Suspected Class</u> of working-class property owners. Ms. Ramos was targeted and victimized, as Mr. Villars has, because she fits perfectly their socioeconomic disadvantage **Criteria.**

**REASSERTION of prior averment.** To avoid reiterating the alleged facts; every succeeding Cause of Action shall be understood to include, by inference every averment within the four corners. Any averment in doubt or any insubstantial procedurala defect, not proven to be prejudicial to the Defendants merits, shall be construed in the light favorable to the Plaintiff. **EACH claim, Averment, Allegation IS IMPLIED as QUESTION for the <u>Defendants to Respond as TRUE or provide meritible defense.</u>**

## COUNT I
### Deceptive Collection Practices
18 U.S. Code § 1341, FS 895, FS 812, FDCPA 807 and following R.1.110(b) and 1.110(g)

35) FRCP8(a)The Enterprise composed in 2017-2018 by Directors OA, MZ, LC, IM assisted by Ass'n lawfirm KC, and management companies 1stS in 2017 and AKAM in 2018; represented a false debt claim of <u>five months arrears</u> of Association assessments, in order to collect from Ms. Ramos the full amount of <u>$1,927.13</u>, thus placing a false lien to foreclose on her home. She was only 1 month behind. See 807 FDCPA "misleading representation in connection to collection of a debt...(A)Amount of Debt"

37)Pursuant to the Ass'n Covenants and the FDCPA 807, that debt SHOULD NOT have been collected. **CONFIRMED by:** KC own - Matter Trust Balances Detail Report[13] <u>filed on October 9, 2018</u>.

 **BOA IOTA Trust - Collections #0247 for Buckley Towers Condominium, Inc.**

 KC received the following THREE payments from the Defendant on,

 03/21/17 Entry No. 705784 for the March 2017 assessment with Check 463, (EX 8) *PLUS*

 03/21/17 Entry No. 705783 Deposit of <u>$376.65</u>, which accords with Check **464** for *June 2016* [14] EX9

 03/21/17 Entry No. 705785 Deposit of 376.65, which accords with <u>Check 465 for July 2016</u> [15] EX10

Bare in mind, the **Enterprise <u>Debt Claim</u> is from : ->   JULY  2016   to November 2016**[16]      EX11

**WHERE:** The **Best Evidence of payments from August 2016 to November 2016** - are attached EX19

**WHERE:** Even if the Enterprise demanded the payment of KC costs for sending their illicit collection letters; the **June 2016 $376 extra** payment made on March 3, 2017 covered their $232.72 fees claimed,

---

[12] Please find on Page 23, Paragraph 71- How the Selected Criteria is accomplished.
[13] Katzman Chandler Trust Account Ledger Exhibit -- EX7
[14] Overpayment -- As it can be observed, she had already made that payment to the Association in 2016, besides that, notice that month WAS NOT listed in the Plaintiff claimed debt. Exhibit -- EX9
[15] July 2016 payment RECEIVED by Katzman own admission in his Trust Account No. 705785 for $376.65 -- Exhibit -- EX10
[16] Copy of the Claim of Lien filed on March 24th 2017. Exhibit -- EX 11

before they filed their lien. **Multiplying the debt to a $10,000 ruling against Ms. Ramos.**

38) For TWO YEARS, Ms. Ramos was forced to make several extra payments, depriving her of those funds/property. While she constantly requested from the Board Officers handling the Association, to address the discrepancy; but, the Enterprise Officers Treasurer **IM** and Secretary **LC**, refused to *HELP* this specific member of the Association.

39) FRCP 10(b) The Enterprise of 2017 to 2018, wantonly deprived Ms. Ramos from property, constitutional freedoms at forcing a debt collection without cause. At the officer MZ, LC and IM violating their Due Diligence, Recklessly Disregarding Ms. Ramos Property Interests in bad faith by forcing Ms. Ramos to endure two years of legal harassment and intimidation, they have thereby participated in this illegal collection per FS617.0834(3). At 1stS in 2017, and AKAM in 2018 site accounting bad accounting practices and failure to correct the mistake every time Ms. Ramos presented the proof of her payments, they willfully contributed to the illegal collection per FS673.111. Then by KC refusing to receive or to reflect the proof of payments they intended to collect, KC deliberately violated FS718.116. Lastly, at this Enterprise collaborating in refusing access to an account ledger per FS718.111(12) to prevent Ms. Ramos' adequate Due Process; they have all contributed to this crime against a third-age lady.

40) Ms. Ramos has suffered great financial, emotional, economical and psychological harm at the willful violation of this Enterprise. The following Counts will go into further details.

**WHEREFORE:**

A. The Plaintiffs here plead for every cause of action to be afforded Due Process of being heard in court and be advocated by the Defendant's attorneys.

B. Pleads this court for the fairness of FRCP8(d)(1) "In General. Each allegation must be simple, concise, and direct. No technical form is required and (2) "the pleading is sufficient if any one of them is sufficient."

C. In equity, for the merits of the pleading to be addressed before the court, where any procedural imperfections can be litigated by the opposing party, substantially proving how any procedural imperfection prejudices their case. **42 USC 1981 Equal Rights Under the Law**

D. For this case to address Defendants Voluntary Dismissal with Prejudice to suffice Cause of Action.

E. For an immediate return of the funds collected illegally which the Defendants have Voluntarily Dismissed with Prejudice against the Association.

### Count II
### Fraudulent Inducement

**40) INSTEAD of *HELPING* Ms. Ramos**, on Dec. 11, 2018, the Board Secretary LC, in collusion with the West Vice President MZ, and the Treasurer IM, filed their own bad-faith Affidavit[17] of false debt. At coercing Ms. Ramos to pay an unsustainable claimed debt. These reckless directors actions proved their wanton disregard for their fiduciary duty of CARE. See FS 617.0834(1)(a), (b) and (3)[18].

**41)** The intentional illegal collection was collaborated by the onsite management/accounting companies 1stS in 2017, then AKAM Manager in 2018 who also filed a sworn bad-faith affidavit[19] of such false debt.

**42)** Then, KC,[20] who collected a payment for their "PROFESSIONAL" *due diligence* in verifying such debt[21], while refusing to acknowledge the collected funds, all while actively refusing to receive the proofs of payments from Ms. Ramos. They have all conspired in claiming that false **July tru November 2016 assessment debt**, against Ms. Ramos. Then overtly collaborating in denying Ms. Ramos the Association Records/accounting ledgers to prevent her from properly defending her case in court.

**43)** Defendants knew or should have known the representation was false; See paragraph 37. But, because the Defendants knew the false debt representation was necessary to induced Ms. Ramos to comply with their debt collections they each had to collaborate to their capacity.

**44)** Ms. Ramos was harmed by this deceitful **Collection** scheme turned wrongful foreclosure. She was forced to make overpayments by obtaining cash advances from her credit card at **28% interest**, thus placing Ms. Ramos' home in a financial and emotional strain. Where, now the credit card company is also suing her for payment, thus further damaging her credit score. In addition to depriving Ms. Ramos of the funds she needs to safekeep her health and well-being at her third-age. Which, at not having anyone to turn to for grievance[22] whatsoever, caused her to suffer an acute emotional and mental distress that has been affecting her physically too.

**WHEREFORE:**

**A.** Ms. Ramos pleads for interim remedies according to 18 U.S. Code § 1341, 18 U.S. Code § 1001, FS 812, FS 895, for special, in equity, tort and any other remedies, the court considers just.

**B.** A permanent injunction on ALL the tortfeasors involved in this ongoing illicit practice against property owners, thereby **granting forensic accounting** on all their collection activities and Trust Account

---

[17] Bad-Faith-Affidavit of Debt by the Association Secretary Liliana Calderon on Dec. 11, 2018 to seal the foreclosure. EX12
[18] FS 617.0834 attached in Memorandum of Laws - Mem 7
[19] Bad-Faith-Affidavit Affidavit claiming a False Debt Sworn by AKAM manager. Exhibit – EX 13
[20] Section 1927 provides "Any attorney or other person admitted to conduct cases in any court …, who multiplies the proceedings in any case unreasonably and vexatiously may be required… to satisfy PERSONALLY the excess costs…"
[21] Clips of the Katzman Chandler Billing Summary Report - clips, which may be verified with those filed in the docket. EX 15
[22] Per FS718.303(3)(b) the Board Officers were responsible for establishing a Grievance Committee to address this type of issues. They disregarded that law, so to exercise their power without any conflict or having to prove their claims.

practices.

**C. A Court SUBPOENA** <u>on the Association</u>, on the <u>Association legal representation law firms</u>, AND on the <u>management/accounting firms who have been contracted</u>. Strictly **Related to** the Buckley Towers Condominium Association - on **ALL ASSOCIATION RECORDS** of the past 7 years -> UNTIL ALL information MANDATED by FS 718, is accessible online, **as required per FS 718**.111(12).

As it has been properly requested over 25 times and directly requested to attorneys[23]  Their continuous **Concealment Scheme** <u>of information IS the first element necessary</u> to execute their **Collections** scheme, thus the apparent reason legislation made Access to Records <u>mandatory</u>.

**COUNT III**
**Civil Conspiracy**

Pursuant 28a U.S. Code Rule 60(b)(3), 18 U.S. Code § 1341, FS 542.335 per Fla.R.C.P. 1.110(g)
With the Reassertion of prior averments and pursuant to Rules 1.110(b) and 1.130(b).

"While criminal conspiracies involve distinct substantive wrongs, civil conspiracies do not involve separate torts. The doctrine provides a remedial measure <u>for affixing liability to all persons</u> who have 'agreed to a commondesign to commit a wrong.' " (Choate v. County of Orange (2000) 86Cal.App.4th 312, 333 [103 Cal.Rptr.2d 339]"

**45)** Through the BuckleyTowers Condominium Association' Declaration (contract "LAW of the Land") and the Condo Act, The Association Board Officers MZ, LC, IM and KC have a POWER OVER the Association[24], and through the Association power over every member/owner.  However, all owners and contractors (KC, 1stS & AKAM) per FS468.4334, including directors MUST comply with the Association covenants and governing laws pursuant also with FS718.303.

**46)**  At the Officers, participating in a wrongful debt claim, they EACH knew it was detrimental in the <u>Association contract.</u>  Yet each wantonly breached fiduciary duty and <u>recklessly</u> harmed Ms. Ramos' property interests, the contract restrictive covenants and her well-being.

**47)** By EACH Defendant overtly denying access to inspect Association Records to members who intended to verify the Association accounting records against the Ms. Ramos claimed debt, these Board Officers willfully breached their fiduciary duty of care owed to the Association member, to accomplish the illegal collection. FS617.0834.

**48)** Then, through 1stS in 2017 and AKAM in 2018 inappropriate Accounting Practices, and collaboration in filing an unsustainable, bad-faith affidavit against Ms. Ramos; AKAM willfully conspired in breaching the third party beneficiary <u>contract</u> duty of care and fair dealing.  Overtly participating in the illegal collection against Ms. Ramos. See FS468.4334

---

[23] Exhibits of the exhausted requests for access to Association records from 2016 to 2019 by Mr. Villars -- EX22
[24] Pursuant to FS 1.120(d) pleader can assume contract was per law, hence Defendants continues concealing Ass'n records.

**49)** At KC conspiring and fraudulently inducing an ILLEGAL Collection scheme, to extort from Ms. Ramos funds which were NOT due... wantonly disregarding her wellbeing and property contractual rights as a member of the Association; KC has intentionally breached the third party beneficiary contract and violated several laws for unjust enrichment purposes...See 807 FDCPA.

**50)** Ms. Ramos was harmed all along the way to the last hearing where the court ruled against her to pay $10,000, see Paragraphs 40 and 44 for further details on her ongoing damages.

**WHEREFORE**

1. Pleads for interim remedies according to FS 772.104 for threefold the collected amounts.

2. Remedies according to Count I and Count II

3. Moves this court pursuant to FS772.11(5) "to advance the trial on the docket" due to her age.

### Count IV

### Tortious Interference

Pursuant 28a U.S. Code Rule 60(b)(3), 18 U.S. Code § 1341, FS 542.335 per Fla.R.C.P. 1.110(g)
With the Reassertion of prior averments and pursuant to Rules 1.110(b) and 1.130(b).:

**51)** As stated in paragraphs 19, 20 and 35 the business relationship between the parties is through the Association Covenants and Contracts, and each member of the Enterprise is aware of the power they have over the membership as well as their duties and limitations of such relationship. Nothing that occurred during this relationship was ever in a vacuum nor without some participation of the other Defendants. Thus the reason why it's considered a Civil Conspiracy.

**52)** The Enterprise's intentional and unjustified interference with the relationship has been specified in each of the actions by each of the Defendants in paragraphs 46, 47, 48 and 49.

**53)** Each of the Defendants illegal actions and tortious interference were delineated in the paragraphs 46, 47, 48, and 49 Each defendant contributed to the extent of their individual powers over Ms. Ramos account standing.

**54)** By the Enterprise deliberately violating property rights and infringing the contract, to harm Ms. Ramos as stated in paragraph 40 and 44. Each defendant disregarded the harm caused to Ms. Ramos.

55) To this date, without recuperating the monies that Ms. Ramos had to pay to prevent the foreclosure, she is further in debt and financially in ruins which causes other unimaginable turn of events against her.

**WHEREFORE**

1. Each defendant should be separately and equally liable for the damages incurred by Ms. Ramos.

## COUNT V
### Breach of Fiduciary Duties

Pursuant 28a U.S. Code Rule 60(b)(3), 18 U.S. Code § 1341, FS 542.335 per Fla.R.C.P. 1.110(g)
With the Reassertion of prior averments and pursuant to Rules 1.110(b) and 1.130(b).

56) The common relationship between Defendants and Plaintiffs is established in paragraph 16-20, 23, 35 and 45. Providing a Fiduciary Duty to the membership as the only true expectation in contractual consideration in exchange of the directors having most of the control over the membership's property. At breaching of this Trust, the directors have violated FS617.0834 for wantonly disregarding member's life and property, for their own interest.

57) All ass'n owners, including the Plaintiffs, are forced on to this Association contract in order to purchase the condominium unit. Each owner MUST repose trust that the Fiduciaries will comply with the fair dealing, good faith, in considerations of the contract covenants and governing laws of the United States, otherwise they are being deceived into giving up their property rights to strangers.

58) Board Directors are required to undertake Fiduciary Duties in addition to the compliance to governing laws when they CHOSE to become Directors. However, their board titles do not grant them absolute power to DISREGARD the Constitutional Rights of any association member.

59) Any type of immunity or Hold-Harmless agreement made by the Association through the Directors, to protect 1stS, AKAM or KC, for any harm caused intentionally or for obeying the Directors' decision which causes any contractual, statutory, federal or constitutional violation against the membership, is a conscious and deliberate violation of fiduciary duty of care, fair dealing and a violation to FS718.111(a), FS718.303(1)(d), FS468.4334, FS617.0834(3)(2)(a)(2), FS825.102(1)(a) and 42 U.S.C. 1983 "causes… any citizen of the U.S. …deprivation of any rights, privileges…secured by the U.S. Constitution…"

60) This Enterprise composed of directors MZ, LC, IM and AKAM and KC willfully collaborated in violating contractual restrictive covenants and state mandated law FS 718.111(12) Access to Ass'n Accounting Records, in order to deceive, deprive and deter constitutional rights; thereby breaching fiduciary duties.

13

**61)** Ms. Ramos suffered damages as stated in paragraph 40, 44, 55, ...

**WHEREFORE**

1) The Plaintiffs pleads for the equal protection under 28 U.S.C. 1343(a)(1) and (3)

1) Ms. Ramos pleads for remedies stated in Count I and Count II

2) Also pleads for an expedited trial due to her third-age and health condition.

## COUNT VI
### Wrongful Foreclosure
Pursuant 28a U.S. Code Rule 60(b)(3), 18 U.S. Code § 1341, FS 542.335 per Fla.R.C.P. 1.110(g)
With the Reassertion of prior averments and pursuant to Rules 1.110(b) and 1.130(b)

**62)** While a legal duty was owed to Ms. Ramos according to the Association Contractual Relationship previously stated in paragraph 56; she was railroaded into foreclosure by the Enterprise illegal collection scheme which works like this:

Pursuant to **FRCP(9)(b)** Each member of **the Enterprise** individual participation is delineated in prgphs: 46 thru 49. The Scheme of   Violating While Enforcing   on the Membership:

**1** **The Enterprise** conceals ALL Association records - Disregarding the FS 718 and Ass'n Covenants.

**2** By simply claiming the previous *board-property management-accounting-lawyer...* left it all unavailable because x, y, z...

**3** Nonetheless, they file a suit with false MERIT of a valid debt, that either the owner MUST pay or gets thrown out!

**4** They double-affidavit confirm to have proof of NEVER RECEIVING the FUNDS, while rejecting proof of payments.

**5** With that, they begin their years of legal-intimidation-extortion to duress their victims into paying the false debt,

**6** While Denying access to the accounting records - so, NO ONE can verify the Enterprise false-debt claims.

**8** Thereby, without the necessary information, their suspected-class-victim has NO ONE to defend her with facts.

**10** Railroading her, as they have others, into a fraudulent foreclosure produced by their **Concealment Scheme**.

**11** Causing a disproportionate adversity/harm borne on Ms. Ramos' socioeconomic disadvantages;

**12** Owners like her are unable to enforce, on this Enterprise, compliance to the covenants and the state laws.

**63)** By this collaborated scheme, the Enterprise has been harming Ms. Ramos' life for 2 1/2 years.  Thus, causing her severe emotional distress and mental anguish, for not knowing *HOW* she was going to avoid foreclosure?, *HOW* to avoid ending up homeless?   or *HOW* to avoid ending up with an unjustifiable $10,000 debt?

**64)** Thus, infringing on her constitutional right of Due Process to Protect her Property, Violating her Freedom from encumbrances of intimidation, harassment, and her rightful privilege to enjoy her property.

**WHEREFORE:**

1) The Plaintiffs pleads for the equal protection under 28 U.S.C. 1343(a)(1) and (3)

1) Ms. Ramos pleads for remedies stated in Count I and Count II

2) Also pleads for an expedited trial due to her third-age and health condition.

## Count VII
### Intentional Infliction of Emotional Distress
With the Reassertion of prior averments and pursuant to R.1.110(b) and 1.110 (g).

65) Ms. Ramos was first deprived of her Constitutional Due Process Right when the Enterprise intentionally deprived her property rights and privileges by denying her the required committee hearing pursuant to FS718.303 (Exhibit 16). Thereby preventing her from presenting her proof of payment - BEFORE her account was sent to "Collections" by the Officers and Mgmt. Pursuant to FS 617.0607 [25]. The Officers MZ, LC, IM and Mgmt 1stS and AKAM, **intentionally disregarded** this statual mandatory process and Association Covenant, in order to force Ms. Ramos to be illegally foreclosed by KC.

66) The Officers, MZ, LC and IM, to assure the illegal collection ended in the court to force a foreclosure, they reinforce their legal debt claim with their bad-faith, false-debt affidavit. Recklessly violating FS 18 U.S. Code § 1341, FDCPA 807, 18 U.S. Code § 1962 and 15 U.S. Code 1692e.

67) FRCP9(b) But for being a low-income, window with no family to assist her pay for an attorney, she had to endure this illegal action more severely, **because it disgracefully attacks her self-worthiness in this country**. When this Enterprise BLOCKED other members of the Association attempting to help her, by denying them Association accounting records, so to avoid the facts from being exposed; it became an obvious wanton attack on her life; which, to any elderly peaceful-living lady, was overwhelming. Thus, it is conceivable to affect this lonely, immigrant, 65 yr. old lady more severely emotional, mentally and physically - up to the Point of Desperation - whereas many, under the same duress, have ended up selling their property for cash, to end this fraudulent, imposed misery.

68) Where whatever little extra funds she had were being diverted to pay triple the Association, and her credit score damaged by the filed lien against her only property. She had nowhere else to turn for money to properly address her aging-health issues and those new health issues caused by this illegal action. Causing her to suffer from acute anxiety, depression, digestive issues, insomnia and cold sweats which affected her physically; causing a lower immune system - thereby getting continuously sick with colds, coughs, vomiting and muscular pains... It is conceivable by any reasonable person, that a third-age lady, who is emotionally, mentally and physically abused, is thereby bound to be more severely affected than the average person.

---

[25] Attached on Memorandum of Laws - **M 10** pg. 31

**WHEREFORE,**

Ms. Ramos pleads this court for interim relief of a permanent injunction on the tortfeasors-in addition to:

A. For restitution pursuant to FS 18 U.S. Code § 1341.

B. For interim remedies according to FS 812.035(1)(a),(b), (d) and (6)

B. Jury trial to address her punitive damages.

## COUNT VIII
### Breach of Third Party Beneficiary Contract
With the Reassertion of prior averments and pursuant to R.1.110(b) and 1.110 (g).
FRCP(d)(3) inconsistent Claims. A party may state as many separate claims or defenses as it has, regardless of consistency. (e) Construing Pleadings. Pleadings must be construed so as to do justice.

69) Defendants 1st Service in 2017 and AKAM in 2018 had a contract with the Association via the Board Officers. Pursuant to FS468.4334 and FS718.111(a) "nothing ... shall be construed as providing or removing a requirement of fiduciary relationship between any manager employed by the association and unit owners."

70) Plaintiffs, like all other class members of the association, are derivative parties of the contract between the association and the contractors. Members pay their maintenance to the association, with contractual expectations to benefit their collective interests; and are forced to TRUST the association won't collaborate with these contractors against the membership.

71) Considering that in Buckley Towers Association owners MUST endure the illegal deprivation of Property Right to inspect the Association Records - we MUST assume the contract between the Association and KC, has been to act legal, in good faith in fair dealing and in compliance with state and federal law, for the direct or indirect benefit of the Association owners/shareholders of the corporation. Then, ANY deviance, which harms owners in any way, MUST be considered as a breach of contract, illegal and as a tortious violation[26].

72) KC collection and legal agency has been endeavoring, by contract, with the Association beyond what is considered "Arm-length" commercial participation. KC has been involved in the Association on everything from: Coercing the illegal Board Elections, Denying Access to Records, Disputing complaints with the DBPR to sandbag compliance investigations, legal misrepresentation in courts, fraudulent re-construction contracts, selective covenant enforcement with legal threats to owners, illegal collection

---

[26] FS542.335(1)(b)(5) Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable. (f) The court shall not refuse enforcement of a restrictive covenant on the grounds that the person seeking enforcement is a third-party beneficiary of such contract.

with demand-to-foreclosure, and fraudulent inducement of multimillion dollar loans. By definition, that places KC in a <u>third party contractual duty</u>, with implied auxiliary covenants intended to benefit the owners/shareholders of the Association; who are NOT within the contract between KC and the Association, but rather implied ultimate benefactors of a non-profit corporation, through the Association Declaration and the FS718.

73) At KC refusing to receive Ms. Ramos' proof of payments, in order to justify the Enterprise' claim of debt for two years; KC committed a breach of contract. Also at instructing or collaborating with the Officers MZ, LC, IM, to deny access of the Association accounting <u>to other Board Directors</u>, to deter any Due Diligence, KC breached the contract at placing at risk of lawsuits the Association.
See 18 U.S.C. 1001(a) *"[w]hoever...within jurisdiction...judicial branch... knowingly"* (1) *"Falsifies, conceals... by trick or scheme or device..."* ALSO FS825.101(c) *"has legal or fiduciary relationship with the elderly...trustee, ATTORNEY."* FS825.102(1)(c) *"Active encouragement...to commit an act...reasonably be expected to result in physical or psychological injury..."*

74) At KC legally filing and representing an exaggerated amount, in order to start collecting **18% <u>into their</u> Trust account;** Depriving Ms. Ramos' Association of every subsequent payment made to the Association, for two years. While still collecting legal fees, costs, interests... he has deliberately violated the third party duty of good faith, fair dealing and care for his self-serving, unjust profit. → Defrauding Ms. Ramos' Association derivative benefits obtained from her payments.

75) Also, when AKAM filed the bad-faith debt Affidavit to provide legal Merit on their false debt collection, lien and foreclosure. By the Agency Law, AKAM is duly responsible for the management and PROPER ACCOUNTING Practices in the Association, and thereby willfully collaborated in this civil conspiracy against an Association owner/shareholder. Thereby breaching the essentials of every contract of good faith, fair dealing. See also FS468.4334 and FS825.102(1)(b) "intentional act".

76) In addition at KC imposing <u>illegally</u> "Attorney fees," when it's specifically precluded, once Ms. Ramos paid the pending 1-month debt, pursuant to FS 718.116, **<u>AND in the Ass'n Covenant</u>**[27]; which Katzman has personally represented for the past decade, thereby proving **knowing and willful fraudulent intent** <u>to harm Ms. Ramos and the Association</u>. A deceptive and unfair **Collections** practice despite the aforementioned, which can be easily observed in prior cases, as **Overt Ongoing Duress** scheme.

---

[27] Association Covenant pg. 33 Pgph 3. **Costs and Attorney's Fees.** "[n]o attorney's fees may be recovered against the Association in ANY such action." Exhibit 17

77) Whereby KC illegal collection practices, legal-extortion and intimidation by using false statements to claim a lien and foreclose on a vulnerable, hispanic immigrant, elederly lady; This Enterprise attorney and management/accounting[28] firms deliberately defrauded the court into foreclosing on a Suspected Class Property owner; placing Ms. Ramos on an overwhelming payment stipulation; **causing her ongoing** severe emotional, financial, physical and psychological harm.

**WHEREFORE**

    **A.** Plaintiff pleads for the court to grant a **SUBPOENA on Katzman Chandler** to provide the details(EX 15) on the claimed Attorney Affidavit of Costs, regarding all communication with the rest of the Enterprise entities, as stated in Exhibit 14 identified in circled numeration. Per Fed.R. of Civ. Pro. for Discovery and Evidence.

    **B. Enjoin a)** the Association, b) Katzman Chandler, P.A. and c)every management/accounting firm, hired by the Association **to COMPLY with FS 718.111(12)** Access to Association Records within 10 days. Otherwise for the Association Directors and Officers, the Officers of Katzman Chandler and the Officers of the management companies shall be held personally responsible to pay $300 per day that they continue concealing until **ALL** Association Records, for the past 7 years, are available online available to ALL property owners, according to the law.

    By their **Concealment Scheme** practice, **a DISPARITY IS established** which is used to further abuse a significantly higher portion of socioeconomic class members than to non-protected class members. The FS718 only protect the very few who can afford a lawyer to force on the Enterprise compliance with Access to Records.

    **C.** Ms. Ramos pleads this honourable court for personal remedies to be addressed in a trial by jury.

    **D.** Ms. Ramos also pleads for the court for leave to amend her pleading for punitive damages, once the pretrial hearing on this complaint are concluded.

    **E.** Immediate disgorgement of all legal fees collected by Katzman Chandler per FS718.116 & Sec. 1927

## COUNT ~~VIII~~ IX
### Conversion

Pursuant to FS895.03(4), FS 775.0844(a)(2)(4) and 15 U.S.C.Sections 1962 and 18 U.S.C. 1341
With the Reassertion of prior averments specifically (Pgphs: 40, 41) and according to R.1.110(g).

78) As asserted in paragraph 5-9 in Fundamental Governing Facts, regarding Ms. Ramos ownership of property in the Association.

79) As asserted in paragraph 23 in Fundamental Governing Facts, regarding Mr. Villars 1% ownership of Ms. Ramos property in the Association, to help her Protect her Property[29] from default.

---

[28] Ass'n management and accounting firms are held liable for collaborating in concealment based on the year participated.
[29] FS 542.335(i)   No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy **unless such public policy is articulated specifically** by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint. See Florida Constitution Art. I, § 2: Right to Protect Property.

80) BOTH Ms. Ramos and Mr. Villars have U.S. and Florida Constitution inalienable freedoms, privileges, rights including property rights; which cannot be infringed by any contract, Association Declaration or the FS718. Pursuant to the 5th & the 14th Amendment, the Ex-Post Facto law and the Acquired Rights Doctrine.

81) At depriving Ms. Ramos of her freedom from encumbrances and undue financial burdens, nuisances, legal intimidation or oppression * "peaceful possession of proper use of property", the Enterprise composed of directors MZ, LC, IM, management in 2017 1stS, and in 2018 AKAM and KC law firm; has willfully harmed her and her property, for their individual/joint gain. Because ONE MONTH late payment does NOT affect the Association significantly as much as the harm they have deliberately caused on Ms. Ramos. Thus, conflicting with the mandated *Good faith and fair dealing* imposed on every contract.

82) While **Selectively Enforcing** covenants and laws **in furtherance of their illicit activities**, and WITHOUT any legal consequences, this Enterprise intentionally, by conduct and routine practice **illegally take property interests** away afforded to all owners by the Ass'n Covenants:

> Association Declaration
> Section X. **RESTRICTIONS** - (Exhibit 18)

Pgph 6. **Nuisances.**
> "No nuisances shall be allowed upon the condominium property nor any use or practice with is the source of nuisance which interferes with the * peaceful possession and proper use of the property by its residents."

Pgph 8. **Lawful Use.**
> "No **immoral, improper, offensive or unlawful use** shall be made of the condominium property [rights and interests are considered within property]; and and ALL valid laws ... of ALL governmental bodies having jurisdiction shall be observed."

83) Such covenant DOES NOT EXCLUDE, in black letter, the violations against the property owners by the Ass'n Officers, acting as "the Association". Because the Ass'n Covenant "Lawful Use" states "ALL Valid Laws... shall be observed"; therefore, the Enterprise actions would prove to be a reckless disregard of Constitutional, statutory and contractual rights, **on the Suspected Class.**

84) **Where** Ms. Ramos ONLY payment **truly due** was for July 2016; which Ms. Ramos made on **March 3, 2017,** to the Association; then applied into **KC Trust Account** on March 21, 2017. This clearly proves the conspiracy between the Ass'n Officers MZ, LC and IM, the Management/Accounting firm 1stS, AKAM and KC law firm/collection agency, in defrauding property owners by collecting illegal debts covertly under color of law. See 42 U.S.C. 1983 *"under ANY statute...causes...deprivation of any right."*

85) **NONETHELESS**, on **MARCH 27, 2017,** (6-Days) **AFTER** receiving the payment for July 2016, the Enterprise filed the **Claim of Lien**[30] against Ms. Ramos' home, and continue multiplying their FALSE debt by __2600 % → from $376 to an Exaggerated $10,000.00!__ See 18 U.S.C. 1962 *"received any income derived, directly or indirectly, from a pattern...or collection of an unlawful debt..."*
That Claim of Lien was prohibited under FS 713.16 and FS 673.3111, See pgrph 31 and 33.

86) Ms. Ramos endured harm as stated in paragraph 40,44, 55 ...

**WHEREFORE**

1. Pleads for remedies as stated in Count I and Count II and those pursuant to this cause of action.
2. Remedies by FS817.061, FS775.082(7), FS 895.05(6), U.S.C. Sections 1963 and Section 1964
3. General remedies pursuant to Fla.R.C.P. 1.110(b) and punitive damages by Trial by Jury

**COUNT IX**
**Mail Fraud**
18 U.S.C. 1341 with Remedies by FS775.082(7), FS 895.05(6), U.S.C. Sections 1963 and Section 1964

87) Ms. Ramos, like many other property owners in associations, are systematically defrauded by an illegal **Collections** Scheme accomplished through civil conspiracy as specified in Count I, Count III paragraph 46 thru 49.

__18 USC 1341 Mail Fraud Elements DEVICE__ FRCP 9(b) "with particularity the circumstances"
The **Enterprise** fraudulent **Collections** Scheme / **covert illicit practices** are accomplished by,

a) **INSTEAD** OF sending   from   the Association or accounting firm, a request for late assessment payment due,

b) The Enterprise commissions KC collection agency / Law Firm, to collect by implied *legal* coercion through **U.S. Post Certified Mail**[31]. Claiming to request proof of payment, BUT later refusing it.

c) **WANTONLY** depriving the association member of (FS 617.0607 and FS 673.111) a chance to dispute the claimed debt directly with the Association's **on-site** management-accounting firms First Service and AKAM. Whose professional duty to the association is of Proper Accounting Practices - to correct any account mistakes.

d) INSTEAD, the Enterprise attorney sends by U.S. Post a LEGAL letterhead collection letter, demanding the full payment, with additional costs (~$250), thus the debt starts to accrue exponentially against the property owner. Thereby, legally extorting more money with the legal threat-to-be-sued by the mighty  "association"  -- Lawsuits, which are well known, to seldomly rule in favor of the unit owner, **Pro se**... as it is evidentiary in the Ms. Ramos

---

[30] Attached in Exhibit -- EX 20
[31] Section 1341 provides legal standing for RICO claims for Katzman using the U.S. Post to collect illegal debt.

foreclosure case. **Bare in mind,** *this is for having ONLY* **_1_** *MONTH* mishap *in the monthly assessment.*

e) This is so the Enterprise-attorney-collection agency can LEGALLY place **INTO HIS** **Trust Account** every payment the Association receives to cure the claimed debt. While multiplying legal costs; so the **Pro se** - Suspected Class Association owner - **can NEVER catch up** and thereby forcing her into default or into a Point of Desperation of considering selling her property for undermarket value.

f) A **covert, bad-faith "Collections" scheme**- deceptive and unfair practices against the Association owners/shareholders, **which allows the Enterprise → to profit thru** their **Trust Account** by collecting an **18% interest ON their:** false debt + Collection expenses + the sum of subsequent assessment payments + late penalties + attorney fees + pre-litigation + post-litigation + "which continue to accrue during the pendency of this action"[32]... **until the case is settled.**

g) Thereby, ALSO illegally depriving the Association of those assessment funds **until then**... While THEY unjustifiably enrich themselves through this illegal-debt Collection and their Fraudulent Lien scheme.

h) All the while, providing the Enterprise with the right to LEGALLY claim, in court Ms. Ramos' payments are, "insufficient" (EX 15(23)), "full payment has not been received" (EX14(2,5,6,7,...), "the Debt is *still Pending*" or is "*material issue*" in the case; **thereby** damaging her property interests and personal reputation in her community.

i) This Enterprise illegal Collections practices routinely places Suspected Class Property Owners **at risk of losing their home** by illegal debts or *at best*, going from owing ONE month assessment due, worth $376 → **to a** DURESS debt of almost **$10,000!**

70) Ms. Ramos sustained great harm as stated in paragraph 40, 45, 55, ...
**UNLESS** the Defendants can **prove with MERITS** this is NOT their practices - **It MUST be Judicially Noticed**

Unfair + Unreasonable + illogical = **I N J U S T I C E** - yet, permitted by state practice.

**WHEREFORE:**

Defendant, Ms. Ramos humbly moves this honorable court for the following interim remedies pursuant to **FS 895:**

1. For immediate reimbursement of the paid Stipulation payments, back to Ms. Ramos plus the 18% interests that they illegally collected.

2. Interim Remedies according to FS 895.05(6), **and** by Trial Jury on U.S.C. Sections 1963 and Section 1964

   A. **PREVENT, by a court order,** the official records of this case; on any part of it from

---

[32] Asserted by Katzman Chandler in their Complaint to Foreclosure pg. 10. paragraph 44 and 45. Exhibit 21

being removed, redacted, or concealed from the electronic database. This is so it can serve future victims of this type of Enterprise illegal collection practices.

**B.** Enjoin permanently the Plaintiff board Officers for such reckless treatment towards an elderly under their fiduciary duty of care pursuant to FS 825.101 (see M18 pg.34).

**C.** grant full Disgorgement and disclosure of all Katzman Chandler collection agency held Association's Trust Accounts, for their unjust enrichment, intentional violation of FDCPA laws and abuse on an elderly lady.

**D.** Remedy pursuant to FS 542.335 (j)
"A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, **PERMANENT injunction**. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."
On the Board Officers Mordechai Zarger, Liliana Calderon and Ileana Muxo for their wanton breaches of fiduciary duty.

**E.** Award Ms. Ramos the civil penalties pursuant to FS 18 U.S. Code § 1341, of $2,500 for every false instrument filed which emotionally and mentally affected Ms. Ramos' well-being. Because at receiving every one of the following instruments against her home; each immediately and continuously caused a damaging effect on her health and mental state, for months leading to the and in anguish of the next false instrument.

| | | |
|---|---|---|
| 1. | **Lien** enforcing their false debt | **Filed on March 27, 2017** |
| 2. | Lis Penden filed against her property. | Filed on July 21, 2017 |
| 3. | Complaint to Foreclose | Filed on July 21, 2017 |
| 4. | Notice of Action published in Daily Business Review | Filed on October 27, 2017 |
| 5. | Order of Default Judgment | Filed on September 5, 2018 |
| 6. | AKAM Property Mgmnt. Affidavit of Indebtedness $6,494.64 | Filed on September 27, 2018 |
| 7. | Motion for Default Final Judgment on foreclosure | Filed on October 9, 2018 |
| 8. | The imposed false late fees | Filed on October 9, 2018 |
| 9. | Affidavit of prejudgment interest of $461.11 | Filed on October 9, 2018 |
| 10. | Katzman affidavit of legal costs $4,224 | Filed on December 6, 2018 |
| 11. | Board Secretary false debt Affidavit - statement | Filed on December 12, 2018 |
| 12. | Final Judgement of Foreclosure | File December 12, 2018 |
| 13. | Notice of Foreclosure Sale | Filed on December 26, 2018 |

**F. Remedies according to Section 1964 for violations pursuant to Section 1962(d)**

**THIRD-PARTY Disclaimer**

The third-party, Mr. Villars, sole interest in this case is in assisting in the protection of constitutional rights and in defense of the insular minority class; who have been routinely victimized by this type of association Enterprise. **He only PLEADS for this court,** to consider the evidence provided, as well as their routine deceitful misconduct; which many property owners have had to endure, because of their **lack of proper civil protection,** against these organized white collar crime. Thereby, conflicting with the "*guaranteed* equal protection"[33]clause of the U.S. Constitution.

**NOTE:** The "Put Something Back" program is a diversion, used by the fraudulent lawyers, which should be thoroughly verified for legitimacy and validity, before accepting it as a *true* "available solution". Because just like the DBPR, it fails to do what it is intended and being financed for, while enjoying zero governmental supervision.

Under penalties of perjury, I s/Janvier Villars, declare to have helped Ms. Ramos put this counterclaim/motion to vacate together. All stated herein are Ms. Lindaura Ramos' provided proofs and stated claims of facts, that I believe to be true to the best of my knowledge and personal verification of the evidence. The counterclaim and motion for vacate intentions are to do substantial justice for Ms. Ramos, and to bring to formal conciousness, to the courts of the routine illicit conduct of discrimination against defenseless suspected class of citizens in Florida.

_____                              _____
Janvier Villars Full Name                               Janvier Villars, **Pro-Se**

I, __Lindaura Ramos__ agree completely with the statements of claims as facts as asserted on my behalf, on this counterclaim/motion to vacate, and humbly appeal to this court for my constitutional right for an expedited court resolution be granted accordingly.

_____                              _____
Lindaura Ramos, Pro Se                                  Signature

STATE OF FLORIDA  ss
COUNTY OF MIAMI-DADE
BEFORE ME, an officer duly authorized under the laws of the State of Florida to administer oaths and take acknowledgements, personally appeared before me, Mr. Janvier Villars, known to be the individual described in and who executed the foregoing instrument, and acknowledged before me this _____ day of September 2019, who produced, as identification:



_____   Florida Driver License No.
NOTARY PUBLIC No.      BY: V 462 420 73 28 0        √ 14 2023
                            of the State of Florida    My Commission expires

Notary Public State of Florida
Maritza Escobar
My Commission GG 334487
Expires 05/14/2023

---

[33] "prejudice against discrete and insular minorities may be a special condition, which tends seriously to curtail the operation of those political processes ordinarily to be relied upon to protect minorities, and which may call for a correspondingly more searching judicial inquiry." -*U.S. v. Carolene Products Co.*, 304 U.S. 144, 153 (1938). See also U.S.C. Section 1983 -- Memorandum of Law - M13 pg.32

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

## Case Number: 22-21475-CIV-MARTINEZ-BECERRA

JANVIER VILLARS,

      Plaintiff,

vs.

SHAUL MICHAEL, *et al.*,

      Defendants.

_____/

## ORDER ON REPORT AND RECOMMENDATION

**THE MATTER** was referred to the Honorable Jacqueline Becerra, United States Magistrate Judge, pursuant to 28 U.S.C § 636 for a ruling on all pre-trial, non-dispositive matters, and for a Report and Recommendation ("R&R") on all dispositive matters. (ECF No. 4). Judge Becerra filed an R&R on *pro se* Plaintiff Janvier Villars' Emergency Petition for Writ of Prohibition ("Petition"), recommending that the Petition be denied and this case be dismissed without prejudice. (ECF No. 7). After conducting a *de novo* review of the record and Objections, (ECF No. 10), it is hereby:

**ADJUDGED** that United States Magistrate Judge Becerra's Report and Recommendation, (ECF No. 7), is **AFFIRMED and ADOPTED.** Accordingly, it is

**ADJUDGED** that

1. Plaintiff's *pro se* Petition, (ECF No. 1), is **DENIED.** This case is **DISMISSED WITHOUT PREJUDICE.**

2. The Clerk of Court is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30 day of June, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record

FILED BY_____AP_____D.C

*Aug 24, 2021*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 24, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  20-13485-BB
Case Style: Lindaura Ramos, et al v. Katzman Chandler PA, et al
District Court Docket No: 1:19-cv-23932-MGC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

No. 20-13485

District Court Docket No.
1:19-cv-23932-MGC

LINDAURA RAMOS,
JANVIER VILLARS,

Plaintiffs - Appellants,

versus

KATZMAN CHANDLER PA,
2009-2019 A for profit association,
FIRST SERVICE RESIDENTIAL,
2016-2017 a for profit management/accounting corporation,
AKAM ON-SITE,
2017-2018 A for profit management/accounting corporation,
LILIANA CALDERON,
Ass'n Secretary 2017 to present,
MORDECHAI ZARGER,
Ass'n V.President 2017-present, et al.,

Defendants - Appellees,

UNLIMITED PROPERTY MANAGEMENT,
2019 to present A for profit managment/accounting corporation, et al.,

Defendants.

Appeal from the United States District Court for the
Southern District of Florida

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: July 26, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13485
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-23932-MGC

LINDAURA RAMOS,
JANVIER VILLARS,

                                        Plaintiffs - Appellants,

versus

KATZMAN CHANDLER PA,
2009-2019 A for profit association,
FIRST SERVICE RESIDENTIAL,
2016-2017 a for profit management/accounting corporation,
AKAM ON-SITE,
2017-2018 A for profit management/accounting corporation,
LILIANA CALDERON,
Ass'n Secretary 2017 to present,
MORDECHAI ZARGER,
Ass'n V. President 2017-present, et al.,

                                        Defendants – Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida

---

(July 26, 2021)

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Lindaura Ramos and Janvier Villars, proceeding pro se, appeal the district court's dismissal with prejudice of their amended complaint as an impermissible shotgun pleading. We affirm.

The complaint contained conclusory, vague statements and immaterial facts. Ms. Ramos and Mr. Villars asserted multiple claims against each defendant, without making clear which defendants were alleged to be responsible for which acts as to which plaintiff. The district court therefore did not abuse its discretion when dismissing the complaint.

I

The appellants filed a pro se 28-page complaint containing approximately 77 paragraphs against the Buckley Towers Condominium Association ("the Condo Association"); board members of the Condo Association; First Service Residential; accounting firms for the Condo Association-AKAM On-Site ("AKAM") and

2

Unlimited Property Management ("Unlimited"); and the Condo Association's law firm, Katzman Chandler ("the Law Firm"). *See* D.E. 1 at 1, 3-5. Ms. Ramos alleged that she owned a unit in the Condo Association for which she struggled to pay the fees the association assessed. *Id.* at 2-3, 5. Ms. Ramos then sold one percent of her unit to Mr. Villars in order to pay the fees. *Id.* at 5. The Condo Association placed a lien on the unit that the appellants allege was improper because it did not first attempt to collect the fees and because there should have been multiple missed payments before a lien was placed. *Id.* at 3, 7. Ms. Ramos attempted to resolve the issue with the Law Firm, but it did not respond to her. *Id.* at 5. Ms. Ramos also alleges that the board members ignored her proof of payments. *Id.*

The complaint further alleged that the accounting companies were "expected to maintain **Proper Accounting Practices** as accounting professionals." *Id.* at 4 (emphasis in original). The complaint stated that "[t]his Motion to Vacate is intended to present . . . wanton misconduct by the [Board] Officers in confederacy with the management/accounting company and [the law firm]; **the Enterprise**." *Id.* at 6 (emphasis in original).

In a "Legal Argument" section, the appellants asserted that the Condo Association lacked authority to place a lien on the unit because Ms. Ramos had paid her fees three weeks prior to the lien being placed. *Id.* The appellants also claimed that the Law Firm was unjustly enriched by collecting fees based on the fraudulent

lien, refused to look at Ms. Ramos' proof of payment, and defrauded the state court by making material misrepresentations. *Id.* at 6-7.

The complaint further asserted a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, and Florida law for the attempt to collect a false debt, as Ms. Ramos allegedly owed one month of assessments, not the five months claimed. *See id.* at 7. The related concealment of Ms. Ramos' payment records, the complaint claimed, violated due process. *Id.* at 7-8. The complaint stated that "[t]o avoid reiterating the alleged facts; every succeeding [c]ause of [a]ction shall be understood to include, by inference every averment within the four corners." *Id.* at 8.

The appellants asserted the following claims: (1) deceptive collection practices and fraudulent inducement; (2) civil conspiracy, tortious interferences, breach of fiduciary duties, and wrongful foreclosure; (3) intentional infliction of emotional distress ("IIED"); (4) breach of third-party beneficiary contract; (5) conversion and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; and (6) conspiracy to interfere with civil rights. *Id.* at 8-20.[1]

---

[1] The counts as listed in the complaint are misnumbered and for clarity they are numbered here in order of appearance.

The counts in the complaint containing multiple causes of action did not specify the conduct applicable to each cause of action. *See e.g., id.* at 8-13, 18-22. All counts were alleged against all of the defendants and, though some conduct was identified as being exclusive to specific defendants, distinct offenses or violations were not identified. *See id.* at 8-22. For example, as to Count 1, the appellants alleged that the Condo Association's board members refused to help Ms. Ramos and concealed accounting records, that the Law Firm collected false debts as instructed by the Condo Association, and that AKAM filed a bad-faith affidavit of such debts. *See id.* at 8-11. Furthermore, Count 1 alleged that "the Officers, refus[ed] to correct an Association['s] wrongful debt claim, which they knew [ ] was detrimental to the Association['s] contract with the member's Property and LIFE, the Enterprise wantonly breached [its] fiduciary duty." *Id.* at 12 (emphasis in original). At the end of the complaint, Mr. Villars attested that his "sole interest" was "assisting in the protection of constitutional rights and in defense of the insular minority." *Id.* at 27.

The Condo Association, First Service, and the board members moved to dismiss the complaint. *See* D.E. 4 at 1. AKAM joined the motion to dismiss. *See* D.E. 5 at 1.

The defendants argued that the lawsuit was barred by defensive non-mutual collateral estoppel because it shared the same common nucleus of facts as five prior lawsuits litigated and adjudged in state court between the plaintiffs and the Condo

Association, the Law Firm, Liliana Calderon, Ilina Muxo, and Mordechai Zarger. *See* D.E. 4 at 1, 8-14 (citing to *Buckley Towers Condo., Inc. v. Villars, et al.*, Case No. 2016-000447-CC-23 (Fla. Miami-Dade County Ct. Jan. 12, 2016); *Villars v. Buckley Towers Bd. Of Dirs., et al.*, Case No. 2016-004101-CA-01 (Fla. 11 Cir. Ct. Dec. 22, 2017); *Buckley Towers Condo., Inc. v. Villars, et al.*, Case No. 2016-007415-CA-01 (Fla. 11 Cir. Ct. Mar. 24, 2016); *Villars v. Katzman Chandler Law Firm, et al.*, Case No. 18-029097-CA-01(06) (Fla. 11 Cir. Ct. Aug. 12, 2019); *Buckley Towers Condo., Inc. v. Villars*, Case No. 19-14571-CA-01(06) (Fla. 11 Cir. Ct. May 30, 2019)). Similarly, these defendants argued the lawsuit was precluded because the state court cases—the five prior lawsuits and an additional foreclosure lawsuit brought by the Association against Ms. Ramos and resulting in a default final judgment of foreclosure against her, *Buckley Towers Condo., Inc. v. Ramos, et al.*, Case No. 2017-013000-CC-23 (Fla. Miami-Dade County Ct. Dec. 17, 2018)— formed the basis for this lawsuit and had all been dismissed without appeal. Therefore, the defendants argued, reaching the merits of this lawsuit would amount to a federal district court sitting in direct review of a state court decision in violation of the *Rooker-Feldman* doctrine. *See* D.E. 4 at 8. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

6

The defendants also identified several deficiencies with the complaint. For example, there were no allegations that (1) First Service was a debt collector or that the board members attempted to collect a debt from Ms. Ramos and Mr. Villars in Count 1; (2) specified overt actions were undertaken by each defendant in Count 2; (3) the contracts between the Condo Association and its lawyers or AKAM benefited either plaintiff; and (4) the collection of money was illegal under RICO. *See* D.E. 4 at 10-11. They also noted, in relation to some of the claims, that it was unclear whether Mr. Villars raised a claim based on his ownership interest in the unit or was a third-party to the suit based on the third-party disclaimer in the complaint stating "Mr. Villars [ ] sole interest in this case is in assisting in the protection of constitutional rights and in defense of the insular minority class." D.E. 1 at 27. The appellants filed a response to the motion to dismiss. *See* D.E. 7.

The district court *sua sponte* struck the complaint without prejudice and denied any pending motions as moot. *See* D.E. 26 at 1, 3. The district court ruled that the complaint was an impermissible shotgun pleading that failed to comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure. *See id.* at 2. The district court ruled that the complaint was full of conclusory, vague, and immaterial facts that did not obviously connect to a particular cause of action and contained citations to laws and statutes whose application were unclear (citing the "Legal Argument" section of the complaint). *See id.* The district court further noted that Ms. Ramos and

Mr. Villars "lump[ed]" four state law causes of action in Count 2, and that they also

cited a federal mail fraud statute in support of those claims, but failed to delineate

what facts correlated to what cause of action. *See id*. The district court pointed out

that the factual allegations under the RICO claim did not seem to pertain to such a

cause of action. *See id*. at 2-3. Thus, the district court struck the complaint. It gave

the plaintiffs time to file an amended complaint, and explained the pleading

requirements under Rules 8(a) and 10(b). *See id*.

The plaintiffs filed a 24-page amended complaint with approximately 87

paragraphs against the same defendants, with the exception of the Condo

Association and Unlimited Property Management. *See* D.E. 27 at 1. The amended

complaint reiterated verbatim the original complaint's factual allegations, its "Legal

Argument" section, the adoption of the factual allegations for each count, and Mr.

Villars's third-party disclaimer. *See id*. at 2-8, 23. It did not reassert causes of action

for a RICO violation or for conspiracy to interfere with civil rights, but it did add a

claim for mail fraud. *See id*. at 20. In response to the district court's order, the

plaintiffs divided the counts and discussion according to causes of action. *See, e.g.*,

*id*. at 8-10. The amended complaint, however, largely reiterated the discussion of

each cause of action from the original complaint. *See id*. at 8-22.

The amended complaint also made minor changes to the substantive counts.

For example, it reduced its discussion of the IIED claim and, regarding the contract,

8

added a paragraph that further explained the third-party beneficiary relationship with the Condo Association's subcontractors. *See id.* at 15-16. The amended complaint, however, still largely failed to specify what conduct pertained to each individual defendant's potential liability. It also retained such statements as "But for being a low-income, [widow] with no family to assist her [to] pay for an attorney, she had to ensure this illegal action more severely, **because it disgracefully attacks her self-worthiness in this country**." *Id.* at 15 (emphasis in original).

The amended complaint further alleged a whole raft of crimes and tortious conduct on the part of the defendants, yet made no distinction as to which defendant was responsible for which act. In addition, the conduct that was alleged to have taken place against Mr. Villars was at best unclear. *See id.*

The district court subsequently entered an order *sua sponte* dismissing the amended complaint and closed the case. *See* D.E. 31 at 1. The district court found that the plaintiffs had not cured the defects that required the striking of the initial complaint and dismissed the action with prejudice. *See id.* This appeal followed.

## II

We review the dismissal of a shotgun pleading under Rule 8 for abuse of discretion. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). A document filed *pro se* must be liberally construed and should be held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007). Liberal construction of pro se pleadings, however, "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

### III

A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint for failing to comply with Rules 8(a) and 10(b). *See Shabanets*, 878 F.3d at 1294. A district court is generally required to allow a litigant at least one chance to remedy any deficiencies before dismissing a complaint with prejudice. *See id.*

Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim" showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Pleadings of this sort fail to give defendants adequate notice of the claims against them and the grounds upon which the claims rest. *See Shabanets*, 878 F.3d at 1295. Shotgun pleadings waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts. *See id.*

We have previously described four types of shotgun pleadings: (1) a complaint containing multiple counts where each count adopts all the allegations of all the preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate each cause of action or claim for relief into different counts; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). The amended complaint here implicated each of the above-mentioned forms of shotgun pleadings in some form. Although a district court is required to show some lenience towards *pro se* parties, that lenience is not boundless. *See Erickson*, 551 U.S. at 94. Even after liberally construing the amended complaint, the district court did not err in dismissing it with prejudice after providing one opportunity to amend. The district court provided examples of some of the errors in the original complaint, such as noting that the complaint made vague allegations and had a legal discussion unconnected to any counts, and the motion to dismiss identified additional deficiencies. *See* D.E. 4 at 10-11; D.E. 26 at 2-3.

In response to the district court's initial order, the plaintiffs filed a nearly identical complaint that still constituted a shotgun pleading on several fronts.

*Compare* D.E. 1 *with* D.E. 27. The amended complaint (1) made vague, conclusory allegations, (2) did not identify specific violations by specific defendants, and (3) did not separate the "Legal Argument" section into counts. *See* D.E. 27 at 8-23. Given the deficiencies in the amended complaint, the district court did not subject the appellants to a heightened pleading standard. Nor did it fail to liberally construe that complaint. *See Weiland*, 792 F.3d at 1321-23; *Shabenets*, 878 F.3d at 1295. On this record, the district court did not abuse its discretion in declining to allow more than one opportunity to amend before dismissing with prejudice. *See Shabenets*, 878 F.3d at 1294.[2]

## IV

The district court did not abuse its discretion by dismissing the amended complaint with prejudice. We therefore affirm.

**AFFIRMED.**

---

[2] As to any other issues raised by the appellants, we summarily affirm.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 26, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-13485-BB
Case Style:  Lindaura Ramos, et al v. Katzman Chandler PA, et al
District Court Docket No:  1:19-cv-23932-MGC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L.

Richardson, BB at (404) 335-6174.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion

**1:24-cv-25004-RAR** Villars v. Judges of the Third Disctrict Court of Appeal of Florida et al
Rodolfo A. Ruiz, II, presiding
Date filed: 12/19/2024
Date terminated: 12/22/2024
Date of last filing: 01/08/2025

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* *Entered:* | 12/19/2024 12/20/2024 | ❶ Petition (Complaint) for Writ of Mandamus |
| 2 | *Filed:* *Entered:* | 12/19/2024 12/20/2024 | ❶ Clerks Notice of Judge Assignment |
| 3 | *Filed:* *Entered:* *Terminated:* | 12/19/2024 12/20/2024 12/22/2024 | ❶ Motion for Leave to Proceed in forma pauperis |
| 4 | *Filed & Entered:* | 12/22/2024 | ❶ Administrative Order |
| 5 | *Filed & Entered:* | 12/27/2024 | ❶ Notice of Filing Proposed Summons(es) |
| 6 | *Filed & Entered:* | 01/06/2025 | ❶ Petition (Complaint) for Writ of Mandamus |
| 7 | *Filed & Entered:* | 01/06/2025 | ❶ Order Striking |
| | *Filed & Entered:* | 01/07/2025 | ❶ Set/Reset Deadlines/Hearings |
| 8 | *Filed & Entered:* | 01/08/2025 | ❶ Clerk's Receipt |
| 9 | *Filed:* *Entered:* | 01/08/2025 01/09/2025 | ❶ Petition (Complaint) for Writ of Mandamus |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/31/2025 12:51:19 | | |
| PACER Login: | janvier269 | Client Code: | |
| Description: | History/Documents | Search Criteria: | 1:24-cv-25004-RAR |
| Billable Pages: | 1 | Cost: | 0.10 |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## Case No. 19-23932-Civ-COOKE/GOODMAN

LINDAURA RAMOS, *et al.*,

      Plaintiffs,

vs.

KATZMAN CHANDLER, P.A., *et al.*

      Defendants.

_____/

## ORDER OF DISMISSAL

THIS CASE is before the Court on *pro se* Plaintiffs' Amended Complaint (ECF No. 27) filed on July 31, 2020. On July 24, 2020 the Court issued an Order striking the Complaint because it was "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" included "citations to numerous laws and statutes whose application to Plaintiffs' causes of action [was] unclear;" and failed to "separat[e] into a different count each cause of action or claim for relief." ECF No. 26 at 2-3. Plaintiffs were given leave to amend the Complaint in a manner consistent with the Court's Order by July 31, 2020. *See* ECF No. 26.

The Court has reviewed the Amended Complaint and is otherwise fully advised of the premises. Plaintiffs' Amended Complaint does not cure the defects that required the striking of the initial Complaint. Since Plaintiffs have been given an opportunity to amend and have been unable to conform the allegations to the applicable standards of pleading, and this Court's Order, this action is dismissed with prejudice.

Accordingly, it is **ORDERED AND ADJUDGED** that this action is **DISMISSED WITH PREJUDICE**. The Clerk will **CLOSE** this case. The Court **DENIES** *as moot* any pending motions.

**DONE and ORDERED** in chambers, at Miami, Florida, this 17th day of August 2020.

_Marcia G. Cooke_

MARCIA G. COOKE
United States District Judge

Copies furnished to:
_Jonathan Goodman, U.S. Magistrate Judge_
_Lindaura Ramos, Pro se_
_Janvier Villars, Pro se_
_Counsel of Record_

# Exhibit B

## Title:

The First and Last - in a 30-day period - of SEVEN illegal Alterations

of the Association Corporate Records in Sunbiz.org by

<u>Florida BAR Licensed Attorney</u> Leigh Katzman.

Recorded 30 days before the first Scheduled <u>Evidentiary Hearing</u>

AS IF counting this fraud would not be permitted to be addressed by

Judge Guzman. But rather stayed to afford him his last minute

Petition for Receiverhip.

## Purpose:

Demonstrates falsification of corporate authority by Defendants

Katzman et al., central to the fraudulent inducement scheme that

Judge Guzman ratified without jurisdiction.

**KATZMAN's 1st of Seven ILLEGAL Alterations per FS817.535 - 40 days before 1st hearing.**

## 2021 FLORIDA NOT FOR PROFIT CORPORATION AMENDED ANNUAL REPORT

DOCUMENT# 715112

**FILED**
**Jul 12, 2021**
**Secretary of State**
**1192730456CC**

Entity Name: BUCKLEY TOWERS CONDOMINIUM, INC.

**Current Principal Place of Business:**

1351 NE MIAMI GARDENS DRIVE
OFFICE
MIAMI, FL 33179

**Current Mailing Address:**

6535 NOVA DRIVE
SUITE 109
FORT LAUDERDALE, FL 33317 US

**FEI Number: 59-1223878**

Certificate of Status Desired: No

**Name and Address of Current Registered Agent:**

KATZMAN CHANDLER
6535 NOVA DRIVE
SUITE 109
FORT LAUDERDALE, FL 33317 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:    LEIGH KATZMAN                                                                      07/12/2021

Electronic Signature of Registered Agent                                                        Date

---

**KATZMAN's last of Seven ILLEGAL Alterations to take from Mr. Villars' property interests.**

## 2021 FLORIDA NOT FOR PROFIT CORPORATION AMENDED ANNUAL REPORT

DOCUMENT# 715112

**FILED**
**Aug 19, 2021**
**Secretary of State**
**7898357725CC**

Entity Name: BUCKLEY TOWERS CONDOMINIUM, INC.

**Current Principal Place of Business:**

1351 NE MIAMI GARDENS DRIVE
OFFICE
MIAMI, FL 33179

**Current Mailing Address:**

6535 NOVA DRIVE
SUITE 109
FORT LAUDERDALE, FL 33317 US

**FEI Number: 59-1223878**

Certificate of Status Desired: No

**Name and Address of Current Registered Agent:**

KATZMAN CHANDLER
6535 NOVA DRIVE
SUITE 109
FORT LAUDERDALE, FL 33317 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:    LEIGH KATZMAN                                                                      08/19/2021

Electronic Signature of Registered Agent                                                        Date

Buckley Towers Condominium, Inc.
$3,500,000 Construction to Mini-Perm Loan
Commitment Letter
March 20, 2015

## LOAN CLOSING DEPARTMENT
## TRANSACTION TRANSMITTAL FORM

Date:                   March 20, 2015

Borrowers:              Buckley Towers Condominium, Inc.

Guarantor:              None

Type of Loan:           Construction/ Mini-perm

Loan Officer:           Marli Mang, Senior Vice President/ Corporate Lender

Target Closing Date:    4/15/15

**Borrower's attorney**

Name: KATZMAN Garfinkle          ← Initiator of loan + Trustee

Phone Number: 954 486 7774   Fax Number: 954 486 7782

E-mail: L KATZMAN @ LiKe Your Lawyer.com

Address: 5297 WEST COPANS RD MARGATE FL 33063

**Title Agent:**

Phone Number: _____

E-mail: _____   Fax Number: _____

Address: _____

**Seller's Attorney**

Name: _____ N/A _____

Phone Number: _____

E-mail: _____   Fax Number: _____

Address: _____

**Seller's Insurance Agent**

Name: _____ N/A _____

Phone Number: _____

E-mail: _____   Fax Number: _____

Address: _____

If any of the information is unavailable or inapplicable on the date that the transmittal form is completed, please provide the date in which the information will be provided or state N/A.

Comments:  Any further questions do not hesitate
to call or text me @ 305 733 6483

Buyers Insurance Agent
Butler Buckley Deets
6161 Blue Lagoon Drive Miami FL 33126
Ph (305) 262-0086  FX (305) 362-0187

# TOTALBANK

March 20, 2015

Ms. Peggy A. Stroker,
1st Vice-President
Buckley Towers Condominium, Inc.
1321 NE Miami Gardens Drive
Miami, FL 33179

Re:     New $3,500,000 loan (the "Loan") to partially finance the final phase of renovations to a residential condominium complex located at 1321 NE Miami Gardens Drive, Miami, FL (the "Property"). The Loan shall also provide permanent financing to the Property upon its completion and issuance of the 40-Year Re-Certification by Miami-Dade County.

Dear Ms. Stroker:

We are pleased to inform you that TotalBank (the "Bank") has approved your request for the captioned Loan subject to the following terms and conditions set forth in this letter (the "Commitment Letter"):

## TERMS OF THE LOAN

| | |
|---|---|
| Borrower: | Buckley Towers Condominium, Inc., a Florida Non-Profit Corporation. |
| Guarantor: | None. |
| Amount / Purpose: | The principal amount of this Loan shall be $3,500,000. The Loan proceeds shall be used to finance 68% of the estimated $5,113,050 in construction costs to complete the final phase of repairs on two condominium buildings located at 1321 NE Miami Gardens Drive, Miami, FL, in order to meet the requirements for the 40 year Re-Certification by Miami-Dade County. The funds will be used specifically for concrete restoration, railings, high impact glass sliding doors and electrical work (the "Construction Phase"), as further set forth in the "Project Sources & Uses Schedule" attached (Exhibit B). Upon maturity of the Construction Phase, the Loan shall convert to a term-amortizing loan, thereby, providing permanent financing for the Property (the "Mini-Perm Phase"). |

| | | |
|---|---|---|
| Term: | Construction Phase: | The Loan's Construction Phase shall mature at the earliest of issuance of the 40-Year Re-Certification from Miami-Dade County, or twelve (12) months from the execution of the Loan Documents, with an option to extend the Construction Phase for six (6) months, and provided there are no events of default. |
| | Mini-Perm Phase: | The Loan's Mini-Perm Phase shall mature eight (8) years from the end of the Construction Phase. |
| Rate of Interest: | Construction Phase: | Interest shall accrue at the Wall Street Journal Prime (WSJP) rate plus 2.50% per annum, to be adjusted on day of change of the WSJP rate, subject to a 5.75% Floor Rate. The WSJP market interest rate is, for any day, the WSJP rate as published in the Money Rates Section of the Wall Street Journal, Eastern Edition (or if not so reported, then as determined by Bank from another recognized source or interbank quotation). |
| | Mini-Perm Phase: | Interest shall be fixed, and accrue, at a rate based on the Wall Street Journal Prime (WSJP) rate plus 2.50% per annum at the time of conversion to the Mini-Perm Phase. On the fifth year anniversary date of the first payment of the Mini-Perm Phase, the interest rate shall be adjusted and fixed to the then prevailing WSJP rate plus 2.25%, fixed until maturity. The Mini-Perm Phase rate shall never be less than 5.75% for the duration of the Mini-Perm Phase. |

Interest shall be calculated each day on a 360-day year basis on the outstanding principal balance.

| | |
|---|---|
| Fees: | A commitment fee of $26,250 or 0.75% of the Loan amount, plus actual costs and expenses, of which fifty percent (50%), or $13,125 is payable to the Bank at the time of acceptance of this Commitment by Borrowers, and the remaining fifty percent (50%), or $13,125 is payable to the Bank on the closing date. If the extension option is |

Buckley Towers Condominium, Inc.
$3,500,000 Construction to Mini-Perm Loan
Commitment Letter
March 20, 2015

exercised; a fee of $8,750 or 0.25% will be due and payable to the Bank. The Loan shall be subject to an annual review fee of $250.00, payable to Bank annually on the anniversary date of the first payment.

**Repayment:**

Construction Phase: Monthly payments of interest only commencing on the fifth (5th) of each month following the first disbursement of Loan funds, and continuing on the fifth (5th) of each month thereafter.

Mini-Perm Phase: Monthly principal and interest payments due on the fifth (5th) of each month, based on an eight (8) year straight line mortgage amortization schedule.

**Security:**

The Loan shall be secured by the following:
1. A first position UCC-1 lien on all the assets of the Buckley Towers Condominium, Inc.
2. The collateral assignment of all Special Assessment Fees
3. The collateral assignment of rents and leases on condominium units operated under the control of the Association.

**Allocation of Funds:** The Loan proceeds shall be allocated, disbursed and utilized as shown below and in accordance with the terms of the Bank's Construction Loan Agreement and the attached "Project Sources & Uses Schedule" (Exhibit B). Requests for reallocation of funds within the budget line items require Bank's prior approval, which shall not be unreasonably withheld nor delayed by the Bank.

**Closing:**

The closing of this transaction shall be held on or before May 20, 2015 unless delayed by the Bank or its Attorneys. The closing shall take place at the offices of the Bank, and the exact date and time shall be scheduled by such Counsel upon providing the Borrowers with not less than 10 days' notice. The Bank shall not be required to establish a closing date unless the Borrower shall have complied with all of the conditions and requirements set forth herein. Unless the closing is held on, or before, May 20, 2015, the Bank's obligation hereunder will, at its option, terminate.

## CONDITIONS OF CLOSING AND FUNDING OF THE LOAN

### Condition to be Satisfied Prior to or at Closing

1. Borrower shall provide copy of final executed contract between Borrower and General Contractor with cost breakdown on an American Institute of Architects (AIA) form, approval of which is subject to a satisfactory Plan & Cost Review to be performed by a TotalBank approved third party engineer.
2. Borrower shall provide proof of additional funds in the amount of $1,613,000 required to fund the equity portion of the project, or copies of paid checks. The Funds in escrow for the completion of renovations are to be transferred to TotalBank to be administered by TotalBank's Construction Administration Department.
3. Borrower shall terminate the current Notice of Commencement and provide proof of payment for all the work performed up to 72 hours before closing. Borrower shall also provide proof of payment via Final Release of Liens of all major contractors and sub-contractors, cancelled checks and/or any other documentation required by TotalBank's Construction Loan Administration Department. In addition, a satisfactory inspection of the work completed to date will be required.
4. Borrower shall provide verification of offer to settle suit in the case of National Concrete Preservation, Inc. vs. Buckley Towers Condominium, Inc. Case No.: 14-5279-CA-10 supporting estimated liability of $115,000
5. Borrower shall open a restricted account in the amount of $115,000 to cover any potential liability under the case of National Concrete Preservation, Inc. vs. Buckley Towers Condominium, Inc. Case No.: 14-5279-CA-10. Funds in the account shall be released upon receipt of verification of the case being settled or towards the settlement payout of the case upon presentation of supporting documentation.

### Miscellaneous Loan Condition:

6. Proceeds obtained from settlement of case Buckley Towers Condominium Association, Inc. vs. QBE Insurance Corp. Case No.: 07-22988-CIV shall be assigned to the Loan at Closing. The proceeds shall be applied to the Loan as principal curtailment upon receipt, or added as an increase to Borrower's equity portion of construction costs, reducing TotalBank's Loan Commitment.

### Construction Administration Conditions:

7. Borrower shall provide all permits necessary for construction prior to disbursing any of the funds for construction.
8. Borrower to maintain its construction operating account at TotalBank during the construction period of the Loan, from which all construction payments to contractors, sub-contractors, vendors, and suppliers are to be made.

Buckley Towers Condominium, Inc.
$3,500,000 Construction to Mini-Perm Loan
Commitment Letter
March 20, 2015

9.  All construction draws to be monitored and approved by TotalBank's Construction Administration Department. Advances are subject to any other documents as required by TotalBank's Construction Administration Department (permits, title updates, inspection reports, etc.).
10. A $250 service charge for each draw will be applied.
11. Any monies required to complete the project in excess of the amount reflected in the final obtained cost breakdown to be covered out-of-pocket by the Borrower.
12. The renovation work by the General Contractor to be fully bonded.

This commitment is further subject to all of the special terms and conditions set forth in Exhibit "A", attached hereto and made a part thereof.

ACCEPTANCE OF COMMITMENT:

The Borrowers' acceptance of this Commitment Letter shall be evidenced by the Borrower executing the original of this Commitment Letter in the space provided herein and returning it to the Bank no later than March 30, 2015 together with a check in the amount of $13,125, which represents that portion of the commitment fee which is non-refundable.

Very truly yours,

for _____ VP
Marti Wang
Senior Vice President
Corporate Lender

Antonio Subire
Senior Vice President
Senior Credit Officer

The terms and conditions of this commitment are agreed and accepted this _____ day of _____, 2015

Accepted by:

Borrower:
Buckley Towers Condominium, Inc., a Florida Non-Profit Corporation

_Helene S. Pinsler, 2015 BCD President_
By _____, its President
_Buckley Towers._

_Peggy A. Stroker, 1st VP_
By _____, its 2nd Vice-President
_Buckley Tower 201_

_Andrew M. White, 2nd VP Buckley Towers 2015_
By _____, its 2nd Vice President

_Gilda Greenfield, Treas_
By: _Gilda Greenfield_, its Treasurer

_Ileana Muxo. Secretary BT 2015_
By _____, its Secretary
_BT 2016_

Page 3 of 9

EXHIBIT "A"
### LENDER'S STANDARD LOAN CONDITIONS

**1.    Loan Documents:**

The Bank will require such Loan Documents, as to form and content, as are acceptable to the Bank's Counsel, are to be joined in all signatories required to create the security interest provided for herein, and are to include all terms and provisions customarily incorporated in the Bank's documents reasonably applicable in this instance.  The Loan Documents shall include, but shall not be limited to the following:

    a)   Mortgage
    b)   Promissory Note
    c)   UCC-1 Statements
    d)   Construction Loan Agreement
    e)   Assignment of Rent and Leases
    f)   Such other documents that are designated by Bank's Counsel.

**2.    Hazard Insurance, etc.:**

Prior to the Bank funding any portion of the construction loan, Borrower shall furnish the Bank with a Builder's Risk Insurance Policy in a form and amount of the insurable improvements and written by a company acceptable to the Bank.  In the event that adequate coverage cannot be secured with an approved company satisfactory to the Bank and maintained during the term of the Mortgage, the Bank, shall have the right to accelerate the principal outstanding balance of the Loan.  If the Property is in a "Special Flood Hazard Area" as defined by Flood Insurance Rate Map issued by the Federal Emergency Management Agency, the Bank will require flood insurance and the Borrower shall procure the same.  Borrowers shall also maintain single limit comprehensive general liability insurance against claims and liability for bodily injury or property damage occurring to persons or property on the Mortgage Premises.  Evidence of such coverage shall be provided to Lender in the form of a certified copy of the policy or an insurance certificate.

**3.    ~~Survey:~~**

~~The Borrowers shall deliver to the Bank a survey certified to the Bank by a registered surveyor, dated within 90 days prior to the closing, meeting the survey requirements of the Bank's attorney. The survey shall be delivered at least 20 days prior to the closing.~~

**4.    Title Insurance:**

Borrowers will furnish Bank with the abstract of title of the Property to be encumbered by the Mortgage, which shall be certified through a current date, or in the event the abstract is not available, Borrowers will furnish Bank with a copy of Borrowers' owner's title insurance policy showing the Borrowers as owner of the Property.  The Bank shall obtain a Mortgagee title insurance commitment and policy written by a company acceptable to the Bank, in a form acceptable to the Bank and Borrowers shall be responsible for the cost of the premium for said commitment and policy and the costs of all title updates.  Borrowers shall also be responsible for curing any title exceptions reflected on the mortgage title commitment, which are unacceptable to the Bank.

**Construction loans:**

With respect to the construction loan, the Bank will accept Mortgagee title insurance commitments and policies written by the following companies: *Commonwealth Land Title Insurance Company, Chicago Title Insurance Company and First American Title Insurance Company.  Title insurance commitments and policies issued from any other company will require prior approval, in writing, by the Credit Division of the Bank.*

**5.    Building Permits and Zoning:**

Two complete sets of the final building plans and specifications shall be delivered to the Bank as soon as approved by the corresponding government agencies but not later than 10 days prior to any disbursement of the construction funds.  The Bank will not be required to close this loan until the necessary building permits to begin construction have been received.

~~The Borrowers must provide written evidence that the zoning of the property permits the construction of the contemplated improvements, as well as compliance with all laws, ordinances, rules, regulations and restrictions affecting the property as reasonably requested by the Bank.  All of the foregoing must be acceptable to the Bank and its Counsel in form and content.~~

~~The permits shall be unconditional and should not be subject to the actions of any third party, which shall include, but not be limited to, the County and/or any its agencies.~~

~~6.    Zoning Conditions:~~

~~Prior to closing, the Borrowers shall deliver to the Bank, a written legal opinion letter reasonably satisfactory to the Bank attesting that the current zoning of the subject property to be mortgaged in favor of the Bank, to secure the loan, presently allows construction of the "Proposed Improvements", and that no further approvals and/or permits, with the exception of a building permit, are currently required to allow the construction of the improvements.~~

7.    Concurrency Approval:

Prior to closing, the Borrower shall furnish the Bank proof, satisfactory to the Bank and its Counsel, that the Borrower's proposed development of the property has received all approvals ("Service Concurrency Approval"), required under the code of the applicable County. It shall be a re-condition of the Bank's obligation to continue funding, that the Borrower maintain all Service Concurrency Approvals in effect until construction is complete and the 40-Year Re-Certification (or its equivalent) is issued for all improvements. The Bank shall not be obligated to continue funding, if the Service Concurrency Approvals previously obtained by the Borrowers lapses, which precludes the continued development of the property without re-obtaining the Service Concurrency Approvals.

~~8.    WASA-DERM Approval:~~

~~The Borrowers shall provide evidence to the Bank that the proposed construction has been approved by the County's Water and Sewer Authorities. In addition, Borrowers shall furnish proof that the Department of Environmental Resources Management approves and issues the necessary allocation for the connection to the abutting sanitary sewer system for the Property upon completion of improvements.~~

9.    Pre-Approved Extensions:

Any extension to the initial term, as provided for in this commitment is subject to the following conditions:

- Real estate taxes must be current.
- All required financial information must be up to date.
- All required insurance must be current.
- The Loan shall not be in default.
- ~~There shall be no deterioration in the approved loan to value or the market value of the property.~~

10.    Contractor:

The General Contractor for the subject construction shall be duly licensed by the State of Florida. At least twenty (20) days prior to closing, the Borrower shall deliver to the Bank an executed copy of the construction contract between the Borrower and the General Contractor.

11.    Inspection of Property and Books and Records:

Prior to and throughout the term of the Loan, the Bank shall have the right to enter upon and inspect the property at all reasonable times or to designate an agent, including, without limitation, an inspecting architect/engineer, to perform such inspection, which inspections shall be at Borrower's expense. Such right of inspection shall extend not only to the Property, but also to the books and records of the Borrower. The Bank shall give the Borrower reasonable notice prior to inspecting Borrower's books and records.

12.    Taxes:

All taxes and assessments payable in connection with the Property are to be paid at the time of closing, if due, and subsequent taxes and assessments must be paid by December 31st of each year during the Construction Phase.

13.    Secondary Financing:

Borrower may not obtain secondary financing without the prior written consent of Lender, which consent Lender shall not be obligated or required to give.

14. **Legality of the Loan:**

The Bank's Counsel shall be satisfied that all fees and charges with respect to the making of the Loan will not exceed any applicable interest limitations of the State of Florida. The Loan shall be in all respects legal and shall not be liable to any applicable law or other requirement of any governmental authority.   The Borrower's Counsel shall issue an opinion regarding Borrower's authority to execute the Loan Documents, the enforceability of the Loan Documents and other customary opinions, which may be requested by the Bank's attorney.

15. **Amendment:**

This commitment may be amended only by a written amendment executed by the Bank and the Borrower. The Commitment is not assignable without prior written consent of the Bank, which the Bank is not obligated or required to give.

16. **Bank's Expense:**

This transaction is to be handled without cost and expense to the Bank and the Bank is to be held harmless from any and all expenses relating thereto, including but not limited to, all claims of brokerage in any way related to this transaction, appraisal and credit report costs, if any; title insurance cost; legal fees incurred by the Bank; survey costs; recording charges; documentary stamp; intangible taxes, etc.

17. **Construction Inspection Services:**

The construction inspection services will be performed by an independent inspector to be selected by the Bank. All fees charged by said inspector shall be paid by the Borrower.

18. **Signs and Other Promotional and Advertising Material:**

By accepting this Commitment, the Borrower agrees to affix a sign approved by, at the Bank's expense, at a location of the property satisfactory to the Bank, which shall recite, among other things, that the Bank is financing the construction of the project, and to allow the Bank to publish announcements and/or advertisements regarding the granting of this Loan.

19. **Stand-By Letters of Credit:**

In the event the Mortgagor requests that Bank issue Stand-By Letter(s) of Credit guaranteeing the beneficiary that funds will be available to complete certain work obligations required to be performed by the Mortgagor, then, the Stand-By Letter(s) of Credit shall be secured by this Mortgage. If the Stand-By Letter(s) of Credit has not been canceled once the Loan, secured by this Mortgage, is paid off pursuant to the terms of payments of the Note and the release provision, the outstanding Loan amount will reflect a balance of $1.00 to protect the Bank's collateral position.  The Mortgagor further agrees to continue paying the Bank the release price stipulated herein, and the Bank agrees to set aside said funds in an interest bearing savings account until such time as said account has reached the outstanding balance of the Stand-By Letter(s) of Credit issued by the Bank in favor of the beneficiary. The funds deposited into said interest bearing savings account will serve as collateral for Stand-By Letter(s) of Credit. As the Stand-By Letter(s) of Credit balance is reduced, the Mortgagor may withdraw funds from said account; provided that the remaining balance of the interest bearing account is not less than the outstanding balance of the Stand-By Letter(s) of Credit.

20. **Environmental Audit:**

~~Borrower shall, at Borrower's expense, provide the Bank a report certified by an environmental engineer, acceptable to the Bank, evidencing that there are no hazardous waste or asbestos containing materials, as defined by federal, state or local law, of any kind, stored, kept, disposed upon or otherwise affecting the Property or any portion thereof. In the event said report indicates there are any such hazardous wastes or materials, Bank may, in its sole and absolute discretion, either (i) require as a condition to closing that all appropriate corrective action be taken or (ii) cancel and terminate this Commitment. In any event without further liability or obligation to the Bank.~~  Borrower expressly represent to Bank that the Property and the improvements thereon are not presently being used, and will not in the future be used for the handling, storage, transportation, or disposal of hazardous or toxic materials. Borrower agrees, to indemnify, defend, and hold harmless from and against any loss to Bank, including, without limitation, attorney's fees, incurred as a result of the storage, transportation, or disposal of hazardous or toxic materials; the foregoing indemnification and other provisions of this paragraph shall survive repayment of the Loan.

21. **DDA Account:**

The Borrower shall maintain their operating and escrow accounts at TotalBank during the life of the Loan from which Loan payments will be debited

22. **Accuracy of Representation and Financials Statements:**

This Commitment is issued in reliance upon the truth and accuracy of the financial statements, information, representations, exhibits and other matters submitted to the Bank by the Borrower in connection herewith. The Bank shall have absolute right, at its option, to cancel this Commitment in the event that any of the foregoing contains a material inaccuracy or upon the occurrence of a material adverse change in any of the information contained in the foregoing. Notwithstanding a closing of the Loan, the Bank shall further have the right not to disburse any Loan proceeds should it determine that any of the said information is inaccurate and the Loan documents will contain a provision making the inaccuracy or material change in such information an event of default.

During the Loan term, Borrower will furnish or cause to be furnished to the Bank the following financial statements and reports, all in form satisfactory to the Bank:

a. Audited financial statements within 120 days of Borrower's fiscal year end.
b. Annual signed tax returns (and extensions, if applicable) of the Borrower within 30 days of filing.
c. Borrower to provide annual signed company prepared financial statements, which shall include list of delinquent units, no later than forty five days of Borrower's fiscal year end.

The Bank shall have full and complete access to the books and records of the Borrower, as they pertain to the collateral, during regular business hours. The Bank shall have the ability to contact the Borrower's accountant of record, during regular business hours, and request information regarding the above-mentioned financial statements, reports or for other relevant financial information during the life of the Loan. There shall be no material adverse changes in the financial condition of the Borrower during the Loan term, as determined by the Bank in its sole judgment.

23. **Background and Credit Investigation**

The Bank's obligation to make the Loan is subject to satisfactory business rating, credit rating reports and personal references/background checks on Borrower and Directors. During the term of the Loan the Bank may update such information from time to time, as required by the USA PATRIOT Act, and as more particularly described in 31 C.F.R. 103.121.

24. **Bank's Counsel:**

The attorney representing the Bank in this transaction is to be determined.

25. **Bank and Borrower**

Specifically agree that they waive all rights to rely on/or enforce any oral statements made prior to or subsequent to the signing of this document.

26. **Waiver of Jury Trial:**

THE BORROWER AND THE BANK HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY IRRESPECTIVE OF ANY LITIGATION, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS COMMITMENT LETTER OR ANY OF THE DOCUMENTS FOR THE LOAN. FURTHER, THE BORROWER HEREBY CERTIFY THAT NO REPRESENTATIVE NOR AGENTS OF THE BANK NOR THE BORROWER'S OR THE BANK'S COUNSEL HAS REPRESENTED, EXPRESSED OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF SUCH LITIGATION SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

THE BORROWER ACKNOWLEDGES THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS TRANSACTION BY, INTER ALIA, THE PROVISIONS OF THIS SECTION. THE BORROWER AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL CANNOT BE WAIVED. THIS COMMITMENT LETTER AND ALL LOAN DOCUMENTATION SHALL BE INTERPRETED BY REFERENCE TO THE LAWS OF THE STATE OF FLORIDA. JURISDICTION AND VENUE, AT THE SOLE OPTION OF BANK, SHALL BE EITHER IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED OR IN MIAMI-DADE, FLORIDA.

Buckley Towers Condominium, Inc.
$3,500,000 Construction to Mini-Perm Loan
Commitment Letter
March 20, 2015

27. <u>Survival</u>:

   This Commitment Letter will survive the Loan closing. Should there be any apparent or evident contradiction between the terms of this Commitment Letter and any of the terms of the Loan Documents, the terms of the document which shall either enlarge the interest of the Lender and/or assure payment of the Note and all sums in full shall control.

28. <u>Effective Date</u>:

   This Commitment, when signed by two authorized Bank officers, shall become effective on the last date upon which Borrower execute the document, as prepared by the Bank, and the stipulated portion of the Commitment Fee is received by the Bank.

# Exhibit C

## Title:

2021 Receivership Order by Judge Carlos Guzman

## Purpose:

Core act of **Fraud On the Court**; issued without Subject Matter Jurisdiction, denying a proper hearing, knowing of lacking standing, and denying joinder of indispensable parties—establishes procedural overreach shielded by **Judicial Discretion as Sword and Shield**.

NOTE: Katzman's Receivership Petition to Guzman Order date.

## Motion for Receivership by Katzman
## **17 hrs before** the Scheduled <u>Evidentiary Hearing</u>.

Filing # 133243907 E-Filed 08/23/2021 06:04:05 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.,
a Florida not-for-profit corporation,

        Plaintiff,

v.                                      CASE NO.: 2021-017383-CA-01

JANVIER VILLARS,

        Defendant.

_____

<u>**PLAINTIFF, BUCKLEY TOWERS CONDOMINIUM, INC'S**</u>
<u>**MOTION FOR APPOINTMENT OF RECEIVER**</u>

---

IV.    <u>**The Association Proposes That the Court Appoint Leigh Hoffman, CPM, as the Receiver for Buckley Towers.**</u>

    To aid the Court in the appointment of a receiver, the Association proposes the appointment of Leigh Hoffman, CPM, to serve as the receiver due to his vast knowledge of the operations of condominium associations as the president, owner, and CEO of Alliance Property Systems; his designation as a Certified Property Manager, and his prior experience serving as a receiver. For the Court's reference, please find a copy of Mr. Hoffman's resume attached hereto as Exhibit "E."

<u>**CONCLUSION**</u>

    A receiver is necessary to protect the property of Buckley Towers that secures the loan issued by CNB to Buckley Towers, ensure the proper collection of assessments, ensure the safety of the buildings, and protect the residents and unit owners' rights to the quiet enjoyment of their

*"[a]ppointment of Leigh Hoffman"* *"<u>A receiver is **necessary** to protect the property... to secure the loan</u>* by CNB to Buckley... *en ensure the safety."*
<u>**NONE of those reasons**</u> provide Judge Guzman with the necessary elements of eminent harm, fraud or waste... to confiscate the Association under Katzman Receiver. Therefore lacking Subject Matter Jurisdiction - ab initio.
**Making this Receivership a pre-arranged judicial swindle.**

Filing # 133243907 E-Filed 08/23/2021 06:04:05 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

BUCKLEY TOWERS CONDOMINIUM, INC.,
a Florida not-for-profit corporation,

        Plaintiff,

v.                                    CASE NO.: 2021-017383-CA-01

JANVIER VILLARS,

        Defendant.

_____

### PLAINTIFF, BUCKLEY TOWERS CONDOMINIUM, INC'S
### MOTION FOR APPOINTMENT OF RECEIVER

      Plaintiff, Buckley Towers Condominium, Inc. ("Buckley Towers" or the "Association"),

by and through its undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.620 and

the Court's inherent equitable authority, moves for the entry of an emergency order appointing a

receiver to manage the affairs of Buckley Towers, and states as follows:

### INTRODUCTION AND UNDERLYING FACTS

1.  Buckley Towers filed the instant matter on July 16, 2021, seeking preliminary and

    permanent injunctive relief against Defendant, Janvier Villars ("Defendant" or

    "Villars"), for interfering with the operations of the Association and unilaterally

    holding himself out as the President, Registered Agent, property manager, and

    absolute decision-making authority on behalf of Buckley Towers.

2.  In that same vein, Buckley Towers filed its Verified Emergency Motion for

    Preliminary Injunctive Relief (the "Emergency Motion") seeking the Court's

    intervention to enjoin Defendant from acting on behalf of the Association.

3.  Buckley Towers originally obtained a hearing date for the Emergency Motion on

    August 2, 2021.

4. However, the August 2nd hearing was canceled due to a conflict on the Court's calendar and the issues underlying the request for emergency injunctive relief have grown exponentially due to Defendant's continued actions.

5. The Association was unable to obtain another hearing date on the Emergency Motion until August 24th due to Defendant obtaining personal counsel, opposing counsel's objection to the emergency hearing, and opposing counsel's demand for a minimum two-hour hearing.

6. In the time since the filing of the instant case, Buckley Towers has been sued by its bank, City National Bank of Florida ("CNB") due to Defendant's rogue activities. *See City National Bank of Florida v. Buckley Towers Condominium, Inc., et al.*, Miami-Dade County Circuit Case No. 2021-018531-CA-01 (the "Interpleader Action").

7. Specifically, in seizing control of the Association, Defendant unilaterally entered into contracts on behalf of the Association and demanded payment for such contracts, among other purported invoices and expenses.

8. Defendant will not provide the majority of the Association's Board of Directors with proof contract, invoices, accounting, or anything else to justify payments he requested from CNB.

9. As a result of the dispute between Defendant and the Board majority, CNB froze the Association's bank accounts **and no bills and invoices are currently being paid**.

10. CNB has filed in the Interpleader Action a Motion for Authorization for Payments/Disbursements (the "Motion for Authorization") requesting the appointment of a third party to manage the financials of the Association. A copy of

the Motion for Authorization is attached hereto as Exhibit "A," and the Association hereby requests judicial notice of same.

11. Additionally, Florida Lemark Corporation ("FLC") has filed a Motion to Intervene in the Interpleader Action due to CNB holding funds it alleged to be owed to FLC and subject to the pending matter of *Florida Lemark Corporation v. Buckley Towers Condominium, Inc.*, Miami-Dade County Circuit Case No. 2019-6775-CA-01. A copy of the Motion to Intervene is attached hereto as Exhibit "B," and the Association hereby requests judicial notice same.

12. Buckley Towers maintains multiple bank accounts with CNB that are subject to the CNB Deposit Agreement effective July 1, 2018.

13. Buckley Towers is the borrower on a 3.5 million dollar loan (the "Loan") for which CNB is the lender.

14. Evidencing the loan agreement among the parties, a Collateral Assignment of Right to Collect Assessments and Assignment of Lien Rights (the "Collateral Assignment") executed by Buckley Towers assigning its rights to CNB was recorded in the Miami-Dade County Official Records Book 29657, at Page 3422. A copy of the recorded Collateral Assignment is attached hereto as Exhibit "C."

15. Also evidencing the loan agreement, an Assignment of Leases and Rents (the "Assignment of Leases") executed by Buckley Towers assigning its right to CNB was recorded in the Miami-Dade County Official Records Book 29657, at Page 3431. A copy of the recorded Assignment of Leases is attached hereto as Exhibit "D."

16. The bank accounts maintained by Buckley Towers with CNB are used to make monthly payments to CNB to pay back the loan.

17. The insurance premium comes due on or before August 31, 2021, and if it is not paid, Buckley Towers, the home of more than five hundred families, *will have no insurance*.

18. Moreover, Buckley Towers is in the process of completing forty (40) and fifty (50) year recertification of its buildings.

19. The failure to complete recertification could pose life and safety threats to the residents of Buckley Towers, and in light of the tragedy at Champlain Towers South Condominium in Surfside, Florida, the only prudent response to ensure completion of the recertification process and the payments required, is the appointment of a receiver.

20. The Court must remove the poison; Defendant cannot be permitted to hold Buckley Towers hostage, place the Association's property at risk of waste and destruction, and put the Association at risk of being uninsured in the middle of hurricane season.

21. CNB's Motion for Authorization is insufficient; with Defendant's ongoing, unrelenting intrusion in the operation and management of the Association, it is impossible to merely appoint a third party to manage the financial affairs—an all-encompassing receiver is necessary to ensure an end to Defendant's meddling.

22. Due to the escalating, worsening conditions of the Buckley Towers community on a daily basis and at the hands of Defendant, the majority of the Board of Directors of Buckley Towers, in the best interests of the community, has made the difficult decision that the appointment of a neutral third party to operate Buckley Towers is necessary to put an end to the turmoil and get the community back on its feet.

23. Accordingly, with no other remedy to cure the community of ongoing strife, the majority of the Board is willing to fall on the sword and uphold its duty to stabilize and better the community by moving for the appointment of a receiver.

24. For the health, safety, and welfare of the residents and owners of Buckley Towers, the Association moves this Court for emergency order appointing a receiver.

## ARGUMENT

Given the present facts, the appointment of a receiver is not only prudent, but is a necessity to ensure Buckley Towers' viability; secure the proper payment of the Association's legitimate vendors, contractors, and staff; conduct a proper accounting and management of the Association; and protect the safety and welfare of the Buckley Towers community from one person's unilateral meddling in the affairs and operations of the Association.

By definition, a receiver is "[a] disinterested person appointed by a court, or by a corporation or other person, for the protection or collection of property that is the subject of diverse claims." *Granada Lakes Villas Condo. Ass'n v. Metro-Dade Invs. Co.*, 125 So. 3d 756, 758 (Fla. 2013) (quoting *Black's Law Dictionary* 1383 (9th ed. 2009)). **Florida law is clear that a court retains the inherent equitable authority to appoint a receiver where, in the sound discretion of the court, the facts and circumstances of the particular case warrant receivership.** *Id.* at 758; *Ins. Mgmt., Inc. v. McLeod*, 194 So. 2d 16, 17 (Fla. 3d DCA 1966); *see also Lehman v. Trust Co. of Am.*, 49 So. 502, 503-04 (Fla. 1909); *Edenfield v. Crisp*, 186 So. 2d 545, 549 (Fla. 2d DCA 1966).

Florida Rule of Civil Procedure 1.620 permits the Court to appoint a receiver with or without notice to the adverse parties. The moving party must establish a substantial likelihood it will succeed on the merits at trial and that there is no adequate remedy at law. Fla. R. Civ. P.

1.620; *Phillips v. Greene*, 994 So. 2d 371 (Fla. 3d DCA 2008). Moreover, courts, in their sound discretion, look to three requirements to establish that appointment of a receiver is appropriate: (1) the moving party has clear legal title to or a lien or other right in the subject property; (2) receivership is necessary to prevent fraud or self-dealing, or keep the property from being lost, removed, or destroyed; and (3) there is no alternative remedy that adequately protects the property. *See Granada Lakes*, 125 So. 3d at 759; *Apalachicola N. R. Co. v. Sommers*, 85 So. 361 (Fla. 1920); *Recarey v. Rader*, 320 So. 2d 28 (Fla. 3d DCA 1975).

Here, the Association establishes all three (3) requirements and, accordingly, the Court should immediately, appoint a receiver upon an emergency basis.

## I.    The Association Has a Clear, Undisputed Interest in the Buckley Towers Condominium Property.

It should go without saying, but Buckley Towers, has clear title in the Association property. The Association retains title to all common areas of the buildings forming the condominium, as well as retains the responsibility for the maintenance and operation of the community. Furthermore, Buckley Towers retains title to six (6) units in the community. As such, the Association has a clear interest in the property to warrant its request for the appointment of a receiver.

## II.    Receivership Is Necessary to Prevent Fraud, Self-Dealing and Loss and/or Destruction of the Property.

Receivership is necessary to protect the condominium buildings and property. Given the dysfunction within Buckley Towers—largely at the hands of Defendant—the age of the building, the nature of the Loan extended for construction and repairs to the condominium buildings, the pending suits against Buckley Towers, and the Association's unpaid invoices—including the rapidly looming insurance premium—there is a legitimate need to ensure the property is

safeguarded from fraud, self-dealing and loss or destruction. The inability of the membership to distinguish who may properly act on behalf of the Association—again, at the hands of defendant—coupled with Defendant's ongoing assertions that he has sole control and decision-making authority over Buckley Towers is not only concerning, but *dangerous*. Receivership is necessary to put in place a neutral third party to complete a proper accounting, ensure all necessary structural repairs are completed, and collect assessments to properly fund the Association to pay back the Loan, ensure payment of all properly-retained vendors, and avoid additional legal action against the Association.

In *McLeod*, the Third District Court of Appeals affirmed the lower court's determination to appoint a receiver where corporate stockholders were unable to agree how to operate their business. *Ins. Mgmt., Inc. v. McLeod*, 194 So. 2d 16, 18 (Fla. 3d DCA 1966). There, the appellate court noted, "It is conceded that there was disharmony between the corporations' two equal stockholders; that these two fifty per cent stockholders were deadlocked over the operation of their insurance agency business, and that they could not agree on the election of a board of directors." *Id.* Relying upon the lower court's sound discretion and a finding that a failure to post a bond pursuant to sections 608.28 and 608.29 was not a fatal flaw to the appointment itself, the appellate court affirmed the appointment of the receiver. *Id.*

The facts in the instant matter are analogous to *McLeod*: Defendant refuses to work with or compromise with the Board majority (notwithstanding that the Association disputes that Villars is **not** a member of the Board). In *McLeod*, there was at least no dispute regarding who the shareholders were and who could make decisions on behalf of the corporation; the issue was the inability of the shareholders to reach a decision. Here, the facts go a step further: not only are there no clear decisions and directives from Buckley Towers because of Defendant's

continued interference, unit owners, residents, prospective unit owners and residents, vendors, and contracted parties, i.e., CNB, have no way to determine who is permitted to act on behalf of Buckley Towers given the ongoing conflict. If the mere stalemate in *McLeod* was sufficient to appoint a receiver, the chaos at Buckley Towers compels the appointment of a receiver.

Additionally, in the wake of the Champlain Towers South Condominium tragedy and the recent evacuation of Crestview Towers Condominium due to the alleged failure to complete the forty (40) year recertification process, Buckley Towers' need to proceed with completing the recertification of its buildings is a haunting concern. The Association must similarly carry insurance, which has been put at risk by Defendant's interference. The dysfunction created by Villars can only be remedied by a receiver who can ensure completion of the recertification process without his, or anyone else's, meddling. Protection of the property from waste or destruction will secure the collateral on the Loan, and furthermore, will protect the safety, welfare, and homes of the residents of Buckley Towers.

Finally, given that Villars is holding himself out as the President, Registered Agent, property manager, and otherwise the sole person making decisions on behalf of Buckley Towers, the situation is rife with concerns of fraud and self-dealing.

### III.   There Is No Alternative Remedy to Receivership that Adequately Protects the Property.

Villars has made it clear that he is unwilling to work with others and relinquish any power he may have or previously had, leaving no alternative but to appoint a receiver. While the Board majority had hoped to resolve this matter through a preliminary injunction against Defendant, that remedy is no longer adequate. The situation at Buckley Towers is getting worse by the day, hour, and minute. Buckley Towers is the precarious and detrimental position where it simply cannot function so long as Villars impugns his will for a community of more than five

hundred (500) units.    While the Association remains at an inoperative standstill, the condominium property securing the Loan is subject to waste and destruction.  The only manner in which to get Buckley Towers on track is to appoint a neutral third-party receiver to oversee the operations of the Association.

Buckley Towers is no stranger to the appointment of a receiver.  Because the Association refused to comply with court orders in the past, the Third District Court of Appeals imposed a receiver to ensure Buckley Towers made court-ordered payments to a leaseholder at the time. *See Buckley Towers Condo., Inc. v. Buchwald*, 340 So. 2d 1206 (Fla. 3d DCA 1976). Unfortunately, dysfunction appears to permeate the community necessitating the need for a receiver once again.

**IV.    The Association Proposes That the Court Appoint Leigh Hoffman, CPM, as the Receiver for Buckley Towers.**

To aid the Court in the appointment of a receiver, the Association proposes the appointment of Leigh Hoffman, CPM, to serve as the receiver due to his vast knowledge of the operations of condominium associations as the president, owner, and CEO of Alliance Property Systems; his designation as a Certified Property Manager, and his prior experience serving as a receiver.  For the Court's reference, please find a copy of Mr. Hoffman's resume attached hereto as Exhibit "E."

## CONCLUSION

A receiver is necessary to protect the property of Buckley Towers that secures the loan issued by CNB to Buckley Towers, ensure the proper collection of assessments, ensure the safety of the buildings, and protect the residents and unit owners' rights to the quiet enjoyment of their homes.  Given the dysfunction and interruption to the operation of Buckley Towers, there is no other viable option but the appointment of a receiver.

**WHEREFORE**, Plaintiff, Buckley Towers Condominium, Inc., hereby moves the Court for an Order appointing a receiver to manage all affairs of Buckley Towers including acting as the Board of Directors for the Association, the completion of a full accounting, ensuring the payment of all proper vendors and utilities, collecting assessments from unit owners, ensuring compliance with all applicable building codes and recertification requirements, protecting the condominium property from waste and destruction, ensuring timely monthly payments on the Loan; order the appointed receiver to notify the Buckley Towers membership of his or her appointment within ten (10) days after appointment; order that Defendant, Janvier Villars, and all other members of the Board of Directors turn over all books and records of the Association within five (5) days; order that Defendant, Janvier Villars, not interfere with the duties of the receiver; and grant such other and further relief the Court deems just and proper.

**I CERTIFY** that a copy hereof has been furnished, pursuant to Fla. R. Jud. Admin. 2.516, to the addressees on the attached service list this 23rd day of August, 2021.

Katzman Chandler
6535 Nova Drive, Suite 109
Davie, FL 33317
Phone: (954) 486-7774
Telefax: (954) 486-7782

BY: */s/ Justin M. Smith*
    Justin M. Smith, Esq.
    Florida Bar No.: 112738
    Primary email address: JSmith@KatzmanChandler.com
    Secondary email address: pleadings@katzmanchandler.com

Filing # 133689902 E-Filed 08/30/2021 04:33:15 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2021-017383-CA-01
SECTION: CA04
JUDGE: Carlos Guzman

**Buckley Towers Condominium, Inc.**

Plaintiff(s)

vs.

**Janvier Villars**

Defendant(s)

_____/

<u>**ORDER APPOINTING RECEIVER**</u>

**THIS CAUSE** having come before the Court on August 24, 2021, on Plaintiff's Motion for
Appointment of Receiver (the "Motion"), and the Court having heard the argument of counsel,
considered the evidence submitted, and being otherwise fully advised on the premises, it is
hereby **ORDERED AND ADJUDGED**:

1. <u>Appointment</u>.  Plaintiff's Motion is GRANTED.  Leigh Hoffman, CPM, as President,
   CEO, and Owner of Alliance Property Systems, whose address is 8751 W.
   Broward Blvd, Suite 400, Plantation, Florida 33324, is appointed the Receiver of
   Buckley Towers Condominium, Inc. ("Buckley Towers" or the "Association"),
   *effective immediately,* and shall have all powers and remedies granted to a
   Condominium Association pursuant to Chapter 718, Florida Statutes, and to have
   full operational authority of and for the Association in order to: Act as a neutral,
   third party with all the power and authority granted to a board of directors pursuant
   to the Association's Declaration of Condominium, the By-Laws, and the Articles of
   Incorporation, and Florida law.Act with such additional power and authority as
   designated by this Order.Preserve and maximize the Association for the benefit of

its membership and all lienholders.Prevent fraud, self-dealing, waste, and mismanagement of the Association, the Association Property, and the Association finances.

2. <u>Notice</u>. Within ten (10) days of the date of this Order, the Receiver shall provide to all members of the Association written notice of his appointment as receiver.

3. <u>Oath</u>.  Within twenty (20) days of the date of this Order, the Receiver shall file with this Court an Oath of Receiver accepting this appointment and agreeing to discharge faithfully the Receiver's duties and subsequent directives of this Court, and applicable law.

4. <u>Bond</u>.  Within twenty (20) days of the date of this Order, the Receiver shall file proof of the existence of a Fidelity Bond in the amount of $10,000.00 to secure the faithful performance of the Receiver's duties.  The cost of the Fidelity Bond shall be a reimbursable expense of the receivership.

5. <u>Inventory and Periodic Reports</u>. The Receiver shall file with the Court: An inventory under oath of the property coming under the Receiver's control or possession, and of which the Receiver is hereby given custody, within forty-five (45) days of the date of this Order; andA Quarterly Report under oath filed every three (3) months which details the bank account balances, lease revenues, assessments made and collected, and the payment of Association expenses.  The initial Quarterly Report shall be filed with the Court within forty-five (45) days from the entry of this Order.__

6. <u>Possession of Receivership Property</u>. The appointment of the Receiver is effective immediately and such receivership shall continue until further Order of this Court. The Receiver shall take possession and control of the Association and its property.  The Association and its representatives, prior board members and agents, whether purported or actual, shall immediately and forthwith turn over all books and records, including without limitation those records the Association maintains as required under section 718.111(12), Florida Statutes, bank accounts

Exhibit H:

Because "FRAUD VITIATES EVERYTHING"
Board Sec. Villars submits the Petition as E-Voting.
Under Fiduciary Duty to protect 1st Amendment
Rights and the Association Acquired Rights. It will be
executed from this moment forward. To provide the
court with further indisputable evidence.

PETITION FOR CONSTITUTIONAL PROTECTION PER ART 1 §10 CONTRACT CLAUSE

Restatement (Second) of Contracts § 197:

*"A party who has been induced to enter into a contract by fraud, duress, or (courts) undue influence may avoid the contract...*
*The defrauding party forfeits their ability to enforce any of the contractual provisions."*

---

**"Contracts founded on illegal considerations are unenforceable, and courts must not aid those who rely on their own misconduct to enforce rights."**
— Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306 (Fla. 2000)
*"Settlements made under fraudulent pretenses are void and subject to restitution."*
— United States v. American Library Ass'n, Inc., 539 U.S. 194 (2003).
*"Courts must address constitutional violations when essential to resolving the case."*
— New York v. United States, 505 U.S. 144 (1992).
"**Courts have consistently held that fraud renders judicial actions void.**"
— Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).
**"Fraudulently obtained property cannot be lawfully retained."**
— Kelly v. United States, 140 S. Ct. 1565 (2020).
*"[v]irtually no degree of contract impairment is or will be tolerable."*
— Yamaha Parts Distributors, Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975)

---

Failure by this court to intervene would perpetuate injustice, erode public confidence, and violate constitutional protections under Article VI and Article I, Section 10 of the United States Constitution.

Your honor, since 2021, the following signed property owners of Buckley Towers Condominium 'Association' have endured, a civil conspiracy that deprived them of, security over their property, and Constitutional Contractual Rights. But For the collaborated protection of state courts. Now plead, for your federal intervention. According to your duty under Article VI. To uphold the Supremacy Clause, the Contract Clause, Equal Protections and the 14th Amendment.

In 2023, the same individuals, with now attorney Katz, sued again without standing or cause. Yet, granted relief. Through, two sua sponte orders, procuring control over the Association 2024 board elections. Affording Mr. Katz authority (Defendants) the right to run the Assoc. elections. In contradiction to the Association bylaws, state law and Florida Administrative Code 61B-23.0021. Because Katz's clients refuse to be held accountable for the 2021 receivership; they petitioned against the 500+ owners' homes without their consent. Violating bylaws, FS617 and FS725.01.

Now, to maintain the Association, they impaired 350+ owners' Right to participate in the board and of their Right to Vote. Enforcing FS718 restrictions RETROACTIVELY in contradiction to the 1968 Association bylaws. Thus without the power to bypass and forgo Due Process; Proper Notice and a Grievance Meeting, before depriving owners of Acquired Rights.

*"State courts cannot refuse to enforce constitutional protections, and federal oversight when necessary." AS "No state legislator or executive or judicial officer can war against the Constitution without violating their oath of office." Cooper v. Aaron, 358 U.S. 1 (1958)*

**FORMAL PETITION FOR a Federal Court Declaratory Relief and Injunction**

## The FACTS that no one can dispute:

1. The 2023 Board DID more for BT and you than any other board in the past 10 years <u>**without Special Assessments**</u>.
2. **After 18 months of Receivership, NO EVIDENCE of wrong** was found against Mr. Villars or his 2021 board.
3. The **"Illicit Group"** who placed BT in Receivership, costing us <u>$4 Million</u>, is now being protected by Trullenque.
4. Francis Trullenque was placed by defrauding the Association with **his RealEstate lawyer Katz** and judge Del Rio.
5. **FRAUD VOIDS EVERYTHING** - Meaning their illicit takeover brought by fraud is NOT VALID to hold any authority.
6. YOU CAN GET ALL THE MONEY YOU PAID to the Receiver! By removing Trullenque and his Illicit Group.
7. OR you can accept their fraud, and waive your rights to collect your money back; by just refusing to fill this form.

_____**I cast my vote for Marcos and his 2023 Board,** who were duly elected, as recognized by the Association's governing processes. This vote preceded actions in 2024 by Trullenque and Katz, which I allege defrauded our Association elections. I request that Mr. Katz present to this Court the specific law or bylaw granting judicial authority to discard my Contractual Clause Protection concerning our Association's private agreement. This is especially crucial given the absence of any proof of wrongdoing by the 2023 Board or myself and the denial of our right to contest such allegations. In the absence of such judicial authority, I respectfully urge this Court to fulfill its duty to protect my Constitutional rights, ensuring that judicial errors do not infringe upon my lawful protections.

_____**I recall the 2024 and 2025 Illicit Group board directors,** placed through the fraudulent 2024 Association elections process, further enabled by Judge Del Rio's sua sponte Orders obstructing Due Process. Now, Mr. Katz and Trullenque are retroactively enforcing FS718 against my pre-existing rights and disenfranchising 300+ owners by alleging FS718 debt-related disqualification. This enforcement, without due process for those voting for the 2023 Board, violates Constitutional Contract Clause protections and 42 U.S.C. § 1985. The Illicit Group includes Francis Trullenque, Alex Nikitins, Natalia Zuchinni, Marcelo Escobar, Magda Pineda, Flor Garuz, Rosa Vicente, Norma Torres, Andrew Nidetz, Nakia Hickson, Osvaldo Fructoso, and Luis Escobar. Where under the Supremacy Clause, courts must follow precedents such as *Allied Structural Steel Co. v. Spannaus (1978)*: 'The Contract Clause prohibits [state] laws impairing pre-existing contracts,' and *Kelly v. United States (2020)*: 'Fraudulently obtained property cannot be lawfully retained.' Finally, *New York v. United States (1992)* confirms courts must address Constitutional violations when essential to a case.

_____**I plead for the Federal Court to issue a Declaratory Judgment,** affirming and protecting my Constitutional and Contractual Right to Vote under Article I, Section 10 of the U.S. Constitution and 42 U.S.C. § 1985. I seek immediate relief reinstating the duly elected 2023 Buckley Towers Board, consisting of: Marcos Noguera as President, Janvier Villars as Secretary, Iham Sattarzada as East Vice President, Ms. Waheed W. as Vice President, Juan Palmieri as Treasurer, and Directors Luz Moscoso, Carmen Gomez, Sayed Movla, Andres Vergara, Libe Grinberg, Clara Chavarri, Teresita Andersh, Andres Jorratt, and Mari Ayala. This Board was unlawfully displaced by the fraudulently procured 2024 Trullenque/Katz elections. Relief is warranted due to the ongoing deprivation of due process and contractual protections, violating the Supremacy Clause. As stated in *Caperton v. A.T. Massey* and *Mathews v. Eldridge*, 'A court's failure to act impartially or fairly in addressing allegations of abuse can constitute a denial of Due Process.' This request seeks clarity on my legal rights and obligations and demands the Court's equitable intervention to correct and prevent further violations.

I, the undersigned titled owner, affirm that my contractual rights are intact and not waived. This declaration serves as my proxy and power of attorney, authorizing my representative to present it to the Federal Court. I confirm I am signing freely, without coercion, threats, or promises. I am over 18 and of sound mind, fully understanding this declaration. No individual in this Association, including Mr. Katz, may speak on my behalf or override my rights without a Trial by Jury. Claims against me must be filed separately, without using Association funds, and with private counsel. I rely on this Court's duty to uphold my Constitutional and Contractual rights under the Supremacy Clause.

_____    _____    _____    _____

Exhibit I:

Buckley v. Villars: Example of the 268 petitions filed in the court of Judge Guzman. Pleading for their day in court, for being directly affected by the Receiver and the imposed $3.5MM without legitimacy.

## <u>Property Owner Petition for Court hearing per FS714.06 and Answer to Related Legal Questions.</u>

I, the undersigned property owner in Buckley Towers Association, request for the questions herein to be responded to <u>by all</u> those who collaborated in this Receivership; before the next court hearing. Since it won't be by zoom, I may not be able to attend it. Nonetheless, as an adverse party, I need the Lawyers which my Association is paying for; both the sole Director Mr. Abadin AND his Attorney Mr. Landy, to provide me with a legally-founded justification for the taking and keeping of my property, beyond the explanation that is because "the judge signed the Receivership Order". As one of the intended third-party beneficiaries of this Association legal representation, you must give me a thorough legal and contractual sound explanation. Pursuant to FS 90.501 you cannot deny me any case merits.

Consistent with our Association contract (bylaws) and Florida FS 711 we are waived of the financial responsibility for the prior association misappropriation of the funds, turned into neglect of our property. Yet this court confiscated our property for "Public Policy" by disregarding all the necessary legal steps in doing so. Knowing this class of people cannot afford to fight for their rights in court… therefore targeted as easy pushovers. So my questions are also for the BAR Association and its members, now State Attorney Ms. Rundal, Ms. Pam Bondi, the Governor Mr. De Santis, and the rest who took office, claiming to be for the interest of the citizens of this state.

1. Are the federal and state laws mandatory on every BAR Association member (lawyers in union) which also includes the attorneys dressed in black robes, acting as judges?
2. At Judge Carlos Guzman granting a Receivership, petitioned solely by Mr. Smith of Katzman Chandler P.A. Who filed the lawsuit as the Association lawyer without being its legal representative, and without any owner actually Petitioning for the Receivership, can this collaborated fraud on the court be considered by the Federal government as a clear violation of due process on all of the property owners not named in this lawsuit?
3. Without having personal or subject matter jurisdiction, yet acting as judge to take away liberty and property from the defendant along with 560 other owners, has Judge Guzman, Mr. Ramon Abadin, Damian & Valori law firm and Mr. Russell Landy in fact conspired in this judicial oppression, to induce insolvency on this working class?
4. Meanwhile this white-collar organized Mob uses the state power to deprive of privacy, liberty, security in one's homes, judicially threatens citizens into submission; all while the court lacks legal or contractual justification for doing so, from the beginning of the case. What can really be expected from those who know of this ongoing common judicial abuse, yet refuse to use their governmental powers to protect the citizens of this state?
5. Is this Judicial abuse being formally condoned by the Governor Ron De Santis, suggesting this class of property owner and international investors do not have the legal security in their property, as a Constitutional Right but available only if they can finance the Representatives' elections, in exchange for "state judicial" protection?
6. Where 14th Amendment violations are freely ignored by the State agents; permitting lawyers to take away one's home, through the lawyerly disguises, such as is "for the best interest of an association"; as it is the routine judicial collaboration, to deprive association owners of any civil relief. Is the only viable protection for this class, against these BAR license criminals, the 2nd Amendment and the Castle Doctrine? Making guns our only defense? If so, what can be said of a Civil Judicial System that promotes this instead of affording civil rights?
7. At this Mob of judicial abusers being condoned by their state court colleagues, should the narration be against the homeowners and in favor of this Mob or rather should the narration by the governing body be more reinforcing the integrity of the Judicial System by outcasting these corrupt state agents immediately?
8. A 16 year-old, from a working class family, decides to disregard the laws and breaks into an elderly couple's home, steals their little savings, threatens to beat them if they tell anyone. Gets caught and the State Attorney prosecutes her to the full extent of the law, "for the public good". But when it is a BAR licensed attorney dressed in black, taking from the same old couple their savings, their liberties and dignity, their security in their homes illegally, the state wants nothing to do with it. Begs the question, are the laws only to oppress the common working class? Until when should this judicial facade continue protecting this Judicial Mob?
9. At Judge Guzman openly depriving property owners of Due Process, to take away from this marginalized class the fruits of their labor, because the Judge has undisclosed interests in their property, what stops other judges from doing it to other citizens who are under the same financial restrictions, or from small-business owners?
10. Should the State representatives avoid addressing the UNConstitutionality of the Receivership Act, which only permits the same judge, who placed the receivership, to ARBITRARILY decide when to dismiss it? Even when the receivership was appointed by defrauding the title property owners?

## PROPERTY OWNERS OF BUCKLEY TOWERS UNITED AGAINST ANY TYPE OF RECEIVERSHIP

I am a property owner of Buckley Towers Condominium.  A private corporation and Association governed by the Association Declaration and Bylaws of 1969. Which lacks the Kaufman Language *as amended from time to time*. Thus, protected from any new State Law or Amendment (as of 1969); that by its operation deprives me of any Substantive Right, Privilege, Duty, Immunity, or Interest.  **NOTE our bylaws** also DO NOT afford any entity whatsoever any right or authority, without my personal approval, to place my Association property in Receivership. Per our Contractual Rights and Freedom of Association, the Courts may not force a new Financial burden on us.

I plead for my voice and vote to be duly respected and Judicially Noticed by the State of Florida Judicial Courts.  For the State Courts to adhere to its jurisprudence at attending legal or suits in equity.  To provide me with actual Due Process equal to those who are represented by expensive law firms.  To respect me as a citizen, deemed by the U.S. Constitution, worthy of equal protection under the law.  Requiring individual process of service before addressing my property interests, with at least 10-days Notice prior a Hearing, Unobstructed Litigation Privileges with Compelled Discovery on my opponents, and strict enforcement to FL Rules of Civil Procedures and Court Rules also on my opposing party attorneys, with penalties according to the FRCP. Timely court hearings to address my motions, in equal promptness as afforded to my opposing party. But more importantly, for the Courts to respect my Right to Privacy, and my Association bylaws as those are written. Enforce State Laws that protect my property from any possible illegal taking. In particular for any Constitutional Rights to be protected against any civil conspiracy intending to place a Receiver against my Association. Petitioned by any entity who does not have my personal written consent to act on my behalf. Regardless of their color of law title. Requiring for such petition for Receivership to have a recorded Verified and confirmed $10 MM surety bond. Otherwise, the State of Florida must use such petition for Receivership, against whomever records it in court. Prosecute them under FS817.535 and 18 U.S. Code Sec. 1341. Affording me with punitive damages of three times whatever it cost me to defend my rights and my property in court.

### Buckley Bylaws: Rec. 6210 Pg. 367

**5. Approval or Disapproval of Matters.  Whenever the decision of an apartment unit or shop unit owner is required upon any matter, whether or not the subject of an association meeting, such [Receivership] decision shall be expressed by the same person who would cast the vote of such owner if at an Association meeting, …as is specifically required by the Declaration or these Bylaws.**

"EQUITABLE Receivership is a creation of Common LAW, which the Supreme Court has stated should be reserved [Limited to] cases involving fraud, self-dealing, or waste." - Granada Lakes Villa Condominium Ass'n. Inc. v. Metro-Dade Investments Co. 125 So. 3d 756, 759 (Fla. 2013).

**"The version of the Condominium Act [FS 711 of 1969]** or Ch. 617 that was in effect when the declaration was recorded" are thereby the controlling laws for the condominium Substantive Rights. "[v]irtually no degree of contract impairment is or will be tolerable." Yamaha Parts Distributors, Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975) Quoting The Florida BAR: https://www.floridabar.org/the-florida-bar-journal/florida-community-association-law-contracts-clause-applicati on-in-an-ever-changing-legislative-landscape/

With my signature in this Petition for Greviance, I am conferring my interest in a Class Action to protect my property. I am formally calling on Judge Del Rio to record her Jurisdiction in case 2023-26257-CA-01. At lacking proof of harm Caused by the Board. Otherwise, dismiss the Injunction immediately. For never affording me with any Due Process before depriving me of my interests in my Private Association contract. I plea the court for **1.610(d)** hearing in 5 days.

At the signing, I hereby completely agree with the aforementioned declaration. Any part I did not understand I was content with the explanation I was afforded and understood. This petition does not waive any rights now or in the future. I am choosing to trust those owners who have consistently proven their loyalty to our community, here petitioning this for me.

My Unit address is  13_____ NE Miami Gardens Drive, Miami, FL 33179.

| | | | |
|---|---|---|---|
| Zulema Lemus - | 1491 B | | 3-19-2024 |
| Owner Name | Unit No. | Signature | DATE |

# Exhibit D

## Title:

2024 Injunction Orders issued by Judge Vivianne Del Rio

## Purpose:

It shows procedural replication of Guzman's fraud, which was used to cancel elections and deny lawful board intervention, extending the conspiracy. Judicially and Deliberately denying 560+ Working Class Property Owners of Privacy, Association, Contractual, and Due Process. **By Judicial Discretion alone.**

.

Case 3:25-cv-04239-RS    Document 1-4    Filed 05/16/25    Page 172 of 330

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2023-026257-CA-01</u>
SECTION: <u>CA05</u>
JUDGE: <u>Vivianne Del Rio</u>

**Francis J. Trullenque**

Plaintiff(s)

vs.

**Buckley Towers Condominium, Inc.**

Defendant(s)

_____/

## <u>ORDER OF DISMISSAL WITH PREJUDICE</u>

THIS CAUSE came before the Court on January 26, 2024 on Plaintiffs' Verified Emergency
Motion for Preliminary Injunctive Relief. During this hearing, the Court also considered the
Counterclaim filed by purported Counter-Plaintiff Janvier Villars, and related Motions to Strike
and/or Dismiss filed by Plaintiffs/Counter-Defendants FRANCIS J. TRULLENQUE, as Trustee of
the Francis J. Trullenque Revocable Trust, MORDECHAI ZARGER, IDELIYA MAKAROVA and
Counter-Defendant STEVEN B. KATZ, ESQ. Having reviewed the Pleadings/Motions and the
file, considered argument on behalf of the parties and being otherwise advised in the premises, the
Court finds as follows:

    A. Counter-Plaintiff Janvier Villars is not a defendant or an original party in this

lawsuit and has no legal basis or standing to file a counterclaim and related pleadings/motions
against Plaintiffs/Counter-Defendants and nonparty Counter-Defendant STEVEN B. KATZ, ESQ.

    B.    The Defendant BUCKLEY TOWERS CONDOMINIUM, INC is the only party with
a legal basis or standing to file a counterclaim in this matter.

    C.    Janvier Villars is not a proper party in this matter and all related motions and

pleadings filed by Janvier Villars are neither relevant nor material to any issue pending before this Court.

Based on the foregoing, it is hereby ORDERED AND ADJUDGED as follows:

1.      The Court hereby grants Plaintiffs/Counter-Defendants' Motion to Dismiss Counterclaim filed by Purported Counter-Plaintiff Janvier Villars. The Counterclaim filed by purported Counter-Plaintiff Janvier Villars is hereby dismissed with prejudice.

2.      This Court hereby strikes all other motions and pleadings filed by purported Counter-Plaintiff Janvier Villars in this matter as redundant, irrelevant, or immaterial to any issue pending before this Court. Janvier Villars is likewise struck as a party in this matter as he is not before the Court by any proper legal process or rule.

3.      The Court reserves jurisdiction to determine the amount of attorney's fees and costs to be awarded to Plaintiffs/Counter-Defendants as prevailing parties in this matter.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 1st day of February, 2024.

2023-026257-CA-01 02-01-2024 1:26 PM
Hon. Vivianne Del Rio

**CIRCUIT COURT JUDGE**
Electronically Signed

---

Final Order as to All Parties SRS #: **12** (Other)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

---

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR THE MIAMI-DADE COUNTY, FLORIDA

Francis Trullenque,Mordechai Zarger, et. al          **Counterclaim** of: 2023-026257-CA-01
Plaintiff

JANVIER VILLARS, pro se                              CASE No:
Counter PLAINTIFF,
V.
Buckley Towers Condominium Inc.
Defendant

Francis Trullenque, Mordechai Zarger, Stevens Katz, et. al
Counter DEFENDANTS

_____AMENDED COUNTERCLAIM_____

Under Florida Rules of Civil Procedures: 1.120(a), 1.190(e), 1.180(e) and 1.240.

## EMERGENCY PLEAD for Declaratory Relief per FS86.011 (3) and FS 90.501

This is a verified lawsuit based on the facts, the Association contract and FS711 governing laws.
I solemnly swear this is not filed to cause any delay nor to have any strategic advantage. Rather pleading
the court for this Declaratory Relief to be afforded on the Januar 4, 2024, scheduled zoom hearing.
Together with the opposing parties Motion.  Since it directly addresses the claims in their complaint.

The questions of substantial importance to clarify the significance of the Association Parking Amendment
(hereafter "Amendment") along with the purpose of the governing documents and the specific written
afforded rights to each party.

### QUESTIONS

1. Where a contract  specifically expresses an authority to one party to act on behalf of the Association, and does not provide the other party such authority to act or maintain in perpetuity any common elements, can this court create such right or duty in this private contract?

2. Where a contract does not mention by name FS718 or FS720 as governing laws, nor does it have "*as amended from time to time*" known as the Kaufman Language, can either of those statutes Procedural laws impair the contract afforded rights, duties, privileges or immunities?

3. Can Laches be used Offensively to invoke an affirmative relief[1], to confiscate or to void a duly expressed right afforded to the Board of Directors to appropriately run the Association?

4. Under the Wrongful Conduct, would it be appropriate for those who did not Revert the Parking as it is mandatory, to benefit from it, by claiming the Association waive its right to reassign?

5. If private contractual terms are created to keep the Association in good standing, maintain compliance to the rules, regulations and laws, then would it be prejudicial against the Association, to discard the purpose of this contract?

---

[1] Laches may be used **only as a shield** and not as a sword; it may be asserted as a defense, but cannot be invoked as a basis for affirmative relief. (See 30A C.J.S. (2014) Equity, § 138, p. 429 ["The doctrine of laches cannot be used as a means to obtain affirmative relief"]; LaPrade v. Rosinsky (D.C. 2005) 882 A.2d 192, 198 ["Laches may be used as a shield, but not as a sword by one seeking affirmative relief"]; Corona Properties of Fla. v. Monroe Cty.(Fla.App. 1986) 485 So.2d 1314, 1318; cf. Lackner v. LaCroix (1979) 25 Cal.3d 747, 752 [stating that the statute of limitations can be used only as a shield and not as a sword].)

6. After most owners approved the Association reassignment, shouldn't the court consider the less oppressive approach of allowing the owners their right to vote, in March 2024, for an amendment on the parking, according to their best interests?

IF the court must strictly abide by the terms in the bylaws, <u>as they are written</u>[2]; then we must conclude by defining each phrase of this 1991 Parking 'Amendment'. We must determine whether it is void, for conflicting with the FS711[3] and the purpose of the contract. Or conclude it indeed maintains loyalty to the Directors' afforded rights, duties and purpose under the contract and only protecting the Right to USE.

## FACTUAL BACKGROUND AND FOUNDATION
### Referring to the Buckley Towers 1991 Parking Amendment paragraph 5.

Paragraph 5, Subdivision (a) Automobile Parking Space. Apartment unit owners shall have the right to use, for automobile parking only, the parking space <u>Attributed by</u> the Board of Directors ("BOD") of the Association to an apartment; which attribution shall not be recorded among the public records. The underground (under the building) parking spaces purchased by apartment unit owners are recorded in the public records and belong to the purchaser in perpetuity unless sold by the purchaser and are considered a part of the apartment to which assigned. Shop unit owners shall have NO right to any specific automobile parking space. ALL other parking spaces shall revert to the BOD of the Association Upon the Sale or Lease of an apartment, and May be <u>reassigned by</u> the BOD of the Association at that time, with the Provision that each apartment must have an assigned space at all times.

The Admendment affords specifically ONE right to the owners: The "<u>Right to Use</u>".  Not as a possesory of the Parking space but after being Attributed or assigned ONLY BY the Directors.

Breaking into each phrase of the paragraph, the opposing party will need to prove the opposite than this explanation.
The 1st phrase that specifically provides **Expressed Authority** solely to the Directors is:
"the parking space [are] attributed by the Board of Directors…"
There is no other term affording anyone else the right to act as the Association to do this, nor does the bylaws expressly afford automatic perpetuity on any common area.  Nothing in the bylaws nor in the FS711 grants automatic right to self-assign any type of common areas. Nor does it provide for a waiver on the board for not reassigning "at that time". Where in other sections of the bylaws, such as during purchase of the units, it does express an automatic approval period. ALTERNATIVELY the court would be judicially and impermissibly coercing, a new burden or duty on the owners, <u>whatever and whatever</u> the Board Directors fail to do at any specific time, for the benefit of the owners.

The 2nd important section of this Amendment is:
"All other parking spaces SHALL[4] Revert to the Board of Directors UPON the Sale or Lease."

---

[2] "Courts may rely upon rules of construction, such as the rule that the plain meaning of a particular term may be ascertained to other closely associated words in the agreement, when interpreting a particular contractual provision." *City of Homestead, 760 So.2d at 84.* Quoting LSQ Funding Grp., L.C. v. EDS field Servs. U.S. District Court, M.D. Florida, Orlando Division.
[3] FS711.11 Bylaws  *(See attached)*
(c) Such other provisions <u>not inconsistent with this law</u> or with the declaration as may be desired.
[4] The use of the word "shall" in a contract provision indicates that the provision is mandatory. See BLACK'S LAW DICTIONARY 1233 (5th ed. 1979).CISNEROS v. ALPINE RIDGE GROUP U.S. Supreme Court

"Shall " is considered by most courts a Mandatory term. An automatic operation for it to occur.  There is no other "Shall" for the Board Directors to do, for the Revert of the parkings to occur.
"UPON the sale…" only refers to the time it is Mandatory - when Parkings "SHALL Revert". Followed by the enjoined Independent Clause that starts with, "AND" [parking] "May be" attributed "at that time". Providing NO foundation of an reassignment right to any owner or attorneys, as an assumed right.

**The 3rd** clause further Clarifies between **Mandatory** and **Optional Times** WHEN an action takes place:
`"And [parking] MAY BE reassigned - by the BOD - at that time"`
Where if the word "MAY" was meant to be Mandatory or obligatory on the BOD, the farmer would have used MUST or Shall.  And if the Amendment was meant to restrict the BOD to reassign ONLY "at that time", it would have been written that way, instead of left to assume by implication.  In fact nothing in the Amendment provides foundation to assume such restriction or deprivation of BOD reassignment rights. That would be an assumed waiver that confiscates and voids rights specially afforded to Directors to properly maintain the Association.

FS711.12 The Association
(3) No Unit Owner, except as an officer of the Association, shall have any authority to act for the Association.

**The 4th** and last phrase - is what truly defines the essence of the contract.
`"With the Provision that each apartment MUST have an assigned space at all times."`
IF this Mandatory contractual Provision holds true in law and in equity, no matter what, then it should be able to be placed anywhere in the sentence without frustrating the purpose of the governing contract. To maintain law, order and fairness. Affording Board of Directors' right and duty to enforce bylaws and state laws, while securing the owners' Right To USE a parking space at all times. "Equity elevates substance over form." *Cobb v. Whitney 1926 OK 920, 255 P. 577.*

Ulteriorly, an amendment translation that directly conflicts with the essence of the contract is considered void. As it would be prejudicial and extremely harmful to the Public interest.  Otherwise, any time negligent or inept Directors fail to immediately do what is right or necessary, the Association permanently loses its rights to remedy forever. This would force the Association to continue losing authority and property value perpetually. Forcing the Association to remain at the mercy of the corrupt who defraud elections. Greedy individuals who would run it into calamity, so they can buy the units cheap from owners in desperation. Clearly against public policy and injurious to the whole Association.  Making it pointless to have elections if the Association must respect the prior intentional violations to the Declaration.

**PROOF OF DILIGENCE AND DEDICATION TO THE BEST INTEREST OF THE ASSOCIATION**
What we've accomplished in 2023 proves our parking reassignment was not capricious, retaliatory, arbitrary, self-serving, criminal, in bad faith or discriminatory in any sense.  Rather intra vires. Out of sheer necessity and beneficial to all, including to those sabotaging our Association.

For the past 10 months, this board has been working seven days a week. To accomplish in 10-months, what others couldn't do for the past 14 years. WE accomplished our 40 and 50 yr. Recertifications, repaired the pools, repaired the stairways, repaired our clubhouse, reclaimed our storages, get our account in order, etc. **Yet, here we are in court again**. For abiding and enforcing our duties and attending our Association interests.  Being questioned by this court for correcting what has been causing our Association harm.  Where twice before, in at least two prior administrations before 2021, and in 2022

with the Receiver, <u>parking spaces were reassigned.</u> Owners were towed arbitrarily. Yet, not a single owner filed a suit against the Association.

A rule of law that is Not equally applied against all parties, cannot be said to be ruled by court in equity. Where the failure to enforce a term waives a right, then neither the Association nor the Community owners have any valid standing to demand a right on this contract. Leaving this community in chaos. To favor those who only care for their personal interests and a parking space in perpetuity. Instead of the community. Which is neither supported by our bylaws nor the FS711.

Our careful deliberation over the reassignment of our Association parking lot is justified by the complex circumstances we inherited. Failure to resolve for the Association, would have unnecessarily exposed the Membership to more crime in their parking lot and our residential hallways, prolonged the illegal rentals against the Association interests, and unfairly placed many owners in financial distress. And the Association to more legal suits for breach of contractual duties.

It is imperative to recognize that the first requirement of '*SHALL revert back to the Board*,' owed to the duly elected Board and Mandatory by Operation was not met. This should not be overlooked solely emphasizing on the second portion of the Amendment. Ulteriorly piecemealing the contractual terms to prejudice the duly responsible to correct the prior wrongs.[5] That would be like forcing the Board to make all emergency structural repairs on the two highrise towers <u>within one year</u>, but without using the elevators or any power tools.

This Association was illegally taken by the previous rogue owners in 2021. Who also preferred to place all of us in insolvency with a Receivership, than to comply with the Elected Board Officers. Making it IMPRACTICAL and IMPOSSIBLE for the duly Elected Board Directors to attribute parking" *"Upon the Sale or Lease"*. Mr. Trullenque purchased his unit in 2022. Thus, making 2023 the<u> legitimate time</u> for the Board of Directors to exercise its right to reassign his parking space. Leaving him without legal standing.

### THE PARKING SPACES: The Common Element among All Common Issues.

a. The 1969 parking lot design and recorded in Miami-Dade do not work in today's circumstances. It made it impossible for the Association to control the use of parking, before this reassignment. Because Visitors Parking was scattered throughout our eight acres property and throughout 700 parking spaces. Thus impractical and unfeasible for this Association to protect against vandalism and theft. Since anyone could drive around, roam around our property freely, while they were "looking for a free visitor parking".

b. The intentional disregard of *"parking SHALL Revert"* Operational term, allowed those who refuse the authority of the Association, to provide their illegal renters with self-assigned parking.

c. Avoiding having their renters sign an Annual Lease or having the Association approve their residence. Free to rent to those with a criminal background that the Association would have been able to legally deny. For the safety and protection of the membership.

d. These owners who rent without the Association approval were also renting previously (numbered) Reserved and Visitor Parking, that they knew were for the most part unattended.

e. Forcing those owners to register their unit purchase and comply with the Association criminal background requirement, before approving their rentals.

---

[5] Equity § 89, p. 458: "The general principles of equity will not be applied to frustrate the purpose of the laws or to thwart public policy. Equity will not permit that to be done by indirection which, because of public policy, cannot be done directly."

f. IDELIYA MAKAROVA's husband, Mr. Alex Nikitins, among the current rogue owners, was taking at least two additional Visitor parking spaces as their personal car storage. The Board, although aware, couldn't do anything about it. Because suing only a few would have exposed the Association to Selective Enforcement lawsuits.

g. MORDECHAI ZARGER, in 2020, after illegally taking the Vice-President position for a third consecutive year, assigned 10 parking spaces to his partner, in the beauty salon shop. This Parking Amendment specifically prohibits shops from having a single parking space. Yet as a Vice-Presiden, on behalf of the Association, he gave his partner 10 spaces. So he could rent parkings to his (5) units renters/ subrenters. Profiting from his prior wrongful practices, while depriving owners of Visitor Parking.

h. At this Board receiving the Association without any proper accounting records, it could not send collection letters to delinquents.  But by reassigning their parking, we forced most to get their accounts current. In order for them to obtain the new reassigned parking space. Collecting over $100,000, for the Association, within months and without any additional legal costs on the owners. Governing with less oppressive and affordable means of resolving for the Association. By using the Rights afforded.

i. The Association had no other means of enforcing the sharing of the common areas known as the Visitor Parking. Our logical and viable solution was placing a per hour collection instead of spending more on enforcement. By forcing sharing of the Visitors' parking spaces with everyone, while financially benefiting everyone.[6] with the profits the Association collects[7]. Reducing the need for large Special Assessments.  At $1 p/hr X 140 Spaces X 24hrs X 365 days = $1.2 MM

j. Further proof of loyalty to the membership is observed with the 'Preferred Parking' project created by this Board. A unique fundraising project that allowed owners to pay to the Association, for a one-time right to self-assign their own parking. A privilege or right not afforded to the owners, per our bylaws or state law. Rather a right enjoyed only by the Board. This board collected these funds to afford an intelligent **parking security system**. That includes 10 automatic gates, a Patrolling Robot that will scan and verify registered license plates or call the towing company automatically, 2000 RFID Cards, 2000 UHF Windshield stickers, Access Control software…

k. No one was factually harmed by this reassignment; as the Provision is kept. Everyone has a reassigned parking space and most who voted approved this solution rather than another debt against their unit.

**WHEREFORE:**

Our results go beyond preponderance of evidence. Without a doubt serving the best interest of the Association. Any translation on this well intended amendment, should serve that good intent, and for the benefit of the Association at large.  An equitable ruling should not permanently prejudice the whole association, to favor **an** assumption waiver. Especially after finding that the Plaintiff lacks irreparable harm or injury as a matter of fact. After this board afforded every Resident an equal opportunity to keep their parking space. Yet, the Plaintiffs decided their parking was not worth paying $250, not in equity nor for the best interest of their Community. A clearly intended malicious prosecution to sabotage the board.

We ask this court to respect under our inherited circumstances OUR Business Judgement (Rule) exception. To allow the majority of the owners of this private Association to make the decision on how to handle the parking space issue along with the March 15 Annual Board Elections.

---

[6] FS 711.18 Limitation of liability.- (1) The liability of the owner of a unit for common expenses shall be limited to the amounts for which he is assessed from time to time in accordance with this law, the declaration and bylaws.

[7] FS 711.12 (6) The association shall have the power to make and to lease, collect assessments, maintain, repair and replace the common elements.

If we are afforded with property privacy, and the majority of the owners vote in favor of our proposed amendment, we will be able to resolve the INSUFFICIENT parking issue. Where an additional 300+ parking spaces are needed but only 100 Visitor Parkings are available. Which this court does not have subject matter jurisdiction per our bylaws or the FS711. We believe we can resolve it by providing FREE Valet Parking to each unit that complies with the Association bylaws and rules.

**THEREFORE:**
Mr. Villars, who is duly elected to represent the Association owners, with clearly written Board Director Rights pleads for this court to:
1. Provide clarity on the contractual rights, privileges, immunities and duties in this Parking Amendment as a Declaratory Relief.
2. For this court to afford us answers to the six questions. To address the question of Subject Matter Jurisdiction within the four corners of this lawsuit.

Because until this court IN EQUITY provides this Declaratory Relief the opposing parties will continue instructing other owners to refuse the authority of this Association. Intentionally sabotaging the board's hard work. Intentionally causing chaos in the community, for their self-serving interests.

Janvier Villars, Pro Se
2023 Buckley Towers Board Secretary
Property Owner of Buckley Towers
1301 NE Miami Gardens Drive, Miami FL 33179
janvier269@gmail.com

Certificate of Service

I HEREBY CERTIFY this lawsuit was served to Mr. Trullenque and Mr. Zarger by emailing their attorney attending the case 2023-026257-CA-01, Mr. Steven Katz.

Janvier Villars
2023 Buckley Towers Board Secretary
Property Owner of Buckley Towers
1301 NE Miami Gardens Drive, Miami FL 33179
janvier269@gmail.com

Filing # 191926243 E-Filed 02/14/2024 10:42:28 AM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FRANCIS J. TRULLENQUE, as Trustee of
the Francis J. Trullenque Revocable Trust;
MORDECHAI ZARGER; and IDELIYA
MAKAROVA; Individually, and on behalf
of the Unit Owners similarly situated,

       Plaintiffs,

vs.

BUCKLEY TOWERS CONDOMINIUM, INC.,

       Defendant.

_____/

CASE NO.: 2023-026257-CA-01

### DEFENDANT'S AMENDED MOTION FOR REHEARING[1]

Defendant BUCKLEY TOWERS CONDOMINIUM, INC., by and through its undersigned counsel, and pursuant to Fla. Rule of Civil Procedure 1.530  hereby moves for rehearing of this Court's February 1, 2024 Order on Plaintiffs' Verified Emergency Motion for Preliminary Injunctive Relief. In support thereof, Defendant states as follows:

### I.    Summary of Grounds for Dissolving the Bond and Request For Rehearing.

This case involves Plaintiffs' filing a complaint for breach of contract and seeking injunctive relief against Defendant. Plaintiffs allege that Defendant has violated its Declaration and Bylaws by "reassigning, transferring ownership or use rights, and otherwise completely changing the parking spaces of the apartment unit owners that were previously assigned to a unit, notwithstanding the fact that a sale or lease of an apartment unit has not occurred." (Compl. ¶13).

---

[1] This Motion is being amended to provide clarity that this is a Motion for Rehearing pursuant to Florida Rule of Civil Procedure 1.530(a) as amended in *In re Amendments to Florida Rule of Civil Procedure 1.530,* No. SC2022-0756 (Fla. Apr. 27, 2023).

Plaintiffs filed this Complaint even though Defendant was expressly permitted in the Bylaws to do as it pleased with the reserve parking spaces, so long as each unit had one space assigned to it at all times. It is *undisputed* that all units in the association are required to have one parking space. The dispute here lies relating to how and if the Association has assigned parking spaces to specific units, and what rights the unit owners have relating to previously assigned parking spaces, if any. Nevertheless, now the Plaintiffs are attempting to make this parking lot dispute into much more, where the Plaintiffs, without any evidence to support their "majority position" and without this Court finding that the Plaintiffs are serving as a "Class" or "Similarly Situated" representative to push this Association into receivership, well outside the bounds of the original complaint of a handful of assigned parking spaces.

## II.    Argument.

### A.    Defendant's Motion Should Be Granted Because It Was Not Given Opportunity To Present Testimony Violating The Defendant's Basic Due Process Rights.

Defendant's Motion should be granted because Defendant was not given the opportunity to present testimony, and therefore wasn't given the full opportunity to present its case. It is well-settled that a trial court has the inherent authority to reconsider interlocutory rulings prior to entry of a final judgment or final order in the cause. *See Bettez v. City of Miami*, 510 So. 2d 1242, 1243 (Fla. 3d DCA 1987). "A temporary injunction does not decide the merits of a case unless the hearing is set for that purpose and the parties have had a full opportunity to present their cases." *City of Miami Springs v. Steffen*, 423 So. 2d 930, 931 (Fla. 3d DCA 1982)

"An unsworn witness is not competent to testify." *Houck v. State*, 421 So. 2d 1113, 1115 (Fla. 1st DCA 1982) (internal citations omitted). Section 90.605, Florida Statutes requires that "each witness shall declare that he will testify truthfully, by taking an oath or affirmation. . . . The witness's answer shall be noted in the record." There is only an exception to this rule if a child is

testifying. *See id.* The trial court errs if it solicits unsworn testimony from a witness, and also errs

if it considers any testimony offered by an unsworn witness. *See Houck*, 421, So. 2d. at 1116.

Here, the hearing transcript *(Attached hereto as Exhibit A)* demonstrates that Defendant

did not have the full opportunity to present its case because it was not given the opportunity to

examine its witness, and its witness was even never sworn in. *See Steffen*, 423 So. 2d at 931; *see*

*Houck*, 421 So. 2d at 1115. Undersigned counsel for Defendant, called Mr. Marcos Noguera,

President of the Association, as his witness at this evidentiary hearing. (Tr. 44). Mr. Noguera, after

taking the (virtual) stand, immediately started to engage in dialogue directly with the Court without

undersigned having the opportunity to examine his witness himself. (Tr. 44—55). Regardless of

undersigned's lack of an opportunity to examine his witness, Mr. Noguera's testimony could not

be heard nor considered by the Court because Mr. Noguera was never sworn into the Court and

was therefore incompetent to testify. (Tr. 44  L 8 - 10); *see Houck*, 421 So. 2d at 1115 (stating

unsworn witness is incompetent to testify and trial court errs by soliciting and considering unsworn

testimony); *see* Fla. Stat. 90.605 (requiring each witness take an oath or affirmation and it be

reflected in record).

Undersigned noted this matter to the Court, but the Court proceeded to make a ruling even

though the record shows that the Defendants were never given the opportunity to provide *any*

testimony.

> **Mr. Herzberg:** Mr. Noguera, if you can just wait one second. First
> of all, I just want to make things clear, he has not been sworn in. So
> I –
> **The Court:** Oh, Okay. Okay,
> **Mr. Herzberg:** On that. Of course, the Court has the right to inquire,
> I do want to at least have an opportunity at some point to have that
> inquiry as ---
> **The Court:** Listen, Mr. Herzberg, it just seems to the Court there is
> so much more going on here than the parking issue….

(Tr. 49 L. 12 – 50 L. 2)

The Defendant has been deprived of its due process rights by not allowing them to be fully heard and have its testimony and evidence given on the record of this Court. "Due process requires a party be given notice and a meaningful opportunity to be heard. A denial of either constitutes fundamental error." *Perez v. Maldonato*, 324 So. 3d 1011, 1013 (Fla. 3d DCA 2021). "'The failure to give a party the chance to present witnesses or testify violates this fundamental right' of 'a full and fair opportunity to be heard in judicial proceedings.'" *Julia v. Julia*, 146 So. 3d 516, 521 (Fla. 4th DCA 2014) (quoting *Cole v. Cole*, 159 So. 3d 124, 125 (Fla. 3d DCA 2013)). While it is understood that Mr. Noguera began to speak immediately, without being questioned, the Defendant should have been given time to have Mr. Noguera sworn in, as noted to the Court. (*See TR Pg. 49 L. 12 – 21).* Second, the Defendant should have been given the opportunity to ask Mr. Noguera any other questions or call other witnesses on behalf of the Defendant.

> Parties are entitled to a full hearing prior to the trial court issuing a permanent injunction. ... To satisfy due process requirements at an injunction hearing, the parties must have a reasonable opportunity to prove or disprove the allegations made in the complaint. ... This includes allowing relevant testimony of pertinent, noncumulative witnesses who are present and cross-examination of the parties.

*Furry v. Rickles*, 68 So. 3d 389, 390 (Fla. 1st DCA 2011).

The Court *must* give the Defendant an opportunity to be heard in this critical matter.[2] The Court has violated Defendant's due process rights by not allowing Defendant to "testify or present countervailing evidence of why a temporary injunction should not issue." *Leposky v. Ego*, 348 So.

---

[2] *Owens v. Owens*, 315 So. 3d 163, 164 (Fla. 1st DCA 2021)(holding a court cannot deprive Appellant of a full hearing, no matter how compelling it considers portions of the evidence); *Ohrn v. Wright*, 963 So. 2d 298 (Fla. 5th DCA 2007)(stating that "[a]ll witnesses should be sworn, each party should be permitted to call witnesses with relevant information, and cross-examination should be permitted ");

3d 1160, 1162 (Fla. 4th DCA 2022) (citing *Hinners v. Hinners*, 312 So. 3d 938, 942 (Fla. 4th DCA

2021) (recognizing that the entry of a temporary injunction without an evidentiary hearing violates

due process); *See also Platinum Coast Fin. Corp. v. Farino's, Inc.*, 662 So. 2d 724, 724 (Fla. 2d

DCA 1995) (reversing a temporary injunction where the trial court "failed to permit the appellants

to present countervailing evidence of why a temporary injunction should not issue").

### B. Defendant's Motion Should Be Granted Because The Court Relied Upon Evidence Not In the Record.

Additionally, the Court improperly considered comments from the chat section of the

hearing, as this was a virtual hearing held over Zoom. Specifically, the Court stated on the record:

> **The Court:** All right. And one thing that I want to point out before we get started is that while this hearing is taking place, I have seen upwards of 20 messages pop up on the screen from various unit owners. So on the onset, I want to say that it appears to the Court that there is deep, deep discord within this condominium. And it's just – it rises to the level of being toxic, what I'm reading. There are individuals who appear to be deeply unhappy and upset with what is going on in this organization. . . . [I]t is shocking to the Court, shocking to the Court some of the things that I'm reading. And the dissatisfaction that I'm seeing among the unit owners, it's – I'm just making a comment on the vast number of messages that continue popping up.

(Tr. Pg. 20 L. 21 Pg 21. L. 17).

The Court, admittedly, assured that the Zoom comments were not influencing it when it

said "I want to be clear, that I am a neutral party here and I was merely voicing what has been

written by other people, not my opinion. I have no opinion on this matter." (Tr. 26 L. 17 - 20).

However, the Court also stated, ". . . I want to just, again, state for everybody, that I continue

reading messages that keep coming up. And it seems that Mr. Villars is widely despised here, from

what I'm seeing," (Tr. 25 L. 20 - 24) and further stated, "Listen, Mr. Herzberg, it just seems to the

Court that there is so much more going on here than the parking issue. The parking issue is a mess,

but there's a lot – there's a lot going on here besides just the parking," (Tr. Pg. 49 L. 22 Pg. 50 L. 2). just prior to making its ruling.

The issue here is that this hearing was held only to discuss the issue surrounding the parking spaces on the premises. From the record it appears as if the Court was influenced by the Zoom messages in making its ruling and explaining its reasoning. The Court should have never had an opportunity to entertain these messages. Analogously, there is no difference between the Court reading the Zoom chat comments, compared to members of the audience in-person screaming their comments across the Courtroom. The Court should not be taking into any kind of consideration unsolicited comments or statements from non-parties.

It is understandable that there is a difference in the means of delivery, in that the Court would never allow members of the public to scream matters across the Courtroom while Court was in session. But here the result is the same. Except here, the Court stated multiple times on the record that it has read the comments, and from the statements made by the Court on the record it is apparent that the Court made its ruling in part due to the comments being made in the Zoom chat. These comments cannot be relied upon at all, just as a comment in the mail, or comment made in person.

This issue is exacerbated because the Defendant was never even given the opportunity to address these comments via testimony of any kind. At the very least, the Defendant needs to have the opportunity to provide its own testimony in response to the Plaintiff's sworn testimony, and if the Court were to consider any other elements from the members of the association, a further evidentiary hearing needs to be set on that matter. The Defendant must have the opportunity to cross examine such witnesses and sworn testimony must be provided, not chatroom discussions. It's also worth noting that if these messages were considered, they would likely need to be properly

recorded and made part of the official record, similar to the way courts handle non-exempt email communications. Defendants are unaware of any record keeping of these messages nor are we aware of the ability to archive them in any way. The record is lost, and therefore the Court should be able to consider such a matter that is impossible to preserve for future rulings or reference unlike any other matter the court typically considers such as pleadings, affidavits, evidence and testimony that all can be preserved.

Because Defendant was not provided the proper opportunity to present its case, and because the Court considered comments from the Zoom chat, this Motion should be granted and a new hearing on this issue should be scheduled for a new evidentiary hearing.

### C. Defendant's Motion Should Be Granted Because Of A Lack Of Evidence To Demonstrate Irreparable Harm and Unavailability of Adequate Remedy at Law.

Defendant's Motion should also be granted because Plaintiff failed to demonstrate irreparable harm that would be caused if the injunction were not granted. A temporary injunction should only be granted if *all* of the following four criteria are met: (1) the movant has a substantial likelihood of success on the merits, (2) there is an unavailability of an adequate remedy at law, (3) irreparable harm will occur absent entry of an injunction, and (4) the injunction would serve the public interest. *See Florida Dept. of Health v. Florigrown, LLC*, 317 So. 3d 1101, 1110 (Fla. 2021). ". . . a movant's failure to establish any single element means that the injunction must be denied." *Id.* "There is no irreparable harm for the purpose of a temporary injunction where the harm can be adequately compensated for by a monetary award." *Steffen*, 423 So. 2d at 931.

Here, Plaintiffs failed to demonstrate irreparable harm necessary for a preliminary injunction to be issued. In his opening argument, undersigned stated,

> And our position is that [Plaintiffs] don't meet the four prongs of injunction. There is not irreparable harm. What is the irreparable

> harm? If they're saying it's money they have to pay to keep the
> parking space they want, well, there's monetary harm right there. . .
> . I don't believe that having to walk 50, 100 feet extra is irreparable
> harm.

(Tr. 18 L. 12 – 21).

  This question was never answered by Plaintiffs or their witness. No evidence was offered

during the hearing to demonstrate irreparable harm caused to the unit owners, and no evidence was

offered to show that the harm in this case could not be adequately compensated for by a monetary

award. *See Florigrown, LLC*, 317 So. 3d at 1110; *see Steffen*, 423 So. 2d at 931. Indeed, Defendant

did not address the issue of irreparable harm throughout the hearing, and no argument to establish

irreparable harm can be found within the transcript. Consequently, at least one of the four elements

required to establish a preliminary injunction have not been met, the preliminary injunction should

not have been granted, and this Court should grant this Motion. *See Florigrown, LLC*, 317 So. 3d

at 1110 (". . . a movant's failure to establish any single element means that the injunction must be

denied."). Irreparable harm is the basic element of an injunction, yet nowhere in the record whether

through their motion or testimony does the Plaintiff allude to any irreparable harm. *See Swensen*

*v. Lofton*, 457 So. 2d 1069, 1070 (Fla. 2d DCA 1984) (reversing a temporary injunction because

the motion for injunctive relief failed to plead sufficient factual allegations to support a showing

of irreparable damage).

  Because Plaintiffs failed to demonstrate irreparable harm that cannot be adequately

compensated by a monetary award, which is required for the Court to grant a preliminary

injunction, the preliminary injunction should not have been granted, and this Motion should be

granted.

**D. Defendant's Motion Should Be Granted Because The Court Signed Two Competing Orders.**

On February 1, 2024, the parties provided the Court with competing orders. Undersigned provided the Court with an order which contained more details relating to parking restrictions and allowed the Defendant a reasonable amount of time to comply with the Court's order. This order was signed by the Court. Moments thereafter the Court signed the competing order provided by the Plaintiff. At this point of time the Court must determine and notify the parties which order should prevail as the orders have different requirements on salient matters relating to the parking lot. The Court's Order references matters such as the "receiver" parking, but nothing relating to the what the receiver's parking list was ever submitted at evidence with the Court.

The Court has its inherent powers to correct or revise its previously entered orders. Therefore, the Court should hold a new hearing relating to which order, if any, it believes is most appropriate for the parties to abide by.

**E. Defendant Motion Should Be Granted Because The Court's Order Fails to Show Factual Findings to Support Each Prong of the Four-Part Temporary Injunction Test and Failed To Set a Bond Amount.**

The Court's Order fails to provide factual support to meet the four prongs required to enter the temporary injunction. Most telling the Court's Order does not discuss any irreparable harm to the Plaintiffs. As discussed above, there is none, and the Plaintiff has failed to meet this requirement to have the injunction entered. A finding an irreparable harm is required for this Court to enter the injunction. Furthermore, the Court's Order fails to find that there is no adequate remedy at law. It is clearly not that case because the Plaintiff's own complaint is for a breach of contract, which is an adequate remedy available to any party in this dispute, therefore there can't be a finding for injunctive relief at this time. "Third, the order is facially deficient because it contains no factual findings to support each prong of the four-part temporary injunction test, and further fails to require

a bond." *Leposky v. Ego*, 348 So. 3d 1160, 1162 (Fla. 4th DCA 2022); *see also Shir Law Grp., P.A. v. Carnevale,* 317 So. 3d 211, 214 (Fla. 3d DCA 2021) (reversing temporary injunction because "the order failed to contain sufficient factual findings to support each prong of the four-part injunction test, and the lower court failed to set an appropriate bond"). When a court order grants a request for injunctive relief, the "court's order must contain 'clear, definite, and unequivocally sufficient factual findings to support each of the four conclusions necessary to justify entry of a preliminary injunction.'" *Olson v. Olson*, 260 So. 3d 367, 369 (Fla. 4th DCA 2018) (quoting *City of Jacksonville v. Naegele Outdoor Advert. Co.*, 634 So. 2d 750, 754 (Fla. 1st DCA 1994)).

Lastly, while not discussed at the initial hearing, the Court must require that the Plaintiff's post a bond for the injunction. Florida Rule of Civil Procedure 1.610(b) provides that "[n]o temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." This Court is allowed discretion in setting the amount of bond for a temporary injunction, *see Montville v. Mobile Med. Indus., Inc.*, 855 So. 2d 212, 215 (Fla. 4th DCA 2003). However, this Court cannot waive the bond requirement of rule 1.610(b), and the amount of the bond may not be a nominal amount. *See Forrest v. Citi Residential Lending, Inc.*, 73 So. 3d 269, 279 (Fla. 2d DCA 2011).

### III.    Conclusion.

As briefed above, at the very least the Defendant must be given a fair opportunity to present its case against instituting the current temporary injunction and this Court must offer clarification related to the entering of competing orders. However, the record shows that the Court should go farther and dissolve the temporary injunction due to the Plaintiff's failure to meet all four prongs

of the requirements to enter the relief they have requested. Furthermore, the injunction being requested and entered is overly broad. As previously argued in the Defendants opposition filed on January 26th the injunction goes beyond the complaint. This Court has *not made any determination* relating to any purported class representation, yet the injunction does exactly that. The complaint fails to provide even the basic elements of such a class representation. *See Docket Entry (36)*. Furthermore, if the Court were to not dissolve the injunction a bond is required and a hearing must take place to determine the amount of such bond.

**WHEREFORE,** Defendant request that the Court enter such relief it deems just and proper including:

(a)    Dissolution of the Injunction.

(b)    Setting a new hearing or continuation of the prior hearing on the injunction to allow Defendant an opportunity to testify before this Court.

(c)    Clarification of which Order the Court intended to enter, if any, and determination of a reasonable time period for the Defendant to abide by such court orders.

(d)    Setting a hearing to determine the amount of bond to be posted by the Plaintiff's if the injunction is not dissolved.

Respectfully Submitted,

**Vazquez & Associates**
*Attorneys for Defendant*
1111 Brickell Ave Suite 1550
Miami, Florida 33131
Telephone: (305) 371-8064
E-mail: sh@gvazquez.com

By: */s/ Steven B. Herzberg*
       Steven B. Herzberg, Esq.
       Florida Bar Number: 111541

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via

the Florida E-Portal filing system this 13th day of February 2024 to all counsel of record.

**Vazquez & Associates**
*Attorneys for Defendant*
1111 Brickell Ave Suite 1550
Miami, Florida 33131
Telephone: (305) 371-8064
E-mail: sh@gvazquez.com


By: */s/ Steven B. Herzberg*
          Steven B. Herzberg, Esq.
          Florida Bar Number: 111541

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

CASE NO.: 2023-026257-CA-01


Francis J. Trullenque,

      Plaintiff(s),

vs.

Buckley Towers Condominium, Inc.,

      Defendant(s).

_____/



REMOTE VIDEOCONFERENCE HEARING


Friday, January 26, 2024
10:03 a.m. - 11:02 a.m.




This cause came on for hearing remotely
before the Honorable Judge Vivianne Del Rio, Circuit
Court Judge, via Zoom, pursuant to notice.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2023-026257-CA-01</u>
SECTION: <u>CA05</u>
JUDGE: <u>Vivianne Del Rio</u>

**Francis J. Trullenque**

Plaintiff(s)

vs.

**Buckley Towers Condominium, Inc.**

Defendant(s)

_____ /

<u>**ORDER APPOINTING ELECTION MONITOR**</u>

This matter came before the Court on February 27, 2024 on the Defendant's Amended Motion for Rehearing and Plaintiffs' Motion for Appointment of Receiver, Motion to Strike and Motion for Attorneys' Fees. After having reviewed the file, heard argument of counsel for the parties and being otherwise fully informed and advised in the premises, the Court makes the following findings:

A. The Court finds that the upcoming election in this matter may be dispositive of various issues pending before this Court;

B. The election of the Board of Directors which is currently scheduled for March 20, 2024 is contrary to the governing documents of the Association and in violation of the provisions set forth in *Section 718.112, Florida Statutes*;

C. That the appointment of an Election Monitor to conduct an election of the Board of Directors in accordance and compliance with the provisions of *Section 718.112, Florida Statutes,* is

crucial to the successful operation, management and continuation of the Association;

D.     That the Election Monitor will be granted full power and authority to immediately conduct, monitor and hold an election of the Board of Directors in accordance with the procedures set forth in *Section 718.112(2)(d)4, Florida Statutes*, and *Rule 61B-23.0021, Fla. Admin. Code*; and

E.     That the Election Monitor shall have full access to all Association records, including but not limited to a current and accurate list of unit owners, budgets, individual unit owner ledgers, records of fines, monthly financial reports, and bank statements, as well as any and all Association records requested by the Election Monitor to conduct, monitor and hold an election of the Board of Directors and perform his duties as set forth herein.

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

1.     The election of the Board of Directors currently scheduled for March 20, 2024 is hereby canceled.

2.     The Court hereby appoints TOMAS J. REMENTERIA ("Election Monitor") to act as the Monitor for the election of the Board of Directors of the Association, to be scheduled in accordance with the provisions set forth in *Section 718.112, Florida Statutes*.

3.     The Election Monitor shall have full power and authority to immediately schedule, conduct, monitor and hold an election of the Board of Directors in accordance with the procedures set forth in *Section 718.112(2)(d)4, Florida Statutes*, and *Rule 61B-23.0021, Fla. Admin. Code*.

4.     The Election Monitor shall be compensated for services rendered as the Election Monitor at $ 200.00 per hour and shall be reimbursed for all expenses incurred while acting as the Election Monitor. The Election Monitor shall prepare invoices for fees and costs incurred on a monthly basis, and file same with the Court for review and approval.

5.      No later than twenty (20) days after service of this Order upon the Election Monitor, in accordance with *Section 718.112(2)(d)4, Florida Statutes*, the Election Monitor shall select a date, time and place for the election and shall prepare and mail and/or hand-deliver the First Notice of the Election to all unit owners at least sixty (60) days before the Election (a form "First Notice" package for the Election is attached hereto as EXHIBIT "1").  The Election Monitor will compare and verify, through the Miami-Dade County Property Appraiser's website, the mailing addresses for the individual unit owners.

6.      A unit owner or other eligible person desiring to be a candidate for the board of administration shall give written notice to the Election Monitor not less than 40 days before a scheduled election. Upon the timely request of a candidate, the Election Monitor shall include, with the second notice of election described below, a copy of an information sheet which may describe the candidate's background, education, and qualifications.  The information contained therein shall not exceed one side of the sheet, which shall be no larger than 8 1/2 inches by 11 inches.  The candidate information sheet must be submitted to the Election Monitor at least 35 days before the date of the election.  Neither the Election Monitor nor anyone else shall edit, alter, or otherwise modify the content of the information sheet other than the person submitting the information sheet.

7.      If the Election Monitor discovers that a candidate (i) has been previously suspended or removed from the board of directors by the Division of Florida Condominiums, Timeshares and Mobile Homes; or (ii) has been convicted of a felony and the candidate's civil rights have not been restored for at least five years, the Election Monitor, with the exercise of his reasonable discretion, shall declare the candidate ineligible to be a candidate for the Board of Directors and the candidate's name shall not be included on the ballot.

8.      As there are legitimate concerns that the Association's ledgers are not compliant with Florida laws, ledgers will not be used to invalidate candidates from running as directors or officers, or to restrict voting rights for the election provided for herein.  Similarly, voting

certificates will not be required or used to determine legal sufficiency of votes.

9.      The Election Monitor shall thereafter prepare and mail and/or hand-deliver the Second Notice of Election to the unit owners not less than fourteen (14) days, or more than thirty-four (34) days before the date of the Election.  The Second Notice shall include an agenda for the meeting and shall include printed ballots, envelopes for returning the completed ballots and any Candidate Information sheets that have been submitted to the Election Monitor (a form "Second Notice" package including the Second Notice, a Candidate Information Sheet, printed ballot and envelopes, are attached hereto as EXHIBIT "2").

10.      The second notice and accompanying documents shall not contain any communication by the Election Monitor or anyone else that endorses, disapproves, or otherwise comments on any candidate, other than as contained within a Candidate Information Sheet.

11.      The ballot shall indicate in alphabetical order by surname each and every unit owner or other eligible person who desires to be a candidate for the board of administration, and who gave written notice to the association not less than 40 days before a scheduled election, unless such person has withdrawn his candidacy in writing prior to the mailing of the ballot. No ballot shall indicate which candidates are incumbents on the board. No write-in candidates shall be permitted.

12.      All ballots shall be mailed to the Election Monitor or hand-delivered by the Unit Owner to the Election Monitor at the Annual Meeting. No Unit Owner shall collect ballots from any other Unit Owner.  Ballots shall only delivered to the Election Monitor from the voting Unit Owner or associated party, such as a spouse who does not appear on a deed.

13.      Voting Certificates shall not be considered, required or used at the Annual Meeting.

14.      If the Election Monitor desires to verify outer envelope information in advance of

the meeting, the Election Monitor may designate an impartial committee of his own choosing to do so. "Impartial" shall mean a committee whose members are in no way related to the Association or members thereof. The Impartial Committee shall check the signature and unit identification on the outer envelope against the list of qualified voters. The voters shall be checked off on the list as having voted. Any exterior envelope not signed by the eligible voter shall be marked "Disregarded" or with words of similar import, and any ballots contained therein shall not be counted.

15.    The Election Monitor shall have sole authority and control of the Election and the process of tallying the votes received and declaring the results of the election after all valid ballots are counted.

16.    Subsequent to the conclusion of the election, the Election Monitor shall prepare a simple Report to be filed with the Court indicating the results of the Election.

17.    The Election Monitor shall record and report to the Court any instances of suspicious practices or conduct involved with or regarding the election and its processes.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-026257-CA-01
SECTION: CA05
JUDGE: Vivianne Del Rio

**Francis J. Trullenque**

Plaintiff(s)

vs.

**Buckley Towers Condominium, Inc.**

Defendant(s)

_____/

## <u>AMENDED ORDER APPOINTING ELECTION MONITOR</u>

This matter came before the Court on February 27, 2024 on the Defendant's Amended
Motion for Rehearing and Plaintiffs' Motion for Appointment of Receiver, Motion to Strike and
Motion for Attorneys' Fees. After having reviewed the file, heard argument of counsel for the
parties and being otherwise fully informed and advised in the premises, the Court makes the
following findings:

A. The Court finds that the upcoming election in this matter may be dispositive of various
   issues pending before this Court;

B. The election of the Board of Directors which was scheduled for March 20, 2024 was
   previously cancelled by the Court due to allegations by the Plaintiffs that the election was contrary
   to the provisions set forth in *Section 718.112, Florida Statutes*;

C. That the appointment of an Election Monitor to conduct an election of the Board of
   Directors, is crucial to the successful operation, management and continuation of the
   Association;

D. That the Election Monitor will be granted full power and authority to immediately conduct, monitor and hold an election of the Board of Directors in accordance with the procedures set forth in *Section 718.112(2)(d)4, Florida Statutes*, and *Rule 61B- 23.0021, Fla. Admin. Code* as if the First Notice of Annual Meeting has already been mailed to the Association's owners; and

E. That the Election Monitor shall have full access to the following Association records, : a current and accurate list of unit owners, , individual unit owner ledgers, records of fines, as well as any and all Association records requested by the Election Monitor that the Election Monitor reasonably believes is necessary to conduct, monitor and hold an election of the Board of Directors and perform his duties as set forth herein.

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

1. The Court hereby appoints TOMAS J. REMENTERIA ("Election Monitor") to act as the Monitor for the election of the Board of Directors of the Association, to be scheduled in accordance with the provisions set forth in *Section 718.112, Florida Statutes,* as if the First Notice of Annual Meeting has already been sent to the Association owners.

2. The Election Monitor shall have full power and authority to immediately schedule, conduct, monitor and hold an election of the Board of Directors in accordance with the procedures set forth in *Section 718.112(2)(d)4, Florida Statutes*, and *Rule 61B-23.0021, Fla. Admin. Code beginning with the second notice of annual meeting.*

3. The Election Monitor shall be compensated for services rendered as the Election Monitor at $ 200.00 per hour and shall be reimbursed for all expenses incurred while acting as the Election Monitor. The Election Monitor shall prepare invoices for fees and costs incurred on a monthly basis, and file same with the Court for review and approval.

4. The Election Monitor shall hold an election on the evening of April 24, 2024 or as soon as possible thereafter.

5. The Election Monitor shall accept as candidates those candidates selected by the Association or nominated by owner petitions as permitted by the Declaration of Condominium.

6. The Election Monitor shall mail the Notice of Election to the unit owners not less than fourteen (14) days, or more than thirty-four (34) days before the date of the Election. The Notice shall include an agenda for the meeting and shall include printed ballots, envelopes for returning the completed ballots and any Candidate Information sheets that have been submitted to the Election Monitor (a form "Notice" package including the Notice of Meeting, Candidate Information Sheets, a printed ballot and envelopes, are attached hereto as EXHIBIT "1").

7. The notice and accompanying documents shall not contain any communication by the Election Monitor or anyone else that endorses, disapproves, or otherwise comments on any candidate, other than as contained within a Candidate Information Sheet.

8. The ballot shall indicate in alphabetical order by surname each and every candidate for the board of administration and officers. No ballot shall indicate which candidates are incumbents on the board. No write-in candidates shall be permitted.

9. All ballots shall be mailed to the Election Monitor or hand-delivered by the Unit Owner to the Election Monitor at the Annual Meeting. No Unit Owner shall collect ballots from any other Unit Owner. Ballots shall only be delivered to the Election Monitor from the voting Unit Owner or associated party, such as a spouse who does not appear on a deed.

10. Voting Certificates shall not be considered, required or used at the Annual Meeting.

11. If the Election Monitor desires to verify outer envelope information in advance of the meeting, the Election Monitor may designate an impartial committee of his own choosing to do so. "Impartial" shall mean a committee whose members are in no way related to the Association or members thereof. The Impartial Committee shall check the signature and unit identification on the outer envelope against the list of qualified voters. The voters shall be checked off on the list as having voted. Any exterior envelope not signed by the eligible voter shall be marked "Disregarded" or with words of similar import, and any ballots contained therein shall not be counted.

12. The Election Monitor shall have sole authority and control of the Election and the process of tallying the votes received and declaring the results of the election after all valid ballots are counted.

13. The Election Monitor, may allow electronic voting, so long as such electronic voting is conducted pursuant to *Section 718.128, Florida Statutes.*

14. Subsequent to the conclusion of the election, the Election Monitor shall prepare a simple Report to be filed with the Court indicating the results of the Election.

15. The Election Monitor shall record and report to the Court any instances of suspicious practices or conduct involved with or regarding the election and its processes.

16. The Court's Order entered on March 18, 2024 is hereby VACATED.

17. The Court's Ruling's on this order are not dispositive as to any further issues, including the Defendant's position that entirety of *Section 718.112, Florida Statutes* is not binding on the Defendant. However, the Parties are obligated to proceed with this election pursuant to this Order and such result will be binding on the Association upon a report by the Election Monitor finding a proper election was held.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>24th day of April, 2024</u>.



<u>2023-026257-CA-01 04-24-2024 4:40 PM</u>
Hon. Vivianne Del Rio

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Eric Kay, Esq., ek@sbk.legal
Matthew Z Karim, Matt@Matthewkarim.com
Matthew Z Karim, info@lawstaff.info
Matthew Z Karim, law@lawstaff.info
Michale Emery, me@sbk.legal
Steven B. Katz, sbk@sbk.legal
Steven B. Katz, me@sbk.legal
Steven B. Katz, ja@sbk.legal
Steven Barry Herzberg, sh@gvazquez.com
Steven Barry Herzberg, mh@gvazquez.com
Steven Barry Herzberg, lawclerk@gvazquez.com
Tomas Rementeria, tomrementeria@gmail.com

**Physically Served:**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR THE MIAMI-DADE COUNTY, FLORIDA

Francis Trullenque, Mordechai Zarger, et. al
Plaintiff

**Counterclaim** of: 2023-026257-CA-01

JANVIER VILLARS, pro se
Counter PLAINTIFF,
V.
Buckley Towers Condominium Inc.
Defendant

Francis Trullenque, Mordechai Zarger, Steven B. Katz, et. al
Counter DEFENDANTS

## 2nd EMERGENCY MOTION FOR REHEARING
### TO LITIGATE THE JUDICIALLY CONCEALED LACK OF SUBJECT MATTER JURISDICTION
OFFICIALLY OBJECTING TO COURT INJUNCTION ON THE BOARD ELECTIONS WITHOUT a Hearing.

> FS711.03: **(3) No unit owner, except as an officer of the association,** shall have any authority to act for the association.
> "It is general principle of statutory construction, well established in Florida's jurisprudence, that the mention of one thing implies the exclusion of another." Thayer v. State, 335 So.2d 815(Fla.1976); 30 Fla.Jur.Statute 90 (1974). Also known as "Epressio Unius Est Excusio Alterius".

Mr. Katz has NOT PROVEN LEGAL STANDING or Proof of authority to be dictating on this Private Association Elections procedure.

*Court Judge:* **"I HAVE NOT GIVEN YOU PERMISSION TO SPEAK!"**

Knowingly the Court **is wanting of Subject Matter Jurisdiction, ab into. It is DENYING Mr. Villars Due Process.** Based on an UNfounded court doctrine, which denies him participation in the case. Claiming this "Under the Association Umbrella" doctrine waives his Constitutional Rights and Privacy at becoming a Board Director. Per Mr. Katz, Judge Del Rio and JA Ms. Bonini. Although wanting of a Caselaw or State Law supporting this Court Doctrine. Serving to deprive him of Due Process, as an individual harmed party in this case. Obstructed from Joining the case. To prevent him from defending his stake in the claims, and his property in court. REGARDLESS Rule 1.170(h).

This lawsuit complaint is about **Assigned Parking Rights - NOT RECEIVERSHIP - NOT ELECTIONS.** Yet this court continues assisting Mr. Katz witchhunt against this current Board of Directors. To extend the Complaint, from ONE Parking Assignment to a personal attack against Mr. Villars. Then using informal complaints received by Zoom chat, to judicially consider another Receivership!? Now, forcing on this 1969 Association, the new Florida Statute 718 Board Elections Procedures. When the Association bylaws clearly and precisely specify how the elections are run.

Which DO NOT mention, on this governing contract, the FS718 at all.  Rather **FS711 is the only controlling State Law.** *See* U.S. Contract Clause and Florida Article 1 Sec. 10.

Prohibited laws.—No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.

THIS ongoing abuse of process is exactly what Mr. Villars has been enduring for the past nine years. For being a member of the working class.  Continuously being manipulated in courts by Deputies of the Court. Disregarding federal and state laws, rights, privileges, or contractual terms. Interfering with these people's lives by deceit and misrepresenting laws.  As they did in 2021 against at least 500 property owners. Who were placed into receivership by similar court swindles. Without affording proper notice, or proof of a single wrongdoing. Yet judicially coercing a $3,000,000 debt on owners. To settle lawsuits against its Association. Caused by the BAR Licensed attorney Katzman who placed them in Receivership.  The same legal tactics used to force this injunction on the Association again. Refusing proper Due Process to all adverse parties requesting a hearing. Obstructing Defendant and Counter-Plaintiff defend their case. Without Plaintiffs or their attorney Mr. Katz providing a CLEAR RIGHT to act as the Association, to self-assign their common area parking.

**WHERE the Judicial schematics remain the same, the BAR Licensed names change.** The Evidence is in the **Common LACK OF "CLEAR RIGHT" and ARTICLE III  "INJURY IN FACT".** **That the court purposely disregards, at immediately affording prejudicial injunctions.**

**The Plaintiffs and Mr. Katz could not prove a Clear Right nor evidence of irreparable harm, nor legal or equitable foundation for their injunction.  Yet they keep getting what they ask for.**
"An injury in fact must be "concrete, particularized, and actual or imminent."
TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021).
"First, to establish entitlement to a mandatory injunction, a movant must establish that a
clear legal [not presumed] right has been violated."
Legakis v. Loumpos, 40 So.3d 901, 903 (Fla. 2d DCA 2010).

"Under section 718.303(1), the requirement of irreparable harm is satisfied when a violation of chapter 718 is shown." Hobbs v. Weinkauf, 940 So.2d 1151, 1153 (Fla. 2d DCA 2006); Hollywood Towers Condo. Ass'n, Inc. v. Hampton, 40 So.3d 784, 788 (Fla. 4th DCA 2010).

However,  **"A 'bare statutory violation' is not enough, no matter how beneficial we may think the statute to be."** Hunstein, 48 F.4th at 1242 (citing Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 936 (11th Cir. 2020))

For this court to continue impairing this Private Association operation, without any proof of any wrongdoing, the state court must record in court the State's Substantive interest beyond Public

Interest. Or it must stop depriving this Association and its owners of their home privacy[1].  A U.S. Constitutional Right.  Carelessly impaired with this swindled injunction. By "*NOT GIVING PERMISSION*" to Defendant nor Mr. Villars. To address Plaintiff's lack of Legal Standing or Injury in fact.

WITHOUT HAVING LEGAL STANDING, Mr. Katz is still permitted to continue harassing this association and interfering with its operations.  Based on his unsupported legal stipulations and misrepresentation of the judge ruling, in the February 27th verbal ruling.  Knowingly NO STATE JUDGE MAY violate Federal Laws (1st and 14th Amendments) when enforcing any State law.

> ### "A statute impairs a [Private Association] declaration if it creates a new obligation, imposes a new penalty, or diminishes a vested right."
> *Metro. Dade County v. Chase Fed. House Corp.*, 737 So. 2d 494, 499 (Fla. 1999).

That means, that before the court may sign an order enjoining the Association private elections, <u>Due Process was also required</u>.  Mr. Katz keeps sock-signing his legal opinions into Court orders against the Membership of Buckley Towers. **Knowingly this Court lacks Subject Matter Jurisdiction over this Association's elections**. Because the Association Bylaws of 1969, do not place additional burdens, on the Association or the owners.  For the court to impose new contractual burdens it must bring the Association to court and afford ACTUAL DUE PROCESS.  Because NO PRIVATE CITIZENS have waived any Constitutional Right to the State Courts, to become condominium owners. And NO wrongdoing was proven in a court hearing for this court to afford Mr. Katz yet another injunction.

## II. CAUSATION

> "As to causation, the Florida Supreme Court has held that
> …the court must find that the <u>loss or damage</u> [(1)] is causally connected to the offense and [(2)] bears a significant relationship to the offense. Further, under the statute, the State must establish these factors by a preponderance of the evidence."
> Glaubius v. State, 688 So.2d 913, 915 (Fla. 1997) (citing § 775.089(7)

## LEGALLY

STATE COURTS ARE REFUSING **FS711 as the Controlling Law per the Kaufman Supra**
*"the Condominium Act of the State of Florida (Florida Statute 718, et seq.) in effect as of the date of recording this Declaration" and does not contain "as amended from time to time" language subjecting it to future statutory changes to the Condominium Act. See Angora Enters., Inc. v. Condo. Ass'n of Lakeside Vill, 796 F.2d 384, 386 (11th Cir. 1986) (noting that express agreement by parties in the declaration of condominium regarding application of future statutes to the association may determine whether parties have a "constitutional protection*

---

[1] Florida Declaration Article 1 Sec. 2 "inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, **and to acquire, possess and protect property."**

*against future amendments to the Florida Condominium Act which, absent such an agreement,*
*might arguably impair a party's contract obligation"); Sans Souci v. Div. of Fla. Land Sales*
*Condos., 421 So.2d 623, 628 (Fla. 1st DCA 1982)*

## FACTUALLY:

The Association DID "transmit by Internal email" to all members, MORE than 60 days Notice in
advance of Board Election.  According to the specifically required procedures of this Association.
Which requires 90 days and 75 days.  Then again 45 days before elections and one month before
sending the election ballot. According to the bylaws, to allow for the last minute candidates.
Two of the Plaintiffs used it to file their petitions for Board President and Vice President.  Submitted by
Mr. Katz himself by email to the Board Secretary Mr. Villars.

**THEREFORE:**  Mr. Katz is again, and without any judicial consequence, afforded Court orders
through his unsupported legal opinions. **To maintain this Association under his swindled injunction**.

### III. FLORIDA SUPREME COURT
### PROCEDURAL LAWS:

**EITHER THE COURT HAD OR DID NOT HAVE PERSONAL JURISDICTION OVER MR.**
**VILLARS' COUNTERCLAIMS.  IF IT DID NOT → IT CANNOT DISMISS WITH PREJUDICE.**

In the Counter-Claim hearing, Judge Del Rio allow Mr. Villars to speak for about four
minutes only. Obstructing and denying him join the case by misrepresenting FRCP 1.170
Counterclaims, 1.120 and 1.180.
**Rejecting the Supreme Court Procedural law:**
"A pleading on ① **any claim** which at the time of serving the pleading the pleader has against **any**
**opposing party,** ② provided it arises out of the transaction or occurrence that is the subject matter of the
opposing party's claim and ③ Does not require for its adjudication the presence of **third parties** over
whom the court cannot acquire jurisdiction."

Claiming, Mr. Villars was *"not an original party and therefore cannot counterclaim."*

**JUDGE DEL RIO MUST SPECIFY IN COURT HOW HER DISMISSAL WITH PREJUDICE DOES**

**NOT VIOLATE THIS LAW CAPRICIOUSLY AND ARBITRARILY:**

**FL.RCP 1.170 (h) Additional Parties May Be Brought In. When the presence of parties other than those to the**
**original action is required to grant complete relief in the determination of a counterclaim** or crossclaim,
**they must be named** in the counterclaim or crossclaim.

The Supreme Court further clarified:
"**No justification exists to require more restrictive joinder provisions** for counterclaims and crossclaims than
is required for the initial pleading. The only safeguard required is that joinder does not deprive the court of
jurisdiction."

**FRCP 1.120(a)** <u>All persons having an interest</u> in the subject of the action and in obtaining the relief demanded may join as plaintiffs and any person may be made a defendant who has or claims an interest adverse to the plaintiff. <u>Any person may at any time be made a party</u> if that person's presence is necessary or proper to a complete determination of the cause.

"The purpose of the compulsory counterclaim rule is to promote judicial efficiency by requiring defendants to raise claims arising from the same transaction or occurrence as the plaintiff's claim." **Del Rio** v. Brandon, 696 So.2d 1197 (Fla. 3d DCA 1997)

**FRCP 1.180 (a) A third-party defendant** may proceed under this rule <u>against any person not a party to the action who is or may be liable to the third-party defendant</u> for all or part of the claim made in the action against the third-party defendant.

> "Florida Rule of Civil Procedure 1.210(a) permits an action to be prosecuted in the name of someone other than, but acting for the real party in interest."  Kumar Corp. v. Nopal Lines, Ltd., 462 So.2d 1178, 1183 (Fla. 3d DCA 1985).
> "It was an abuse of discretion to dismiss with prejudice on this ground."
> Eastern Invstment, LLC v. Cyberfile, Inc. 947 So. 2d 630 (Fla. Dist. Ct. App. 2007)

Without permitting litigation or discovery the Judge refused to address any of Mr. Villars' recorded motions and undisputable evidence. Rather prohibiting him from speaking, objecting, or providing his defense. Judicially Forcing him to accept her Dismissal with Prejudice by undue influence alone.

### IV. LEGAL STANDING AND STAKE IN THE LAWSUIT
### Mr. Villars' undisputed proof of harm

1. Under FS711 and the Association bylaws, he is vested with Board Officer Rights that are not waived just because the association is defending a claimed transaction in which he is principally involved.
2. Both FS711 and the Association provide the Board Officers with a <u>right to bring sue</u> or be sued.
3. Neither prohibits or precludes the Officer from suing for his personal deprivation or forced waiver over his vested rights in the claimed transaction.
4. At Mr. Katz misrepresenting the Association to deprive Board Officers of a clear right, to operate the Association, Mr. Villars has been contractually injured and deprived.
5. Neither FS711 nor the Association prohibits or precludes the Officer from defending his Reputation in the community.  After being publicly slandered by the Plaintiffs and their attorney.
6. Reputational Harm is respected in Florida Courts
   **"Reputational harms** & disclosure of private information," which are with "close

relationship to harms traditionally recognized as providing a basis for lawsuits in American courts,"
Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 48 F.4th 1236, 1242 (11th Cir. 2022).

7.  The court judge keeps penalizing the Association, based on Mr. Katz's claims. Which are mostly directed against Mr. Villars.  Yet, deny him joining the case as an indispensable party. A civil conspiracy to deprive Mr. Villars of his right of due process.

## V.  14th AMENDMENT  and the  CONTRACT CLAUSE

As well as Mr. Villars' Right of Contract, and Privacy in his Private Association.

Reasserting the II. CAUSATION: LEGAL portion of this document.

**1.      Because the Defendant, Buckley Towers enjoys the Kaufman Supra exception. Counter-Plaintiff's property rights are protected from being impaired by the FS718 amendments.  As the 14th Amendment dictates. "NO State [COURT] May take away life, property, Liberty..." and "No State [COURT] May impair a contract".**

2.      This is a <u>Private Association and corporation</u> that also enjoys contractual privity with its Association members through its bylaws. Which requires the approval of each owner on any matter that affects their property in common. Without this requirement, the Association as a whole may not be placed in any injunction that harms or deprives the owner or frustrates their contractual expectations.  No one entity has the authority to petition for an injunction over everyone's homes without affording the adversely affected property owners equal treatment under the law of due process. **The 14th Amendment does not afford the State Courts a waiver for condominium property owners.**

3.      This court has prejudicially favored Mr. Katz's legal conclusion. Despite it directly contradicts the controlling law FS711.  So to provide him with the immediate relief of an injunction on this Association Board Elections.  This is yet another OVERT egregious deprivation of the Owner's vested contractual and statutory rights.  Constituting a clear instance of civil theft and intentional violation of the 14th Amendment.

**"An (FS718) amendment is unreasonable as a matter of law if, for example, it plainly contradicts language in the 'original covenants'."**
Wright v. Cypress Shores Dev. Co., 413 So.2d 1115, 1118, 1124 (Ala.1982).

"[State]  law does not permit the implied covenant to "infer language that contradicts a clear exercise of an express contractual right." Petrucci v. Esdaile No. 20-P-854 (Mass. App. Ct. Oct. 5, 2021).

"[v]irtually no degree of contract impairment is or will be tolerable."
Yamaha Parts Distributors, Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975).

Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties"
Excelsior Insurance Company v. Pomona Park Bar Package Store, 369 So.2d 938, 942 (Fla. 1979)

"It is a rule of general application in injunction cases that an injunction should not be granted where there is substantial dispute as to the legal rights involved and the right of complainant is doubtful, or is not clear, or is questioned on every ground on which he puts it, not only by the answer of the defendant but by the proofs in the cause.");
Foreclosure FreeSearch, Inc. v. Sullivan, 12 So.3d 771, 774-75 (Fla. 4th DCA 2009)

"Although a trial court has broad discretion in granting injunctive relief, it is an extraordinary remedy that 'requires a clear legal right, free from reasonable doubt.' "
(quoting Net First Nat'l Bank v. First Telebanc Corp., 834 So.2d 944, 950 (Fla. 4th DCA 2003))).

**WHEREFORE**
The Plaintiff/Counter-Defendants cannot overcome the above preponderance of evidence.
**Leaves the court without subject matter jurisdiction or any other alternative other than to dismiss the case against them.**

WE the PEOPLE - OWNERS OF THIS PRIVATE ASSOCIATION - DEMAND FOR the ORDER PROHIBITING THE PARKING ENFORCEMENT BY THIS ASSOCIATION TO BE VACATED, BASED ON THE HEREIN FACTS NOT DISPUTED BY MR. KATZ → for more than three months.

ALTERNATIVELY, this Private Association, not found guilty of any crime or wrongdoing, being Judicially oppressed by Mr. Katz illegal practices, pleads to this court, that in the next court hearing, Mr. Katz prove the FS711 is not the controlling law and his Clients' actual  Legal Standing and Harm.

"In the case of factual attacks, the plaintiff's allegations don't enjoy a presumption of validity, and "the burden is on the plaintiff to prove that jurisdiction exists.""
OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002)

**Buckley WILL NOT be coerced into accepting the FS718 without Due Process.**
**Where ANY Procedural Law impairs Substantive Rights (1st Amendment Right to Vote,**
**Privacy, Contractual Rights, Right of Association) will not be tolerated by the Association**
**without ACTUAL Due Process.  This court does not own this Association its Property or these**
**people.  This is precisely why the 14th Amendment in the US Constitution was established.**

<u>Certificate of Service of Process per RULE 2.516.(</u>1) Service by Electronic Mail ("e-mail"). All documents
required or permitted to be served on another party must be served by e- mail, unless the parties otherwise
stipulate or this rule otherwise provides. A filer of an electronic document has complied with this subdivision if
the Florida Courts e-filing Portal ("Portal")
I HEREBY CERTIFY this lawsuit was served to Mr. Trullenque and Mr. Zarger by emailing their attorney attending the
case 2023-026257-CA-01, Mr. Steven Katz.

/S/ Janvier Villars
2023 <u>Buckley Towers Board Secretary</u>
Property Owner of Buckley Towers
1301 NE Miami Gardens Drive, Miami FL 33179
<u>janvier269@gmail.com</u>

## LACK OF SUBJECT MATTER JURISDICTION
See, e.g., Ex parteYoung, 209 U.S. 123, 143 (1908) (noting that a person could not be punished for
disobeying an order issued by a court lacking jurisdiction); In re Sawyer, 124 U.S. 200, 220 (1888)
("Where a court has jurisdiction ... whether its decision be correct or otherwise, its judgment, until
reversed, is regarded as binding in every other court: but, if it act without authority, its judgments and
orders are regarded as nullities." (internal quotation marks omitted)); Ex parte Fisk, 113 U.S. 713,
718, 726 (1885)
("When ... a court.., undertakes . .. to punish a man for refusing to comply with an order which that
court had no authority to make, the order itself, being without jurisdiction, is void, and the order
punishing for the contempt is equally void."); CHAFEE, supra note 7, at 296-300 ("[T]he situation is
entirely different if the court had no jurisdiction to decide the case and render the decree. Then the
judge's order is void since he had no [Vol. 88:215 power to make it; and any punishment for violating
a void order is equally void."); Edward P. Krugman, Note, Filling the Void: Judicial Power and
Jurisdictional Attacks on Judgments, 87
YALE L.J. 164, 165-71 (1977).

**Rule 60(b)(4)** of the Federal Rules of Civil Procedure provides that a court may relieve a party from
an order or final judgment that is void. A judgment is "void" under Rule 60(b)(4) if it was rendered
without jurisdiction of the subject matter or the parties or in a manner inconsistent with due process of
law. See, e.g., United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-62 (1st Cir. 1990)
(explaining that the concept of void judgments must be narrowly construed to comport with the
interests of finality).

Filing # 199401516 E-Filed 05/29/2024 03:51:58 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR THE MIAMI-DADE COUNTY, FLORIDA

Francis Trullenque,Mordechai Zarger, et. al          **Counterclaim** of: 2023-026257-CA-01
Plaintiff

JANVIER VILLARS, pro se
Counter PLAINTIFF,
V.
Buckley Towers Condominium Inc.
Defendant

Francis Trullenque, Mordechai Zarger, Steven B. Katz, et. al
Counter DEFENDANTS

## MOTION FOR JUDICIAL NOTICE OF PROOF OF CONSTITUTIONAL VIOLATIONS
## UnEqual Treatment, lack of impartial judge, Obstruction of Due Process.

### FS 90.501 "NO Person [no exclusion whatsoever] in a proceeding may...

(4)Prevent another from being a witness, from disclosing any matter, or from producing any object or writing."

"[when] evidence has been suppressed, concealed, or falsified" is a claim of intrinsic fraud; Buesa v. City of Los Angeles (2009) 177 Cal.App.4th 1537, 1546., Kachig v. Boothe (1971) 22 Cal.App.3d 626, 634    "In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause." Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So. 2d 514, 515 (1946) as stated in Black's Law Dictionary 595 (rev. 5th ed. 1979).

**FRCP1.110(d)** "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, on terms if justice so requires, shall treat the pleading as if there had been a proper designation."

**FRCP 1.120 Capacity** When a party [including the Judge] desires to raise an issue as to the legal existence of any party, the capacity of any party to sue or be sued, or the authority of a party to sue or be sued in a representative capacity, that party shall do so by specific negative averment <u>which shall include such supporting particulars as are peculiarly within the pleader's knowledge."</u>

**FRCP 1.210 Parties:** "**All persons having an interest in the subject of the action** and in obtaining the relief demanded may join as plaintiffs and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person [NOT EXCLUDING LAWYERS] may at any time be made a party if that person's presence is necessary or proper to a complete determination of the cause. Persons having a united interest may be joined on the same side as plaintiffs or defendants..." Florida Statutes (1979) gives trustees the power to prosecute and defend actions, regardless of the conditions specified in the subdivision.

"**1.170 (h) Additional Parties May Be Brought In. When** the presence of parties <u>other than those to the original action is required to grant complete relief</u> in the determination of **a counterclaim or crossclaim, they must be named in the counterclaim** or crossclaim and be served with process **and must be parties to the action thereafter**..Rules 1.250(b) and (c) apply to parties brought in under this subdivision."  "A dismissal for lack of standing, however, is a jurisdictional ruling that is entered <u>without prejudice</u>." Doane v. Tele Cir. Network Corp., 852 Fed.Appx. 404, 408 n.2 (11th Cir. 2021)

**1.180 Third-Party:**, "The person [Mr. Katz was] served with the summons and third-party complaint [counterclaim], herein called the third-party defendant, <u>shall make defenses to the defendant's claim as provided in rules 1.110 and 1.140</u>... The **third-party defendant** may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the defendant.

## THE FOLLOWING ARE COURT TRANSCRIPTS EXPOSING THE CIVIL CONSPIRACY

1

## EXHIBIT A - <u>The Second Hearing</u>. Held on <u>January 26,</u> 2024
**After affording Plaintiff with an overbroad preliminary injunction without an Evidentiary.**

**Transcript Page 14** ...................................................................................**Pg.3**
Mr. Katz responded to Judge Del Rio question on Receivership over Buckley Towers:
**Transcript Page 30** ...................................................................................**Pg.3**
Mr. Katz declared the Receiver "legally" reassigned the parking. Nullifying their claimed restriction of when parking reassignment may be done legally.Accepting reassignment, as long as it is not by the current board.
**Transcript Page 38** ...................................................................................**Pg.3**
The Association attorney Mr. Hershberg makes it clear to the Court that he only represents the Association's interests NOT the President nor the Board Secretary Mr. Villars. Nullifying the JA and Judge imposed **"Under Board Umbrella doctrine"** to prohibit the Board Directors from filing any type of counterclaim as adverse parties on her rulings, for being part of the Association.
**Transcript Page 40** ...................................................................................**Pg.4**
Judge Del Rio goes outside the four corners of the complaint, to attack Mr. Villars' legal right to be Board Secretary. While denying him his right to speak in court. Because they know both the bylaws and state law provide the sitting board authority to fill empty board positions, without running new elections.
Instead of allowing the President to speak about the illegal receivership, She reasserts her intent to remove Mr. Villars. Solely based on hearsay of a prepared opposing party attendance. Taking as a matter of Fact the opposing party supporters hateful claims. While prohibiting Mr. Villars from responding on record.
**Transcript Page 49** ...................................................................................**Pg.4**
Judge Del Rio again interrupts the testimony of the Board President to reassert her position against Mr. Villars.
DECLARING "*out of 564 … 500 hate the board*"? From 77 people that her JA allowed to attend the Zoom hearing. After affording the link, 10 minutes before the hearing, <u>to the board supporters.</u>
**Transcript PAGE 52** ...................................................................................**Pg.5**
Never permitting the Defendants to present their defense, their proof of compliance with the Association bylaws and governing laws. Obstructing litigation on the <u>Subject Matter of the Case</u> =**The Right to Reassign Common Area (not in title) Parking**, by addressing last-minute hate claims. Thereby supporting the misrepresentation of the Declaration amendment. Despite of the preponderance of evidence against it. Thereby, avoiding the jurisdictional question of whether the court has **Subject Matter** Jurisdiction ab initio.

## EXHIBIT B - <u>THE THIRD Hearing</u>. Held on February 27.
Judge del Rio stopped the hearing to challenge the validity of the 2023 Board of Directors. Her JA, Ms. Bonini contacted the 2021 Receiver's attorney Mr. Landy. The court appointed sole-director in charge of the Association, to confirm IF and WHETHER OR NOT the sitting 2023 Board of Directors was duly elected.
**Transcript PAGE 9** ...................................................................................**Pg.5**
**Judge del Rio confirms <u>Buckley Towers is NOT under receivership as of 2023</u>.** March 8th was the official court dismissal of the Receiver. **Holding legal Status Quo for over a year**. Resolving the 40 and 50-year recertifications and addressing all Association issues, per its bylaws.
**Transcript PAGE 11 and 12** ...................................................................................**Pg.5**
**Judge Del Rio begins addressing the upcoming election.**
Declaring the Court is demanding for the election to proceed. Signing an Order appointing the Monitor, the Plaintiff's attorney, Mr. Katz close friend, with absolute powers to run the Defendant's private Board elections according to the Order written solely by Mr. Katz. Contradicting the bylaws and State laws.
**SO, WHY would the court-appointed Monitor, Mr. Rementeria, write in his elections report under 'Outgoing Board'** "*N/A Under Receivership*"? Other than collaborating with Mr. Katz's Judicial Notice, supporting <u>the Court's authority over the Association under Receivership</u> to take from the sitting board the right to run the elections according to its bylaws and State Laws. Without affording it any due process.

2

## TRANSCRIPT EXCERPTS EXPOSING HOW THE JUDICIAL DECISION WERE DONE
### The Second Hearing Held on January 26 Transcript.
**After affording Plaintiff with an overbroad preliminary injunction without an Evidentiary.**

**Page 14**

Mr. Katz responded to Judge Del Rio question on Receivership over Buckley Towers:

> THE COURT: Are you saying to the Court that a receiver has already been appointed in Buckley Towers?
>
> MR. KATZ: He was a couple years ago. He did his job, and then he hopped out. So Mr. Villars led a popular uprising and had the receiver removed. The receiver ran an election and said, I don't want this anymore. He actually -- he's like, I'm done.
>
> So he holds the election where a number of proxies for Villars were elected. And then the Court promptly turns around and appoints Mr. Villars, thus negating the effect of the receivership in the first place.

**Page 30**

Mr Katz declared the Receiver 'legally' reassigned the parking. Thereby nullifying their claimed restriction when reassignment may be done. Selectively permitting parking reassignment...as long as it is by some other board.

> Which was legally assigned by the receiver in June of 2022, when they started their process of fixing the parking lot which has been fixed and worked fine. He -- they started telling us that we

**Page 38**

The Association attorney Mr Hershberg makes it clear to the Court he only represents the Association's interests NOT the President nor the Board Secretary Mr. Villars. Nullifying the JA and Judge imposed **"Under Board Umbrella doctrine"** prohibiting the Board Directors from filing any type of counterclaim for being part of the Association.

MR. HERZBERG:    I represent the Association.    I've been in contact with the president, the secretary.    I told them to get approval.    So I do not represent Mr. Villars individually in any capacity.    That would be improper for me to tell you I do.

THE COURT:    So you're acting on the best interest of the -- your job is to act in the best interest of the condo association.

**Page 40**
Judge Del Rio goes outside the four corners of the complaint, to attack Mr. Villars legal right to be Board Secretary while denying him the right to speak on his defense. Because they know both the bylaws and state law provide the sitting board authority to fill empty board positions, without running new elections.

THE COURT:    Okay.    One more question I forget to ask Mr. Herzberg.    Sorry.

So there's all of these messages calling for the removal of Mr. Villars.    Now that you are representing the board, is this something that you can explore, whether or not Mr. Villars is qualified to be on the board; whether or not Mr. Villars was legally elected to this board?    Is this something that now that you represent the board may be something that you can address?

THE COURT:    Because I've been seeing so many messages for the removal, for the removal, for the removal of Mr. Villars.    I'm just -- you know, keep reading these messages.

Page Judge Del Rio, instead of allowing the President to speak about the illegal receivership, reasserts her intent to remove Mr. Villars. Solely based on hearsay of a prepared opposing party attendance. Openly reading in court written only by the opposing party supporters. Without permitting Mr. Villars to respond.

4

Okay.  And I've done many of these.  And, you know, I'm a neutral party, but it doesn't work to have a condominium where people are living in fear.  Where people are calling one of the board members a fascist dictator and worse.  You know, that is, you know, deeply troubling.  Deeply troubling.

I mean -- I don't know -- if people were saying that about me, I think I would remove my robe and get off the bench quickly.  Even though I was voted in by 350,000 citizens of Miami-Dade County, I would remove my robe and I would leave if people were saying those things about me.  I find it deeply troubling.  I do.

**Page 49**

Judge Del Rio again interrupts the testimony of the Board President to reassert her position against Mr. Villars.

DECLARING *"out of 564 = 500 hate the board"?*. From 77 people her JA permitted to attend the zoom hearing. From a link afforded only 10 minutes before the hearing to the board supporters.

THE COURT:  So I'm seeing messages.  Things -- you know, out of 564 unit owners, 500 hate the board.  What is going on here?  Why is -- what is going on here that there is such a high number of dissatisfaction?  What is it?

**PAGE 52**

Without actually permitting the Defendants to present their defense, their proof of compliance to the Association bylaws and governing laws. Never allowing litigation on the **Subject Matter of the Case**, rather obstructing litigation by addressing other last minute claims. Judge del Rio supported the Plaintiff's misrepresentation of the Declaration amendment. Discarding the preponderance of evidence against it. Thereby, avoiding the jurisdictional question on whether the court lacked **Subject Matter** Jurisdiction.

5

remain in place.  Okay.  The Association does
not have the right to reassign.  The
Association does not have the right to reassign
or remove one spot and give it to another.
When people bought their condos, it came with a
spot.

    Okay.  So I am going to rule that that
cannot be disturbed.  And that the
Association's actions, okay, in reassigning is
not -- is, number one, clearly not working and
it is not according to the declaration.  And it
goes against the very declaration that
individuals were given at the time that they
purchased their units.

### THIRD Hearing. Held on February 27, 2023.

Judge del Rio stopped the hearing to challenge the validity of the 2023 Board of Directors. Contacting the 2021 Receiver's attorney Mr. Landy. Who ran the election that placed the board in charge of the Association.

THE WITNESS: It was overseen by the receiver and a state DBPR-related election monitor. I believe his name was Mr. Rementeria. His report, his written report was also filed with the court.

THE COURT: All right. So the elections, as far as you know, were done in accordance to the Florida statute that governs the elections. It was done with the approval or, I guess, supervision of the receiver as well as the monitor from the DBPR board, correct?

THE WITNESS: Correct, Your Honor.

THE COURT: All right. Okay. And then as far as you know, the receivership ended when this newly elected board was put into power.

THE WITNESS: Correct. There was a short period of transition where we worked to hand over the operations of the association to the

I recall that parking mostly stayed the same. There weren't huge changes, but there was some reassignments and some --

THE COURT: But there was some mechanism to ensure that each unit owner was assigned a space.

THE WITNESS: Correct. As well as to register the vehicles so that we knew who was parking at the association.

The Plaintiff's claim is that the Association (regardless of who the directors are) CANNOT reassign parking. Unless it is during the transition of rental or purchase. Here the judge is made aware such changes comply with the Association documents and so long as the PROVISION of the

Amendment is complied with the Association is within its authority to reassing the common areas parking (NOT the owned by title).

## PAGE 9
Judge del Rio confirms Buckley Towers is NOT under receivership as of 2023. **March 8th** was the official court dismissal of the Receiver. The elected Board was in charge of the Association from that point.

> THE COURT: Okay. All right. And when was the receivership ultimately terminated?
>
> THE WITNESS: Late 2023. I want to say August, give or take.

## PAGE 11 and 12
Judge Del Rio begins addressing the upcoming election.
Declaring the Court is demanding for the election to proceed. Appointing the Monitor, a close friend of Plaintiff's attorney, Mr. Katz, with absolute powers to run the Defendant, the Association's private elections.

> Okay. Now, as far as the upcoming elections, I am going to require that an election monitor be made part of the election. The person who did it previously was somebody by the name of Rementeria. I don't know if this is somebody from the DBPR. I don't know if that person is still available. But if that person --
>
> MR. KATZ: I see him regularly. I see him --
>
> THE COURT: Okay. Okay. So I am going to require that he monitor the election. I am going to require that all of the -- that all of the Florida statutes be followed. And this includes the letter requesting candidacy, the 60 days, all of that. And for the election to

8

PAGE 13 Judge Del Rio lawyerly threatens for the election to be done according to Mr. Katz and her new election procedures, depriving the Association from running the elections. IF NOT then she will revisit the need for Receivership.

> And then after -- Okay.  After that, hopefully that will solve all problems.  And if the Court still needs -- if there is still going to be -- I mean, I would suggest that if these things are done and done correctly, and done with the assistance of the election monitor, that this will, you know, do away with the necessity of a receiver.  Okay.  I'm hopeful that that will be the case.

PAGE 14 and 15
Judge Del Rio moots the Presidents testimony explaining how the duly elected current board had NO authority to assign parking only the Receiver and the next board of directors.  Without permitting the Board to contest of such unfounded deprivation of contractual rights.

> THE COURT:  Let me explain, Mr. Noguera.  I am adopting the exact language of the receiver's report with regards to the parking.  That is the Court's order.  That the exact, exact language of the receiver's report is adopted for the parking.  All right?  That is what the Court is doing.

> THE COURT:  Yes.  The receiver's report, Mr. Landy's report with regards to the parking, that is going to be the operating document.  Okay.  And everything that is detailed there that was put in place by the receiver is going to remain in place until such time as the new board is elected.  And then going forward, that will be up to the new board.  Okay?

9

"Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests before he is affected by any judicial decision on the question." _Earle v McVeigh_, 91 US 503, 23 L Ed 398.

**_The version of the Condominium Act_** _[FS 711 of 1969] or Ch. 617 that was in effect when the declaration was recorded" are thereby the controlling laws for the condominium Substantive Rights. "[v]irtually no degree of contract impairment is or will be tolerable." Yamaha Parts Distributors, Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975)_ **_Quoting the The Florida BAR:_**
_https://www.floridabar.org/the-florida-bar-journal/florida-community-association-law-contracts-clause-application-in-an-ever-changing-legislative-landscape/_

_"material "error or omission in the record." FLA. R. APP. P. 9.200(f); see also Thornber v. City of Walton Beach, 534 So.2d 754, 755 (Fla. 1st DCA 1988) ("This rule is intended to assure that any portion of the record before the lower tribunal which is material to a decision by the court be made available to the court so that appellate proceedings will be decided on their merits.")._

Certificate of Service I HEREBY CERTIFY this lawsuit was served to Mr. Trullenque and Mr. Zarger by emailing their attorney attending the case 2023-026257-CA-01, Mr. Steven Katz.

/s/Janvier Villars
2023 Buckley Towers Property Owner
1301 NE Miami Gardens Drive, Miami FL 33179
janvier269@gmail.com
(786) 609-1269

**Attorney Katz's Elections Procedures - LEGAL FATAL ERRORS OVER OUR PRIVATE Elections - YET Approved and Condoned by the Judge and the Court Appointed CAM ELECTIONS MONITOR**

## ERROR Number 1

Their claimed reason for Cancelling our properly noticed and held elections is their INTENDED faulty timing. At mailing their ballots 12 days before the elections. The ballot envelope shows the ACTUAL DATE when the Monitor mailed those envelopes. That being on April 13. That is 12 days before April 24.

WHERE 61B-23.0021 (8) reads:

"The association shall mail or deliver the second notice no less than 14 days and no more than 34 days prior to the election."

## ERROR Number 2



No Marcelo Guerrero is running for the Board Treasurer position.
The owner running for that position is Mr. HENRY Guerrero, the owner of 723E.
Mr. Marcelo Escobar is one of Mr. Katz candidates running for Secretary running against Mr. Villars.

WHERE 61B-23.0021 reads:

**(9)(a)The failure of the ballot to indicate the name of each eligible person** shall require the association to mail, transmit, or deliver an amended second notice within the time required by this rule, which shall explain the need for the amended notice and include a revised ballot with the names of all eligible persons. If an amended second notice cannot be timely mailed, transmitted or delivered, then the association must re-notice and **reschedule the election"**

## ERROR Number 3

**REMOVING without proper notice the nomination of Ms. Nora Serrara, Ms. Mia Brisson, and Ruben Gallardo.  THREE Owners denied participation. (below: the nominations filed by Mr. Katz with the Association)**

CANDIDATE NOMINATION SHEET FOR
DIRECTORS OF BUCKLEY TOWERS WEST

The undersigned owners of Buckley Towers, nominate the following directors be candidates for the West Directors: ·

Alex Nikitins, Mia Brisson, Shmuel Balili, Magda Pineda, Andrew Nidetz, Nora Serrara, Osvaldo Fructoso.

CANDIDATE NOMINATION SHEET FOR
DIRECTORS OF BUCKLEY TOWERS EAST

The undersigned owners of Buckley Towers, nominate the following directors be candidates for the East Directors:

Ruben Gallardo, Rosa Vicente,  Nakia Hickson, Mike King, Igor Korol, and Flor Garuz

## ERROR Number 4

**Including in our elections Mr. Aleksej Nikitin** as an eligible candidate. When he was not an owner at the time he submitted his candidature nor now.  This a fatal mistake, since the bylaws specifically afford only the person who is an owner authorized to vote for the unit to run for board directors.  The Association does not



PROPERTY INFORMATION ⓘ

Folio: 30-2205-037-1730

Sub-Division:
BUCKLEY TOWERS CONDO

Property Address
1301 NE MIAMI GARDENS DR   UNIT: 1106W

Owner
IDELLYA MAKAROVA

recognize anyone, other than the titled owner of 1106W's current quit claim deed with a right to vote.

WHERE FS718.112    61B-23.0021 READS:

(9) (b) **If the ballot includes the name of any ineligible person,** the association shall mail, transmit, or deliver an amended second notice within the time required by this rule, which shall explain the need for the amended notice and include a revised ballot with the names of only the eligible persons. If an amended second notice cannot be timely mailed, transmitted or delivered, then the association must re-notice and **reschedule.**

### ERROR Number 5
### The 2-day before OUR March 20th Elections CANCELED by Court Order.

Mr. Katz improperly procured a court order Cancelling our Association elections.  By having the Judge deny the Association a Court Hearing before signing that order. So to save him from having to prove the necessary Elements for this new injunction against us. **To impose on OUR Association their new election procedures and requirements → not supported legally in our bylaws or FS718.** Thereby judicially turning the association election into an Association in State-of-manipulated elections. So, when the results are against their interests, they can then cancel it according to FS718.  Over and over to sabotage the Board's operations.

Mr. Katz Election Procedures reads:
"A majority of ALL Association Members (Quorum) must be present, in person, or by proxy, at the meeting, in order for the business to be conducted --- *EXCLUDING election of Directors and Officers.*"
(AKA Board Elections. ) ← That is how Mr. Katz attempted to misguide and confuse the common people. Forcing requirements not legally supported BUT with an Exception to "the Business to be conducted" the Board Elections.  Also without a single governing law (in the world) that requires such a large percentage in person turnout for Governmental elections to be valid.  When our bylaws only require 20% to be valid.

**Per Federal LAW the 14th Amendment,**
Neither Mr. Katz nor the court can change the controlling law and contractual terms without due process. Because PRIVACY, contractual rights and privileges are property interests and expected benefits.

Nonetheless, this Court has deprived 550+ owners of this Association the right to vote for their local government. To favor a minority of owners who refuse to pay for additional parking. Imposing injunctions on the sitting Board to create chaos in our parking and hate against us.
Injunctions were issued solely based on Mr. Katz's legally groundless claims, with the judge obstructing the Association's right to defend against these claims. The Board is consistently prejudged guilty without evidence. Intended to deprive it of its authority to manage the Association's operations, including its Board Elections.

Also, our Association bylaws do not require 265 owners "to be present or by proxy" for the rest of the owner's right to vote to be valid.  That is a new burden that restricts, deprives or impairs property rights and expected privacy.

WHERE 61B-23.0021 READS
"(2) A regular or general election for purposes of this rule shall be an election to fill a vacancy caused by

expiration of a term in office. A regular or general election shall occur at the time and place at which the annual meeting is scheduled to occur, **regardless of whether a quorum is present."**

## ERROR Number 6
OPENLY DECEIVING by COURT ORDER FAVORING HIS CANDIDATES

"Enclosed with this Notice…(b) Candidate information sheets for all candidates who timely submitted them."

**CANDIDATES: Mr. Herman Schwartz and Ms. Norma Torres, were not nominated** according to the Association bylaws.  Nor were their nominations noticed to the Association per bylaw or FAC 61B.

WHERE 61B-23-0021 READS:

(5) A unit owner or other eligible person desiring to be a candidate for the board of administration shall give written notice to the association **not less than 40 days before a <u>scheduled</u> election.** Written notice shall be effective when received by the association.

(7)Any candidate desiring the association to mail or personally deliver copies of an information sheet to the eligible voters must furnish the information sheet to the association **not less than 35 days before the election**.

(9)...every unit owner or other eligible person who desires to be a candidate for the board of administration, and who gave written notice to the association **not less than 40 days before** a scheduled election,..."

**The Monitor did not send first or second Notice.  Our duly "scheduled" election was on March 20, 2024.** The Association received the nominations for the sitting boad. From Mr. Katz for the other candidates 30 days before the March 20th Election, on February 20.   Therefore in the Election Package, sent by U.S. Mail, to 550 owners, while representing the State Court, Mr. Katz and Mr. Rementeria recorded in Court Docket public record (FS 812.035), and a false claim to defraud property owners of their vested rights and property interests. Knowingly to be false, but for their interest in manipulating the elections and taking the Association.

**Until 4:30 PM of April 24, the Association was bound by the March 18 Court Order,** which mandated agreement upon and formalization of an Election Date, in compliance with FS718 electoral procedures. Nonetheless, Mr. Katz collaborated with Mr. Tom Rementeria to advance it, as if anticipating full cooperation from Judge Del Rio. With a Court Order approving the new elections Date of April 24. Just an hour and a half preceding the Elections.  Without first or second Notification and despite the presence of ten fatal legal errors requiring the cancellation and rescheduling of the elections.  Thus, the 150 votes <u>in their hands</u> to the 8 votes for the sitting board, who complied with the March 18th court order.

## ERROR Number 7
ALTERING STATE LAW  and BYLAW WRITTEN PROCEDURES FOR ULTERIOR MOTIVES

1. "The ballot **must be mailed** to the address on the outer ballot envelope." (not the Association) Make sure it is delivered or received no later than 5:00 p.m. on April 24, 2024."

WHERE 61B-23.0021 READS

**(10) Envelopes containing ballots received by the association <u>shall be retained and collected by the association</u>** and shall not be opened except in the manner and at the time provided herein.

The Association bylaws also stipulate the ballots are to be collected by the Association.

**SO WHERE** does Mr. Katz find the **legal support to Alter Written Legal and Contrual Terms?**
FS 617.0605 and FS 617.0701 prohibit such transfer of interests without the Membership approval.

A new Election procedure that Mr. Katz implemented while violating it.  According to the conversation he had with the Association Attorney Mr. Karim. Where Mr. Katz claimed to have **150 Votes in his hands** three days before the Monitor started to count the elections at the premises.  While the rest of the Association membership was just receiving the election packages.

### ERROR Number 8

Formal letters to the Association Membership, by U.S. Post, <u>must be signed</u> by the entity vested with the right to demand obedience from the Association Membership.  Per our bylaws or Florida Statutes. This Elections Procedure written by Mr. Katz and Ordered by State Court Judge Del Rio lacks the CAM License Monitor Thomas Rementeria's signature.

### ERROR Number 9

In Formal letters, where timing is of the essence - in LAW  -  to justify canceling a private association elections without verifying of being true untimeliness by Judge Del Rio -- timing then must be treated and required on every elections regardless who is executing it.  Where the law is enforced selectively and capriciously it cannot be enforced as law.  But rather coercion under the color of law to take property rights away without due process.

THE DATE WHEN the letter was written and sent is imperative to count the required timing. They cannot waive the legal requirement of "at least 14 days before elections".  Otherwise, what is its point?

The Association's March 20th Elections were carefully planned and duly notified.  Yet denied, by Mr. Katz unsupported legal misinterpretation. That misconstrued the phrase "at least" as "only." To reject our Election notices sent 60, 40 and 30 days before the elections. This marked the third instance where the court accepted Mr. Katz's legal opinion without allowing the Association to object before granting him immediate relief and rights over the Association's operations.

**SO WHAT PROOF OF THIS BOARD OF DIRECTORS WRONGDOING is duly recorded, for this Court to justify altering this Association Operations and contractual expected terms?** <u>NONE</u>. Nothing in 2021, in 2022, 2023 and 2024 ---

### Why didn't this court afford the Association a hearing before signing Mr. Katz's Order?

At seeing this overt violation of our Due Process, contractual rights, and privacy by that deceitful attorney, yet collaborated and signed by a STATE COURT JUDGE, …
Then… what SECURITY do we really have in OUR HOMES?

Based on what jurisprudence is it legal or logical for the Judge to force us to accept them running our Elections?

---

### WHEN IS THE 14th AMENDMENT AND ART.1 SEC 9 SUPPOSED TO BE FOLLOWED IN

**courts?** BECAUSE WE ARE TIRED OF BEING DEPRIVED WITHOUT A SINGLE PROOF OF WRONGDOING WHILE BEING DENIED DUE PROCESS. BY ONGOING FRAUD ON THE COURT.

All claims here are made in good faith, with the sole purpose of having fairness in the State Court of Justice. **TO END the Court of Justice UNEQUAL "LEGAL" Treatment commonly applied to Condo and Home Owners Associations**.

**Written by and emailed on April 30, 2024 by**

**/s/ Janvier Villars**
**Buckley Towers Board Secretary**

 Gmail

Janvier Villars <janvier269@gmail.com>

---

## Response to your August 9 letter
1 message

---

**Steven Katz** <sbk@sbk.legal>
To: Janvier Villars <janvier269@gmail.com>

Mon, Aug 12, 2024 at 4:45 PM

Mr. Villars, we seem to be going around in circles with your records requests.

Each of your points are addressed as follows:

1. You request proof of a 2021 recall. In speaking with the receiver, there was no recall in 2021 and as such, there are no records of a recall from 2021. I understand that a recall was begun but was superseded by the placement of the receiver. If you know differently, please let me know.
2. You request proof of hiring of Leigh Katzman as the association's counsel. The association did not hire Mr. Katzman. The association did retain his lawfirm to represent the association's legal interests. The board is currently looking for a copy of that agreement. Had you left reasonable records in any sort of filing system, this would be an easy request to fill. As it is, I will let you know when it is available for your review.
3. You have requested proof of majority agreement to place a receiver. The association does not have the ability to vote in favor of a receiver. Only a judge can appoint a receiver. The docket makers it clear that your actions caused the bank to come in and attempt to appoint a receiver. By stepping in, association's counsel was able to bring in a receiver with experience in running an association, not just a receiver who knew how to cut checks to the bank. There are no records that will satisfy your request.
4. You have requested proof of majority agreement to place a special assessment against the owners of the community. While the board of directors requires approval to exceed $50,000, a court-appointed receiver does not. The vast majority of the owners in the community have paid their assessment. Meanwhile, I have seen a video of you defiantly stating that you have not paid the special assessment and will not. I suspect that the tail end of this discussion will take place in front of a Judge. As before, there are no records available to satisfy your request.
5. You have requested proof of a bylaws amendment allowing me to place additional debts on your unit without your approval. There is no such amendment nor is there need for one. You have an obligation to pay your assessments as they come due. Those assessments are of the monthly variety or the special assessment variety from time to time.
6. Proof in writing that you agreed with the association to allow the board to add more debt to your account. Mr. Villars, you have once again wasted the association's money. Please stop. You're embarrassing yourself and needlessly spending the money of all of those owners around you. There is no documentation stating that you agreed with the association to add more debt to your account. The closest I can suggest is the Declaration of Condominium. If you'd like for me to arrange to have a copy for your review, I will ask the office to pull a copy for you.

Your threats of a lawsuit are foolish. They will only result in more fees being assessed against your unit.

Your letter is the usual rambling nonsense but it smells somewhat like a request for debt validation. To that end, the record of your account showed that you owed this debt throughout the entire length of your presidency in 2023 and 2024. If there was a problem, surely you would have fixed it. No? In any event, I have reviewed your debt and confirmed the validity of the same. If you have any claim of unposted payments, I am happy to review proof of payment and apply any appropriate amounts to your ledger. I will apply your money order in the amount of $47.50 pursuant to the Condominium Act's payment cascade.

In closing, I will reach out to you once I hear that the board has located Mr. Katzman's legal services agreement. If you would like to review the declaration of condominium, a document of which I'm certain you are familiar, let me know and I will have the association pull a copy of the declaration as well.



### Steven B. Katz, Esq.

Attorney at Law

T. 954-726-0805 x. 1004
C. 954-815-2865
sbk@sbk.legal

4450 NW 126th Ave., Ste. 101

Coral Springs, FL 33065

www.sbk.legal



This communication from SBK LEGAL, may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you receive this communication in error, please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic personal information about consumers subject to the restrictions of the Gramm-Leach-Bliley Act. You may not directly or indirectly reuse or re-disclose such information for any purpose other than to provide the services for which you are receiving the information.

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office is deemed a debt collector and any information obtained may be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of the debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.

# Exhibit E

## Title:

Formal notice letters to Bondi, Moody, Rundle, DBPR, …

## Purpose:

Proves Defendants were officially notified and chose not to act—triggering liability under 42 U.S.C. § 1986 for conspiracy by omission, affording Unconstitutional Sanctuary to fellow Florida BAR Licensed lawyers to further deprive by Judicial coercion and fraudulent misrepresentation.

# 2019 Petitions to ALL State Agencies by

# Certified U.S. Post

### Prior notice sent to FL Gov, State Attorney or Sec. of State

I hereby swear under oath that the State, through its duly authorized Agents, has been duly
notified by Certified U.S. Post Office, of the aforementioned violations to Constitutional
and Property Rights.  This information can be AUTHENTICATED by visiting
www.usps.com/manage

| Tracking No | Addressed to | Concerning | Mailed | Delivered |
|---|---|---|---|---|
| 70191640000051194778 | Office of Governor | 42 U.S.C. §1985 | 12/6/19 | 12/10/19 |
| 70191640000051194761 | Fla. Dept. of State | 42 U.S.C. §1985 | 12/6/19 | 12/10/19 |
| 70191120000114417616 | Office of Governor | 42 U.S.C. §1985, 1986 242 and 245 | 12/11/19 | 12/16/19 |
| Personally Delivered | Commissioner Heyman | 42 U.S.C. §1985, 1986 242 and 245 | | 12/11/19 |
| 70191640000050293694 | Sec. State of Florida | Case 2019-23794 U.S.C. §1985, 1986 242 & 245 | 09/26/19 | 09/30/19 |
| 70181130000211644210 | House Rep. Christ | 42 U.S.C. §1985, 1986 242 and 245 | 05/23/19 | 05/28/19 |
| 70181130000211644166 | Fed.Trade Commision | 42 U.S.C. §1985, 1986 242 and 245 | 05/23/19 | 05/28/19 |
| 70181130000211644173 | Fla. Fair Trade Comm. | 42 U.S.C. §1985, 1986 242 and 245 | 05/23/19 | 05/31/19 |
| 70181130000211644142 | Att.General Moody | 42 U.S.C. §1985, 1986 242 and 245 | 05/23/19 | 05/28/19 |
| 70180360000140416331 | US Atty Office of FBI | 42 U.S.C. §1985, 1986 242 and 245 | 03/19/19 | 03/28/19 |
| 70181130000211644227 | Gov. Ron DeSantis | 42 U.S.C. §1985, 1986 242 and 245 | 03/23/19 | 03/29/19 |

Proving Mr. Villars has done all within his power to avoid suing the State; however, he was
DISREGARDED as another SUSPECTED CLASS Citizen.

Assumed UNABLE → By-LAW-Dissabled: to address the issues adequately due to the
placed Prejudicial Conditions  AND for not being able to *afford-an-attorney* to protect his
Guaranteed-Equally-Protected Constitutional Rights infringements or **on his own.**

 Gmail

**:rom the Florida Attorney General's Office**

message

ttorney.general@myfloridalegal.com <attorney.general@myfloridalegal.com>                    Fri, Jun 21, 2024 at 5:05 PI
o: JANVIER269@gmail.com

Dear Janvier Villars,

The Florida Attorney General's Office received your correspondence regarding a Florida judge. We appreciate hearing from you again.

In regard to the judge's decisions, the Florida Attorney General's Office is a part of the executive branch of government and cannot supersede or circumvent the actions of the judicial branch. If you have concerns about a judge's decision or the outcome of a court case, please consider consulting a private attorney. This office is not authorized to provide legal opinions or advice to private individuals.

The Attorney General's Office has no jurisdiction to accept or investigate a complaint of judicial misconduct against a Florida state judge or magistrate. In order to have your complaint considered by the only institution with jurisdiction over the judicial officer, you must follow the procedures laid out at the weblinks provided below.

"Filing a Judicial Conduct Complaint Against a Florida Judge"
The Florida Judicial Qualifications Commission (JQC) was established by the Florida Constitution in 1966 and is the sole body authorized to investigate allegations of judicial misconduct in Florida. In 1990 the Commission was divided into an Investigative Panel and a Hearing Panel.

The Investigative Panel functions much like a grand jury and investigates allegations of judicial misconduct. If probable cause is found and formal charges are filed, then the Hearing Panel serves as a special master making findings of fact and recommendations to the Florida Supreme Court as to the appropriate discipline.

The Commission is comprised of six judges, five laypersons selected by the Governor, and four Florida Bar members.  The Chair of the Commission selects nine members to serve on the Investigative Panel and six members to serve on the Hearing Panel. For more information on the complaint process, please visit: https://floridajqc.com/complaint-process/. The JQC's contact information is:

Judicial Qualifications Commission
1110 Thomasville Road
Tallahassee, Florida 32303
Phone: (850) 488-1581
Email: contact@floridajqc.com
Website: http://www.floridajqc.com/
FAQs: https://www.floridasupremecourt.org/News-Media/Judicial-Discipline-JQC-Cases#Information
COMPLAINT FORM: https://floridajqc.com/complaint-form/

If you need legal guidance, we again encourage you to consider consulting a private attorney. An attorney can provide you with the legal help this office cannot provide to private individuals. If you need help finding a lawyer, The Florida Bar offers a Lawyer Referral Service at (800) 342-8011 or https://www.floridabar.org/public/lrs/.

In regard to your broader concerns about Florida's court system, you may wish to convey your experience and concerns to the Florida Commission on Access to Civil Justice, established by the Florida Supreme Court to study the unmet civil legal needs of disadvantaged, low-income, and moderate-income Floridians. The Commission meets quarterly and collects input from the public online. You may contact the Commission online at https://atj.flcourts.org/.

Please understand the Attorney General's duties are prescribed by law. We appreciate your time and effort in contacting this office.

Sincerely,

Silvia C.
Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3990
Toll-free within Florida: (866) 966-7226

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form. Again, thank you for contacting the Office of the Florida Attorney General.

_____

INTERNET MESSAGE RECEIVED BY THE ATTORNEY GENERAL'S OFFICE ON 06/05/2024

janvier Villars
1301 NE MIAMI GARDENS DRV., 322, 322W
North Miami Beach, FL 33179
Phone: (786) 609-1269
Email: janvier269@gmail.com

Subject: Judicial Abuse - Civil Conspiracy recorded in courts

RE: 11th Circuit Court Judge Del Rio
Miami, FL

I represent a large group of property owners in Florida. Who are constantly being deceived through legal manipulation, civil conspiracy, and unequal treatment in courts.  Everything expressed here can be immediately verified by reviewing Miami-Dade Circuit Court case 2023-026257-CA-01 transcripts.  Fraud On The Court - as common practice.  Our privacy, liberties, Substantive Rights, and property rights are constantly taken through a Judicial Swindled scheme between attorneys and circuit court judges.
The Judicial Swindle Steps:  First: We are summoned to court under false claims by an attorney who knows to lack Legal Standing, injury as a matter of fact, and a known causation. But enjoying the collaboration of the judge. Second: The Judge repeatedly obstructs us, the defendants, from presenting our defense. Prohibiting us from speaking in court hearings. Third: the Judge immediately signs injunctions stripping us of our constitutional and statutory rights. Transferring our duly vested property rights and interests to the Plaintiff's attorney.  Fourth: The Judge denies hearings to all direct adverse parties. Fifth: Dismissing with Prejudice any action contesting the allegations. Including compulsory Counterclaim filed by the indispensable party, who proved their lawsuit frivolous. Sith: No one other than the Plaintiff's attorney gets hearings or remedies. Even when the adversely affected properly plead for a hearing per Florida Rules of Civil Procedures. Seventh: The appeal judges approve such judicial abuse - to protect their fellow judge.
Judicial overreach: The Judge - Sue Sponte - interfered with our Association's private board elections. Canceling it two days before the due date. Without the opposing party recording a pleading, motion or petition for this cancelation. Without affording any proper notice or a hearing to contest her Justification for: "Failure to follow FS718". Without any recorded evidence of wrongdoing or imminent danger urgency. An interference used to transfer the Association's right to conduct the election to the opposing party's attorney. Granting this attorney absolute authority to alter the Board election procedures at his discretion. In direct contradiction to bylaws and statutory procedures. Lacking legal foundation to do so. Under color of law, and without due process, coercing new burdens. To restrict the owners' right to vote for their local government.In a last-minute order, the Judge descriminately approved their faulty elections despite THEIR "Failure to comply with FS718". While the sitting board candidates were compelled to follow the prior Court Order to our detriment.  Refusing us a hearing to address their elections' fatal errors. With threats of appointing another Receivership if we objected to their elections. While they intentionally violate the FS718 Notice timing requirements and FAC61B-230021
mandatory rescheduling of elections. Thereby, fraudulently inducing acceptance to an illegally held Board Elections. So the opposing party can take control of the Association property. To permit them, as the new board, to close the case against the Association. Winning with just their 150 (¼ of membership) votes to our permitted 10 votes. This ultra vires action undermines our Constitutional Rights, Security over our property, privacy and questions the judicial system. We ask you for your collaboration of clicking and signing> our attached petition.  Requesting for the DBPR to expedite compliance with the FAC 61B-230021 mandatory nullification of the illegally procured elections.

# Email the Governor

Due to the high volume of emails sent to the Governor, there may be a delay in responding to your email.

**For the latest news and statements from the Governor, please visit flgov.com or follow the Governor on Twitter @GovRonDeSantis.**



Thank you for contacting Governor Ron DeSantis.

Due to the volume of emails sent to the Governor, there may be a delay in responding to your e-mail. You may wish to view the Governor's web site. www.FLGov.com, which provides information on current issues and answers to frequently asked questions.

Thank you again for taking the time to contact Governor DeSantis.

Executive Office of the Governor
Ron DeSantis
www.flgov.com
@GovRonDeSantis


**Coercion on a fraudulently procured Receivership's Special Assessment through U.S. Post Mail and U.S. Court.**

messages

anvier Villars <janvier269@gmail.com>                                    Mon, Oct 28, 2024 at 1:11 PI
o: Steven Katz <sbk@sbk.legal>, Santiago Noguera <santiagonoguera@yahoo.ca>, "USAFLS-CitizenComplaints (USAFLS)"
USAFLS.CitizenComplaints@usdoj.gov>, "Baker, Kayla" <kayla.baker@myfloridalicense.com>

Steven Katz,
Legal Agent and Buckley Towers Condominium Association attorney after manipulating the 2023 elections through CASE 2023-
026257-CA-01.

**Re: Request for Legal Clarification and Compliance with the Supremacy Clause, Florida Condominium Law and Association Bylaws**
AS A FORMAL RESPONSE KATZ' LETTER OF INTENT TO PLACE LIENS ON THE COLLECTION OF A FRAUDULENTLY IMPOSED RECEIVER -- SPECIAL ASSESSMENT.

Mr. Katz,

I am writing to request clarification on several critical points regarding your actions and authority in managing the affairs of the Buckley Towers Condominium Association. This request is made about your role in recent legal and administrative actions affecting the Association's governance, elections, and your board appointment.
Florida Statute 718 specifically under FAC 61B-23.0021, along with the Association's bylaws, outlines specific procedures and requirements for these actions.
**Please respond to the following questions with supporting documentation to substantiate compliance with these governing rules. DO NOT ignore or respond with unsustainable legal opinions or your court-manipulated results.  Respond according to actual Federal and State laws stipulations as those are written (not your assumed interpretations):**

1. **Authority for Board Election and Voting Changes**
   Under **FS 718.112(2)(d)** and **FAC 61B-23.0021(c),** explicitly stated that an association may only adopt different voting and election procedures following the affirmative vote of a majority of the total voting interests. These are the private association's bylaw amendments. Which per Florida Constitution, you must adhere to when unambiguous, as these are. Especially when Buckley's Declaration does not contain the "Kaufman language". Could you please provide proof of such a majority vote authorizing these changes, or otherwise clarify the legal basis for your placed board to violate the Association bylaws, state and federal laws?

2. **Recall and Filling Vacancies on the Board**
   Florida Administrative Code **61B-23.0027** prescribes specific methods for recalling and filling vacancies on the board. Where a Recall must be CERTIFIED by the DBPR to be valid. The Association bylaws are very explicit on how a Board Director is legally removed. A failure to comply accordingly there was no recall of the President elected. As you confirmed with your previous email.
   So, please explain how these provisions were exempted lawfully, (not according to Guzman/Katzman court swindle) for you to be collecting on a fraudulent procured Receivership Special Assessment. Where the maxim of law "*Quod ab initio non valet, in tractu temporis non convalescit.*" **What is void from the beginning does not become valid over time.**

3. **Supremacy Clause, the Contract Clause and Application of FS 718 on the -- 1968 Association Declaration and Bylaws**
   In light of the **Supremacy Clause of the U.S. Constitution**, it is crucial to ensure that the application of state statutes, including FS 718, does not impair vested contractual rights as established by the Association's bylaws and governing documents. Given that FS 718 lacks standing in our bylaws, please provide your legal justification for enforcing provisions under FS 718 without due process afforded to the Association and its members. Or have your placed board provide proof of the votes by a majority of the owners agreeing on the changes you made and coerced under color of law.

4. **Legal Basis for Receivership, Seizure of Association Property and illegally procured Special Assessment**
   Based on your own finding with the receiver's attorney Mr. Landy, the court lacked proof of a recall against me as the president in 2021. Thus, leaving Katzman without legal standing to petition for the Receiver - without a single owner petitioning and illegally representing the Association. Since he was hired by the impostor Mariluce de Souza. A Fraud on the Court to deprive of property FS817.535.
   So, please explain how, knowing this, as undisputable fact and law, you have legal authority to force the debt placed by the fraudulent procurement of the Receiver. Your duty to law is beyond any court case, and any attorney/judge you can collaborate with. For you to collect this illegal debt without legal justification, you are proceeding intentionally and fraudulently under false pretenses to deprive of property. So, to avoid further harming the Association, which you have a duty to protect against lawsuits, respond to this letter justifying legally your intent to place a lien on property owners who were defrauded by Katzman and



STATE OF FLORIDA
## JUDICIAL QUALIFICATIONS COMMISSION
POST OFFICE BOX 14106
TALLAHASSEE, FLORIDA 32317
(850) 488-1581

HON. KRISTA MARX
CHAIR

HON. MICHELLE T. MORLEY
VICE - CHAIR

BLAN L. TEAGLE
EXECUTIVE DIRECTOR

ALEXANDER J. WILLIAMS
GENERAL COUNSEL

September 17, 2020

Janvier Villars
1301 NE Miami Gardens Dr.
322W
Miami, Fl 33179

**Re:    *Docket No. 20-379; Cynamon***

Dear Janvier Villars:

The Commission has received your complaint. The Investigative Panel of the Commission meets approximately every six weeks. At the next meeting, the Panel will evaluate your complaint to determine whether your concerns fall within the Commission's jurisdiction, and if so, whether they merit further review.

Thank you for bringing this matter to the Commission's attention.

Sincerely yours,

Alexander J. Williams
Assistant General Counsel

AJW/mc



STATE OF FLORIDA

HON. MICHELLE T. MORLEY
CHAIR

GREGORY W. COLEMAN
VICE - CHAIR

## JUDICIAL QUALIFICATIONS COMMISSION

POST OFFICE BOX 14106
TALLAHASSEE, FLORIDA 32317
(850) 488-1581

BLAN L. TEAGLE
EXECUTIVE DIRECTOR

ALEXANDER J. WILLIAMS
GENERAL COUNSEL

December 20, 2022

Janvier Villars
1301 NE Miami Gardens Dr.
322W
Miami, Fl 33179

**Re: Docket No. 22-635; Guzman**

Dear Mr. Villars:

The Investigative Panel of the Commission has completed its review of your complaint in the above matter and has determined, at its most recent meeting, that the concerns you have expressed are not allegations involving a breach of the Code of Judicial Conduct warranting further action by the Commission but are matters for review through the normal court process.

The purpose of the Commission is to determine the existence of judicial misconduct and disability as defined by the Constitution and the laws of the State of Florida. If such misconduct or disability is found, the Commission can recommend disciplinary action to the Florida Supreme Court. The Commission has found no basis for further action on your complaint that therefore has been dismissed.

Sincerely yours,

Blan L. Teagle, J.D.
Executive Director

BLT/mc

*Inquiries by the Commission are confidential pursuant to Art. V, Sec 12(a)(4) of the Florida Constitution and Rule 2.420, Florida Rules of Judicial Administration.*



STATE OF FLORIDA

# JUDICIAL QUALIFICATIONS COMMISSION

POST OFFICE BOX 14106
TALLAHASSEE, FLORIDA 32317
(850) 488-1581

HON. MICHELLE T. MORLEY
CHAIR

GREGORY W. COLEMAN
VICE - CHAIR

BLAN L. TEAGLE
EXECUTIVE DIRECTOR

ALEXANDER J. WILLIAMS
GENERAL COUNSEL

October 3, 2022

Dear Sir or Madam:

The Commission has received the materials you provided. They are being returned for the following reason(s):

__X__ No member of the Florida judiciary is identified as being the subject of allegations of misconduct. You must identify an individual judge by name.

____ The Commission does not have authority to disqualify a judge from a case or to order that a new judge be assigned to a case. Any such request must be made through the normal court process.

_____ Your complaint solicits legal advice or assistance, which the Commission is not permitted to provide. The Commission cannot act as your lawyer.

_____ The person about whom you complain is not, or no longer, an active member of the Florida state judiciary. If they are an attorney, you may wish to contact The Florida Bar with your concerns.

_____ The Commission has no authority to act as an appellate court. It cannot review, reverse, or vacate a judge's decision or sentence. It is also without authority to intervene in ongoing cases. Such concerns must be handled through the normal court process.

_____ The material you have submitted is illegible or unintelligible. We are enclosing a complaint form for your use should you wish to submit a complaint pertaining to an identified member of the Florida state judiciary.

The Commission does not retain a copy of your materials.

*Florida Judicial Qualifications Commission*



GREGORY W. COLEMAN
CHAIR

HON. MICHELLE T. MORLEY
VICE - CHAIR

**STATE OF FLORIDA**
**JUDICIAL QUALIFICATIONS COMMISSION**
POST OFFICE BOX 14106
TALLAHASSEE, FLORIDA 32317
(850) 488-1581

BLAN L. TEAGLE
EXECUTIVE DIRECTOR

ALEXANDER J. WILLIAMS
GENERAL COUNSEL

HUGH R. BROWN
ASSISTANT GENERAL COUNSEL

August 6, 2024

Janvier Villars
1301 NE Miami Gardens Drive
#801W
Miami, Fl 33179

> **Re:    Docket No. 24-438; del Rio**

Dear Janvier Villars:

The Investigative Panel of the Commission has completed its review of your complaint in the above matter and has determined, that the concerns you have expressed are not allegations involving a breach of the Code of Judicial Conduct warranting further action by the Commission but may be matters for review through the normal court process.

The purpose of the Commission is to determine the existence of judicial misconduct or disability as defined by the Constitution and the laws of the State of Florida. If such misconduct or disability is found, the Commission can recommend disciplinary action to the Florida Supreme Court. The Commission has found no basis for further action on your complaint that therefore has been dismissed.

Sincerely,

Blan L. Teagle, J.D.
Executive Director

BLT/mc

FLORIDA OFFICE OF



FINANCIAL REGULATION

www.flofr.com

June 21, 2019

MR. JANVIER VILLARS
1301 NE MIAMI GARDENS DR #322W
MIAMI, FL  33179

Re:     Entity/Company:  BUCKLEY TOWERS CONDOMINIUM INC
        Complaint Activity Number:  95922

Dear MR. VILLARS:

The Office of Financial Regulation (Office) has completed its review of the complaint you filed
against the above referenced entity/company.  Our review included a thorough review and
analysis of your complaint.

It appears that the difficulties you are experiencing are not within the statutory authority of this
Office and your complaint appears to be a civil matter.  As a regulatory agency, we do not
adjudicate disputes of fact between parties.  We are unable to take any further action to assist
you with your complaint.  You may wish to seek the services of private legal counsel in order to
resolve this matter to your satisfaction.

Issues with condominiums should be directed to Florida Department of Business and
Professional Regulation.  They can be reached at:

Florida Department of Business and Professional Regulation
2601 Blair Stone Road
Tallahassee, FL 32399-1027
http://www.myfloridalicense.com/contactus/
(850) 487-1395

Thank you for bringing this matter to our attention and for your patience and cooperation
throughout our review process.

Sincerely,

Elizabeth A. Ralstin

Elizabeth Ralstin
Financial Examiner Analyst II
Division of Consumer Finance
Bureau of Enforcement
elizabeth.ralstin@flofr.com
(850) 410-9811



# U.S. Department of Justice
# Civil Rights Division

*Washington, DC 20530*

October 17, 2022

Power in union
1301 NE Miami Gardens Drive No. 322
Miami, FL 33179

Dear Power in union,

You contacted the Department of Justice on September 29, 2022. After careful review of what you submitted, we have decided not to take any further action on your complaint.

What we did:

Team members from the Civil Rights Division reviewed the information you submitted. Based on our review, we have decided not to take any further action on your complaint. We receive several thousand reports of civil rights violations each year. We unfortunately do not have the resources to take direct action for every report.

Your report number was 207873-GZF.

What you can do:

We are not determining that your report lacks merit. Your issue may still be actionable by others - your state bar association or local legal aid office may be able to help.

To find a local office:

 Gmail

Janvier Villars <janvier269@gmail.com>

**Automatic reply: Fraudulent Practices Under Color of Law - Fla. DBPR Case No. 2024025179 and Miami-Dade Civil Case: 2023-026257-CA-01 - State Action proven by its citizens.**
messages

Mayor <mayor@miamidade.gov>                                          Fri, Aug 2, 2024 at 3:31 PM
To: Janvier Villars <janvier269@gmail.com>

Thank you for your email! Your feedback, concerns, and questions are very important to me, and my team is working hard to address every resident inquiry and make sure you get the answers and information you need.

A member from appropriate departmental staff will be reaching out within 1-2 business days, to ensure that your inquiry is answered or routed to the appropriate department for a timely response.

Please know that you can also reach out to the 311 Center by dialing 3-1-1 or 305-468-5900 to get general information or request services from Miami-Dade County. You can also connect with 311 via Email, Twitter, Online, or by iPhone App or Android App.

For media requests, email comminfo@miamidade.gov

For Public Records Requests email MayorPublicRecords@miamidade.gov

Thank you again for contacting my office and for being an engaged member of our community!

Yours in service,

Mayor Daniella Levine Cava

Miami-Dade County

Make sure to follow me on Facebook and Twitter for regular updates.

DOEA OPPG Complaints <OPPGcomplaints@elderaffairs.org>                Fri, Aug 2, 2024 at 3:31 PM
To: Janvier Villars <janvier269@gmail.com>

Thank you for your email to the Office of Public and Professional Guardians (OPPG). This is an auto-generated notice to confirm receipt of your email to our office.

If you suspect that anyone is being abused, neglected, or exploited, you should call the Florida Abuse Hotline. The Department of Children and Families administers the Adult Protective Services Program and manages the Florida Abuse Hotline. You can file a report with the Hotline at (800) 962-2873 (800.96ABUSE), 24 hours a day, seven days a week. The call is confidentialand you can make the report anonymously.

TO REPORT LIFE THREATENING EMERGENCIES, SAFETY CONCERNS, OR IF POLICE ASSISTANCE IS IMMEDIATELY NEEDED, DIAL 9-1-1 or contact local law enforcement authorities who receive and respond to calls for service 24 hours a day.

PLEASE NOTE: The OPPG does not monitor emails on weekends, holidays, or after weekday business hours (M-F 8AM-5PM). Please do not rely on electronic communications to report urgent emergencies or safety concerns. Dial 911 instead.

In addition, please report known or suspected abuse/neglect/exploitation of a child or vulnerable adult to the state's Abuse Hotline at 1-800-962-2873 or online at https://reportabuse.dcf.state.fl.us or call 911.

 Gmail

## Coercion on a fraudulently procured Receivership's Special Assessment through U.S. Post Mail and U.S. Court.

messages

anvier Villars <janvier269@gmail.com>                                                Mon, Oct 28, 2024 at 1:11 Pt
o: Steven Katz <sbk@sbk.legal>, Santiago Noguera <santiagonoguera@yahoo.ca>, "USAFLS-CitizenComplaints (USAFLS)"
USAFLS.CitizenComplaints@usdoj.gov>, "Baker, Kayla" <kayla.baker@myfloridalicense.com>

**Steven Katz,**
Legal Agent and Buckley Towers Condominium Association attorney after manipulating the 2023 elections through CASE 2023-026257-CA-01.

**Re: Request for Legal Clarification and Compliance with the Supremacy Clause, Florida Condominium Law and Association Bylaws**
AS A FORMAL RESPONSE KATZ' LETTER OF INTENT TO PLACE LIENS ON THE COLLECTION OF A FRAUDULENTLY IMPOSED RECEIVER -- SPECIAL ASSESSMENT.

Mr. Katz,

I am writing to request clarification on several critical points regarding your actions and authority in managing the affairs of the Buckley Towers Condominium Association. This request is made about your role in recent legal and administrative actions affecting the Association's governance, elections, and your board appointment.
Florida Statute 718 specifically under FAC 61B-23.0021, along with the Association's bylaws, outlines specific procedures and requirements for these actions.
**Please respond to the following questions with supporting documentation to substantiate compliance with these governing rules. DO NOT ignore or respond with unsustainable legal opinions or your court-manipulated results.  Respond according to actual Federal and State laws stipulations as those are written (not your assumed interpretations):**

1. **Authority for Board Election and Voting Changes**
   Under **FS 718.112(2)(d)** and **FAC 61B-23.0021(c)**, explicitly stated that an association may only adopt different voting and election procedures following the affirmative vote of a majority of the total voting interests. These are the private association's bylaw amendments. Which per Florida Constitution, you must adhere to when unambiguous, as these are. Especially when Buckley's Declaration does not contain the "Kaufman language". Could you please provide proof of such a majority vote authorizing these changes, or otherwise clarify the legal basis for your placed board to violate the Association bylaws, state and federal laws?

2. **Recall and Filling Vacancies on the Board**
   Florida Administrative Code **61B-23.0027** prescribes specific methods for recalling and filling vacancies on the board. Where a Recall must be CERTIFIED by the DBPR to be valid. The Association bylaws are very explicit on how a Board Director is legally removed. A failure to comply accordingly there was no recall of the President elected. As you confirmed with your previous email.
   So, please explain how these provisions were exempted lawfully, (not according to Guzman/Katzman court swindle) for you to be collecting on a fraudulent procured Receivership Special Assessment. Where the maxim of law "*Quod ab initio non valet, in tractu temporis non convalescit.*" **What is void from the beginning does not become valid over time.**

3. **Supremacy Clause, the Contract Clause and Application of FS 718 on the -- 1968 Association Declaration and Bylaws**
   In light of the **Supremacy Clause of the U.S. Constitution**, it is crucial to ensure that the application of state statutes, including FS 718, does not impair vested contractual rights as established by the Association's bylaws and governing documents. Given that FS 718 lacks standing in our bylaws, please provide your legal justification for enforcing provisions under FS 718 without due process afforded to the Association and its members. Or have your placed board provide proof of the votes by a majority of the owners agreeing on the changes you made and coerced under color of law.

4. **Legal Basis for Receivership, Seizure of Association Property and illegally procured Special Assessment**
   Based on your own finding with the receiver's attorney Mr. Landy, the court lacked proof of a recall against me as the president in 2021. Thus, leaving Katzman without legal standing to petition for the Receiver - without a single owner petitioning and illegally representing the Association. Since he was hired by the impostor Mariluce de Souza. A Fraud on the Court to deprive of property FS817.535.
   So, please explain how, knowing this, as undisputable fact and law, you have legal authority to force the debt placed by the fraudulent procurement of the Receiver. Your duty to law is beyond any court case, and any attorney/judge you can collaborate with. For you to collect this illegal debt without legal justification, you are proceeding intentionally and fraudulently under false pretenses to deprive of property. So, to avoid further harming the Association, which you have a duty to protect against lawsuits, respond to this letter justifying legally your intent to place a lien on property owners who were defrauded by Katzman and

Given that Florida's statutory framework under FS 718.1255(4)(c) and FAC 61B require strict adherence to the governing documents and due process for corporate matters, your responses will greatly assist in clarifying the procedural integrity of these recent actions. As an officer of the court, your prompt response to these inquiries is anticipated in accordance with the Florida Rules of Professional Conduct and the state's Code of Ethics, ensuring transparency and accountability in your duties as legal counsel for the Association.

**With this email you are also required to confirm the receipt, of my past two monthly dues to the Association payments, sent to your office via certified mail. Unless you intend to deny receiving them, and destroying my money orders -- to justify a debt to disqualify me again?  Please be aware, that the Supremacy and the Contract Clause prohibits ANY impairment to our Association-afforded rights and privileges. So any claimed debt does not disqualify any candidate from participating when duly elected by the majority of the owners.**
We need you to CONFIRM you will adhere to our Association Bylaws sir.

ALSO you will find attached, the signed letter of Intent to run for Board Secretary along with the President Marcos Noguera's petition. I need you to confirm you received them with this email. We will be forwarding our profile page here soon.  But we need to make sure you are actually complying with the Association bylaws and legal requirements.

**Which brings me to my last question:**
 **what gives you the right to alter the <u>Association's election procedures</u> without a majority of owners' vote?**
The bylaws, that you as a lawyer are required to follow, are clearly stipulated. There is voting for East and West Vice Presidents.  Our bylaws do not afford voting on a 1st vice and 2nd Vice President and a Corporate Secretary. This actions are intended to control the results to your interests and that of your placed board. This is an illegal manipulation and violation of our 1st Amendment right to vote. Please comply with our bylaws or you will be held responsible for yet another election manipulation and international breach of fiduciary duty.

Thank you for your immediate attention to these matters. I look forward to receiving your responses within 10 days.

Sincerely,
**Janvier Villars**
**Duly elected President in 2021 and Secretary in 2023**


--
Janvier Villars
TOGETHER WE CAN DO BETTER
786 609 1269

---

**2 attachments**

📎 **Notice of intent 28-Oct-2024 12-38-40(1).pdf**
    317K

📎 **JV secretary petition.pdf**
    1029K

---

**USAFLS-CitizenComplaints (USAFLS)** <USAFLS.CitizenComplaints@usdoj.gov>                    Thu, Nov 7, 2024 at 3:45 PI
o: Janvier Villars <janvier269@gmail.com>


Good Afternoon,


We are in receipt of your email. Please seek legal counsel to assist you with this matter. Thank you for contacting our office.


Thank you,

Criminal Complaint Department

[Quoted text hidden]

Secretary of DBPR Ms. Melanie Griffin
2601 Blair Stone Road
Tallahassee, FL 32399-1027

**RE: DBPR Case No. 2024025179**

Dear Ms. Griffin,

I am sorry if our petitions for justice may inconvenience your hectic schedule. I understand how important every minute of your life is for millions of Floridians who depend on your ethics and principles to lead a better DBPR.

As you know, we are the working class, not adequately represented in the state. The DBPR is the official path dictated by Florida Legistation to address violations in our condo association elections discrepancies,per FS 718.1255. So we urgently need your support redressing the illegal elections.

I will be having other owners send their letters directly to you because the DPBR office is not responding to us for well over 60 days. Holding us victims of a fraudulent procedures that simply make a mockery of the state laws and our association bylaws. This is indignifying, and detrimental to the morale of the community.

Ms. Griffin can you please have the supervisor Oscar Arias or Admin Assistant Latrice Young write us an explanation of why the illegally procured elections have yet to be voided according to the FAC 61B-23.0021. If the law is not respected and equally enforced then this type of illegal taking is endorsed to be commonly repeated on every association elections. Then, what is the purpose of the DPBR, if it is not required to enforce the legal procedures.

Today I receive access to inspect according what the DBPR has obtained on the case.
Reviewing the investigation made by the DBPR I found it has indeed requested the proper documentation:

> Please reference the case number when responding and provide the following by **May 30, 2024**
> - A written response to the allegation;
> - Copy of the first notice for the April 24, 2024, board of directors elections;
> - Copy of the second notice for the April 24, 2024, board of directors elections;
> - Copy of Affidavit of mailing for the first notice sent to the members;
> - Copy of Affidavit of mailing for the second notice sent to the members;
> - Copy of the ballots, inner and outer envelopes for the April 24, 2024 board of director elections;
> - Copies of all intent to run applications submitted to the Association for the April 24, 2024 elections

In Response, Mr. Katz wrote a long winded letter giving his reason why he believes the law should not be followed by either the DBPR or his law firm. Unfortunately for him, none of his reasoning gives legal justification or exception to not comply with the required notices. As it can be observed in what he submitted, he is lacking the copy of the 1st and 2nd notices. Also the legal reason for removing properly submitted nominees and adding his new clients as nominees. Without complying with our required 25 signatures to be nominated at least 30 days before elections.

As an attorney, you are bound by law to enforce its provisions. Personal opinions should not allow attorneys like Katz to redefine legal standards. The judge could not rule against me because my grassroots efforts do not violate any laws; instead, I offer practical solutions within constitutional rights the state struggles to address. Here proven a fact.

All I ask is that you uphold the Equal Protection Under the Law that you are sworn to serve. Can you do that for us?

Sincerely,

Janvier Villars, 786-609-1269, janvier269@gmail.com

July 19, 2024

Mr. Francis X. Suarez
Mayor of Miami

I write to you on behalf of over 200+ elderly homeowners who are being egregiously swindled out of their homes. This issue is not just about property; it strikes at the very core of justice and human decency.

We acknowledge the complexities of capitalism and progress, yet there must be limits to the exploitation of the defenseless. If such injustices are allowed to persist, the principles of fairness and humanity are eroded.

Our case highlights severe breaches in the separation of powers, abuse of discretion, and a blatant disregard for equal protection under the law. This leaves the victims with no choice but to consider drastic measures that could inadvertently harm bystanders and children.

For nearly a decade, I have dedicated myself to uncovering why and how elderly homeowners are victimized in condo or homeowner associations. Contrary to common belief, it is not due to external fraudsters but through undue influence perpetuated by association attorneys and protected by circuit judges. This systematic abuse cannot be resolved by any group of owners or the DBPR.  It needs to be addressed outside the Judicial branch, as herein proven to be compromised.

Here's a concise overview of the fraudulent scheme: An attorney, aware that the homeowner has no debt, sends a legal threat demanding payment under false pretenses, including exorbitant legal fees. The attorney bypasses proper procedures, knowing the judge will obstruct the homeowner's defense. Consequently, elderly homeowners, unaware of their rights, are coerced into paying these fabricated debts, often resulting in severe financial distress.

This collusion is exemplified in our community,. A similar fraudulent lawsuit stripped our legitimate board of its authority without due process, violating FS718.1255 and numerous legal doctrines. The judge, in collusion with the plaintiff's attorney, executed four injunctions against us while denying us the right to a hearing, ultimately installing the attorney's clients as the new board.

This malicious collaboration aims to prevent any collective defense against these fraudulent practices, leaving individual homeowners defenseless. Our community has made significant progress in one year, only to be undone by judicial manipulation and denial of due process.

I have exhausted my savings, retirement funds, and personal time over the past nine years to fight this injustice without any compensation. Despite filing suits against this illegal takeover, the courts have consistently denied us access to justice.

I implore you to intervene in this matter. Without immediate action, many elderly residents will be forced into homelessness, and their homes sold to developers without regard for their rights or well-being. This is not the America we strive for, but a descent into chaos driven by greed.

Please take a moment to review our case. Your involvement could make a significant impact on those who otherwise have no voice in government.

DBPR Case No. 2024025179  and  Miami-Dade Civil Case: 2023-026257-CA-01

Sincerely,
Janvier Villars, (786) 609-1269, janvier269@gmail.com

July 19, 2024

Mr. Francis X. Suarez
Mayor of Miami

I write to you on behalf of over 200+ elderly homeowners who are being egregiously swindled out of their homes. This issue is not just about property; it strikes at the very core of justice and human decency.

We acknowledge the complexities of capitalism and progress, yet there must be limits to the exploitation of the defenseless. If such injustices are allowed to persist, the principles of fairness and humanity are eroded.

Our case highlights severe breaches in the separation of powers, abuse of discretion, and a blatant disregard for equal protection under the law. This leaves the victims with no choice but to consider drastic measures that could inadvertently harm bystanders and children.

For nearly a decade, I have dedicated myself to uncovering why and how elderly homeowners are victimized. Contrary to common belief, it is not due to external fraudsters but through undue influence perpetuated by association attorneys and protected by circuit judges. This systematic abuse cannot be resolved by the DBPR alone.

Here's a concise overview of the fraudulent scheme: An attorney, aware that the homeowner has no debt, sends a legal threat demanding payment under false pretenses, including exorbitant legal fees. The attorney bypasses proper procedures, knowing the judge will obstruct the homeowner's defense. Consequently, elderly homeowners, unaware of their rights, are coerced into paying these fabricated debts, often resulting in severe financial distress.

This collusion is exemplified in our community, as Ms. Melanie Griffin, Esq., Secretary of DBPR, can corroborate. A similar fraudulent lawsuit stripped our legitimate board of its authority without due process, violating FS718.1255 and numerous legal doctrines. The judge, in collusion with the plaintiff's attorney, executed four injunctions against us while denying us the right to a hearing, ultimately installing the attorney's clients as the new board.

This malicious collaboration aims to prevent any collective defense against these fraudulent practices, leaving individual homeowners defenseless. Our community has made significant progress in one year, only to be undone by judicial manipulation and denial of due process.

I have exhausted my savings, retirement funds, and personal time over the past nine years to fight this injustice without any compensation. Despite filing suits against this illegal takeover, the courts have consistently denied us access to justice.

I implore you to intervene in this matter. Without immediate action, many elderly residents will be forced into homelessness, and their homes sold to developers without regard for their rights or well-being. This is not the America we strive for, but a descent into chaos driven by greed.

Please take a moment to review our case. Your involvement could make a significant impact on those who otherwise have no voice in government.

DBPR Case No. 2024025179  and  Miami-Dade Civil Case: 2023-026257-CA-01

Sincerely,
Janvier Villars, (786) 609-1269, janvier269@gmail.com

 Gmail                                                          Janvier Villars <janvier269@gmail.com>

---

## Civil Conspiracy against Civil Rights as State Action - under 42 USC Sec. 1983, 1985 and 1986

1 message

---

Janvier Villars <janvier269@gmail.com>                                    Tue, Aug 6, 2024 at 12:45 PM
Bcc: publicaffairs@usccr.gov, CRT.FOIArequests@usdoj.gov, Criminal.Division@usdoj.gov, askdoj@usdoj.gov

Dear sirs,
This is a plea for help and protection for the elderly and working class. The state of Florida refuses to correct the overt judicial abuse being committed as common practice.
I have communicated with everyone from the Florida Department of Business and Professional Regulations to the Courts of Appeal of the 3rd and 11th Circuit including Governor De Santis.

The proof of civil rights violations done in plain sight and intentionally in courts. Depriving private association owners of privacy, property rights, 1st Amendment rights, and due process.
Miami-Dade Circuit Court case 2023-026257-CA-01  Trullenque v. Buckley

You will not have to dig any deeper than this case to see how the BAR Attorneys conspire with their colleagues dressed in black, acting as a judge (wanting subject matter jurisdiction).
Their swindle is simple: File a false Claim Suit, obstruct the defendant's defense, penalize them immediately with an injunction, and take their property by court orders. Proven as a common practice with prior cases done precisely the same way.

I need to know if the "guaranteed equal protection under the law" can be afforded by your department against a state-wide conspiracy.
Or are you going to leave the citizens to defend themselves, by suing the largest corporation of the state alone?

Please review the following, and if makes legal sense, review the case in the Miami-Dade Circuit Court docket 2023-026257-CA-01.
The following is what I wrote to the State Agencies responsible for correcting the judicial abuse.  However, they all refused to attend it; discarding their duty under state law.

To make the issue more practical for your department to assist us:  (state laws preempt by federal laws and 42 USC Sec. 1983, 1985, and 1986 as well as 18 USC Sec. 241, 242, 245)
**§ 843.0855 – Criminal Actions Under Color of Law** or Through Use of Simulated Legal Process. This statute criminalizes actions that involve simulating legal process or acting under color of law with the intent to mislead or harm another. It prohibits any person from falsely asserting authority as a law enforcement officer or other government official.
**§ 838.022** Makes it a crime for judges and court deputies to knowingly falsify or conceal records that could directly or indirectly to a violation of due process.
**§ 777.04** Engaging in a conspiracy to deprive someone of their legal rights, including due process
**§ 817.535 and FS812.013** Include attorneys and judges acting under color of law. Abusing their undue influence to deceitfully coerce compliance which contradicts laws and bylaws.
**§ 843.08** - Just like it would be illegal for an off-duty police officer to "conduct official investigations" by presenting false search warrants, to collect bribes, BAR Licensed must also be prosecuted for false representation of the state.  See also FS838.022

**FACTS:**
1. The evidence shows the judge knew or should have known she lacked subject matter jurisdiction. She was informed in court and with our motions pleading for a hearing.
2. She denied defendant's pleas for hearing and litigation - in furtherance of illegally seizing the sitting board of vested rights. Without having any proof of wrongdoing or imminent danger.
3. She committed fraud by acting as a judge knowing neither the state law nor the Association bylaws gave the opposing party legal standing, injury, or causation - lacking subject matter jurisdiction.
4. Only by her 'Judicial' collaboration was the Court Deputy, Mr. Katz, able to defraud our private election.  Impairing our privacy, 1st Amendment Rights, and contractual rights.
5. The Judge deliberately concealing material facts from the court - fraud on the court - serves as an overt act in furtherance of the illegal taking - proving their civil conspiracy.

6. Having the Association pay Mr. Katz for his false claim suit and placing him as the new Association attorney, proves they had a financial interest in taking illegally the Association.

**7. Signing and recording in public records, a court order that contradicts state laws,** to secure an illegal election favoring Mr. Katz's clients; so his clients to take the association is a felony under FS817.535. As well as federal laws. Only because this is a <u>BAR-licensed organized crime</u>, deceiving the elderly from their property, as common practice, their actions should not be treated unequally as if done by the working class.

For the state to discard these egregious violations, that demonstrate abuse of power, leaves the community devastated and at risk of financial insolvency.  Only because the BAR Licensed attorneys - acting as (appeals) judges, decide to break their oath, violate laws, to protect their fellow BAR Members, by dismissing or disqualifying the merits, does not give them a waiver or exception under the above state laws.

Please file a suit and investigation on the current and past Association attorneys, who settled cases against the Association, concealing their settlements, and the disbursement of Association funds. If you Subpoena their financial records, you will have the smoking gun (checks or transfers of funds) that your department needs to investigate or convict those who collaborated.

These are the cases settled against the Association by the Association's attorney. Disbursing the Association Operations funds because the insurance would not cover the Association attorney's criminal activities with the Association board officers.  This is why the judges agree to conceal them, without ever having a hearing to make the settlements privileged information.
A. CASE NO.: 2021-015675-CA-01 Filing # 148496084 E-Filed 04/27/2022
B. CASE NO.: 2019-009058-CA-01 (23) Filing # 108674694 E-Filed 06/10/2020 03:06:38 PM
C. CASE NO.: 2021-000270-CA-27 Filing # 126775994 E-Filed 05/13/2021 03:53:02 PM
D. CASE NO: 2019-034664-CA-01 Filing # 87362334 E-Filed 04/02/2019
E. CASE NO: 2014-006485-CA-01 Filing # 122234611 E-Filed 03/01/2021
F. CASE NO.: 2014-005279-CA-01 Filing 02/07/2020
G. CASE NO.: 2014-006485-CA-01 counterclaim also settled.
H. CASE NO.: 2013-016791-CC-05   lacking stipulation of settlement on the docket but referred to in the dismissal.

We need an immediate injunction to protect our community from further criminal activity by those who illegally took our association.
We intend to file a class action but we need the federal government to provide the Guaranteed Equal Protection Under the Law.

--
Janvier Villars
TOGETHER WE CAN DO BETTER
786 609 1269

 Gmail

Janvier Villars <janvier269@gmail.com>

---

## Fraudulent Practices Under Color of Law - Fla. DBPR Case No. 2024025179 and Miami-Dade Civil Case: 2023-026257-CA-01 - State Action proven by its citizens.

---

Janvier Villars <janvier269@gmail.com>                                    Mon, Aug 5, 2024 at 1:39 PM
To: desantis.opengov@eog.myflorida.com, media@eog.myflorida.com, GovernorRon.DeSantis@eog.myflorida.com, melanie.griffin@dbpr.state.fl.us
Bcc: Santiago Noguera <santiagonoguera@yahoo.ca>, William Gonzalez <williamgonzalez@miamisao.com>

Governor De Santis,

My name is Janvier Villars.  I am taking this time, on my birthday, to give your office one last chance to respond according to the State laws herein mentioned.
At you refusing or denying us equal treatment or protection under Florida law, will afford us the injury we need to proceed against you and Ms. Griffin - personally.

Please do not take this as an insult to your superior being or a physical threat.
As BAR Members, you must know neither the state nor the federal laws afford your state agencies waivers or exceptions to enforce them as stipulated.

For the past decade, we have endured an ongoing civil conspiracy procured by fraudulent BAR Licensed Community Association attorneys with the help of their college judges.

The facts of our case are undisputed because these are all recorded in transcripts and by illegal actions that go beyond the judges' self-afforded discretion.
The only reason why your agents and judges are refusing to comply with the written law is because I am proposing a union for Community Association owners.  To protect ourselves against the proven judicial abuse that we have experienced.  So, if you discard our plead, it is ultimately your decision, affording us the grounds for a class action against you under 42 USC Sec. 1986.

Unless you have the DBPR, State Attorney, or Attorney General place an injunction on the perpetrators who illegally took our board elections and our Association, expect to be served by next week.  It is within your duty to protect the Florida Declaration and its citizens from Judicial abusive practices that illegally take rights, privacy, and property by obstructing due process.

Sincerely,
Janvier Villars
Property Owner in Florida

---------- Forwarded message ---------
From: **Janvier Villars** <janvier269@gmail.com>
Date: Fri, Aug 2, 2024 at 3:30 PM
Subject: Fraudulent Practices Under Color of Law - Fla. DBPR Case No. 2024025179 and Miami-Dade Civil Case: 2023-026257-CA-01 - State Action proven by its citizens.
To: <mayor@miamidade.gov>, <ocbinfo@mdpd.com>, <Service@americanbar.org>, <contact@floridajqc.com>

[Quoted text hidden]
The folling cases have been requested online from the Clerk of Courts, and by email to all State controlled attorneys.  All are refusing to provide transparency over the funds and terms signed against our Association.  Because the Association attoneys were involved in the violations causing the suit against the Association.

**A.** CASE NO.: 2021-015675-CA-01 Filing # 148496084 E-Filed 04/27/2022
**B.** CASE NO.: 2019-009058-CA-01 (23) Filing # 108674694 E-Filed 06/10/2020 03:06:38 PM


**C.** CASE NO.: 2021-000270-CA-27 Filing # 126775994 E-Filed 05/13/2021 03:53:02 PM

**D.** CASE NO: 2019-034664-CA-01 Filing # 87362334 E-Filed 04/02/2019


**E.** CASE NO: 2014-006485-CA-01 Filing # 122234611 E-Filed 03/01/2021

**F.** CASE NO.: 2013-018946-CC-05 Filing on 08/28/13


**G.** CASE NO.: 2014-005279-CA-01 Filing 02/07/2020
**H.** CASE NO.: 2014-006485-CA-01 counterclaim also settled.


**I.** CASE NO.: 2013-016791-CC-05   lacking stipulation of settlement on the docket but referred to in the dismissal.
[Quoted text hidden]



Department of
## BUSINESS AND PROFESSIONAL REGULATION

RON DESANTIS, *GOVERNOR*        MELANIE S. GRIFFIN, *SECRETARY*

7/26/2024

Via Email Address

janvier269@gmail.com

Janvier Villars
1301 Miami Gardens Drive #322W
Miami, FL 33179

RE:    Buckley Towers Condominium, Inc.
       Case No. 2024025179

Dear Mr. Villars:

The Division of Florida Condominiums, Timeshares, and Mobile Homes of the Florida Department of Business and Professional Regulation received the complaint you submitted against your condominium association. The Division has thoroughly reviewed the complaint you submitted along with all accompanying documentation. Based upon an evaluation of the alleged statutory violation and the submitted documentation, the Division has determined that it will proceed by conducting an investigation specifically regarding potential violations of:

1)    You allege that the Association failed to timely mail or hand deliver the first and second notices of election. Specifically, you allege that the second notice for the April 24, 2024 scheduled election had a post marked date of April 13, 2024, which is less than 14 days before the scheduled election.

2)    You allege that the Association failed to include an eligible candidate on the ballot for the board of director's election.  Specifically, you allege that candidate Henry Guerrero was not included as an eligible candidate on the ballot.

The allegations from your complaint that are not listed above will not be addressed due to there being no jurisdiction, no violation found or no documentation to support the allegation.

With regard to the above-listed allegations, the Division will conduct an investigation. As the Complainant, here is what you can expect during the course of the Division's investigation:

## LICENSE EFFICIENTLY. REGULATE FAIRLY.
### MYFLORIDALICENSE.COM

 

Department of
**BUSINESS AND PROFESSIONAL REGULATION**

RON DESANTIS, *GOVERNOR*          MELANIE S. GRIFFIN, *SECRETARY*

| 1. | ☒ | Once the complaint is assigned to an investigator, the investigator will contact you within 7 days from the date of receipt. |
|---|---|---|
| 2. | ☒ | The investigator will thoroughly review all documentation and materials submitted with the complaint. |
| 3. | ☒ | The investigator will contact you within 30 days from that date. During this contact, please note that in an abundance of caution, the investigator will provide only generalized updates as the investigation is open and ongoing. |
| 4. | ☒ | The investigator will then contact the association for a response to the allegations via the issuance of an allegation letter. |
| 5. | ☒ | The investigator will contact you again within 60 days from the date of receipt of the case and every 30 days thereafter until the case is sent to the Office of General Counsel. Again, please note that during this contact, in an abundance of caution, the investigator will provide only generalized updates as the investigation remains open and ongoing. |
| 6. | ☒ | The investigator will continue to gather documentation and review evidence while the case remains in the investigation phase. |
| 7. | ☒ | The investigator will contact you again within 90 days from the date of receipt of the case and every 30 days thereafter until the case is sent to the Office of General Counsel. Again, please note that during this contact, in an abundance of caution, the investigator will provide only generalized updates as the investigation remains open and ongoing. |
| 8. | ☒ | The investigator will prepare the investigative report for routing to the Office of General Counsel for resolution. |
| 9. | ☐ | The investigator will refer the case to the Office of General Counsel for resolution. |

The Division has also included a brief Did You Know checklist to aid in your understanding of the Division's investigatory process.



**DID YOU KNOW?**

✓ That upon submission of a complaint against an association to the Division, the matter then becomes the Division's case?
  ☐ At that juncture, the Division has the discretion to thoroughly evaluate a complaint to determine if an investigation will occur.
  ☐ The only parties to the case, if the Division decides to open an investigation, are the **Division** and the **association**.



**Department of**
**BUSINESS AND PROFESSIONAL REGULATION**

RON DESANTIS, GOVERNOR          MELANIE S. GRIFFIN, *SECRETARY*

However, the Division may require testimony from a Complainant if the case proceeds to an administrative hearing.

✓  That the Division has four areas of jurisdiction with regard to condominium associations governed by unit owner for which the Legislature has designated it can investigate?

   ☐  Those areas are financial issues, elections, access to and maintenance of official records.

We hope that you find this information instructive and useful in your understanding of what to expect from the Division during the course of the Division's investigation regarding the alleged violations. Thank you.

Sincerely,
Bureau of Compliance

*Kayla Baker*

Kayla Baker
Investigation Specialist II
1400 West Commercial Blvd., Suite 185
Ft. Lauderdale, FL 33309
(954) 202-3982
Kayla.Baker@myfloridalicense.com

**LICENSE EFFICIENTLY. REGULATE FAIRLY.**
**MYFLORIDALICENSE.COM**



**United States Department of Justice**
**Civil Rights Division**
civilrights.justice.gov

# Thank you for submitting a report to the Civil Rights Division.

## Report successfully submitted

Your record number is:  **449472-NSR**

**Save report**

---

# What to expect

### ① We review your report

Our specialists in the Civil Rights Division carefully read every report to identify civil rights violations, spot trends, and determine if we have authority to help with your report.

### ② Our specialists determine the next step

We may decide to:
**Open an investigation** or take some other action within the legal authority of the Justice Department.
**Collect more information** before we can look into your report.
**Recommend another government agency** that can properly look into your report. If so, we'll let you know.

In some cases, we may determine that we don't have legal authority to handle your report and will recommend that you seek help from a private lawyer or local legal aid organization.

### ③ When possible, we will follow up with you

We do our best to let you know about the outcome of our review. However, we may not always be able to provide you with updates because:
We're actively working on an investigation or case related to your report.
We're receiving and actively reviewing many requests at the same time.

If we are able to respond, we will contact you using the contact information you provided in this report. Depending on the type of report, response times can vary. If you need to reach us about your report, please refer to your report number when contacting us. This is how we keep track of your submission.

Something else happened

## Location

### Where did this happen?

### Organization name
11th Circuit Court

### Address
NW 11th Street
-
Miami, Florida

## Personal characteristics

### Do you believe any of these personal characteristics influenced why you were treated this way?

Other reason

## Date

### When did this happen?

3/18/2024

## Personal description

### In your own words, describe what happened

In case 2023-026257-CA-01 of Miami-Dade Circuit Court. Judge Vivianne Del Rio, collaborated while knowing she lacked Subject Matter Jurisdiction. Since the case Mr. Katz filed lacked the four necessary elements for an injunction. At not having Clear Right. Therefore on a presumed Injury→ Not an Actual Art.III Injury and without a Cognizable Cause of Action. So, Mr. Katz depended on his judicial conspiracy obstructing due process, otherwise without a chance of winning on the merits. Where only by denying the Association an opportunity to speak and prove their claims false, he could get Judge Del Rio to afford him the injunctions. Which she did on the first hearing. Divesting the elected Board Officers of their Clear Right to run the Association's common areas parking. Prohibiting the Association from towing illegally parked cars and from assessing and collecting for extra parking in Visitor Parking. As voted-for by the Membership, to avoid Special Assessments. Thereby crippling the Association's finances. Causing chaos against Association Directors' authority. Having the volunteer directors physically attacked and constantly harassed and intimidated by Mr. Katz's clients. While protected from having to prove their claims in court.
Judge Del Rio further assisted Mr. Katz in placing his clients as the new board directors. With Mr. Katz's Ex-Parte Court Order. Divesting the Association Clear Right to run the elections. By canceling the properly ran elections two days before the date. While refusing to afford the Association a hearing. Without affording notice or due process. Deprived of Property and Contractual Rights based on a vague claim for: "failing to comply with FS718". Affording another non-judicial - Election MONITOR - absolute powers over the Association. To run our annual Board Elections according to Mr. Katz' written Court orderl. Instead of having the DBPR Ombudsman. Because he would have complied with the State's Written Laws. Judge Del Rio collaborated again with Mr. Katz at signing a Court Order that overlty Contradicts jurisprudence, the Association bylaws elections procedures and FS718.112(2)(d) Florida Administrative Code 61B-230021 (c) .

justice.gov/doj/webform/your-message-department-justice

# Your message to the Department of Justice

**Share** ＞

Messages to the Department of Justice, including the Attorney General, may be submitted via this form.

Your question or comments will be forwarded to the responsible Department of Justice component for appropriate handling.

Please note:

- Before sending us your information, please read our Website Privacy Policy and the Privacy Statement below for details about how we handle personal information.

- This form should not be used for service of official, case-related or legal documents because it is not monitored for such submissions or for other time-sensitive communications.

- If you know the specific organization or official you wish to contact, please indicate such in your message or check the Component Contact Information Page to contact them directly.

In some instances the volume of communication on a particular issue is such that we cannot respond to each message individually. We would like you to know, however, that all incoming messages are forwarded to the appropriate organization within the Department of Justice and you can be assured that your voices and views are being heard.



1 — Start

2 — Preview

3 — Complete

Thank you, your submission has been received.

Back to form

Gmail    Janvier Villars <janvier269@gmail.com

## State Action Discriminating Against the Working Class Property Owners

messages

**anvier Villars <janvier269@gmail.com>**    Tue, May 28, 2024 at 1:15 PI
o: ethics@miamidade.gov, jose.arrojo@miamidade.gov, Katherinefernandezrundle@miamisao.com, John.durrett@sao3.org
cc: onaivys.diaz@miamidade.gov, loressa.felix@miamidade.gov, etta.akoni@miamidade.gov, nolen.bunker@miamidade.gov,
usannah.nesmith@miamidade.gov, radia.turay@miamidade.gov, rodney.vega@miamidade.gov, sandrene.dukes@miamidade.gov,
ilda.olmo@miamidade.gov, kaross@miamidade.gov, Stephanie.Vegasaraf@miamidade.gov, fec@myfloridalegal.com,
oltza@flcourts.org, Renee.Alsobrook@myfloridalicense.com, Taylork@flcourts.org, MarkGlass@fdle.state.fl.us, digiacomod@flcourts.org,
awson@flcourts.org, Kathleen.VonHoene@myfloridalegal.com, haynesj@flcourts.org, crawfordc@flcourts.org, bhaas@sao10.com,
brodsky@sao12.org, Larry.basford@sa14.fl.gov, lopez_s@sao13th.com, Dave@sa15.org, Dward@keyssao.org, Parcher@sa18.org,
pryor@sao17.state.fl.us, Gmadden@osa1.org, Tbakkedahl@sao19.org, AFox@sao20.org, Campbellj@leoncountyfl.gov,
lwnelson@coj.net, Brucebartlett@flsa6.gov, Wgladson@sao5.org, Larizzar@sao7.org, Kramerb@sao8.org, Mhworrell@sao9.org,
ntonofv@flcourts.org

Dear Sirs, the following article will be sent to all news and social media. We are sending it to you before publishing it so you can influence the conclusion.

### Judicial Corruption and Abuse: A State Facilitated Crisis for Florida Property Owners and Investors

In a shocking display of judicial corruption, a large group of property owners in Florida has exposed a civil conspiracy that has led to widespread deception through legal manipulation and unequal treatment in the courts. This alarming pattern of abuse raises serious concerns about the integrity of our legal system and the protection of individual rights. Miami-Dade Circuit Court case 2023-026257-CA-01 transcripts reveal a deeply entrenched practice of fraud on the court, highlighting a systemic issue that demands immediate attention.

COURT RECORDED JUDICIAL REPETITIVE PRACTICE:

**Fraud on the Court: As Common Practice**

Property owners' privacy, liberties, substantive rights, and property rights are systematically eroded through a judicially swindled scheme involving illicit collusion between attorneys and circuit court judges. The steps of this judicial swindle are clear and methodical:

**Summons under False Pretenses**: Defendants are summoned to court under false claims by Plaintiffs' attorneys, who know they lack legal standing, injury as a matter of fact, and legal right to sue. These Plaintiffs' attorneys operate with the implicit collaboration of the judges.

**Obstruction of Justice:** Impeding defendants from presenting their defense, often by prohibiting speaking or presenting their standing during court hearings.(see attached transcript)

**Immediate oppressive Orders:** Without affording due process judges swiftly sign orders that strip defendants of their constitutional and statutory rights, transferring their property rights and interests to the Plaintiff's attorney representative (receiver or election monitor).

**Denial of Hearings:** Judges deny hearings to all directly adverse parties. Preventing any challenge to their faulty allegations and denying their right to speak in court. To maintain the Defendant under the court's oppressive orders.

**Dismissal with Prejudice:** Judges dismiss with prejudice any actions contesting the original allegations, to avoid addressing the lack of Subject Matter Jurisdiction. Even when presented as a compulsory counterclaim filed per Fla.R.Civ.Procedures 1.180. By the indispensable party who can prove their lawsuit to be frivolous.

parties properly plead for a hearing per the Florida Rules of Civil Procedure.

**Abuse of Discretion:** Because judges are <u>free to abuse their discretion with immunity</u> they can make rulings contradicting state and federal laws. Through this broad Discretion, victims of white-collar crimes are denied logical and legally conclusive remedies, such as Declaratory Reliefs. Judicially coercing the Defendant to endure unnecessary financial and emotional devastation. Then, when these victims request the recusal of judges for engaging in these proven predatory practices, their recusal is dismissed under the judge's discretion. Although mandated by law knowing the Courts of Appeals have their back. (see attached)

**Appeal Judges' Complicity:** Appeals courts condone these known judicial abuses to protect their fellow judges. Thereby perpetuating a State Action, cycle of judicial corruption. To exhaust the victim's civil remedies. Dismissing the appeal without the legally required foundation, to protect their decision. Depriving victims of any civil relief. (see attached)

### Permitting Judicial Overreach. To control private Associations by Judicially manipulating their Board Elections

A particularly egregious instance of judicial overreach occurred on 3/18/2024 when Judge Vivianne Del Rio intervened in the Buckley Towers Association's private board elections. Just two days before the election was due. Canceling it Sua Sponte; without any recorded pleading, motion, or petition from the opposing party. No proper notice or hearing was afforded to the Association, and without evidence of wrongdoing, fraud, or imminent danger. Solely based on ONE sentence *"failure to comply with FS718",* without specificity or details on what or which part of the law. In addition to denying a hearing on the Order even when pleading with Emergency.

With this Sua Sponte order, Judge Del Rio transferred the Association's right to conduct the Board election to the Plaintiffs' attorney, Steven Katz. Thereby granting him absolute authority to alter the election procedures at his discretion. Through a court order that he wrote for the Judge to sign immediately. Well aware these New Election procedures violate the 14th Amendment Contract Clause for directly contradicting the Association bylaws and statutory laws. Lacking any legal foundation, yet carried out 'under the color of law' without first affording the Association any due process. A Court Order imposing new burdens on a private contract, depriving of vested rights and restricting its private members' right to vote for their local government.

### JUDICIAL Discriminatory Orders and Coercion

After the Association filed in court proof the opposing party's untimely election procedures *"Failed to comply with FS 718,"* the judge discriminatorily approved their faulty elections. Despite undeniable proof their elections procedures also deprived opposing candidates of their Right to Petition for Votes. Forcing the Association to follow the court order to its detriment, while Mr. Katz's clients, the Plaintiffs collected votes well before the rest of the Association Membership received their ballots. When attempts to address the fatal errors in their ballots, such as including non-existent owners as candidates and removing properly nominated candidates, the Association was threatened with receivership. Thereby judicially coercing acceptance to their illegally procured election.

This civil conspiracy openly violated FS 718 notice timing requirements and FAC 61B-23.0021 mandatory rescheduling of elections. The fraudulent conduct led to an illegally held board election, allowing Mr. Katz clients to take control of the Association with just 150 votes (¼ of the membership), while restricting the rest of the candidates to a mere 10 votes. Thereby they illegally took 400+ owners' property interests and constitutional right to vote.

### Undermining Constitutional Rights

These ultra vires judicial actions undermine constitutional rights, property security, and violates privacy. Raising serious questions about the integrity of the judicial system. The systemic erosion of fundamental laws demands urgent intervention and reform to restore justice and protect all property owners in Florida. Prominent figures, including House Speaker Paul Renner, Senator Ileana Garcia, and Senator Rene Garcia, have been contacted.

any consequences, and their attorneys emptying our bank accounts with no attorney wanting to sue them, ...this is why we can never have any personal savings to improve our lives. The culprit is found in the Judicial abuse of discretion and immunity. Why would that judicial enterprise ever stop defrauding communities that lack proper representation in the state, when they can always get away with violating state and federal laws? HOW can Florida promise property and liberty protection when it covertly provides king-like powers to those who should be held to higher standards?

I am formally conferring with the state law enforcement agencies to provide one last opportunity to afford Buckley Towers Members with Post-Deprivation relief.

Janvier Villars
Property Owner in Buckley Towers, ex-Board Secretary
786 609 1269

---

**4 attachments**

📄 **Order-Deny-Prohibition_5-10-2024.pdf**
56K

📄 **March18ORDERcancellingAssocRanElections.PDF**
243K

📄 **April24ElectionORDER.PDF**
179K

📄 **Hearing Transcript Depriving of Due Process.pdf**
18571K

---

**ostmaster@sa11.onmicrosoft.com** <postmaster@sa11.onmicrosoft.com>                Tue, May 28, 2024 at 1:16 PI
o: janvier269@gmail.com

## Delivery has failed to these recipients or groups:

Katherinefernandezrundle@miamisao.com

Your message is too large to send. To send it, make the message smaller, for example, by removing attachments.

The maximum message size that's allowed is 25 MB. This message is 26 MB.

## Diagnostic information for administrators:

Generating server: MW4PR09MB9027.namprd09.prod.outlook.com

Katherinefernandezrundle@miamisao.com
Remote server returned '550 5.2.3 RESOLVER.RST.RecipSizeLimit; message too large for this recipient'

Original message headers:

```
Received: from DM6PR09CA0006.namprd09.prod.outlook.com (2603:10b6:5:160::19)
 by MW4PR09MB9027.namprd09.prod.outlook.com (2603:10b6:303:1fc::5) with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.7633.17; Tue, 28 May
 2024 18:16:18 +0000
Received: from BL02EPF0001B418.namprd09.prod.outlook.com
 (2603:10b6:5:160:cafe::4) by DM6PR09CA0006.outlook.office365.com
 (2603:10b6:5:160::19) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.7611.30 via Frontend
 Transport; Tue, 28 May 2024 18:16:17 +0000
Authentication-Results: spf=pass (sender IP is 209.85.167.52)
```

----- The following addresses had permanent fatal errors -----
<dave@sa15.org>
    (reason: 550 5.7.0 Local Policy Violation - Message size oversized)

    ----- Transcript of session follows -----
... while talking to [127.0.0.1]:
>>> DATA
<<< 550 5.7.0 Local Policy Violation - Message size oversized
554 5.0.0 Service unavailable

Final-Recipient: RFC822; dave@sa15.org
X-Actual-Recipient: rfc822; dave@sa15.org
Action: failed
Status: 5.7.0
Remote-MTA: DNS; [127.0.0.1]
Diagnostic-Code: SMTP; 550 5.7.0 Local Policy Violation - Message size oversized
Last-Attempt-Date: Tue, 28 May 2024 14:19:48 -0400

noname
5K

---

**anvier Villars** <janvier269@gmail.com>                                    Mon, Jul 22, 2024 at 1:25 Pl
o: ethics@miamidade.gov

Dear Sirs,
Since I sent you the attached email, May 28th, 2024, I have not received a single response. Not by email, letter or phone call.
The violation is an illegal taking of the private Association's administration and governance by civil conspiracy.
Which has damaged the association morally, physically, and financially.

The intent of those who took the association illegally was just announced. They will be increasing the dues to more than most can
afford. When the prior board had alternative ways to protect this from happening to more than 200+ elderly who live alone in this
Association.

However, because they hold the Association administration, they can proceed to frighten owners of insolvency, and cause insecurity
over their only home.  President Trullenque, collaborating with a real estate investor/developer, provided the email address of all
owners. For them to persuade owners to "sell now before the new special assessment takes place".  With this madeup urgency, they
rush the owners to sell under market value.  This causes the rest of the units to lose value. Just like a domino effect, causing others to
sell before the price keeps dropping.
I am sure you are not new to this type of market manipulation of prices, intended to gendercide neighborhoods. So all I have left to ask
is whether this commission can help us.

I am attaching the Motion for Reconsideration to the 3rd DCA. For denying us Writ of Certiorari on the lower courts proceeding without
subject matter jurisdiction and due process violation when placing the association in four injunctions without ever affording proper
notices or hearings.

If this type of judicial swindle is condoned by the state Ethics Commission, then I shall not expect a response.  With that, I will not
bother you anymore and I will proceed with alternative uncivil solutions. Considering the courts and justice have been denied to us.

Janvier Villars
working-class property owner in Florida.

---------- Forwarded message ---------
From: **Janvier Villars** <janvier269@gmail.com>
Date: Tue, May 28, 2024 at 1:15 PM
Subject: State Action Discriminating Against the Working Class Property Owners
To: <ethics@miamidade.gov>, <jose.arrojo@miamidade.gov>, <Katherinefernandezrundle@miamisao.com>,
<John.durrett@sao3.org>

[Quoted text hidden]



**Order-Deny-Prohibition_5-10-2024.pdf**
56K

**March18ORDERcancellingAssocRanElections.PDF**
243K

**April24ElectionORDER.PDF**
179K

**Hearing Transcript Depriving of Due Process.pdf**
18571K

**Motion for Reconsideration to the 3rd DCA.PDF**
497K

---

thics (COE) <ethics@miamidade.gov>                                    Tue, Jul 23, 2024 at 10:22 AI
o: Janvier Villars <janvier269@gmail.com>

Good morning,


The Miami-Dade County Commission on Ethics and Public Trust has investigation and enforcement authority over local government officials, employees, and board members in Miami-Dade County and its 34 cities.  This county and municipal jurisdiction does not extend to judges or judicial staff nor does it extend to homeowners' associations.  Ethics enforcement jurisdiction for judges rest with the Judicial Qualifications Commission.  I would encourage you to seek legal guidance through the Florida Bar lawyer referral services for matters mentioned below regarding your homeowners' association.


Good luck to you.

Regards,


**Loressa M. Felix**

General Counsel

Miami-Dade Commission on Ethics and Public Trust

Overtown Transit Village North

701 Northwest 1st Court, 8th Floor

Miami, Florida 33136

Loressa.Felix@miamidade.gov

Tel: (305) 579-2594

Fax: (305) 579-0273



 **Gmail**

### rom the Florida Attorney General's Office

message

**ttorney.general@myfloridalegal.com** <attorney.general@myfloridalegal.com>          Tue, May 14, 2024 at 11:01 AI
o: JANVIER269@gmail.com

Dear Janvier Villars,

This is to acknowledge your recent correspondence to the Florida Attorney General's Office regarding your ongoing concerns involving Buckley Towers Condominium.

Thank you for taking the time to provide this information. For your review, we have included a copies of our office's prior emails, and we can confirm the referrals and resources provided in those replies remain accurate. Please re-review the information provided in our prior responses and contact and/or follow up with the agencies we mentioned in those replies (see copies below).

For information about the role and function of the Attorney General and this office, as well as frequently asked questions, visit the Attorney General websites below:

https://www.myfloridalegal.com/overview/role-and-function-of-the-attorney-general
https://www.myfloridalegal.com/overview/frequently-asked-questions

Additionally, please understand civil court matters are under the jurisdiction of the judicial system. As part of the executive branch of government, the Attorney General has no authority to supersede or circumvent the actions of the judicial branch, and this office is not authorized to provide legal guidance to private individuals. If you have concerns about the outcome of a court case, you should continue consulting with your attorney, if any, or contact a private attorney. If needed, The Florida Bar offers a Lawyer Referral Service at (800) 342-8011 or https://www.floridabar.org/public/lrs.

We appreciate the time and effort you took in bringing your concerns to our attention. Please understand that the inability of the Attorney General to intervene in these matters stems from the statutory constraints described in the FAQs web pages referenced above.

Sincerely,

Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3990
Toll-free within Florida: (866) 966-7226
Website:  www.myfloridalegal.com

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form.
 Again, thank you for contacting the Office of the Florida Attorney General.
_____
INTERNET MESSAGE RECEIVED BY THE ATTORNEY GENERAL'S OFFICE ON 05/03/2024

Janvier Villars
1301 NE MIAMI GARDENS DRV., 322, , 322W
North Miami Beach, FL 33179
Phone: (786) 609-1269
Email: janvier269@gmail.com

Subject: Judicial Abuse in Conspiracy to illegally take property

RE: Buckley Towers Condominium
1301 NE MIAMI GARDENS DRV., 322
Miami, FL 33179
Phone: (786) 609-1269
Transaction Date: 4/24/2024
Amount Paid: 60,000

We are pleading for your intervention against a ongoing organized crime in
in State Court. That no attorney wants to confront out of fear of the
"brotherhood" consequences.
Because it exposes illicit practices by attorneys in conspiracy with those
mistrusted in affording us with Equal Treatment Under the Law.
Please do not discarded this issue as a "Judicial" issue, because the actions
were by a judge who lacked Judicial authority. Yet passing orders contradictory
to Constitutional 1st Amendment, Contractual Rights and Privacy.
Where even in Equity, the opposing party's claim fails. At lacking Legal
Standing or Art.III injury. Yet the judge afforded them remedies by obstructing
us of discovery, litigation, or a right to speak.

The court transcripts prove the Judge never had Subject Matter Jurisdiction
from the beginning.
This Judge obstructed our due process to avoid addressing this. By obstrcting
us from proving that in the Original Claim she lacked Subject Matter
Jurisdiction.
By restricting the hearing to the opposing attorney's claims, she ruled against
us on every hearing. Depriving the Association of contractual vested rights in
every one of the three injunctions.
In the March18Order, giving that attorney the authority to run the Association
elections to his will.  In contradiction to contractual procedures and
FS718.112 (FAC 61B-230021) requirements.

The judge afforded this third injunction by canceling our properly held
elections. Without giving us any prior notice or a hearing. (attached
March18Orders)
Compelling us to comply with the opposing attorney's Court orders. Prohibit us
from collecting ballots as permitted in our bylaws and to 61B.

Mind you, the lawsuit was over the operations of the Association common areas
parking spaces. That per FS711 and our bylaws only affords the Association
officers with that right to operate.
A fact obstructed from being litigated because it left the Judge without
Subject Matter Jusisdiction.  At lacking A law supporting their claim that
Owners have a CLEAR Right to Run the Association Operations.   Therefore
lacking the required Actual Injury and Controversy on the Association
reassignment of parking = No Legal Standing =  lacking SMJ.

We are running out of trust and belief in this system. PLEASE HELP US AVOID THE
2nd Amendment Relief.
Where their improperly held election results prove their intent to deprive 400+
property owners of the 1st Amendment and Contractual Right to Vote.
At intentionally refusing to comply with FS718 required 60 days and 40 days
notices -- Only their 150 votes, were counted by the Court appointed Monitor
controlled by the opposing attorney.
Altering the election time from 7 PM to 6 PM - to block owners coming from work
to vote against them. Also, discarding owners' Proxies which the bylaws permit
for elections.
Thereby stealing the property interests of 3/4 of the membership of this
Association.

The sitting Association board was doing its best to comply with all the
required laws. While repairing the neglected property without imposing any
special assessments. Passing the 40 and 50 Recertification and reconstructing
within our budget. Improving the morale, the security, and the community. ALL
within one year.  So, the fraudulent group knew majority of owners were voting
in our favor, because they could not run a Recall for the past six months.
Their only way to win was by defrauding us, with the help of the Judge's last
minute Court Order.

Forcing on us to accept their 150 votes. Which they had Previously Collected
and had in hand. When most owners did not even receive their ballots before
elections. Because they U.S. Mailed it 12 days before election in violation to
the "at least 14 days before" requirement. Then the majority received
incomplete ballot packages. Forcing a new Burden of having to attend in person
before 6 pm, to able to vote.  Because the Electronic Vote, previously approved
by this board, was denied in the March18Order.  But then strategically approved

(they used to cancel our elections on March 18 order) demands for rescheduling of the Elections or is considered void if it already occurred.

This is a civil theft intended to (deceitfully and eventually) coerce a huge financial burden on owners who are mostly retirees living on social security and single parents already working two jobs.
Ultimately using FS718 to inflict serious financial hardship and foreclose on those who cannot pay up. It's a covert crime that permits more crimes to be done Legally.

It is an organized crime that financially and socially affects all of Florida, not just our Association. It is Taking without Due Process permitted as common practice against defenseless owners.

Please help us. If you cannot then if you can provide us with whom can help us would be greatly appreciated. We need the state to protect us against the abuse of their agents' illegal practices.

Sincerely,
Janvier Villars
Board Secretary
Per FAC 61B-230021 the April 24 election errors invalidate the results. That being the law, I am still the Board Secretary asking for your help protecting against this illegal taking.

---

**YOUR PREVIOUS CORRESPONDENCE AND FLORIDA ATTORNEY GENERAL'S PRIOR REPLIES:**

From: attorney.general@myfloridalegal.com
**To: JANVIER269@GMAIL.COM**

**Subject: From the Florida Attorney General's Office**
Date: 11/03/2022 05:08:57 PM

Dear Janvier Villars,

Thank you for your most recent correspondence to the Florida Attorney General's Office.

We appreciate hearing from you again; however, please understand that under Florida law the Attorney General's Office represents the state and its officials in civil actions which affect the state's interests. The clients of this office are the state departments and agencies from all three branches of state government, including those agencies' individual officials and employees.

As noted in previous replies from this office, attached below, this office is not authorized by law to provide legal advice or opinions to private individuals or organizations. The attached replies also provide the contact information for the correct authorities to address your concerns.

We again urge you to seek private legal counsel for any legal guidance you may need. The Florida Bar offers a Lawyer Referral Service at (800) 342-8011 or www.floridabar.org.

Sincerely,

Office of Citizen Services
Florida Attorney General's Office
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3990
Toll-free in Florida: (866) 966-7226
Website: http://www.myfloridalegal.com

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form.

---

*(See attached file: Janvier Villars postal 2022.pdf)*

---

From: attorney.general@myfloridalegal.com
To: JANVIER269@GMAIL.COM

This is to acknowledge the Florida Attorney General's receipt of your correspondence. We appreciate hearing from you and apologize for the delay in this response.

In regard to concerns involving a judge, the Florida Attorney General's Office is a part of the executive branch of government and cannot supersede or circumvent the actions of the judicial branch. If you have concerns about a decision by a judge or about the outcome of a court case, please consider consulting a private attorney. This office is not authorized to provide legal opinions or advice to private individuals.

This office has no jurisdiction to accept or investigate a complaint of judicial misconduct against a Florida state judge or magistrate. In order to have your complaint considered by the only institution with jurisdiction over the judicial officer, you must follow the procedures laid out at the weblinks provided below.

**"Filing a Judicial Conduct Complaint Against a Florida Judge"**
*The Florida Judicial Qualifications Commission (JQC) was established by the Florida Constitution in 1966 and is the sole body authorized to investigate allegations of judicial misconduct in Florida. In 1990 the Commission was divided into an Investigative Panel and a Hearing Panel.*

*The Investigative Panel functions much like a grand jury and investigates allegations of judicial misconduct. If probable cause is found and formal charges are filed, then the Hearing Panel serves as a special master making findings of fact and recommendations to the Florida Supreme Court as to the appropriate discipline.*

*The Commission is comprised of six judges, five laypersons selected by the Governor, and four Florida Bar members. The Chair of the Commission selects nine members to serve on the Investigative Panel and six members to serve on the Hearing Panel. For more information on the complaint process, please visit: https://floridajqc.com/complaint-process/.*

The JQC's contact information is:

Judicial Qualifications Commission
1110 Thomasville Road
Tallahassee, Florida 32303
Phone: (850) 488-1581
Email: contact@floridajqc.com
Website: http://www.floridajqc.com/
Complaint Form: https://floridajqc.com/wp-content/uploads/2018/05/COMPLAINT-AGAINST-A-JUDGE.pdf

Again, if you need legal guidance, please consult an attorney. An attorney can provide you with the legal help this office cannot provide to private individuals. If you need help finding a lawyer, The Florida Bar offers a Lawyer Referral Service at (800) 342-8011 or https://www.floridabar.org/public/lrs/.

Please understand the Attorney General's duties are prescribed by law. We appreciate your time and effort in contacting this office.

Sincerely,

Becky Kring
Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3990
Toll-free within Florida: (866) 966-7226
Website: www.myfloridalegal.com

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form. Again, thank you for contacting the Office of the Florida Attorney General.

---

INTERNET MESSAGE RECEIVED BY THE ATTORNEY GENERAL'S OFFICE ON 12/23/2021

JANVIER VILLARS
1301 NE Miami Gardens Dr, Apt 322W
Miami, FL 33179
Email: janvier269@gmail.com

RE: State Court Judge Carlos Guzman
Miami, FL

Our private association was arbitrarily and without the court having jurisdiction or legal merits, placed under Receivership. Judge Carlos Guzman, before addressing the merits, placed the receiver that the plaintiff requested, permanently on our private properties. Wih absolute arbitrary power over our homesteads. Without proof or even a claim of any fraud, risk of life or loss of property. Simply because he decided he needed a receiver report. As excuse to place the receiver permanently.

Now the receiver has neglected into worst conditions our property to justify forcing a $3 million special assessment, to be paid within one year. So to get the owner approve their authority by signing an extended time to pay.  When just prior to the confiscation we were able to improve physically and financially the Association.

In the receiver own report, he confirms the association is now in bad shape because of previous directors, not do to my leadership as current president nor the treasurer.  So NO indictment was filed, but the judge refuses to return the power back to us the association elected officers.

This an illegal taking by the judge capricious and arbitrary manipulation of court proceedings

The case was proven frivolous, but the judge refused to address the merits. The Association was named as Plaintiff and NO CLAIMS were made against it.  But the receiver was placed nonetheless without giving the 550 owners a day in court before their property was confiscated.

We need your assistance in this matter to place an injunction before the elderly who cannot pay, have a heart attack for paying the imposed double payments, instead of buying their medicines.  This is an unnecessary financial hardship at the worst time.

*********************************************************************************************************************
**************************

From: attorney.general@myfloridalegal.com
**To: JANVIER269@GMAIL.COM**

**Subject: From the Florida Attorney General's Office**
Date: 06/20/2019 01:03:30 PM

Hello Mr. Villars,

This is to acknowledge the additional documentation the Florida Attorney General's Office received from you, and also on your behalf from Florida Governor Ron DeSantis's Office of Citizen Services, regarding Buckley Towers Condominium Association.

I understand you wrote to the Florida Attorney General's Office concerning your condominium association in 2016 and 2017, and our office responded both times to you via email (see copies below). We appreciate hearing from you again, however, our office is not at liberty to provide legal opinions or statutory interpretations to private individuals (see http://myfloridalegal.com/pages.nsf/Main/F06F66DA272F37C885256CCB0051916F).

I also note we forwarded your prior correspondence to the Florida Department of Business and Professional Regulation (DBPR), the state agency that administers provisions of the Condominium Act, pursuant to chapter 718, Florida Statutes (see www.leg.state.fl.us/Statutes). If needed, please follow up directly with the DBPR by calling (850) 488-1122 or visit online, http://www.myfloridalicense.com/DBPR/condominiums-and-cooperatives/.

In regard to the judge's decisions, the Florida Attorney General's Office is a part of the executive branch of government, and as such cannot supersede or circumvent the actions of the judicial branch. If you have concerns about a decision by a judge or about the outcome of a court case, please consider consulting a private attorney. Our office is not at liberty to give legal opinions or advice to private individuals.

If you have a complaint about a judge's conduct, please contact the Judicial Qualifications Commission (JQC). The JQC is the independent agency created by the Florida Constitution to review certain kinds of complaints involving judicial conduct. The contact information for the JQC is:

Judicial Qualifications Commission
1110 Thomasville Road
Tallahassee, Florida 32303-6224
Telephone: 850-488-1581
Websites: http://www.floridasupremecourt.org/pub_info/jqc.shtml#Information
http://www.floridajqc.com/

attorneys licensed to practice in this state, and has a dedicated Hotline to assist individual consumers. Contact information for The Florida Bar is:

The Florida Bar
651 East Jefferson Street
Tallahassee, Florida  32399-2300
Telephone: (850) 561-5600
ACAP Hotline: 1-866-352-0707
Website: www.floridabar.org
Complaint: https://webprod.floridabar.org/wp-content/uploads/2017/04/inquiry-complaint-form.pdf

For more information on attorney regulation and the grievance process, please visit the following Florida Bar web pages:

https://www.floridabar.org/public/acap/
https://www.floridabar.org/public/acap/assistance/

In regard to criminal investigations, in Florida, the local police or sheriff's office and elected state attorney in each judicial circuit investigate and prosecute alleged violations of the criminal laws. You should continue to address your concerns and provide any information and/or evidence you may have directly to the Miami-Dade Police Department, which may be contacted at (305) 476-5423 or http://www.miamidade.gov/police/.

Again, if you need legal guidance, please consult an attorney. An attorney can provide you with the legal help that our office cannot give to private individuals. If you need help finding a lawyer, The Florida Bar offers a Lawyer Referral Service toll-free at (800) 342-8011 or online at https://www.floridabar.org/public/lrs/.

Please understand the Attorney General's duties are prescribed by law. Thank you for contacting Attorney General Moody's Office.

Sincerely,

Beverly Bailey
Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3990
Toll-free within Florida: (866) 966-7226
Website: www.myfloridalegal.com

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form. Again, thank you for contacting the Office of the Florida Attorney General.

---

From: attorney.general@myfloridalegal.com
To: JANVIER269@GMAIL.COM
Subject: From Florida Attorney General Pam Bondi
Date: 08/04/2017 06:02:51 PM


Florida Attorney General Pam Bondi received your recent email regarding your concerns with Buckley Towers Condominium.

The Attorney General's Office is a civil enforcement agency with statutory authority to address deceptive and unfair business practices. This office focuses enforcement efforts on business practices which harm numerous consumers in more than one judicial circuit.  The Consumer Protection Division reviews complaints to identify patterns of questionable business activities.  If we discover a pattern, what originated as a dispute between buyer and seller may become a matter of broader public interest and thus warrant the Attorney General's intervention under the state's consumer protection laws.

Because the Florida Department of Business and Professional Regulation (DBPR) administers provisions of the Condominium Act, pursuant to chapter 718, Florida Statutes (see www.leg.state.fl.us/Statutes), we are forwarding your correspondence to the DBPR to ensure they are aware of your ongoing concerns. Please contact the agency directly to follow up:

Florida Department of Business and Professional Regulation
Division of Florida Condominiums, Timeshares, and Mobile Homes
2601 Blair Stone Road
Tallahassee, Florida 32399
Telephone: (850) 488-1122
Website: http://www.myfloridalicense.com/dbpr/lsc/condominiums.html
FAQs: http://www.myfloridalicense.com/dbpr/lSCMHCondominiumFAQs.html

Miami-Dade Police Department
Phone: (305) 476-5423
Website: http://www.miamidade.gov/police/

Finally, because our office is not at liberty to provide individual legal advice or opinions, it remains in your best interest to consider consulting a private attorney if you need legal guidance in this matter. The Florida Bar offers a Lawyer Referral Service toll-free at (800) 342-8011 or online at https://www.floridabar.org/public/lrs/. You may also find the following Florida Bar publication helpful:

**A Civil Case Or A Criminal Case?**
https://www.floridabar.org/public/consumer/tip001/

Thank you for contacting Attorney General Bondi's office.

Sincerely,

Erin Germanton
Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:  (850) 414-3990
Toll-free within Florida: (866) 966-7226
Website:  www.myfloridalegal.com

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

To contact this office please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form.
 Again, thank you for contacting the Office of the Florida Attorney General.

---

From: attorney.general@myfloridalegal.com
**To: JANVIER269@GMAIL.COM**
**Subject: From Florida Attorney General Pam Bondi**
Date: 07/15/2016 05:30:57 PM

Florida Attorney General Pam Bondi received your email regarding your concerns with Peggy Stroker and Buckley Towers Condominium. Attorney General Bondi asked that I respond.

We appreciate that you consider the Attorney General's Office as a source of assistance, however, this office is not at liberty to give legal opinions or advice to private citizens. If you need legal guidance, please consult a private attorney. If you need help finding a lawyer, please contact The Florida Bar Lawyer Referral Service toll-free at (800) 342-8060 or www.floridabar.org. If you cannot afford a private attorney, please contact your local legal aid office to find out about low cost or free legal aid. You may contact Legal Services of Greater Miami, Inc. by phone at (305) 576-0800 or online at www.lsgmi.org.

Another resource for Florida residents aged 60 or older is the Florida Senior Legal Helpline, a free statewide telephone advice and referral service toll-free within Florida at (888) 895-7873. See http://elderaffairs.state.fl.us/doea/legal_services.php for more information.

Thank you for contacting Attorney General Bondi's Office. Please understand that the duties of our office are prescribed by law.

Sincerely,

Emanuel Nicholson
Office of Citizen Services
Florida Attorney General's Office
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone:  (850) 414-3990
Toll-free within Florida: (866) 966-7226
Website:  www.myfloridalegal.com

To contact this office again, please visit the Attorney General's website at www.myfloridalegal.com and complete the on-line contact form.  For news on Attorney General Bondi's efforts to fight fraud, please click the link below and subscribe to the Attorney General's electronic newsletters:

http://myfloridalegal.com/NewsBrie.nsf/Subscriber

PLEASE DO NOT REPLY TO THIS E-MAIL. THIS ADDRESS IS FOR PROCESSING ONLY.

flgov.com/email-the-governor/

# Ron DeSantis
### 46th Governor of Florida

| HOME | GOVERNOR DESANTIS | FIRST LADY DESANTIS | LT. GOV. NÚÑEZ | MEDIA | INFO CENTER |

## Email the Governor

Due to the high volume of emails sent to the Governor, there may be a delay in responding to your email.

**For the latest news and statements from the Governor, please visit flgov.com or follow the Governor on Twitter @GovRonDeSantis.**

Thank you for contacting Governor Ron DeSantis.

Due to the volume of emails sent to the Governor, there may be a delay in responding to your e-mail. You may wish to view the Governor's web site, www.FLGov.com, which provides information on current issues and answers to frequently asked questions.

Thank you again for taking the time to contact Governor DeSantis.

Executive Office of the Governor
Ron DeSantis
www.flgov.com
@GovRonDeSantis

 Gmail                                    Janvier Villars <janvier269@gmail.com>

## Citizens Inspector General Inquiry: 11.24.2022 (Villars)
1 message

noreply@citizensfla.com <noreply@citizensfla.com>                Thu, Nov 24, 2022 at 12:17 PM
To: ask.inspectorgeneral@citizensfla.com
Cc: janvier269@gmail.com

## Office of Inspector General

- Date: 11.24.2022
- First name: Janvier
- Last name: Villars
- Address: 1301 NE Miami Gardens Drive
- City: Miami
- ZIP: 33179
- How to contact you?: Email
- Email: janvier269@gmail.com
- Comment: Objection to Judge Guzman Order Depriving of Liberty as Sanction For Lacking Legal Foundation For Lack of Jurisdiction ab initio. In violation to FS 90.201 Supreme Court Decision. Contradicting FS 38.01, Rule 3.840. As a capricious, abuse of Inherited Broad Discretion. FACTS JUDGE GUZMAN AND HIS RECEIVER CANNOT DISPUTE The court lacks the Association personal jurisdiction, since the suit was fraudulently represented by an owner illegally signing it as the President of the Association. The court lacks Subject Matter Jurisdiction, because NONE of the claims filed against Mr. Villars were proven true. Even after the Judge granted his Receiver absolute access to everyone's private information, to search without restrictions. Also lacking Subject Matter Jurisdiction, because NONE of the elements necessary to afford a Temporary Injunction were ever presented in court. Therefore the Auxiliary Receivership for that Temporary Injunction could not stand alone. Judge Guzman, with half a century in the BAR Association, knew he lacked jurisdiction, causation, contradiction between the parties and legal support to proceed. So he Judicially Induced the receivership against the only named Defendant, Mr. Villars as "Temporary for 30-90 days". Under false pretenses appointing the Receivership over the whole community - not named yet penalized. NONE of the owners of this Association were permitted Due Process. At the Judge placing the Receivership without prior Constructive Service: Proper Notice, Service of Process, an opportunity to be heard against the Receivership Petition. Both the Judge and his Receiver intentionally conceal the frauds committed by those who filed the lawsuit on behalf of the Association. Thereby providing a Judicial Sanctuary to the Ex-Directors: Alex NIkitins, Mariluce de Souza, Flor Garuz, Osvaldo Frutuoso, Magda Pineda, Norma Torres, Walter Restrepo, Yuri Z, Michael Shaul with their attorney Katzman Chandler P.A. For 14 months, Judge Guzman has known of his lack of Jurisdiction, lacking evidence of wrongdoing by Mr. Villars. Yet he has kept the case open, to keep the control over the Association; through his Receiver Mr. Abadin and Mr. Landy. NONE of the LEGAL action taken by this court and the Receiver has been supported by State, Federal or Association laws. Yet, in the name of the "Integrity of the Court", the Judge is penalizing Mr. Villars for not complying with his Gag Order. Prohibiting him from communicating with his community, on this illegal taking. Therefore Sanctioning Mr. Villars for Speaking, Assembling, informing and Petitioning. All within the 1st Amendment, protected by State and Federal Laws, and Mr. Villars' Litigation Privilege. Therefore, the Receivership Order never had legal authority to suppress Protected Speech. Yet the Receiver, Mr. Abadin and Mr. Landy, Florida BAR Licensed attorneys used it to Sanction Mr. Villars into paying $6,500, as well as taking his right to defend his case. Prohibiting discovery, depositions, and hearings until he can afford an attorney = Impeding the Proper Judicial Process for being insolvent. While in collaboration with Judge Guzman, the Receiver never had to prove, with any substantial evidence, that Mr. Villars' actions in fact harmed the Association or the administration. Rather justify by conclusion of speculation. Mr. Villars proved his INABILITY to pay the sanction, pursuant to State Law Form 1.1997. In that "ability to pay" emergency hearing requested by the Judge, NOT by Mr. Villars, as the judge contended. But rather rushed into a Personal hearing, immediately after Mr. Villars filed his appeal. Mr. Villars offered to pay - per his financial ability - $100 per month to the "harmed association". The judge not only refused it, but tried to justify his Judicial decision on the Receiver unwillingness to take that form of payment. And refusal to collect it from the D&O Association Insurance. Which contractually covers Mr. Villars' liability when was sued for being the Association President. Judge Guzman perjured himself in the 11/21/22 Motion for Ability to Pay hearing. At claiming there is no evidence Mr. Villars had paid for the appeal. So the Judge could pursue his interest in arresting Mr. Villars, in his Emergency Sanction hearing. See Attached Docket snapshot. THESE FACTS can be verified within the hearings transcripts. www.powerinunion.com/2021-17383-CA-01 Mr. Villars LEGAL SUPPORT AGAINST THE SANCTIONS

AND ARREST FOR INSOLVENCY FEDERAL LAWS 28 USC § 455(5) (a)Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b)He shall also disqualify himself in the following circumstances: (1)Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; [i.e. Jurisdiction, concealing evidence, affording sanctuary to perpetrators of this fraudulent lawsuit...] (5)He: (i)Is a party to the proceeding [for swindling a Receivership without Jurisdiction], or an officer, director, or trustee of a party; (ii)Is acting as a lawyer in the proceeding; [more than his receiver or his lawyer] (iii)Is known by the judge to have an [Self-preservation] interest that could be substantially affected by the outcome of the proceeding; [At prosecuting and harming a Class of owners as a Judge without him having Jurisdiction] (iv)Is to the judge's knowledge likely to be a material witness in the proceeding. [At judicially inducing the Receivership as Temporary but then appointing it as permanent] 28 USC § 144 Bias or prejudice of judge Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. FLORIDA STATUTES Fla. R. Crim. P. 3.840 for INDIRECT Contempt, "(e)Disqualification of Judge. If the contempt charged involves disrespect to or criticism of a judge, the judge shall disqualify himself or herself from presiding at the hearing. Another judge shall be designated by the chief justice of the supreme court." Florida Statute 38.01    Disqualification when judge party; effect of attempted judicial acts.—Every judge of this state who appears of record as a party to any cause before him or her shall be disqualified to act therein, and shall forthwith enter an order declaring himself or herself to be disqualified in said cause. Any and all attempted judicial acts by any judge so disqualified in a cause, whether done inadvertently or otherwise, shall be utterly null and void and of no effect. CASE LAWS "A judgment is`void' under [Federal] Rule 60(b)(4) if it was rendered without jurisdiction of the subject matter ." Oaks v. Horizon Fin., S.A., 259 F.3d 1315, 1319 (11th Cir. 2001). "under [Florida] Rule 1.540(b)(4) where the judgment is void for lack of jurisdiction or proper due process notice. See, e.g., Gelkop v. Gelkop, 384 So.2d 195 (Fla. 3d DCA 1980)" Quick Reilly, Inc. v. Perlin, 411 So. 2d 978, 979 (Fla. Dist. Ct. App. 1982). "The law presumes nothing in favor of the jurisdiction of Justices' Court; and a party who asserts a right, under the judgment of a Justice, MUST affirmatively show EVERY fact necessary to confer such jurisdiction." Van Elten v. Jilson, 6 Cal.19; Witwell v. Barbour, Cal. 64. "[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt")" Friedman v. Self Help Cmty. Servs., Inc., 11-CV-3210 (NGG) (JO), 14 n.3 (E.D.N.Y. Jun. 27, 2018) "[i]f [the Judge] wants to issue a warrant for the contemnor's arrest, such an order is only proper if the court finds that the contemnor's refusal to pay previously ordered sanctions does not stem from the contemnor's inability to pay. See Spectacular Venture, L.P. v. World Star Int'l, Inc., 927 F. Supp. 683, 685 (S.D.N.Y. 1996). "In order to imprison a contemnor to compel compliance with the court's orders, the court must find that the contemnor's disobedience is willful. See Armstrong v. Guccione, 470 F.3d 89, 101 (2d Cir. 2006); see also Spectacular Venture, 927 F. Supp. at 685 "Contempt is willful where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." "[I]f the contemnor can establish that he or she is unable to comply with the Court's order, the contempt sanction must be lifted because it ceases to have a useful coercive effect."". EEOC v. Local 638, 689 F. Supp. 642, 670-71 (S.D.N.Y. 1995) ) "Under the Corporate Shield Doctrine, any activity in one's capacity [Mr. Villars as the duly elected President] as a Corporate Officer or director is exempted from consideration of long-arm Jurisdiction over said officer or director." Carter v. Estate of Rambo, 925, So. 2d 353, 356 (Fla. 5th DCA 2006) "Florida Long-Arm Statute MUST BE "strictly construed," Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir 1996). The Association's governing documents do not contain what is commonly referred to as "Kaufman" language; such language refers to Kaufman v. Shere, 347 So.2d 627 (Fla. 3d DCA 1977). Which prohibits any new law infringement ex-post facto to the Assoc. bylaws. JURISPRUDENCE, DOCTRINES, RULES and the "INTEGRITY OF THE COURT" Common Judicial authorities. Made by attorneys and Judges. To plead and justify the court's discretion. To punish or deprive of rights, property or liberty; when the facts and laws do not support their wishes. As it is proven beyond reasonable doubt in this case. Thereby, serving more to forgo statutory and federal laws and procedures, to rule arbitrarily. As, NONE of those judicial sacred practices are considered relevant or significant when it is against one of their own. Making their sacred authorities questionable or absolute. Proving them to be no more than under-the-sleeve-Ace cards. To afford them with Judicial discriminatory discretion . To act as Kings and Queens in a supposedly "Rule of Law" governing country. To punish an identified class without affording due process. That is what this case is proving, within every hearing. At recognizing how civil procedures are enforced only against the party the judge disfavors. Exercising, inherited from other judges, "BROAD discretion" to control the results. To disenfranchise a class by misapplying Doctrines. Despite the facts and laws. While protected with absolute immunity. Proving, with Mr. Villars' arrest, the Civil Conspiracy to deprive civil rights "Beyond Reasonable Doubt". Of a common collaboration between judges and attorneys. To illegally take property from a targeted socioeconomic deficient class of citizens. Who they know cannot afford indefinite legal defense in court. Never Mind the "Integrity of the Courts" or the citizens' U.S. Guaranteed Freedoms, of privacy, property or civil rights. This is my Declaration Under Oath and Affidavit "Letter from Miami-Dade Jail." I, Janvier Villars, the duly elected President of Buckley Towers Association, swear that everything I have written in court and to my constituents is true. NOTHING I have done has been illegal, against the Membership or against the Association interests or bylaws. Proven with the State Court Receiver inability to prove otherwise. I am making this official statement, anticipating my arrest for being insolvent. For not being able to afford an attorney with enough social status to influence Judge Guzman and his Receivership team. To have them return the Association back to the

owners; without any of their Under Color of Law Influence - at not finding Jurisdiction over us from the beginning. I am also writing this to explain my reasoning behind my fight against this Judicial corruption. So if after I am arrested I retract or settle this case, such action should be void. As it will be by coercion in exchange for my liberty or life. Since that is the only way Judge Guzman and his Receivership team of lawyers can see me waiving my rights. Over the wanton and reckless disregard, by this court and the State. IF I am fatally harmed, while in custody of the state, it won't be by accident, nor by my own doing. Regardless how it is staged. It will be through a covert collaboration between Judge Carlos Guzman, Mr. Russell Landy, Mr. Ramon Abadin, Mr. Leigh Katzman, Ms. Mary Chandler, Mr. Justin Smith and their jail collaborators. The Florida BAR members who have prosecuted this lawsuit illegally. Also, if I return uncapacitated to continue this case, I give EVERYONE who has been harmed by this judicial abuse, a right to claim my rights, to prosecute these entities to the full extent of the law and NOTHING LESS, in a Trial by Jury. For deprivation of rights, property, liberty and life without proper due process. When becoming a U.S. Citizen, I intentionally swore, under oath, to "support and defend the Constitution and the laws of the United States". I am doing so, even when I am penalized for doing so. I am not going to go to jail for breaking laws, or for abusing my legal duties under my title. Nor for infringing on anyones rights or freedoms. But because the State Judge Carlos Guzman refuses to stop doing so. Where is the "Integrity of the Court" when it comes to protecting the victims of judicial abuse? /s/Janvier Villars, pro se Buckley Towers Assoc. Elected President Property Owners Wanting Equal Rights 1301 NE Miami Gardens Drv, 322 Miami, FL 33179 (786) 609-1269 "It is a fundamental doctrine of law that a party [500+ owners] to be affected by a personal judgment must have his day in court, and an opportunity to be heard. Renaud v. Abbott, 116 US 277, 29 L Ed 629, 6 S Ct 1194. "Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests before he is affected by any judicial decision on the question." Earle v McVeigh, 91 US 503, 23 L Ed 398. "The validity of a judgment may be affected by a failure to give the constitutionally required due process notice and an opportunity to be heard. Earle v. McVeigh, 91 US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). Prather v Loyd, 86 Idaho 45, 382 P2d 910. "A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. ... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid." 30A Am Jur Judgments " 44, 45.

- **Attach supporting documentation:**
  (Combined maximum file size is 20 MB)

# Additional Information

- Policyholder first name: N/A
- Policyholder last name: N/A
- Policy number: N/A
- Claim number: N/A
- Property address: N/A
- City: N/A
- ZIP: N/A

This email and any attachments may contain confidential and privileged information and are solely for the use of the intended recipient(s). If you have received this email in error, please notify the sender immediately, and delete the original message. If you are not the intended recipient, please do not use, disclose, disseminate or distribute this email or any information contained in this email. Please be advised that emails are subject to the Florida Public Records Act, and any response to this email may be a public record. This email and any attachments may contain confidential and privileged information and are solely for the use of the intended recipient(s). If you have received this email in error, please notify the sender immediately, and delete the original message. If you are not the intended recipient, please do not use, disclose, disseminate or distribute this email or any information contained in this email. Please be advised that emails are subject to the Florida Public Records Act, and any response to this email may be a public record.

**The POWER Suit -APPEAL.pdf**
753K

Dear sirs,

We are attempting to forgo a class action based on the fraudulent representation of a Judge in a claim which clearly leaves her without Subject Matter Jurisdiction ab initio.

The case is  2023-026257-CA-01.

Judge Del Rio knows this case lacked Legal Standing. For suing with a Presumed Right <u>not a Clear Right</u> to control the operations of the Association's common areas.

First, the FS718 vests only the Association Officers with the Clear Right to run the operations of the Association's. Further reinforced with "No owner may act on behalf of the Association". Which is no less than the standard restrictions between shareholders and the board of directors in all corporations and Associations.

Second, the Plaintiffs tortiously interfered with the Association operations. Before filing this suit. Physically threatening the owners who collaborated with the Association operations over the common area parking.  Also against those who voted for commercialization, as a means of producing funds for the Association. Interfering the the Voted for changes in Buckley such as allowing the Association redisign the Parking. To allocate 130 new parking spaces.  Their attorney Mr. Katz sent formal legal trheats to the Association towing company. To interfere with the parking enforcement. And by legally advising other owners, other than his clients, to discard the Association.  Based on his "legal conclusions of a Clear Right" to control the common area parkings. Therefore, the Judge knew that they couldn't sue in EQUITY. Per the Unclean Hands Rule.

When we attended the court hearings, Judge Del Rio obstructed our attorney from presenting the facts aforementioned. Immediately affording Mr. Katz an overbreadth injunction over the Association operations. Which Prohibited the Association from towing any illegal parking, regardless where they parked. Prohibiting it from Assessing and Collecting funds, as agreed upon by the owners. When using the Pay-to-Park visitor parking. Thereby depriving of Contractual Rights and Duties without affording us an opportunity to contest. Intentionally undermining the directors credibility, causing distrust and for renters to question the authority of the Association on other aspects of the Association. Financially crippling its operations and slowing down the progress we were making. Thus preventing us from making necessary and urgent repairs like the elevators. On the second hearing scheduled as a Rehearing to address the prejudicial injunction without due process, she denied us again of due process. Prohibiting the Board Secretary right to speak. Denying THE indispensable party, the Plaintiff accused of deceit and of harming the community, directly affected by their claims and this Injunction, the right to join the case. Rather, Judge Del Rio dismissed WITH Prejudice the Secretary of the Board Compulsory Counterclaim. By repeating Mr. Katz's excuse for denying Mr. Villars joining the case. For being "not named in the original suit" As if Fla.R.C.Pro 1.120 and 1.170(h) specifically permitted. She also obstructed the Defendant "Association" President Marcos Noguera from speaking. She used his testimony as seaway to address Mr. Katz's Petition for Receiver. TO avoid the Rehearing. Then, she stopped the hearing to call the 2021 Court appointed Receiver's attorney Mr. Russell Landy.  The Lawyer who acted as sole director of the Association from 2021 to 2023.  Having everyone quiet until she could challenge the legitimacy of the elected Board with Mr. Landy. Then after she confirmed the 2023 board directors were duly

elected by the ~~Association on 02/28/2023~~ to ~~run~~ from the ~~President on 05/10/2023~~ the ~~Paragraph 3 of 860~~ the NEW Board will have authority over the Association common area parking *"to do as it wants"* (but NOT this board of directors). Without explaining why the 2023 duly elected board was being discriminated against and divested of Clear Rights by her. Having not a single legal or otherwise reason to divest them. It was arbitrarily and without due process. Having the Association proceed with the March 20th scheduled with 30 candidates.

On March 18th (two days before the elections) the Association received a Court Order cancelling the elections. An Order written by Mr. Katz and signed Ex-Parte by Judge Del Rio. Canceling the properly procured Board Elections the Association ran. With a vague claim: "for failure to comply with FS718 procedures". Again, without affording equal treatment under the law to object or dispute their claim. Without any proper notice, a hearing, or an opportunity to redress the facts and FAC61B-230021(c) against Mr. Katz.

Where Mr. Katz's written order ALTERS ILLEGALLY the Associaiton and the State Laws elections procedures. Divesting the Association of authority to participate, including receiving ballots before elections. Requiring for majority of the 560 owners to be personally present to have quorum for elections.

Besides demanding the Association to strictly adhere to the FS718. FAC 61B-230021, it coerced the Association to violate its own bylaws and FS718. Their order demands for a new Election date to be agreed upon by both parties. And for the proper notices 60 days, 40 days and 14 days to be respected. However Mr. Katz ran his election swindle and had the elections 37 days after. Without said required notices. Manipulating the elections by also sending incomplete ballot packages, lacking proper nominees, removing nominees, and some without ballots, just the return envelopes. With this Court Order Mr. Katz successfully obtained for his clients to become the new board. Using the LAW and Undue Influence they had the Association to comply with the 61B "MUST Reschedule". While they proceeded collecting votes, knowing Judge Del Rio would sign a new Court Order 1.5 hrs before the Voting began. Thereby, she favored Mr. Katz 10 fatal ballots errors and disregarding the FS718 timing requirements as well as other laws.

Sirs:

IF State Courts and Judges and this commission is supposed to enforce laws equally and without discrimination over equally situated individuals, then can you please tell me if FS718.112 FAC 61B-230021(c) prohibited Judge Del Rio from invalidating the Association elections ran according to its bylaws.

" (c) In order to adopt different voting and election procedures in its bylaws pursuant to Section 718.112(2)(d), F.S., an association must obtain the affirmative vote of a majority of the total voting interests even if different amendatory procedures are contained in an association's bylaws. Such a vote must be taken on or after June 14, 1995. The phrase "different voting and election procedures" as used in this rule and as used in Section 718.112(2)(d), F.S., refers to procedures used only for the election of board members."

IF that state law is compliant with Article I Sec. 10 Contract Clause prohibition against impairment of contracts, then we kindly request for you to review this case. As it is proving a common scheme being perpetuated by permitting judges to act outside of the jurisdiction in a civil conspiracy with attorneys. To take property rights and interests. Under color of law.

At knowing and not taking any steps to correct it, the elements for 42 USC Sec 1986 are met.

## Thank you for taking a real interest in our lives by protecting our rights.

message

anvier Villars <janvier269@gmail.com>                          Tue, Jul 23, 2024 at 9:20 PI
o: William Gonzalez <williamgonzalez@miamisao.com>

Mr. Gonzalez,

I would like to thank you for the three hours you dedicated with Mr. Able attending my criminal case on the fraudulent scheme in the courts.

I would also like to ask you to please do not forget to contact the other division and provide me the contact information of who can assist me.

Lastly,

I as you have probably concluded, I am a determined and dedicated individual with all on the table.

So I appologize for zelously defending my claims.

With that, please understand I do not mean to offend or tell you how to do your job.

Finally,

I wanted to respond to your last arguments:

Please review **FS 817.034 Florida Communication Fraud Act** (scheme to defraud). The statute that criminalizes the use of fraudulent meansto obtain property. It does not require proof of the actual transfer of funds. Only that the fraudulent means was designed and collaborated to defraud someone of property.

Elements: Intent to defraud, Execution of a scheme to defraud under false pretenses.

**FS812.014: Theft** of property obtained or using, or endeavoring to obtain the property of another temporarily or permanently which deprives of that persons of property interests or benefits.

ELements: Intent to deprive of property and actions obtaining, attempting or in the furtherance of obtaining such property.

**And FS777.04:  Conspiracy to commit Fraud.**  On conspirators who agree to work together to commit fraud regardless the intent was accomplished.  The act and collaboration in such intent is sufficient. Conspiracy to commit a felony of the first degree is punishable as a felony of the first degree; conspiracy to commit a felony of the second degree is punishable as a felony of the second degree, and so on.

Elements: Agreement between two or more, intent to commit the unlawful act, and an overt act (injunction after injunction without affording due process) in furtherance of the conspiracy.

**Your Argument was "There is no proof "beyond reasonable doubt that the judge was collaborating" with the attorney fraud."**

A. Subject Matter Jurisdiction may be asked <u>at any time</u>, for a reason. Any time the court cannot dispute the lack of SJM the court cannot proceed.  Whether we challenged it at the beginning or at the end, does not matter.  Proceeding after being challenged and denying a hearing on SMJ, does not mean the judges shouldn't have questioned it themselves before ruling on four injunctions favoring always the Plaintiff attorney.

    B. Florida Statute 839.13(a) is very detailed on what is considered a misdemeanor on the first degree. Stating it is when judges proceed in any illegal manner to the detriment of a party.  Including omittion or concealment, obstruction of justice…

    C. Florida Statue 838.022:  addresses official misconduct on judges omitting substantive information to harm a party's defense. Such as FS718.1255 "expresso Unious est Exclusio Aterior" and FAC 61B-23.0021(B).  In order to provide a court order that irreperably deprive of rights and privileges the sitting elected board directors were duly afforded to them by law and contract.  Even after being presented and argued but never contested by the Plaintiff attorney or overuled by the judge.

federal and state laws.

E. Even if the court judges did not know well the FS718, they must know civil procedures 1.610 which besides requiring Legal Standing and Causation at minium the pleader must have proof of immediate and irreparable harm - if not for the injunctions.

F. Concealing substantive facts by denying hearings and dismissing "With Prejudice" you cannot tell me the judge does not know civil procedures and due process.  It is a criminal act to assist in the depravation of property by fraudulent - collaborative means.  BUT FOR the judges illegal acts the fraud could not have occured.

G. FS775.021(1) reads: "the provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differeing construction, it shall be construed most favorably to the accused.  HOWEVER, the fact that the accused (judge) was not aware of the provision of this code or other statutes IS NOT a defense to a violation."

U.S. v. Intenational Minerals & Chemical Corp., 402 US 558 (171): This case affirmed that ignorance of the law is not a defense, particularly in Regulatory offenses where there is Duty to know the Law.

Cooper v. Pate, 378 U.S. 546(1964) This case nderlines that judess are expected to be awared of the rights and laws applicable in their jurisdiction.  Failing to do socannot be excused simply on grounds of ignorance.

**Access to seal settlements and payouts**

1. Rule 2.420 - Florida Rules of General Practice and Judicial Administration This rule governs the confidentiality of court records and proceedings. Under this rule, sealing records or proceedings requires a court order, and the party seeking to seal records must demonstrate a compelling interest that outweighs the public's right to access. The court must also ensure that the sealing is narrowly tailored and there are no less restrictive means available. This rule stipulates that court records may only be sealed if confidentiality is required to:
Prevent a serious and imminent threat to the fair, impartial, and orderly administration of justice.
Protect trade secrets.
Protect a compelling governmental interest.
Obtain evidence to determine legal issues in a case.
Avoid substantial injury to innocent third parties.
Avoid substantial injury to a party by disclosing matters protected by a common-law or privacy right not generally inherent in the specific type of proceeding sought to be closed.
Comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law interpreted in conformity with such policy.
This rule also emphasizes the presumption of public access to court records and proceedings, meaning that the sealing of records should be an exception rather than the norm.

**Controlling caselaws:**

Barron v. Florida Freedom Newspapers, Inc., 531 So. 2d 113 (Fla. 1988): The Florida Supreme Court held that the sealing of court records must meet stringent criteria. There must be a showing of necessity for the protection of privacy interests which outweighs the public interest in access. In Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988), the court modified the Miami Herald v. Lewis test to apply to a civil proceeding.
CBS, Inc. v. Young, 522 F.2d 234 (6th Cir. 1975). This case held that the press must be given notice and an opportunity to be heard before a judge can enter an order impinging on rights protected by the First Amendment. This principle supports the idea that interested parties, including third parties, should have an opportunity to challenge the sealing of court records if it affects their interests (Reporters Committee).

--
Janvier Villars
TOGETHER WE CAN DO BETTER

**Secretary of DBPR Ms. Melanie Griffin**
2601 Blair Stone Road
Tallahassee, FL 32399-1027

**Subject:** Request for Investigation and Remedial Action on Condominium Board Elections under FAC 61B-23.0021 and 42 USC § 1986.
**RE: DBPR Case No. 2024025179** and Miami-Dade Civil Case: 2023-026257-CA-01

Dear Secretary Griffin,

First off, Happy 4th of July, and congratulations on your appointment. I hope this confer letter finds you well.

I urgently seek your collaboration to address recent board election violations that contradict the condo Association bylaws and state laws. These elections were conducted under the absolute authority of the opposing party's attorney, Mr. Katz, who was judicially afforded this transfer of property rights by misrepresenting the second oral hearing orders. The court denied the Association the opportunity to contest this unjust transfer, allowing Mr. Katz's appointed election monitor to disregard the constitutional and contractual rights of over 560 members. This maneuver was designed to secure control of the Association for Mr. Katz's clients.

It has been well over 60 days, and neither our bylaws nor constitutional or statutory laws have changed. Yet we remain harmed without legal or equitable reasoning. Their illegal Board of Directors election should be voided for violating the Association's contractual terms, the FAC 61B-23.0021 and FS718.112(2). Otherwise, it invites other lawyers to repeat this in other associations as the state condoned practice and policy.

We urgently request for your prompt intervention, per 42 USC § 1986 to prevent their further planned harm and to uphold the integrity of the State's Separation of Powers and Victims' Rights.

## DBPR's Authority and Duty

### Separation of Powers Doctrine

The Florida Constitution explicitly mandates the separation of powers among the legislative, executive, and judicial branches, ensuring no branch oversteps its authority or encroaches upon another's functions. As stated in Article IV, Section 20.02(1), the separation of powers is a fundamental principle of Florida's state government.

### Jurisdiction under Florida Statutes

- **Section 718.1255**: Grants the DBPR the authority to handle disputes related to the election and recall of board members in condominium associations, ensuring specialized oversight and resolution of such disputes.

  Thereby, Florida Legislation vested the DBPR with exclusive jurisdiction to address condominium elections. Independently from judicial procedures. Ensuring that elections are conducted in compliance with its governing documents, procedures, and related statutes. In compliance with Art. 1 Sec. 9.

1

**Supporting Case Law**

- **Miami-Dade County v. Omnipoint Holdings, Inc.**: The Florida Supreme Court addressed jurisdiction, reinforcing that lower courts had improperly assumed jurisdiction over matters under a different state agency's authority.
- **Tucker v. State, 459 So. 2d 306 (Fla. 1984)**: Highlighted the necessity for lower courts to strictly follow procedural rules and statutory requirements.
- **State ex rel. Pettis v. Southwick, 161 So. 2d 410 (Fla. 1964)**: Emphasized that administrative agencies have exclusive jurisdiction over regulatory matters assigned by the legislature, and judicial intervention undermines this statutory framework.
- **Bell v. U.S.B. Acquisition Co., 734 So. 2d 403 (Fla. 1999)**: Reinforced that when the legislature grants exclusive jurisdiction to an administrative agency, courts must defer to that agency's authority.
- **Garcia v. Crescent Plaza Condominium Association, Inc., 813 So. 2d 1004 (Fla. 3d DCA 2002)**: Upheld the DBPR's authority to adjudicate disputes related to condominium board elections and emphasized that lower courts should respect this jurisdictional allocation.

## Election Issues and Violations

**Section 718.501(1):** Specifies that the DBPR has the authority to enforce and ensure compliance with the provisions of the Condominium Act, including the Associations' recorded election procedures.

**Violations of FAC 61B-23.0021:**

1. **Notice of Elections (FAC 61B-23.0021(4))**: Mr. Katz's elections were conducted without providing the mandatory 60-day and 14-day notices to unit owners. Depriving them of their right to be informed and participate in the election process. This maneuver allowed for only the 150 ballots favoring Mr. Katz's clients to be counted.
2. **Ballot Errors and Defects (FAC 61B-23.0021(7))**: The ballots used in the election contained numerous critical errors, rendering the election legally void under FAC 61B-23.0021(7). Errors included incorrect candidate names, missing nominated candidates, and candidates not properly nominated.
3. **Improper Adoption of FS718 Procedures per FAC 61B-23.0021(c)[1]**: The court canceled the properly scheduled annual elections. By prejudicially accepting Mr. Katz's improperly invoked FS718 procedures without proof of wrongdoing and denying the Association a hearing. This bypassed the required FAC 61B-23.0021(b) majority vote from unit owners before adopting the FS718 procedures, effectively transferring the Association's right over election operations to Mr. Katz's requested monitor.

---

[1] **FAC 61B-23.0021(c)** " In order to adopt different voting and election procedures in its bylaws pursuant to Section 718.112(2)(d), F.S., an association must obtain the affirmative vote of a majority of the total voting interests even if different amendatory procedures are contained in an association's bylaws. Such vote must be taken on or after June 14, 1995."

2

## Jurisdictional Issues and the State Duty under 42 USC § 1986

The legislation exclusively affords jurisdiction to the DBPR, excluding judicial jurisdiction and duty to oversee condominium elections. This principle is supported by the doctrine of "expressio unius est exclusio alterius," meaning the expression of one thing excludes others. Therefore the court orders canceling the Association election and affording Mr. Katz discretion to modify the Association election procedures are not supported by law.

Courts have consistently upheld that administrative agencies have exclusive jurisdiction in areas delegated by legislation (e.g., **Southern Bell Tel. & Tel. Co. v. Mobile America Corp., 291 So. 2d 199 (Fla. 1974)**).

42 USC § 1986 imposes a duty on authorities to prevent and rectify violations of rights when they are aware of such violations and have the power to prevent or rectify them. The DBPR is obligated under this statute to investigate and take corrective actions regarding the condominium board elections.

## Request for Investigation and Remedial Action

Given these violations, we respectfully request for your intervention in:

> Voiding the recent board elections due to clear violations of mandatory election procedures.
> Alternatively, the DBPR would be selectively enforcing the state laws.

## Conclusion

Ms. Griffin, these election irregularities represent significant breaches of statutory and regulatory provisions, depriving property owners of their 1st Amendment and contractual rights. By the State dismissing this plea for protection against arbitrary and capricious violations on privacy, property, and liberty, the state is actively denying the working class access to federally preempted civil remedies. This action undermines justice and civil rights, systematically disenfranchising Florida most vulnerable citizens.

Thank you for your attention to this matter. Please feel free to contact me at janvier269@gmail.com or by phone (786) 609-1269 for any further information or documentation in addition to the attached.

Sincerely,


/s/Janvier Villars
Duly elected Board Secretary in 2024
Duly elected Board President in 2021
Both times interrupted with frivolous suit, but divested without proper due process.

# Online Complaint Summary

| | |
|---|---|
| Board: | **Condominiums, Cooperatives, Timeshares, & Multi-Site Timeshares** |
| License Type: | **Condominium Project** |
| Complaint Number: | **2024025179** |
| Incident Date: | **04/24/2024** |

Description:

**Dear sir or madam,
I have been addressing with the DBPR board elections issues for over nine years. I know how frustrating it must be to acknowledge the wrongs and be told to ignore it because a...z reason. So, I am hoping this gets to the right person(s) because the alternative is the uncivil resolution. Because the abuse is continuous and devastation for our community.
Please accept or forward this to the agent or agency that may assist.
I am attaching the supporting documentation and the contact information that you may need.
The issue is made more complex because it involves a judge who is acting outside of jurisdiction and approving legal violations to procure an illegitimate board election. Easily proven as it is recorded in court.  Therefore she is being recused and prohibited from making any further decisions on the case. But meanwhile, the people who she helped to take over the Association are destroying the improvements we made.**

**Please take this case with more concern on the security of home and privacy we are guaranteed under the law.  Because where this judicial abuse can happen openly, no one's home is safe.**

## Attestation
Electronic Signature:                                            **Yes**

## Developer/Assocation
Select who the complaint is filed against:          **Association**

If Association list President:                              **Mr. Trullenque**

## Notification
Has the respondent been notified of the issues in this complaint?          **Yes**

If you answered yes to the above question , what was the method of notification?          **The matter is in court and the illegal elections properly recorded.**

## Attorney

| | |
|---|---|
| Attorney Name: | **Matthew Karim** |
| Address: | **3000 NE 30th Place Suite 306 Fort Lauderdale, FL 33306** |
| County: | **Broward** |
| City: | **fort lauderdale** |
| State: | **Florida** |
| Zip: | **33306** |
| Country: | **United State** |
| Phone: | **954-548-3558** |
| Alternate Phone: | **413-636-6409** |
| E-mail Address: | **matt@matthewkarim.com** |

## Legal

| | |
|---|---|
| If you have retained legal counsel regarding the issues listed in this complaint, do you want the division to contact your attorney? | **Yes** |
| Has court action been filed regarding any of the allegations in this complaint? | **Yes** |
| Has a petition for a Declaratory Statement been filed with the division regarding any of the allegations in this complaint? | **No** |
| Has a petition for Mandatory Nonbinding Arbitration been filed with the division regarding and of the allegations in this complaint? | **No** |

## Allegation

| | |
|---|---|
| Allegation: | **Elections** |

List Each Issue. If possible specify the provisions in the condominium act, or the cooperative act if applicable, which you allege have been violated:

**1. Cancellation of the Association properly noticed and produced elections, without affording the Association any specific legal reason or affording any due process.**
**2. Judicially coerced to accept the judge divesting the Association of right to run the elections, to afford it to the opposing party of a pending lawsuit. For him to rewrite the procedures to his will.**
**3. His Elections procedures are contradictory to the Association bylaws, FS 718 and FAC 61B.**
**4. The procure elections were executed in contradiction to the Court Order specifications, which held the Association from acting, receiving ballots or petitioning. Because 61B required Rescheduling.**
**5. The Judge was afforded enough time to hold an emergency hearing before making a ruling, but refused it, to afford the opposing party their improper election timing.**
**6. The opposing party did not comply with the FS718 60 days, 40 days or 14 days requirements. The Judge did not care when they failed to comply but canceled the Association under the same claim of error. (although such error was never recorded in court)**
**7. FAC 61B dictated for the Association to reschedule the elections when errors in the timing, the listing or omitting candidates were present. The Association complied. NOT expecting the Judge to Order for the Elections to proceed regardless. Thus receiving by chance only 8 votes in favor of the Association board.**

**This elections were defrauded through the collaboration of attorney Katz, CAM Rementeria and Judge Del Rio, abusing the color of law. By forcing on the Association a Court Order that they did not have to prove the causation or legal foundation, but to deceive the Association into accepting them defraud the elections in their favor. 150 to 8 at not being properly noticed.**

**Please review the attached court orders, explanation of errors and the supporting documentation.**

**Respondent**
License Type:

Organization Name:

Address:

**Condominium Project**

**Buckley Towers Condominium Assoc.**

**1351 NE Miam ADMIN OFFICE**

**Florida**

**Miami, FL**

**33179**

**US**

Phone Number:                **305-949-7266**

Extension:

**Complainant**

First Name:                **Janvier**

Last Name:                **Villars**

Address:                **1301 Miami Gardens Drive**

**322W**

**Miami, FL**

**US**

Phone Number:                **7866091269**

Extension:

E-mail Address:                **janvier269@gmail.com**

**Attachments**

FATALERRORSinKatzElections.pdf

ElectionsbyRementeriaCAM.pdf

March18ORDERcancellingAssocRanElectio
ns.PDF

AssocEMERGENCYtoREscheduleElections.
PDF

April24ElectionORDER.PDF




**Miami-Dade County**
**OFFICE OF THE INSPECTOR GENERAL**
Felix Jimenez, Inspector General
Accredited by the State of Florida Commission on Law Enforcement

August 6, 2024

Melanie S. Griffin, Secretary
Florida Department of Business and Professional Regulation
(DBPR) Division of Florida Condominiums, Timeshares, and Mobile
Homes
2601 Blair Stone Road
Tallahassee, FL 32399

SUBJECT: Complaint Referral 24-0231-C

Dear Ms. Griffin:

The Miami-Dade County Office of the Inspector General (OIG) recently received the attached complaint alleging real estate fraud scams against elderly homeowners by condominium and homeowners associations. We are referring this complaint to you for your review and assessment.

Sincerely,

Felix Jimenez
Inspector General

FJ/mm

Attachment

cc: Janiver Villars

**Identity:** Yes, include my contact information on a referral of my complaint
**Contact or additional info:** Yes, I have provided my contact information above
**Detailed Description:**

For nearly a decade, I have dedicated myself to uncovering why and how elderly homeowners are victimized in condo or homeowner associations. Contrary to common belief, it is not due to external fraudsters but through undue influence perpetuated by association attorneys and protected by circuit judges. This systematic abuse cannot be resolved by any group of owners or the DBPR. It needs to be addressed outside the Judicial branch, as herein proven to be compromised. Here's a concise overview of the fraudulent scheme: An attorney, aware that the homeowner has no debt, sends a legal threat demanding payment under false pretenses, including exorbitant legal fees. The attorney bypasses proper procedures, knowing the judge will obstruct the homeowner's defense. Consequently, elderly homeowners, unaware of their rights, are coerced into paying these fabricated debts, often resulting in severe financial distress. During 2023, I ran the administration without a salary. To learn what can and cannot be done to improve our financials. Our community made significant progress in one year, including passing the 40 and 50 yr recertificaitons, reducing the insurnace by $900 per year, and property repairs/improvements without forcing any special assessments. Only to be undone by this judicial manipulation and denial of due process. I have exhausted my savings, retirement funds, and personal time over the past nine years fighting this injustice without any compensation. Despite filing suits against this illegal takeover, the courts have consistently denied us access to justice. I implore you to intervene in this matter. Without immediate injunctions, many elderly residents will be forced into homelessness, and their homes sold to developers without regard for their rights or well-being. This is not the America we strive for, but a descent into chaos driven by greed. Please take a moment to review our case. Your involvement could make a significant impact on those who otherwise have no voice in government. As you can see in the attached already denied Reconsideration plea to the 3rd DCA. Who refused to address the lower court proceeding without Subject Matter Jurisdiction and violating our constitutional rights at depriving us of property and privacy without affording us due process. DBPR Case No. 2024025179 and Miami-Dade Civil Case: 2023-026257-CA-01

# Exhibit F

## Title:

Plaintiff's intervention motion in *Murthy v. Missouri*. Filed before the ruling but denied intervention despite proving Fraud On the Court.

## Purpose:

Direct evidence of Plaintiff's exclusion from SCOTUS-level ruling affecting his speech, association, contract and Intellectual Property —mirroring exclusion tactic at state level.

# Supreme Court of the United States

---

### Case No.: 24-656

### TikTok Inc., et al., Petitioners,

### v.

### Merrick B. Garland, Attorney General,

---

**We the People**, Movants. Motion to Intervene, to Stay Proceedings until jurisdiction is complete, and to Challenge this Judicial Practices of Proceeding Without Absolute Jurisdiction

## MOTION TO INTERVENE, TO STAY PROCEEDINGS, TO CHALLENGE JUDICIAL PRACTICES OF PROCEEDING WITHOUT JURISDICTION, AND MOTION FOR CLASS ACTION CERTIFICATION

Movant, Janvier Villars, on behalf of **We the People, the Working Class**, hereby files this Motion to Intervene based on a clear and undisputed pattern of judicial misconduct, systemic fraud on the court, and the deprivation of constitutional and civil rights. These injustices have been perpetuated by government officers in collaboration with judges wielding absolute discretion and immunity, exploiting judicial authority to oppress the working class with unfounded rulings. Under the guise of Judicial Discretion. This court is urged to address this fundamental miscarriage of justice, which parallels the concerns raised in the TikTok case, as both exemplify how judicial power is misused to the detriment of public trust, democratic principles, the integrity of this Judicial System.

---

## <u>We respectfully submit these Motions to:</u>

● **Intervene** in the above-referenced matter pursuant to Federal Rule 24(a), grounded in this Court's jurisdiction under **28 U.S.C. § 1331** (federal question), the **Supremacy Clause**, the **Private Contract Clause**, the **First Amendment, 28 U.S.C. § 1651** (All Writs Act), and the **Fourteenth Amendment for violations under 42 U.S.C. §§ 1983, 1985 and 1986**.

● **Stay proceedings** until the Executive Branch proves Constitutional jurisdiction, causation, and compliance with constitutional safeguards **under strict scrutiny**. To take away Constitutional Rights by this court <u>Judicial Discretion</u> alone.

● **For this Honorable Court to adjudicate claims of Fraud on the Court** and judicial complicity in perpetuating a civil conspiracy targeting the working class, systematically divesting this class of Constitutionally Protected Rights. Alternatively, the Court's failure to permit the intervention of directly harmed indispensable parties constitutes a violation of Federal Rule of Civil Procedure 19, rendering any judgment procedurally and substantively defective. In direct violation of 18 USC §1503.

● **To Adjudicate the claim of lack of subject matter jurisdiction.** Due to its procedural defects. Which include the failure to join indispensable parties and the refusal to address clear evidence of fraud. Under *Ex parte Sealy, L.L.C.*, 904 So. 2d 1230 (Ala. 2004), and *Lange v. Johnson*, 295 Minn. 320 (1973), such judgments are void as a matter of law and cannot be enforced. Intervention is necessary to correct these jurisdictional violations, which will ultimately deprive the working class of their fundamental rights.

1

## MOTION To Certify the "We the People" Class Action.

Under Federal Rule of Civil Procedure 23 We the People are requesting for the certification of this **Working Class of TikTok users**, for this court to have Complete Jurisdiction of all Indispensable Parties. So this court can Constitutionally protect their collective rights. As its mandatory on this court under the Supremacy Clause. This case affords this honorable court with every elements for certification:

**Numerosity:** Millions of TikTok users and home association owners are being directly affected by this common judicial-executive covert partnership.

**Commonality:** All users share legal questions about their privacy, property intersts, and civil rights. Being taken and here threaten by the Executive Branch.

**Typicality**: Their claims are typical to all other users of Tik Tok but more profoundly the Working Class.

**Adequacy:** Mr. Villars' adequacy to represent a class of TikTok users in addressing systemic constitutional violations. Proven with his historical advocacy. The TikTok case, like the Villars' case, exposes executive-judicial overreach, depriving individuals of due process, privacy, speech, and property rights. Both cases reveal a particular systematic misconduct designed to violate federal laws and constitutional protections. Warranting immediate intervention to prevent further harm.

### 1. TikTok Case Mirrors Villars' Case in Systemic Violations

In the TikTok case, the executive branch attempts to regulate privacy, speech, and contractual rights without concrete harm or jurisdiction, violating Article III and the Due Process Clause of the Fifth Amendment. Similarly, in Mr. Villars' case, the

2

judiciary advanced litigation without subject matter jurisdiction, as seen in the 2021 Guzman receivership fraud. Courts cannot proceed without establishing jurisdiction first *(Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998))*. The failure to address these jurisdictional deficiencies reflects systemic abuse of judicial power, undermining public trust in the courts.

### 2. Fraud Nullifies Judicial Authority in Both Cases

Fraud was central in the Guzman receivership, where the court knowingly acted on fabricated evidence to strip Mr. Villars of property rights (President title). This is akin to the government's failure in the TikTok case. Both taking without any proof of actual harm, while coercing compliance under color of law. Fraud renders all judicial actions void *(United States v. Throckmorton, 98 U.S. 61 (1878))*. Courts that knowingly advance fraud violate their duty to uphold due process *(Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009))*. Both cases demonstrate judicial complicity in perpetuating fraud. By concealing the lack of fundamental due process requirements.

### 3. Failure to Uphold Duties Under Federal Law

Federal law requires judicial and executive officers to act in accordance with constitutional protections. In both cases, officials violated their duties under:

- **42 U.S.C. § 1983**: By depriving individuals of constitutional rights under color of law.

- **42 U.S.C. § 1986**: By failing to prevent known violations when they had the power to do so.

- **18 U.S.C. § 242**: By willfully denying constitutional protections such as due process and equal protection.

  State officials in Villars' case, including former Attorney General Pam Bondi and State Attorney Katherine Fernandez Rundle, made aware of the ongoing violations ignored the judges fraudulent judicial pracites. <u>Enabling Systemic Constitutional Violations</u>. <u>Despite their Oath to Uphold the Constitution</u>. The same risks arise in the TikTok case if the justices fail to address these abuse.

## 4. Judicial Impartiality is Compromised in Both Cases

Judicial impartiality is a constitutional requirement *(Ex parte Young, 209 U.S. 123 (1908))*. In Villars' case, Judge Guzman's actions demonstrated overt bias and abuse of discretion by advancing extrinsic fraud. Similarly, the judiciary's willingness to entertain the TikTok case without jurisdiction suggests collusion with the executive to expand unconstitutional powers. When courts abandon neutrality, they erode the rule of law and public trust.

## 5. Subject Matter Jurisdiction is Absent

The government's failure to demonstrate standing, harm, or causation in the TikTok case mirrors the jurisdictional failures in Villars' case. Subject matter jurisdiction is a threshold issue, and courts lack authority to act without it *(Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992))*. By proceeding without jurisdiction, courts violate constitutional mandates and perpetuate fraud, as evidenced in both cases.

4

## 6. The Danger of Precedent

Allowing the TikTok case to proceed under these conditions risks setting a dangerous Supreme Court precedent. Such a ruling would grant the executive unconstitutional authority to interfere with privacy, speech, and contractual rights, mirroring the unchecked judicial overreach in Villars' case. Fraudulent precedents harm millions by institutionalizing the denial of constitutional protections and enabling further abuses (Mathews v. Eldridge, 424 U.S. 319 (1976)).

## In Conclusion

Mr. Villars' case provides undeniable evidence of systemic judicial and executive misconduct. His persistence in challenging fraud and protecting constitutional rights establishes his adequacy to represent the class under **FRCP Rule 23(a)(4)**. TikTok users face the same risks of unconstitutional deprivation as Villars did in the Guzman receivership. This Court must intervene to address these violations, protect constitutional rights, and prevent dangerous precedent.

---

## Judicial Questions for Supreme Court Adjudication

### 1. Constitutional Threshold for Government Action

Does the government's action against TikTok, absent clear evidence of harm or adherence to due process, violate the Private Contract Clause and the Due

Process Clause of the Fourteenth Amendment, setting a precedent for arbitrary deprivation of property and rights?

2. **Equal Protection and Selective Enforcement**

   Under the Equal Protection Clause of the Fourteenth Amendment, can the government lawfully target TikTok for alleged data concerns while failing to impose similar scrutiny or restrictions on U.S.-based platforms with documented privacy breaches?

3. **First Amendment Protections**

   Does the government's demand for TikTok to divest or face a ban infringe upon the First Amendment rights of its users by unlawfully restricting platforms for free speech, private association, and assembly?

4. **Judicial Responsibility Under 42 U.S.C. § 1986**

   What is the judiciary's duty to prevent governmental overreach and address judicial complicity when the working class and small businesses are deprived of constitutional rights under the guise of "public policy" or "national security"?

5. **Separation of Powers and Authoritarian Precedent**

   Does judicial endorsement of unchecked executive discretion in the TikTok case undermine the Separation of Powers and establish a dangerous precedent enabling authoritarian suppression of dissenting voices and smaller entities?

---

## INTRODUCTION

The TikTok case, as proven with Movant Villars' cases ( **2021-17383-CA-01 illegal Receivership by Judge Guzman, 2023-025934-CA-01 Denied intervention by Judge Cyanamon, Fla. 3rd DCA 2023-026257-CA-01 Denied Review of three Writs by Judges Logue, C.J., Emas and Miller J.J.and Federal SDC 1:24-CV-25004-RAR  Denied Writ on Procedural imperfection by Judge Rodolfo Ruiz II (ALL ATTACHED))**, has proven the illicit judicial misconduct as State Custom and Policy. A common Fraud on the court. Through judicial acts that undermine the integrity of all courts. As recognized in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).* Despite these filing on the mentioned courts the Florida Executive Branch officers Governor De Santis and Attorney General Bondi refused to provide 560 Working Class member with any constitutional protection. None of this government officials, under Oath, cared to address the undisputed fraud perpetuated by their fellow BAR union members. This systemic failure has facilitated the deprivation of constitutional rights under color of law, violating 18 U.S.C. § 242 and 42 U.S.C. § 1983 is what is at stake for all citizens. This motion exposes a covert effort between the Executive and Judicial branchs. That perpetuates a proven civil conspiracy. Under the guise of **"Public Policy," "National Security," "Judicial Immunity,"** or any other judicially created doctrines. That can be coerced under color of law. Where constitutional protections under 42 U.S.C. § 1986 are routinely and recklessly disregarded without any type of redress.

7

The unchecked exercise of **Judicial Discretion** coupled with **Absolute Immunity,** has repeatedly caused irreparable harm throughout history. Eroding the freedoms the Constitution was designed to protect. This collaboration now endangers **privacy, property, and individual liberties,** particularly targeting the <u>**Working Class**</u>. <u>**The backbone of the economy — true upholder of the dollar's global value.**</u>

Despite bearing the brunt of this nation's highest taxes, **the Working Class** remains ill-represented in a government that increasingly prioritizes the interests of the powerful few. This reality echoes the injustices of *"Taxation Without Representation",* as those whose labor sustains the economy are systematically deprived of their rights and voices under **this judicial-executive collusion.**

## Addressing the Historical - Covert - Judicial-Executive Collusion

**We the People** have recognized it is not the Corporation CEOs who betray us—they have no oath to protect us. <u>It is you,</u> <u>the government officers under duty,</u> who let them prioritize profit and your stock derivative gains over our lives without lawful checks, balances, or accountability.

Therefore, this intervention is not merely appropriate but essential to safeguard the constitutional rights of those most vulnerable to systemic abuse. Denial of intervention would perpetuate a dangerous precedent, enabling government officials to operate with **'supreme power above the law'** in direct contravention of the Constitution and established principles of justice.

**Take Judicial Notice of the catastrophic once preventable- now irreparable harm:**

8

1. **"Jim Crow Laws" and the *"Separate but Equal"* Doctrine**: *Plessy v. Ferguson* (1896) upheld systemic racism, denying equal rights for generations under the pretense of legal neutrality.Duly accountable for the current economic disparity

2. **Japanese Internment Camps**: *Korematsu v. United States* (1944) sanctioned the unconstitutional incarceration of American citizens because of Japanese descendancy. Ruled on vague and unfounded hypothetical national threats.

3. **Anti-Communist Witch Hunts**: During the McCarthy era, Congress's unaccountable committees destroyed lives and businesses based on vague accusations of disloyalty. Freeing the Executive Officers attack whomever they chose with hypothetical harm. Causing irreparable harm without accountability. As it will be by setting this Supreme Court precedent.

**All these historical errors share a common thread:**

<u>The judiciary failed to fulfill its constitutional duty to check executive overreach,</u> enabling widespread harm. The TikTok and Villars' cases mirror this historical unchecked pattern. BAR Lawyers abusing their powers by protecting each other, so long as is to the detriment of the We the People, the ill-represented Working Class. Bypass constitutional safeguards that attack private corporations without proper due process. Making the Judicial Branch complicit, as an enforceable tool to afford oligarchs with unchallengeable Judicial oppression. This court risks perpetuating the same cycle of abuse if it denies this Motion to Intervene and reliefs.

In violation of 18 U.S.C. § 242, 18 U.S.C. § 1503 and its own jurisprudence *Ex parte McCardle, 74 U.S. (7 Wall.) 506 (1869) and Ruhrgas AG v. Marathon Oil Co., 526*

*U.S. 574 (1999)* "Courts must resolve jurisdictional and indispensable party challenges first before exercising discretion on the merits of the case."

## The Broader Stakes include Privacy, Property, and Democracy.

The TikTok case is not just about a platform being ban —it is about the erosion of **foundational rights**:

1. **Privacy:** The government seeks access to encrypted data without judicial oversight. Undermining the First Amendment's protections for free assembly and expression.  When a government impairs privacy it threatens free speech.

2. **14th Amendment Due Process.** As made evident by Movant Villars' case, **2021-17383-CA-01.** Appointment of a Receivership. Procured under unfounded claims of a vague hypothetical harm. Judge Guzman exercised judicial discretion to bypass due process to favor fellow BAR attorney Katzman. Enabling an unjust takeover of a private corporation representing 564 property owners. To collect under color of law four million dollars under false pretenses. By simply obstructing due process from the bench. Coercing an undue burden on the elected president, Mr.Villars by divesting him. Then denying all 564 stake holders indispensable paties constitutional rights. Having Villars finance his legal defense - Assumed guilty without having a single evidence of wrongdoing. For 18 months hostage to the Court appointed Receiver attorneys Ramon Abadin an Russel Landy. Having Villars advocate alone to reclaim their constitutional rights, property, and freedom. That Receivership, like the Tik

10

Tok ban was petitioned without affording the court with Subject Matter Jurisdiction. Petitioned 17 hrs before the first court hearing and appointed immediately through ambush tactics, between these BAR-licensed attorneys.

**Despite the Supremacy Clause obligation on every relevant state agency and officer,** <u>all refused to intervene or correct</u> this judicial overreach. Including state representatives, Attorney General Bondi, Florida Governor De Santis, the Florida Department of Business and Professional Regulation (DBPR), and the Southern District Court of Appeal Judge Rodolfo Ruiz II. This systematic failure to act coerced on Movant Villars an unbearable burden to advocate on behalf of Justice. His persistence has exposed, beyond a reasonable doubt, a civil conspiracy between BAR-licensed attorneys, with those cloaked in judicial robes and the Executive Branch. These claims are substantiated by denial letters from state officers. In furtherance of violation of 42 U.S.C. § 1986

3. **Democratic Freedoms**: Allowing the Executive branch to dismantle TikTok through the Supreme Court imposes on the Working Class the same unbearable burden to regain Constitutional Rights. Procured through this covert civil conspiracy ban. Affording the Executive branch unconstitutional, unchecked powers over the Working Class. With an unchallengeable Supreme Court Precedent. **While the Judges can <u>Discretionally Deny</u> Review – <u>Judicial Discretion</u> that undermines all Constitutional Protections.** Enforcing their will by claiming a <u>hypothetical harm</u> to *National Security* or for

11

*Public Interest*, they are clearing the path toward authoritarian control.

While they financially exhaust anyone who wants to challenge them. By demanding State Exhaustion requirements, and years of pleading, just to be Discretionally Denied by this court based on procedural imperfection. Neverminding Constitutional Protection under **28 U.S.C. § 2072.**

4. **Civil Rights:** As well as Inalienable rights are <u>**guaranteed by the United**</u> <u>**States Constitution**</u>— The Liberty to decide Family Decisions, as well as the right to privacy, due process, and equal protection are by executive-judicial sheme being deceitfully taken. Effectively nullified by this unchecked collusion between the Exectutive and the Judicial branch officers. Who covertly push totalitarian agendas through Supreme Court precedents. To evade Congressional requirements. As they did in the *Citizen United* case. Eroding the Working Class' protective rights. Making laws and rights extrictly reserved for those who can afford to challenge the judges and the executive branch.

This is not a new story in America's history. Just as the courts in *Korematsu v. United States (1944)* upheld the internment of Japanese-Americans—stripping them of their rights without evidence of wrongdoing—this judicial-executive collusion undermines the very freedoms the Constitution was designed to protect. Deliberate violations BUT FOR their self-afforded absolute immunity.

Today, the government's actions, coupled with the judiciary's refusal to address clear violations of constitutional law, mirror those past injustices. As seen in Villars' cases. Where every court has systematically refused to address

12

undeniable evidence of fraud in the court to protect fellow Bar attorneys/judges **Proving the Working Class is being targeted in a coordinated effort** to suppress their rights and voices. This is nothing less than a civil conspiracy to dismantle constitutional protections and leave the people defenseless against governmental overreach. The evidence is in court dockets without a single dispute to this date.  Inviting all judges to present evidence of otherwise.

---

## DEMANDING TRANSPARENCY: THE GOVERNMENT'S CONSTITUTIONAL AUTHORITY

The government must answer the following questions, compelling transparency and accountability or shall be considered as admitted under federal rule 36(a)(3).

Admit or specifically deny in detail why they cannot truthfully admit or deny the following claims, while maintaining their answer on the matter questioned:

1. **Constitutional Basis for Targeting Corporations:**

   o Congress has no <u>constitutional vested</u> authority to attack private corporations or impair private contracts while lacking actual Art.III evidence of harm.

   o It cannot provide the constitutional law or precedent relied upon to justify the government's actions against TikTok.

2. **Criteria for Committee Actions:**

   o This Congress' elected committee can operate without meeting constitutional due process standards.

13

○ The Executive Branch lacks any specified criteria when deciding which corporations they will be targeting next and whether these criteria are consistent with constitutional protections such as.

○ Obtaining a lawful warrant with a court-recorded compelling need as required under the **Foreign Intelligence Surveillance Act (FISA) or Electronic Communications Privacy Act (ECPA)**.

---

*Packingham v. North Carolina*, 582 U.S.(2017): The Supreme Court struck down a law that broadly restricted access to social media, holding that these platforms are vital forums for expression.
*Reno v. ACLU*, 521 U.S. 844 (1997): The Court emphasized that government regulations on online platforms must meet strict scrutiny.

---

3. **Protection of Private Data**:

○ TikTok's refusal to share the platform user data with this government is the primary motivation for this litigation.

○ U.S.-based corporations such as Apple, Google, and Amazon may sell user data to foreign adversaries without any government restrictions or oversight.

○ This committee's intention to ban Tik Tok is  not influenced or has been politically endorsed by any of Tik Tok's competitors such as META or X.

○ This committee has no way of stopping any entity receiving private data from selling it at any time in the future.

○ This committee has no record or evidence that proves the legitimacy on this case. By selectively discarding national security concerns on the duly recorded afforded data to **Cambridge Analytics** by Facebook and later META.

## LEGAL BASIS: FRAUD ON THE COURT AND DUE PROCESS

**I. Fraud on the Court Invalidates Judicial Actions.** Because it is the collaboration by the BAR Lawyer acting as a Court Judge collaborating with fellow BAR lawyer, using the Judiciary System to deprive of proper Due Process.

1. **Judicial Duty to Address Fraud:**

   ○ **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944):** Fraud upon the court vitiates all associated judgments.

   ○ **Ex Parte Sealy, LLC, 904 So. 2d 1230 (Ala. 2004)** Collusion between judicial officers to deny constitutional rights must be met with the highest level of judicial scrutiny and correction.

   ○ **Ex Parte Pate, 673 So. 2d 427:** Courts cannot ignore jurisdictional defects or fraud, regardless of procedural posture even when by the Executive branch.

2. **Receiverships and Property Seizure:**

   ○ In **2021-17383-CA-01,** Judge Guzman, using discretion, imposed a receiver without meeting constitutional scrutiny. Depriving property owners of their homes while refusing any hearing contesting his absolute power over them.

   ○ This abuse mirrors the TikTok case, where through vague hypothetical claims, judges knowingly of lacking Subject Matter jurisdiction (SMJ) adjudicate against innocent parties to take their private property - <u>By coercion</u> Under Color of Law.

   ○ Where Fraudulent Inducement the opposing parties into filing a response; so the court can claim Jurisdiction is void. Because Fraud vitiates all derivative cases.

- Wherein every derivative case, SDC Judge Rodolfo Ruiz II refusing to address the fraud by Judge Cynamon, Judge Guzman and Judge Del Rio with their colleague attorneys Katzma and Steven Katz is a violation of due process on 564 stake holders not just on Mr. Villars. As it would be this court addressing the ban.

- Concealing substantive fact, such as lack of Subject Matter Jurisdiction, is Extrisic Fraud, to deny due process to the victims. See 42 USC §§1985, 1986

## II. Constitutional Protections and Mandamus Relief

1. **Mandamus Relief for Judicial Failures:**

- **28 U.S.C. § 1651** (All Writs Act) allows mandamus relief when courts fail to perform constitutional duties. To deny it by SDC Judicial Discretion is a Due Process Violation that this court must address.

- Movant(s)' writs, addressing systemic violations in **2023-025934-CA-01** and **1:24-CV-25004-RAR**, were denied. Necessitating the Supreme Court review.

2. **Strict Scrutiny over Privacy and Property Rights:**

- The judiciary must enforce constitutional protections as a matter of duty **(Cooper v. Aaron, 358 U.S. 1 (1958))**.

- Courts must address constitutional violations when essential to resolving a case **(New York v. United States, 505 U.S. 144 (1992))**.

---

## RELIEF REQUESTED

Movant(s) respectfully request that this Court:

1. **Grant Intervention**: Recognize Movants as indispensable parties to address systemic constitutional violations of privacy, contract, and due process.

2. **Stay Proceedings**: Suspend rulings until this court has been provided with jurisdiction, causation, and constitutional compliance under strict scrutiny. And until the Fraud on the Court, to proceed w/out Subject Matter Jurisdiction to take liberty and property without affording indispensable parties proper due process, as common judicial manipulation of the civil process, has been properly adjudicated in this court.

3. **Demand Admissions**: Compel the government to admit or deny allegations regarding its motives, selective enforcement, and constitutional authority.

4. **Adjudicate Fraud on the Court**: Address systemic judicial misconduct, including fraudulent receiverships and unconstitutional overreach.

5. **Declare Procedural Denials Void**: Affirm that decisions made without jurisdiction or procedural safeguards are void.

6. **In EQUITY as here proven Necessary**: Certification of the We the People Class Action.

## CONCLUSION: OUR WARNING FOR THE FUTURE GENERATION

The TikTok case is a test of whether the judiciary will uphold its constitutional duty or serve as a tool for unchecked governmental power. History has shown that when courts fail to act as guardians of constitutional rights, the results are catastrophic.

The question for this Court is now clear for all proceed accordingly:
**Will the Justices defend the Constitution and protect the rights of all, or will it perpetuate a system that serves only the powerful?**

**JUSTICES,**
**Either the law is equal for all, *Or* it is no law at all.**
**Either laws are fully applied to all, *Or* they are not laws at all.**
**Either the Constitution stands with integrity, *Or* your laws lose legitimacy.**
**Where justice falters, freedom dies.  Without truth, your laws become lies.**

Janvier Villars, pro se, Working Class Property Owner
1301 NE Miami Gardens Drive 322W, Miami, FL 33179
(786) 609-1269 janvier269@gmail.com
www.powerinunion.com

**Attachments (Exhibits)**

1. Court Order in **2021-17383-CA-01** (Receivership Case).
2. Verified Pleadings in **2023-025934-CA-01 to Intervene and denials**.
3. Writ of Mandamus Petition in **1:24-CV-25004-RAR denial and Amendment**.
4. Any additional supporting documents referenced in the motion.

**Supporting Case Laws**

- **28 U.S.C. § 1331**: Establishes federal question jurisdiction for civil actions arising under the Constitution, laws, or treaties of the United States.
- **28 U.S.C. § 1651 (All Writs Act)**: Empowers federal courts to issue writs necessary or appropriate in aid of their respective jurisdictions.
- **42 U.S.C. § 1986**: Provides a cause of action against individuals who neglect to prevent conspiracies to deprive others of equal protection or privileges.

- **First and Fourteenth Amendments**: Protect freedoms concerning speech, expression, and due process under the law.
- **Ex Parte Pate, 673 So. 2d 427**: Asserts that courts cannot ignore jurisdictional defects or fraud, regardless of procedural posture.
- **Cooper v. Aaron, 358 U.S. 1 (1958)**: Affirms that state officials are bound by Supreme Court decisions and must enforce constitutional protections.
- **New York v. United States, 505 U.S. 144 (1992)**: Highlights the Court's duty to address constitutional violations essential to resolving a case.
- **Yamaha Parts Distributors, Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975)**: States that virtually no degree of contract impairment is tolerable.
- **Epic Metals Corp. v. Samari Lake East Condo. Ass'n, Inc., 547 So. 2d 198 (Fla. 3d DCA 1989)**: Indicates that courts must vacate judgments obtained without proper procedural safeguards to prevent irreparable harm.

## Certificate of Compliance

Pursuant to Supreme Court Rule 33.2, I certify that:

1. This motion complies with the formatting requirements of Rule 33.2.
- The document is printed on 8.5 by 11-inch paper with one-inch margins on all sides.
- The text is set in a Century family typeface, 12-point size, with double-spacing between lines and 10-point font for footnotes.
- This motion consists of fewer than the maximum number of pages permitted under Rule 33.2.
2. In accordance with Rule 29.3, an original and the required number of copies have been filed with the Clerk of the Court.

---

## Certificate of Service

Pursuant to Supreme Court Rule 29, I certify that I have caused a copy of this motion to be served via **certified mail with return receipt requested** on the following parties:

19

**Merrick B. Garland, Attorney General**
U.S. Department of Justice Office of the Attorney General 950 Pennsylvania Avenue,
NW Washington, DC 20530-0001. Shall be delivered by or on January 16, 2024.

*ER-156-065-725-US*

**TikTok Inc.** Legal Department 5800 Bristol Parkway Culver City, CA 90230. Shall
be delivered by or on January 16, 2024. *17th*

*ER-156-065-711-US*

I further certify that I have filed this motion with the Clerk of the Supreme Court in
accordance with the Court's filing rules. Executed this 15th day of January, 2025, in
the city of Miami, state of Florida.

20

# Supreme Court of the United States

---

### Case No.: 24-656

### TikTok Inc., et al., Petitioners,
### v.
### Merrick B. Garland, Attorney General,

**We the People**, Movants. Motion to Intervene, to Stay Proceedings, and to Challenge Judicial Practices Proceeding Without Jurisdiction

## <u>VERIFIED STATEMENT OF FACTS BY WE THE PEOPLE, MOVANTS</u>

Movant, Janvier Villars, on behalf of We the People the Working Class, submits this Verified Statement of Facts in support of the **Motion to Intervene, to Stay Proceedings, and to Challenge Judicial Practices Proceeding Without Jurisdiction** in the above-captioned matter. This statement is made under penalty of perjury, pursuant to 28 U.S.C. § 1746, and is based on personal knowledge, information, and belief as stated herein.

---

## SWORN STATEMENT OF FACTS UNDER OATH

1. **Movant's Standing and Interest**
   - I, Janvier Villars, am an individual directly affected by the constitutional issues raised in the TikTok case. Directly harmed by Judicial abuse in the attempt to deprive of acquired rights and interests without this the court having Subject Matter Jurisdiction.
   - I submit this Verified Statement of Facts to demonstrate the systemic harm caused by governmental overreach, judicial abuse of discretion, and collusion between the executive and judicial branches to deprive individuals and corporations of their constitutional rights.

2. **Constitutional Violations and Judicial Complicity**

- The TikTok case, like my cases (e.g., **2021-17383-CA-01, 2023-025934-CA-01, 1:24-CV-25004-RAR**), highlights judicial practices that enable the government to proceed without meeting the strict scrutiny required to deprive individuals and corporations of their rights.
- In **2021-17383-CA-01**, Judge Guzman imposed a court-appointed receiver over 500+ homes despite lacking subject matter jurisdiction and failing to meet the procedural and constitutional requirements for such actions. Similarly as this court is proceeding. Solely based on hypothetical claims.

3. **Selective Enforcement and Systemic Overreach**

- The government's actions in the TikTok case also mirror historical abuses of judicial and executive authority, such as the anti-Communist witch hunts and Japanese internment. That to this date this court has failed to provide a Doctrine to protect the working class from enduring such abuse of power again. **Thus the reason for the "We the People Mandamus Act" attached.**
- By targeting TikTok while failing to regulate U.S.-based corporations known to sell user data to foreign adversaries, the government engages in selective enforcement, violating the Equal Protection Clause and the Private Contract Clause. Selectively judicially deciding the winners and losers in free market is not within the jurisdiction of this court, despite political coersion.

4. **Documentary Evidence Included**

- The documents submitted alongside this Verified Statement of Facts, including court records from **2021-17383-CA-01, 2023-025934-CA-01**, and **1:24-CV-25004-RAR**, are true and accurate copies of the original filings.
- These documents demonstrate the systemic civil conspiracy and judicial misconduct that have deprived individuals of their property and constitutional rights. That this court is under duty to address as it addresses the loss of constitutional protective rights on the legally defenseless and ill-represented Working Class. Thus the *We the People Mandamus Act*

5. **Request for Judicial Intervention**

- In [date], Movant filed a Writ of Mandamus with this Court, presenting substantial evidence of systemic judicial misconduct and constitutional violations in cases herein mentioned. Despite the critical constitutional questions raised, the writ was not considered, and the filing fee was returned. This motion to intervene addresses similar violations in the

TikTok case, where unchecked governmental and judicial overreach threaten the rights of individuals and corporations alike. The refusal to address these constitutional issues underscores the urgency of allowing intervention to ensure these violations are fully adjudicated.

- The government committee has failed to provide the constitutional basis or legal criteria for targeting TikTok and its users, raising profound questions of privacy, due process, and judicial accountability.
- This court denied Writ of Mandamus addressing this judicial conspiracy proven for over eight years and several court cases and judges.  Because the movant failed to exhaust state remedies. When its proven it is the state committing the fraud on the court - **Judicially seizing property illegally!**
- This Verified Statement of Facts underscores the necessity of intervention to protect constitutional rights and prevent further harm.
- IF permitted intervention, every motion, claim, allegation, and statement here will be promptly and effectively proven in court dockets, that have never been disputed by attorneys and judges involved for the past eight years.

## VERIFICATION

I, Janvier Villars, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct to the best of my knowledge, information, and belief. Executed on this 16th day of January, 2025, in the city of Miami, state of Florida

Janvier Villars

**Address:** 1301 NE Miami Gardens Drive 322W, Miami, FL 33179

**Phone Number:** (786) 609-1269

**Email Address:** janvier269@gmail.com

SHEALEANA VARELA
Notary Public
State of Florida
Comm# HH500309
Expires 6/30/2028

01/16/2025

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
## WASHINGTON, DC  20543-0001

January 23, 2025

Janvier Villars
1301 NE Miami Gardens Drive
Miami, FL 33179

    RE: TikTok Inc., et al., v. Merrick B. Garland, Attorney General
       "Various Motions"
       No: 24-656

Dear Mr. Villars:

    The enclosed documents received January 22, 2025, are herewith returned in light of the decision in the above-entitled case on January 17, 2025.

Sincerely,
Scott S. Harris, Clerk
By:

Rashonda Garner
(202) 479-3025

Enclosures

## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

---

### Case No. 1:24-CV-25004-RAR
### Honorable Judge Rodolfo A. Ruiz, II

---

**Janvier Villars,** Sui Juris, duly elected board president removed by fraud in the courts.
 **PETITIONER,**

**V.**

**Judges of the Third District Court of Appeal of Floridas;**
**Judge Carlos Guzman,** in his official capacity as
Circuit Judge for the State of Florida, Eleventh Judicial Circuit;
**Judge Vivianne Del Rio,** in her official capacity as
Circuit Judge for the State of Florida, Eleventh Judicial Circuit;
**The State of Florida,** by and through Attorney General Ashley Moody,
**Attorneys: Leigh Katzman, Mary Ann Chandler, Justin Smith, Steven Katz**
et.al./ RESPONDENTS.

---

## VERIFIED EMERGENCY WRIT OF MANDAMUS,
## CONSTITUTIONAL CHALLENGE & MOTION TO SHOW CAUSE

---

Prepared by: Janvier Villars, Sui Juris
1301 NE Miami, Gardens Drive
Miami, FL 33179 (janvier269@gmail.com)

Based on Civil Conspiracy in Cases: 2021-017383-CA-01, 2023-026257-CA-01, and
Foreclosure Case 2024-000247-CA-01
3RD DCA DENIAL REVIEWS OF WRITS: 3D2024-0933 LT

## I.    NOTICE TO THE CLERK OF COURT AND JUDICIAL OFFICERS

Before the Court or its Clerk entertains any discretionary action to delay, omit, reject, or fail to properly docket this Verified Emergency Writ, this filing places all recipients on record: Any such suppression, obstruction, or concealment of a constitutional challenge—especially one involving documented fraud, deprivation of rights, and absence of jurisdiction—will constitute a knowing act of deprivation under color of law.

As outlined in **18 U.S.C. §§ 241–242**, obstruction or conspiracy to deny rights under the Constitution is a federal crime. Likewise, **Florida Statute § 90.501** imposes duties of confidentiality and neutrality, which are breached when judicial officers act to protect state interests at the expense of impartial access to justice.

This Court and its Clerk are hereby respectfully reminded: The law applies equally to all—including those who wear robes and hold titles. Preemptive dismissal, delayed docketing, or gatekeeping of constitutionally protected filings will serve only as further evidentiary proof that this Court has surrendered its oath to convenience, and replaced its neutrality with self-protection.

## II.    MESSAGE To: Hon. Judge Honorable Judge Rodolfo A. Ruiz II

This is not merely a procedural petition—it is a reckoning. The question for you is whether a federal judge should uphold his oath or shield a pattern of judicial

evasion behind the illusions of discretion and **silence.** Petitioner, Janvier Villars,

invoking Article VI of the U.S. Constitution (Supremacy Clause), Amendments I,

IV, V, IX, X, and XIV, and statutory authority under 28 U.S.C. §§ 1331, 1343, 1361,

2201-2202, 1651, and 1254(2), submits this Emergency Writ of Mandamus not as a

plea—but as a final test on the Florida Federal Courts. Will this Court recognize

**that where rights and remedies collide** with institutional preservation, the

Constitution—not comfort—must prevail? **Case No. 1:24-CV-25004-RAR was**

**closed without adjudication, without hearing, without cause.** It now falls on this

**Court to decide whether justice remains tethered to law, or surrendered to power.**

Pursuant to Article VI of the U.S. Constitution (Supremacy Clause), Amendments

I, IV, V, IX, X, and XIV, and 28 U.S.C. §§ 1331, 1343, 1361, 2201-2202, 1651, and

1254(2), Petitioner Janvier Villars respectfully demands that this Court reopen

Case No. 1:24-CV-25004-RAR, render judicial findings on constitutional claims

presented, and certify this case to the U.S. Supreme Court if unwilling to confront

the issues presented.

---

## III.      LEGAL JURISDICTION & CONSTITUTIONAL OBLIGATION

This Court is bound to:

- **Address constitutional violations when due process and standing are challenged** (Steel Co. v. Citizens);

- **Comply with Rule 5.1(c), notifying the U.S. Attorney General Pam Bondi** where the constitutionality of a state statute or policy is questioned;

- **Prevent judicial swindles disguised under doctrines** like the Business Judgment Rule or Status Quo Doctrine, which are selectively applied to protect private corporate actors while denying natural persons the same shield.

If this Court refuses to rule, **that silence will constitute further evidence of systemic deprivation and federal complicity in ultra vires** conduct by the State of Florida.

---

## IV.    GROUNDS FOR THIS WRIT

### 1. VOID CLOSURE WITHOUT FINDING (Rule 60(b)(4))

The Court closed this case without ruling on subject matter jurisdiction, due process, or constitutional questions, **rendering the closure void and in violation of judicial obligation to the Supremacy Clause.**

### 2. VIOLATION OF RULE 5.1(c) & DUE PROCESS

The constitutional challenge to Florida's authority to adjudicate private

foreclosures—**where no statute delegates power and no contract consents to state intrusion**—triggers mandatory notification and review under Rule 5.1. This was not done.

## 3. THE CORE CONSTITUTIONAL QUESTION

_WHERE_ in the U.S. Constitution does any state receive **explicit authority** to foreclose on private property—**a right that is neither enumerated in the federal charter, nor delegated to the state, nor contractually consented to by the parties?**

This is not law by consent. **This is Bar-Entitled Presumption (BEP)**—an unauthorized seizure masquerading as authority. It is a usurpation of the natural right to contract, a violation of the First, Fourth, Fifth, Ninth and Tenth Amendments, and directly contravening due process under the Fourteenth. **If this Court condones it**, then it is not just ratifying a legal error— **it is affirming a constitutional betrayal.**

## 4. JUDICIAL DOCTRINES ACTING AS LEGISLATION

Through the unchecked use of **sua sponte orders**, judicial doctrines, such as 'Status Quo' and 'Judicial Discretion,' Florida judges have functioned not as neutral arbiters **but as de facto legislators**. These doctrines are selectively invoked to divest natural persons of their rights—rights safeguarded under the Ninth, Tenth, and Fourteenth Amendments—without trial, hearing, or legislative process. The

result is a covert issuance of unconstitutional **Bills of Attainder**, enacting judicially

manufactured Judicial caselaws that operate with the force of LAW **but without**

**lawful authority.** Since those court rulings are procured by denying the targeted

divested party of proper due process. This behavior mirrors the precise overreach

condemned in *Marbury v. Madison* and later cases: judges **writing law from the**

**bench in violation of the Separation of Powers**. Applauded by Bar union members

for *masterfully* bypassing both consent and due process to deprive of

Constitutional Rights—— **without needing to survive Strict Scrutiny.**

## 5. BIASED APPLICATION OF LAW

 Where no procedural rule authorizes a judge **to selectively deny the legal**

**enforcement** of Florida Civil Precedural Law—such as those governing **Requests**

**for Admission**, they are, wantonly and recklessly doing so.

—**To shield a privileged CLASS of People**— **That is not adjudication;**

**That is Sanctioned Bias.** Yet, the 3rd DCA Judges, Circuit Court Judge Diaz and

SDC Judge Ruiz have done precisely that. Concealing their Juridictional Challenge.

This is not an act of judicial restraint, but of **Structural Discrimination**

—disguised beneath their manufactured veil of **"Judicial Discretion"** and **"Absolute**

**Immunity."** Concepts not found in the Constitution — but born of *Stump v.*

*Sparkman* THE SCOTUS Precedent, that is constantly misapplied by every state

court, including the SDC and 3rd DCA. **Functioning as a judicial cloak for**

**unaccountable power: enabling judges to protect government-aligned actors** while exposing natural persons to unlawful takings and due process denials.

This is the judiciary— departing from its oath—openly departing from *Marbury v. Madison*'s mandate that:

### *"The U.S. Constitution—not the courts—governs the Rule of Law."*

When courts abandon equal enforcement and instead choose <u>which classes are worthy of rights and equal protection</u>, they do not practice justice—they are **deliberately undermining it.**

> *"There is no authority more dangerous than one that operates without restraint, <u>insulated by the illusion of law</u>."*

**When justice becomes selective, and discretion eclipses duty, the court ceases to be a Court of Justice—<u>it becomes an instrument of deceitful domination</u>.**

Legitimacy cannot coexist with favoritism.

**<u>Integrity in law</u> is not a matter of preference—it <u>is its very foundation</u>.**

## 6. FRAUD ON THE COURT AND ABSENCE OF STANDING

Katzman and Katz initiated actions in conspiracy with Eleventh Circuit Judges Guzman and Del Rio. Together, they executed instruments and court orders that transferred rights over property to third parties—without having standing, without

legal or lawful causation, without having to prove Article III injury, and without affording due process to the parties dispossessed. They concealed the court's lack of subject matter jurisdiction. By EVERY COURT CLERK AND JUDGE bypassing the **constitutional threshold**—MINIMUM LEGAL UNDERSTANDING **on every Bar-licensed attorney to pass the bar exam.** Before filing and at receiving a case. Verification of lawful standing, Article III harm, and redressability. Every Bar-licensed officer involved since 20217 knew, or was required to recognize, that such proceedings were void from inception. As in a union, they protected each other.

**For nearly a decade**—from 2017 to April 2025—these Court Officers and State actors moved in unison to uphold the status quo, to protect their judicial shield, and to preserve the illusion of legitimacy. **Not for justice, but to protect the institution, the Bar's reputation, and the state's control.** They knowingly denied access to indispensable parties, silenced challenges to their court jurisdiction, and **weaponized the judiciary as a private enforcement arm for unlawful seizures.**

## The truth is devastating in its simplicity:

**WHAT** an UBER-driving, Gen X Man, high school dropout, earning $14/hour **CAN PROVE**—judges, attorneys, and clerks with decades of experience refuse to accept—**IS CONSPIRACY IN THE CONCALMENT.** Because in this system, truth is not the measure of justice—conformity is. And the American Dream? It was sold

not as a promise, but as a pacifier. A narrative marketed by Bar-licensed architects to keep working people chasing something that was never written for them. While the people toiled in good faith, the capitalist-*legal* machinery was quietly fortified by those who swore to protect justice—but pledged allegiance elsewhere.

(*Hazel-Atlas, Dennis v. Sparks*)

## 7. STATE AS INTERESTED PARTY CANNOT SELF-ADJUDICATE

 The State of Florida—acting through its judiciary, its Bar membership, and executive enforcement arms—**is not a disinterested adjudicator in this matter. It is a co-conspirator.** Judges Guzman, Del Rio, Cynamon and Echarte conspired with attorneys Katzman and Katz. At seizing private property, imposing unauthorized debt by state Actors to coerce liens and financial defaults. Interferring and sabotaging legal board elections, and denying the participation of indispensable parties in courts—all while protected **by silence** from the DBPR and Attorney General's Office, State Attorney, Inspector General, Judicial Qualification Committee, the 3rd DCA and now the SDC...**of FLORIDA**.

When state agents obstruct due process and then sue on the very property they unlawfully obtained, **the state is no longer upholding justice—it is perpetrating fraud under color of law.**

When this Court refused to allow the First Amendment supplement, closing the case without affording a hearing, denying constitutional remedy despite unrefuted claims. It aligned itself with those actors. **That is not neutrality—it is complicity.** *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), affirms that **a judge must recuse or disqualify where bias or structural entanglement undermines fairness.** That doctrine applies here. When a judiciary protects its own from prosecution, denies remedy to those harmed by its Bar Union members, and **elevates professional allegiance over constitutional duty, it becomes judge in its own cause.**

This Court cannot protect the State and claim fidelity to the Constitution. It must choose. Because when the government becomes the shield for wrongdoing rather than the sword of protection for the people, **the State Judicial System is no longer legitimate**—it is merely decorated in law's appearance while eroding its absence of substance.

## 8. CONSTRUCTIVE ADMISSION BY SILENCE  (Rule 8(b)(6))

 Every factual and legal claim in this case remains uncontested and must be treated as admitted under rule (Rule 8(b)(6)).

## 9. CONSTITUTIONAL IMPOSSIBILITY TO DENY RELIEF WHEN CLAIMS ARE UNDISPUTED

 If a federal court may decline to rule—even when constitutional violations are

fully presented, supported by law, precedent, and unchallenged evidence—

**then the judiciary has abandoned its reason for existence.** NONE of the

Respondents have ever addressed the foundational question:

   **"Where <u>in the U.S. Constitution</u> is    <u>any state empowered</u>    to divest**

**indispensable parties of due process, property rights, and legal protections within**

**their own private associations, <u>absent subject matter jurisdiction</u> from the outset?"**

Worse still, when the state becomes complicit—through its agents suing on

unlawfully obtained property, while obstructing due process and concealing prior

fraud—**<u>each    subsequent    judge</u>    invoking** *Stump v. Sparkman* **<u>Absolute</u>**

**<u>Immunity</u> to suppress litigation of those illicit takings compounds the**

**constitutional violation.** These judges become <u>protectors not of the law, but of the</u>

<u>fraud that preceded them.</u>

   Their illicitly procured settlements against the property they usurp remain

judicially concealed from the very parties forced to fund them. Sealed by court

orders designed not to serve justice. But used to deny material evidence.  Their

victims were not just silenced, they were threatened with contempt of court if they

dissented the court orders. All of this, protected under a **Bar-enabled doctrine of**

**Absolute Judicial Immunity**—bestowed by the 1978 caselaw *Stump v. Sparkman*

—SCOTUS precedent. Serving to shield Judicial criminal enterprises. What has

emerged is a de facto (covert) Noble Class, government actors, bar members and those cloaked in robes, wielding powers above scrutiny, above law, and above consequence. That is not due process. **That is sovereign (NOBILITY TITLED) immunity by Judicial Deceit**—crafted not by the Constitution, but by those entrusted to interpret it—State and Federal Court Judges.

**That is not Judicial Discretion; this is Fraudulent Concealment.** By their very **definition of Extrinsic Fraud.** And when the last recourse for relief—a federal court—refuses to acknowledge the weight of undisputed evidence, supported by decades of doctrine, contract law, and due process protections, **then it is not the Petitioner or the victims who stand outside the rule of law → It   is   the   court.**

## 10. MOTION TO STRIKE JUDICIAL IMMUNITY WHERE FRAUD AND ABSENCE OF JURISDICTION EXIST

Petitioner formally moves this Court to strike and deny any anticipated invocation of judicial immunity by Respondents—including but not limited to State and Federal Judges. As Judicial immunity does not apply to acts taken in the clear absence of Constitutional Authority or Subject Matter Jurisdiction, nor does it shield conspiracies with private actors to violate Constitutional Rights (*Dennis v. Sparks*, 449 U.S. 24).

The doctrine forged in *Stump*—**which allowed the <u>deceitful sterilization</u> of a 15-year-old girl under the Judicial claim it was for an <u>appendectomy</u>**—reveals the terrifying **precedent of judicial deception shielded by SCOTUS immunity**. That 15 y.o. child **<u>was not given</u>** a hearing, an attorney, or a notice. The **Sua Sponte Ruling**, was passed without a case open, while denying the 15 y.o. Child any due process. Yet, later defended <u>by the Supreme Court of the United States</u> (SCOTUS). This awful, <u>irreversible personal deprivation</u> was afforded NO remedy whatsoever. ***The LEAST*** **it should have done is serve as a dire warning**. But instead, it laid the <u>Necessary Judicially-Afforded Immunity</u> to afford the unlawfully procured SCOTUS landmark cases: **Citizens United, Dobbs v. Jackson, and the TikTok Case**. Each divesting or transferring **Sui Juris of Constitutional Rights.** By denying these indispensable parties the right to protect their **<u>RESERVED</u> 9th, 10th Amendment and Natural Rights.**

**This same judicial shell, clothed in procedure but <u>deficient in principle</u>**, now functions as <u>a systemic shield for coordinated violations of constitutional rights</u>. It empowers Bar-licensed attorneys, **once seated as judges**, to manufacture authority not granted by the U.S. Constitutional Laws—but so long as they sign their fraud in robes.--> **The outcome is not accidental. It is <u>structural</u> <u>by design.</u>**

However, the **Supreme Law of the Land**—the U.S. Constitution—**does not** grant rights by silence. **It does not empower states to invent authority where none exists.** In *United States v. Lopez*, 514 U.S. 549 (1995), the Court reaffirmed that federalism limits not only Congress, but state power too. In *Bond v. United States*, 564 U.S. 211 (2011), **the Court held that individuals may challenge unlawful expansions of government power** that intrude on rights Reserved to the People. Thus, where the Constitution does not affirmatively grant power to the state—or where it is silent—**no court may presume that power into existence.**

When state actors, cloaked in judicial immunity, create doctrines that functionally legislate deprivation—targeting underrepresented classes who lack legal defense or political voice—this is not merely by error. **It is Judicially protected civil conspiracy**, defined under 42 U.S.C. §§ 1983, 1985(3), and codified as criminal under 18 U.S.C. §§ 241-242. A conspiracy, masked in judicial Discretion, becomes the process by which the Constitution is circumvented and the people are silenced

This exact pattern is the one repeated in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. (2022). Where SCOTUS found that the Constitution's silence on abortion meant it offered *no (Reserved) Right to a Class of People*—**thus transferring such Natural Right of Choice over one's Life important decisions and Reproductive Autonomy to the Bar-Licensed State actors- Judges like Stump.**

WHERE silence removes federal protection, then **it must also deny state assumption of rights** when there is none explicitly granted in the U.S. Constitution. Anything less creates a double standard of sovereignty and an invitation for State Actors' abuse.

This Court must not become the next link in a chain of judicial exceptionalism. **Where there is fraud, jurisdiction cannot arise.** Where there is coordinated concealment, discretion dissolves. **When a robe becomes the costume of conspiracy, immunity is void.** To allow otherwise is to enshrine systemic evasion as law. That would not preserve the republic—it would dissolve it.

## VERIFICATION AND GOOD FAITH CERTIFICATION

I, Janvier Villars, hereby certify under penalty of perjury that the foregoing Verified Writ of Mandamus is based on personal knowledge, authenticated records, and court-filed evidence. The statements made herein are true and correct to the best of my knowledge, belief, and research, and are offered solely for the purpose of seeking redress under the Constitution and laws of the United States.

This Writ is not filed for any improper purpose, nor to harass, intimidate, or threaten any individual or entity. It is filed in good faith pursuant to 28 U.S.C. §

1746 and in compliance with Federal Rules of Civil Procedure 11(b), 8, and 10. It seeks to preserve and protect rights guaranteed under the U.S. Co

## III. DEMANDS FOR RELIEF

1. **Reopen Case No. 1:24-CV-25004-RAR** as a matter of Constitutional Right;

2. **Issue a Show Cause Order** compelling Respondents to explain their actions within 10 days;

3. **Enter judicial findings** on the core constitutional questions raised;

4. **Issue a declaration** that judicial doctrines used to override private contracts and deny access to the courts are unconstitutional when applied unequally;

5. **Issue preliminary and permanent injunctive relief** to prevent further harm to the petitioner and similarly situated parties;

6. **Refer the case to the U.S. Supreme Court under 28 U.S.C. § 1254(2)** for resolution of the constitutional limits of state power and judicial discretion;

7. **Grant in banc review** and allow all indispensable parties participation, as required under fundamental fairness and the Fifth and Fourteenth Amendments.

8. Set a Hearing Date Within Ten (10) Days Order that a hearing be set within ten (10) days from the date of this Writ's filing, to allow oral argument on the constitutional violations, factual claims, and requested remedies. Continued

delay without judicial findings constitutes an ongoing violation of the Due Process Clause under Goldberg v. Kelly, 397 U.S. 254, and Mathews v. Eldridge, 424 U.S. 319.

**Failure of this Court to act will no longer be read <u>as silence</u>— <u>It will be read as surrender.</u>** For what stands now is no mere petition, but a mirror held to the system itself. <u>If Constitutional Laws cannot compel a judge to act</u> where every right is denied and every wrong admitted, then what remains is not government, but <u>Governance by DECEPTION</u>.

The Constitution cannot be both a shield for the people and a sword for the State. Either its supremacy governs the governed *and* the governors—or it has been replaced by an unwritten regime of discretion, doctrine, and selective immunity. **If this Court declines to rule, then let history record this refusal as confirmation:  The judiciary branch, once guardian of the law, has become its greatest exception.** And if the oath to uphold the Constitution still bears weight, then let this be the moment that oath proves itself—not to power, but <u>to principle</u>.

For no "justice" that punishes the innocent and shields the wrong can claim survival in the face of truth. Any government that fears accountability more than it fears injustice has forfeited the moral and constitutional legitimacy of its courts. **That is not justice delayed—<u>it is justice defrauded</u>.** And when that fraud is clothed

in robes and doctrine, history will remember not its rulings, but its refusal to stand

for what the Constitution demands.

---

Respectfully submitted,

**Janvier Villars, Sui Juris <u>ab initio</u>**
1301 NE Miami Gardens Drive
Miami, FL 33179
janvier269@gmail.com

**Filed on behalf of Petitioner and 560+ disenfranchised by the courts property owners.**

Dated: April 23, 2025

### CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this document complies with the type-volume limitation set forth in Rule 21(d)(1) because it contains [number] words, excluding the parts of the document exempted by Rule 32(f). This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared proportionally.

**Certificate of Service** I HEREBY CERTIFY this Writ was served to Judges Guzman, Del Rio, Echarte served in downtown Circuit Court. Also to the State of Florida via servicing Attorney General Ashley Moody at her Office of the Attorney General State of Florida PL-01 The Capitol Tallahassee, FL 32399-1050.

**MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT**

**Part I**

**Jurisdiction, Standing, Fraud on the Court, and Civil Conspiracy**

## I. INTRODUCTION

This Complaint challenges a structurally embedded civil conspiracy wherein judicial actors and public officers jointly deprived Plaintiff and similarly situated individuals of constitutional rights through systemic fraud, procedural exclusion, and weaponized discretion. Framed as local judicial misconduct, the violations replicate doctrines developed by the U.S. Supreme Court—including *Stump, Dobbs, Citizens United, and Murthy*—now applied to deny access to court, suppress speech, and shield RICO-class misconduct under the guise of procedural authority.

## II. JURISDICTIONAL BASIS

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and §§ 2201–2202 (declaratory relief). Plaintiff brings claims under 42 U.S.C. §§ 1983, 1985(3), 1986, and 18 U.S.C. § 1962(c). Federal jurisdiction is proper where constitutional rights are denied under color of law. Exhaustion of state remedies is not required. See *Patsy v. Board of Regents of State of Florida, 457 U.S. 496 (1982)*.

## III. STANDING TO SUE

Plaintiff has Article III standing as he personally suffered harm through arrest threats, judicial seizure of office, denial of access to court, and systemic suppression of speech. See *Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)*. Standing also exists under the denial-of-access doctrine: Plaintiff was excluded from hearings, denied participation, and blocked from presenting claims. See *Christopher v. Harbury, 536 U.S. 403 (2002)*. These actions are not discrete procedural errors but manifestations of a broader pattern that elevates institutional actors while excluding ordinary litigants.

## IV. FRAUD ON THE COURT

Fraud on the court arises where parties submit false information or conceal key facts, and judicial actors issue rulings that compromise the tribunal's impartiality. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*; *United States v. Throckmorton, 98 U.S. 61 (1878)*. Orders issued in reliance on extrinsic fraud—such as false board credentials, omitted parties, or concealed standing defects—are void ab initio. Judicial immunity does not extend to conduct performed in the absence of jurisdiction or where the court is used to launder fraud.

## V. CIVIL CONSPIRACY UNDER 42 U.S.C. § 1985(3)

A viable § 1985(3) claim requires (1) a conspiracy, (2) to deprive equal protection or privileges, (3) with overt acts, and (4) resulting injury. See *Griffin v. Breckenridge, 403 U.S. 88 (1971)*. Plaintiff alleges Defendants knowingly

omitted parties, enforced false filings, and denied hearings to execute an unlawful deprivation of rights. See also *Cinevision Corp. v. City of Burbank, 745 F.2d 560 (9th Cir. 1984)*. Conspiratorial silence and regulatory refusal following formal notice demonstrate a meeting of the minds to protect the misconduct.

## Part II
## RICO, Declaratory Relief, and Judicial Immunity Limitations

### I. RICO (18 U.S.C. § 1962(c))

Plaintiff alleges a pattern of racketeering involving predicate acts under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1503 (obstruction of justice). The Katzman enterprise, operating through a legal facade, utilized false filings and judicial collusion to unlawfully control an association and extract value. See *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)*. The acts were continuous, related, and extended across years—satisfying the enterprise requirement under *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)*. Judicial participation in such fraud, when knowingly complicit, does not immunize the scheme.

### II. DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201–2202

The Declaratory Judgment Act authorizes courts to declare the rights and legal relations of parties. Plaintiff seeks declarations that judicial orders procured by fraud are void, and that systemic exclusion of indispensable parties—as in *Dobbs* and *Murthy*—violates procedural due process. Declaratory relief is especially appropriate where orders carry continuing legal effects and are enforced without lawful basis. See *Super Tire Engineering Co. v. McCorkle, 416 U.S. 115 (1974)*.

### III. JUDICIAL IMMUNITY – LIMITATIONS AND EXCEPTIONS

While judicial immunity generally protects judges for acts performed in their judicial capacity, it does not apply when judges act in the clear absence of jurisdiction or engage in fraud on the court. See *Mireles v. Waco, 502 U.S. 9 (1991)*; **and ironically or self-contradicting** *Stump v. Sparkman, 435 U.S. 349 (1978)*. The judicial acts in this case—granting receiverships without hearings, excluding indispensable parties, and rubber-stamping false filings—were not merely discretionary errors, but violations of structural due process. Such acts undermine the judicial function and meet the fraud exception articulated in Hazel-Atlas and Throckmorton.

### IV. THE JUDICIAL BLUEPRINT – SCOTUS DOCTRINES APPLIED SYSTEMICALLY

This case is a direct manifestation of Supreme Court doctrines misapplied to insulate fraud. Stump institutionalized unchecked discretion; Citizens United allowed judicial tolerance of systemic corporate favoritism; Dobbs and Murthy reflect exclusion of real parties and jurisdictional manipulation. When local courts adopt these frameworks without safeguard or correction, the result is judicial design—not judicial error. This Court must recognize that doctrines, when applied without constraint, become tools of constitutional harm.